**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *also known as the* DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE, *et al.*,<br><br>      *Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>      *Defendants*. | Civil Action No. 26-1114 (CJN) |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>      *Plaintiffs*,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>      *Defendants*. | Civil Action No. 26-1132 (CJN) |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>      *Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>      *Defendants*. | Civil Action No. 26-1151 (CJN) |

**REPLY IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY**

Plaintiffs League of United Latin American Citizens, Secure Families Initiative, and

Arizona Students' Association ("LULAC Plaintiffs") seek limited expedited discovery in support

1

of their preliminary injunction motion. Defendants' opposition to this motion boils down to their contention that the requests are too early and too complicated. That is not true. A mere eight months before a federal general election, and with regularly scheduled federal primary elections already underway, the President signed an Executive Order that attempts to overhaul and rewrite election rules. That Order instructs various federal agencies, including the Department of Homeland Security and the Social Security Administration, to assemble and transmit massive lists throughout the country with personal, sensitive, and potentially confidential information on millions of voters to the states for immediate use.

The Order further provides that these lists may draw on a vast network of highly secure federal databases spread across a range of named and unnamed agencies. All of these actions will involve the sensitive information of voters being shuttled back and forth between various federal agencies, and in turn, the states.

In the face of these unprecedent actions, Defendants take issue with the purportedly "burdensome task" of responding to such "broad" requests and the "breathtakingly fast timeline" by which Plaintiffs seek initial responses. But Plaintiffs' requests are straightforward and boil down to this: What steps have the Defendants already taken and will continue taking to compile and transmit these citizenship lists to the states between now and the fall elections? Given the circumstances, Plaintiffs' limited requests are plainly reasonable.

For the reasons below, Plaintiffs ask that the Court grant their narrow requests for expedited discovery.

I.    **LULAC Plaintiffs' requests are reasonable because they are in support of a now-filed preliminary injunction motion.**

In the District Court for the District of Columbia, "courts favor the reasonableness test because it better reflects their broad discretion over discovery matters." *New Mexico v. Musk*, 770

F. Supp. 3d 192, 198 (D.D.C. 2025) (explaining that the reasonableness test is a more appropriate standard than the *Notaro* test, because the reasonableness test does not rely on the preliminary injunction factors to determine the propriety of expedited discovery in support of a preliminary injunction). Each of the reasonableness factors weighs in favor of Plaintiffs.

LULAC Plaintiffs filed their discovery motion shortly after a scheduling order was issued in this case requiring motions for preliminary injunction to be filed on April 10, 2026. Dkt. No. 15. That no preliminary injunction motion was already pending at that time is a semantic argument that holds no weight here. Both the courts and logic recognize that an impending preliminary injunction motion can serve as a reasonable basis for expedited discovery. *See Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 349 F.R.D. 243, 249 (D.D.C. 2025) (finding that even when the literal answer was no, this factor weighed in favor of plaintiffs where plaintiffs were ordered to file preliminary injunction motions in a little over a month). And Plaintiffs specifically noted that they would use the discovery as part of the preliminary injunction briefing and argument, even if not available for its initial motion. *See* Motion for Expedited Discovery at 4 n.5, *LULAC v. EOP*, No. 1:26-cv-01132-CKK, Dkt. No. 17; Dkt. No. 20 at 5. Defendants attempt to differentiate *American Federation of Labor* because motions seeking a temporary restraining order had already been filed, but offer no reason why that difference matters and ignore that the court's analysis hinged on the upcoming court-ordered deadline for preliminary injunction motions. *See Am. Fed'n of Lab. & Cong. of Indus. Organizations,* 349 F.R.D. at 249. And at any rate, LULAC Plaintiffs' preliminary injunction Motion has now been filed, Dkt. No. 29, rendering Defendants' argument on this point moot.

Defendants next argue that "the factual and legal issues at stake are especially difficult to determine given that the challenged Executive Order was only promulgated on March 31, 2026."

3

Opp. at 10. But Defendants' arguments are based on an erroneous presumption that this Executive Order was issued in a vacuum. It was not. President Trump clearly stated his intention to issue an Executive Order restricting mail voting at least as long ago as August 2025 and has raised the issue continually since then.[1] In addition, Defendant agencies have taken various steps over the course of the last year that are related to the exact data required for creation of the State Citizenship Lists, including the expansion of DHS's SAVE system, the Department of Justice's requests for state voter files,[2] and the sharing of certain SSA data with DHS.[3] Most recently, the Department of Justice has acknowledged in court that it is seeking[4] this voter registration data to transfer to DHS to determine whether non-citizens have registered or voted. Thus, the notion that "so little time," Opp. at 10, has elapsed since the issuance of the Executive Order such that there are no facts to

---

[1] *See* Nicole Markus, *Trump pledges effort to eliminate mail-in voting*, Politico, (Aug. 18, 2025), https://www.politico.com/news/2025/08/18/trump-eliminate-mail-in-voting-00513347; Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 18, 2025, at 7:17 a.m.) https://truthsocial.com/@realDonaldTrump/posts/115049485680941254.

[2] While the Department of Justice's efforts to obtain voter data from states through litigation have thus far been rejected by courts, *see United States v. Weber*, __ F. Supp. 3d ___, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, __ F. Supp. 3d ___, 2026 WL 318402 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Benson*, __ F. Supp. 3d ___, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026); *United States v. Raffensperger*, No. 5:25-cv-00548, 2026 WL 184233 (M.D. Ga. Jan. 23, 2026), at least 12 states have agreed to voluntarily provide their full statewide voter registration lists to the Department, including drivers licenses and social security numbers. *See* Patrick Berry, Kaylie Martinez-Ochoa & Eileen O'Connor, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just., (last updated Apr. 9, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information (listing Alaska, Arkansas, Indiana, Louisiana, Mississippi, Nebraska, Ohio, Oklahoma, South Dakota, Tennessee, Texas, and Wyoming).

[3] USCIS Newsroom, *USCIS Enhances Voter Verification Systems*, USCIS, (Nov. 3, 2025), https://perma.cc/9LN5-SEDU ("USCIS Enhances Voter Verification Systems"); Jude Joffe-Block, *Trump's SAVE tool is looking for non-citizen voters. But it's flagging U.S. citizens too*, NPR (Dec. 10, 2025), https://perma.cc/QC7L-XQZU.

[4] Jude Joffe-Block, *The Justice Department plans to share sensitive voter data with Homeland Security*, NPR, (Mar. 27, 2026), https://www.npr.org/2026/03/27/nx-s1-5764266/voter-datatrump-doj-dhs.

discover is repudiated by already-public actions that various Defendants have taken with respect to citizenship data and state voter registration lists. If, as Defendants contend, there is no "robust factual record," Opp. at 10, and they have not yet begun or completed the work necessary to compile the citizenship lists as required by Section 2(a) of the Executive Order, then responding to Plaintiffs' discovery requests should not be burdensome.

Defendants further misstate the Executive Order's deadlines for creating the State Citizenship Lists required by Section 2(a). Defendants state that the lists "need not be completed . . . until sixty days before the next Federal election, i.e. early September." Opp. at 5. But they are mistaken. Section 4(c) of the Executive Order requires the Secretary of Homeland Security to "establish the infrastructure necessary to compile, maintain, and transmit" the State Citizenship List "within 90 days of the date of this order," *i.e.*, end of June. EO Section 4(c). Moreover, the terms of the Executive Order are not limited to Federal general elections. The Order states that the "State Citizenship List shall be updated and transmitted to State election officials no fewer than 60 days before *each regularly scheduled Federal election*, or promptly upon request by a State in connection with any special Federal election." EO Section 2(a) (emphasis added). Numerous states have regularly scheduled primary elections on various dates throughout April to September 2026.[5] Section 2(a) does not have an effective date set at some point in the future. Nor is there any rulemaking process or other built-in delay for the effectiveness of the requirements in Section 2(a). The only possible limitation on immediate applicability of Section 2(a) is the vague statement that such lists are to be provided "to the extent feasible and consistent with applicable law." *Cf. LULAC v. EOP*, 808 F. Supp. 3d 29, 66 (D.D.C. 2025) (rejecting argument that a similar savings clause

---

[5] Nat'l Conf. of State Legislatures, *2026 State Primary Election Dates*, (last updated Feb. 27, 2026), https://www.ncsl.org/elections-and-campaigns/2026-state-primary-election-dates.

thwarted pre-enforcement review of an executive order). Plaintiffs are entitled to discover what steps Defendants are already taking to implement the commands made in Section 2(a). Such information goes both to the merits of their claims, informs the other equitable factors at the preliminary injunction stage, as well as the appropriate scope of injunctive relief.

## II.     Defendants' objections on overbreadth and burdens are unpersuasive.

Defendants' overbreadth, burden, and timing arguments are similarly unavailing.

First, Defendants raise the continuing nature of the discovery requests and concerns of privilege. But these concerns are misplaced. The Federal Rules of Civil Procedure require the continuing nature of discovery requests.  *See* Fed. R. Civ. P. 26 ("A party . . . who has responded to an interrogatory, request for production, or request for admission . . . must supplement or correct its disclosure or response" if it learns the responses were incomplete or incorrect or as ordered by the court.). This normal discovery procedure does not turn Plaintiffs' narrow requests into overbroad ones.

Second, to the extent any portion of the discovery requested is privileged, as Defendants say, their counsel is well-versed in how to make those objections. Opp. at 12.  Defendants cannot refuse to produce information now merely because some portion of might later be subject to a privilege claim.

Third, Defendants' contention that there are a "total of potentially sixty-four separate responses" is an overstatement to say the least. Opp. at 7. Plaintiffs asked for only 8 things in their request for expedited discovery: 4 interrogatories and 4 requests for admission. If Plaintiffs' modest requests raise any degree of complication (such as regarding the number of Defendants that may have responsive information), that is solely because the Executive Order itself implicates numerous federal agencies, given the data involved in making the State Citizenship Lists.

Fourth, Defendants vastly overstate the burden of "significant and ongoing expenditure of resources to identify and coordinate with multiple agency officials to report on ongoing agency deliberations as to compliance with the challenged, nascent Executive Order." Opp. at 13. Plaintiffs are simply asking Defendants to identify and describe concrete steps taken to implement an Executive Order that itself contains concrete timelines. Moreover, if, as Defendants say, the agencies' planning and implementation remain uncertain or in early stages, then the universe of responsive materials should also be limited, and any burden of identifying the relevant information should be modest. Defendants' obligation in answering the discovery requests is to provide truthful information about implementation or plans that have already been made. If no such plans have been made, then that is an appropriate answer—discovery requests plainly do not call Defendants to speculate or jump-start action that they would not otherwise have taken.[6]

Fifth, Defendants' assertion that Plaintiffs have requested discovery "far in advance" of the usual timeframe is unpersuasive. Such a pace is not abnormal in litigation like this. Where Defendants intend to stand up a nationwide system affecting millions of voters on an accelerated timeline, it is neither unusual nor unreasonable to require them to explain, now, what they are doing to implement it. *See e.g.*, *Am. Fed'n of Lab. & Cong. of Indus. Organizations*, 349 F.R.D. at 247 (granting expedited discovery where plaintiffs were seeking to prevent access and disclosure of certain data under the Privacy Act) *New Mexico v. Musk*, 770 F. Supp. 3d 192, 204 (D.D.C.

---

[6] Discovery is particularly important to ensure that there is sufficient investigation of and a truthful record of the relevant facts given what the *LULAC* court previously noted was a "striking" contradiction between "Defendants' factual representations and the facts on the ground" in the litigation concerning Executive Order 14,428. *See LULAC v. EOP*, 780 F. Supp. 3d 135, 187 n.29 (D.D.C. 2025)

2025) (granting expedited discovery in support of determining whether Defendants acted unconstitutionally or unlawfully in the creation of the Department of Government Efficiency).

The timing here is warranted by the needs of the preliminary injunction schedule and the harm that will befall Plaintiffs should this Executive Order stand. *See supra* 2. Though Defendants posit they may file motions to dismiss on jurisdictional issues or the sufficiency of the complaint, no motions have been filed to this point. *Cf. LULAC v. EOP*, 808 F. Supp.3d 29, 55-60 (D.D.C. 2025) (granting summary judgment and permanent injunction against documentary proof of citizenship requirement in a prior voting-related executive order and holding that LULAC, SFI, and ASA all had Article III standing for their *ultra vires* claim).

### III.     <u>Plaintiffs' requests are narrowly tailored and appropriately timed for necessary preliminary relief.</u>

The requests are narrowly tailored to determine the steps taken under this expansive Executive Order. To the extent the discovery requests address several issues, it is only because of the expansiveness of the Executive Order itself, which attempts to dramatically change the way that Americans vote and how state elections administrators administer elections. Plaintiffs have *ultra vires* constitutional claims and Privacy Act claims that concern the actions Defendant agencies have taken in furtherance of this Executive Order.

If Plaintiffs do not obtain expedited discovery, they will suffer irreparable harm because the Executive Order's provisions are in effect now or will be in effect imminently. The citizenship list provision in 2(a) is effective now—"regularly scheduled Federal elections" **(**primary elections)—are occurring right now and will continue to up to September. *See supra* at 5. The 90-day period set out in Section 4(c) of the Order for the Secretary of Homeland Security to "establish the infrastructure necessary to compile, maintain, and transmit the State Citizenship List described in section 2(a) of this order" has already begun to run.  And even with the rulemaking process called

for before USPS starts to take action to refuse to deliver mail ballots under Sections 3(b)(iii) and (iv), that requirement is still causing immediate confusion and concern to Plaintiffs and their members who depend on voting by mail and will do so in the fall General Election.

## CONCLUSION

For the reasons described above, Plaintiffs respectfully request that the Court grant LULAC Plaintiffs' motion for targeted, expedited discovery as described above with Defendants' responses due April 13, 2026. To the extent that the Court decides additional time is appropriate, Plaintiffs do not object to an additional week for response to the Interrogatories.

Dated: April 10, 2026

Norman L. Eisen (DC Bar No. 435051)
Tianna J. Mays (DC Bar No. 90005882)
Pooja Chaudhuri (DC Bar No. 888314523)
Sofia Fernandez Gold (DC Bar
No. 90010196)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
sofia@democracydefenders.org

Respectfully submitted,

*/s/ Anna Baldwin*
Anna Baldwin (DC Bar No. 998713)
Danielle Lang (DC Bar No. 1500218)
Robert Brent Ferguson (DC Bar No. 1782289)
Sejal Jhaveri (NY Bar No. 5396304)*
Valencia Richardson (DC Bar No. 1739245)*
Aseem Mulji (DC Bar No. 1724971)
Heather Szilagyi (DC Bar No. 90006787)
Renata O'Donnell (DC Bar No. 1723929)
Benjamin Phillips (DC Bar No. 90005450)
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
abaldwin@campaignlegalcenter.org
dlang@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
vrichardson@campaignlegalcenter.org
amulji@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
bphillips@campaignlegalcenter.org

*Admission to D.D.C. pending*
*Counsel for LULAC Plaintiffs*

9