# Exhibit 16

Civil Action No. 26-cv-1114 (CJN) (Lead case)

# ELIGIBLE VOTERS AT RISK: EXAMINING CHANGES TO USCIS'S SAVE SYSTEM



**Issue Brief** | July 2025

Changes fueled by election-denier conspiracy theories are in the works for a system created by the Department of Homeland Security ("DHS") nearly forty years ago to verify citizenship status and legal presence in the United States. DHS recently announced major modifications to its Systematic Alien Verification for Entitlements system, or SAVE, for the state and local election agencies that use it in the voting context (not to be confused with the anti-voter SAVE Act which is pending in Congress and fueled by the same conspiracy theories[1]). Most significantly, state and local agencies can now query the system using Social Security numbers and submit queries in bulk uploads. Though technical in nature, these changes may impact voters across the country, especially as more states sign up to use the retooled system.

The SAVE system is administered by DHS via U.S. Citizenship and Immigration Services ("USCIS"). Originally created by the Immigration Reform and Control Act of 1986[2] and then expanded by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996,[3] the SAVE system is used to verify or determine citizenship in response to inquiries from federal, state, and local officials, usually related to applications for public benefits.[4] In recent years, state and local election officials in certain states have used SAVE to verify the citizenship of voter registrants and currently registered voters who provide a DHS-issued immigration identifier.[5] User agencies sign a memorandum of agreement ("MOA") with USCIS and, in the past, were charged a fee for each case they submitted to SAVE. Prior to the Trump administration, ten states had MOAs to use SAVE for voter registration and/or list maintenance purposes: Arizona, Colorado, Florida, Georgia, Idaho, Mississippi, Ohio, South Carolina, Tennessee, and Virginia.[6]

---

(1) *SAVE Act (2025)*, Fair Elections Ctr., https://fairelectionscenter.org/advocacy/save-act-2025/ (last visited July 21, 2025).

(2) 42 U.S.C. § 1320b-7(d)(3); *see also* Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 121(a)(1)(C), 100 Stat. 3359, 3384–86 (1986). After the Department of Homeland Security was created, operation of SAVE was transferred from INS to USCIS.

(3) *About SAVE: History*, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/save/about-save/save-governing-laws (last updated Jan. 24, 2025).

(4) *Id.*

(5) U.S. Gov't Accountability Off., GAO-17-204, Immigration Status Verification for Benefits: Actions Needed to Improve Effectiveness and Oversight 2 (Mar. 2017), https://www.gao.gov/assets/gao-17-204.pdf [hereinafter "GAO-17-204"]; *see also Voter Registration and Voter List Maintenance Fact Sheet*, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/save/current-user-agencies/guidance/voter-registration-and-voter-list-maintenance-fact-sheet (last updated June 13, 2025).

(6) In total, 1,297 federal, state and local agencies are listed as SAVE user agencies, some for multiple benefit categories. *SAVE Agency Search Tool*, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/save/about-save/save-agency-search-tool?items_per_page=10 (last visited July 28, 2025) (deduplicated).

1



## Major Changes in SAVE's Query Function

The ability to query SAVE with only a Social Security number represents a *huge* shift in SAVE's functionality. Since its inception, SAVE could only be searched using a DHS-issued immigration identifier (e.g., an Alien Registration Number or a naturalization certificate number) and only had access to records maintained by DHS. Because DHS only has records for individuals who were at one point in time noncitizens, SAVE has *only* ever been able to verify naturalized and some derived citizens, and *not* U.S.-born U.S. citizens or derived citizens who have not applied for a certificate of citizenship. In the voting context, these limitations have restricted SAVE's applicability because most voters do not have a DHS-issued immigration identifier,[7] and most states do not collect that information even for voters who do. Because of this query limitation, those who advocate for broader investigation of voters' citizenship status have called for changing the look-up process.[8]

The Trump administration's restrictive March 2025 Executive Order ("the EO") on voting[9] made clear the SAVE system was within the Trump administration's sights. The EO purported to direct the Secretary of Homeland Security to "ensure that State and local officials have, without the requirement of the payment of a fee, access to appropriate systems for verifying the citizenship or immigration status of individuals registering to vote or who are already registered" and to "take all lawful and appropriate action to make available information from relevant databases to State and local election officials engaged in verifying the citizenship of individuals registering to vote or who are already registered."[10]

---

(7) For context, only one in ten U.S. citizens ages eighteen and older (i.e., potential eligible voters) are naturalized citizens. Katherine Schaeffer, *1 in 10 eligible voters in the U.S. are naturalized citizens*, Pew Research Center (Sept. 19, 2024), https://www.pewresearch.org/short-reads/2024/09/19/1-in-10-eligible-voters-in-the-u-s-are-naturalized-citizens/.

(8) *See, e.g., Secretary of State Wes Allen Urges DHS to Improve Citizenship Verification for Voter Registration*, Ala. Sec'y of State (Mar. 10, 2025), https://www.sos.alabama.gov/newsroom/secretary-state-wes-allen-urges-dhs-improve-citizenship-verification-voter-registration (announcing joint letter to DHS Secretary Noem from 21 Secretaries of State requesting changes to SAVE); *America First Legal Sends All 50 States a Plan on How to Use Federal Law to Prevent Foreign Nationals from Voting*, Press Release, America First Legal (June 24, 2024), https://aflegal.org/resource/america-first-legal-sends-all-50-states-a-plan-on-how-to-use-federal-law-to-prevent-foreign-nationals-from-voting/.

(9) Executive Order No. 14248, "Preserving and Protecting the Integrity of American Elections," 90 Fed. Reg. 14005 (Mar. 25, 2025).

(10) *Id*.

## Search by SSN

Then, in May, the Trump administration dropped the major announcement: SAVE could now be queried with a Social Security number ("SSN") as the applicant's enumerator—meaning, for the first time, no DHS-issued immigration identifier was needed.[11] At face value, this new function could simply have meant that user agencies would now have another option for attempting to query DHS records, with the continued limitation that only individuals with an immigration history would appear in the results, verifying only naturalized citizens and some derived citizens. But in a quiet update to a fact sheet, the Trump administration revealed the more significant change: "When an SSN is provided, SAVE is able in many cases to verify U.S.-born U.S. citizens for voter verification purposes, through information accessed through the SSA [Social Security Administration]."[12] Again, since its use began in the voting context, SAVE has only ever been used to investigate the citizenship of naturalized and derived citizens. The mechanics behind this new functionality are not clear, as the USCIS press release simply states that SAVE has a "new partnership with the Social Security Administration."[13] This change follows a DHS announcement on April 22, 2025, that there would be a "comprehensive optimization" of SAVE made possible by a collaboration with the Department of Government Efficiency ("DOGE").[14]

## Bulk uploads of voter data

Changes have also been made to SAVE that allow for bulk searching, permitting user agencies to enter data and query for more than one individual at a time.[15] Previously, SAVE users could only submit queries for one individual at a time, manually typing each piece of information into the system. Now, users can fill out a spreadsheet template to submit "bulk uploads" of personal data for SAVE to query, including first and last names, dates of birth, and one or more numeric identifier (i.e., A-number/USCIS number, naturalization or citizenship number, or SSN).[16] In the months since these announcements, DHS claims it has "run more than 9 million voter records through the upgraded SAVE system," with early analysis showing 99.99% were confirmed citizens.[17]

---

(11) *Optimizing SAVE: New Options to Create Cases with a Social Security Number and by Bulk Upload*, U.S. Citizenship and Immigr. Servs. (May 22, 2025), https://www.uscis.gov/save/current-user-agencies/news-alerts/optimizing-save-new-options-to-create-cases-with-a-social-security-number-and-by-bulk-upload.

(12) *Voter Registration and Voter List Maintenance Fact Sheet, supra* note 5.

(13) *USCIS Deploys Common Sense Tools to Verify Voters*, U.S. Citizenship and Immigr. Servs. (May 22, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-deploys-common-sense-tools-to-verify-voters.

(14) *DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database*, U.S. Dep't of Homeland Sec. (Apr. 22, 2025), https://www.dhs.gov/news/2025/04/22/dhs-uscis-doge-overhaul-systematic-alien-verification-entitlements-database.

(15) *Optimizing SAVE, supra* note 11.

(16) *SAVE Bulk Uploader: how to create SAVE cases in bulk through an import process*, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/save/current-user-agencies/news-alerts/optimizing-save-new-options-to-create-cases-with-a-social-security-number-and-by-bulk-upload (follow "SAVE Bulk Upload Tool Instructional Guide" hyperlink) (last visited July 21, 2025).

(17) Jude Joffe-Block & Miles Parks, *The Trump administration is building a national citizenship data system*, NPR (June 29, 2025, 5:00 AM), https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database.

## Serious Data Reliability Concerns with SSA's Available Citizenship Data

If SAVE can actually operate as the Trump administration promises, there is major cause for concern with this new SSA partnership. First and foremost, the citizenship data maintained by the Social Security Administration ("SSA") is not always reliable, and SSA has admitted as much.

The key limitation with SSA data is that the only citizenship data SSA possesses is provided by the individual at a single moment in time. When someone applies for an SSN and the corresponding card, the individual must disclose their current citizenship status,[18] which allows SSA to issue the appropriate type of card.[19] Critically, however, SSA has no process for automatically updating the citizenship data it maintains; rather, SSA relies on SSN-holders to inform SSA of any change in their status.[20] In fact, in response to a subpoena in federal litigation, SSA admitted that "the citizenship SSA maintains *merely represents a snapshot of the individual's citizenship status at the time of their interaction with SSA*. SSA's records do not provide definitive information about an individual's citizenship status."[21] SSA's information is merely a snapshot because "there is no obligation for an individual to report to SSA a change in their immigration status unless the individual is receiving Social Security payments."[22] A 2006 audit of SSA data exposed the resulting discrepancies, estimating that SSA's citizenship status data was inaccurate for seven percent of numberholders classified as non-citizens in that they "were actually U.S. citizens—but had not updated their immigration/citizenship status with SSA."[23] That may seem like a small percentage, but in 2006, that translated to *3.3 million U.S. citizens* being falsely identified as non-citizens.[24] More broadly, that same audit also compared SSA data to corresponding DHS records and found discrepancies between the two (i.e., differing names, date of birth, or citizenship status) in 4.1% of the SSA Numident records reviewed.[25]

---

(18) Letter from Nancy Morales Gonzalez, Assoc. Gen. Couns. for Gen. L., Div. 1, U.S. Soc. Sec. Admin., to Jon Sherman, Litig. Dir. & Senior Couns., Fair Elections Ctr. 2 (July 13, 2023) (available at https://fairelectionscenter.org/wp-content/uploads/2025/07/SSA-Touhy-Decision-letter.July-13-2023-signed.pdf); Privacy Act of 1974, as Amended; Proposed Routine Use, 75 Fed. Reg. 82121, 82123 (Dec. 29, 2010) (noting that SSA's records on individual numberholders include "[a] citizenship code that identifies the numberholder's status as a U.S. citizen or the work authorization of a non-citizen").

(19) U.S. Soc. Sec. Admin., Publ'n No. 05-10002, Your Social Security Number and Card 2–3 (Jan. 2025), https://www.ssa.gov/pubs/EN-05-10002.pdf (the three types of cards are: 1) cards for U.S. citizens or permanent residents, 2) cards for non-citizens authorized to work in the U.S., and 3) cards for non-citizens without work authorization).

(20) *Id*. at 7 ("If your immigration status changed or you became a U.S. citizen, you should tell us so we can update your records.").

(21) Letter from Nancy Morales Gonzalez, *supra* note 18, at 2 (emphasis added).

(22) *Id.*

(23) U.S. Soc. Sec. Admin. Off. of the Inspector Gen., No. A-08-06-26100, Congressional Response Report: Accuracy of the Social Security Administration's Numident File 13 (Dec. 18, 2006), https://oig-files.ssa.gov/audits/full/A-08-06-26100_0.pdf.

(24) *Id.*

(25) *Id.* at 5 & n.11.

In addition to the snapshot-in-time limitation, SSA was not even required to collect citizenship information from applicants until the Social Security Amendments of 1972 mandated that "applicants for social security account numbers [provide] such evidence as may be necessary to establish the age, citizenship, or alien status, and true identity of such applicants."[26] Even after this change in law, SSA did not begin to consistently maintain citizenship information until 1981,[27] meaning SSA likely has no information regarding the citizenship status of U.S.-born voters older than their mid-forties. In fact, SSA has recently estimated that "approximately ¼ of [its] records do not have an indication of citizenship present."[28]

Concerns about SSA data reliability build on longstanding DHS data issues with the SAVE system, including user errors caused by mistyping, an inability to connect maiden names with current names, the risk of stale data due to backlogs in DHS's processing of records, or the inability to capture changes to the records of derived citizens. If states rely on outdated records to remove people from the voter rolls, *eligible voters will be prevented from voting*.

Despite these concerns, the Trump administration's rollout of the SSN-query does not mention these potential pitfalls with the data nor discuss how to protect against inaccurate citizenship determinations. But in light of these data reliability questions, state officials should not take results based on SSA data as a reliable determination of non-citizenship.

> *Given the inaccuracies inherent in the data as admitted by the agency, [the SAVE system] is not an appropriate tool to facilitate rejecting voter registration applications or conduct voter list maintenance activities, especially in light of the other safeguards in place to ensure that only citizens are voting.*

---

(26) Social Security Amendments of 1972, Pub. L. 92-603, § 137(2), 86 Stat. 1329, 1364–65 (1972).

(27) Letter from Nancy Morales Gonzalez, *supra* note 18, at 2.

(28) *Id*. at 3 (citing *Computer Matching Agreement Between Department of Health and Human Services, Centers for Medicare & Medicaid Services, and Social Security Administration for Determining Enrollment or Eligibility for Insurance Affordability Programs under the Patient Protection and Affordable Care Act* (accessible at https://www.ssa.gov/privacy/cma/CMS%20SSA%20CMA%20Re-establishment.ACA%202008.Final.Signed%20by%20DIBs%209.29.20%20(002).pdf).

## Lack of Transparency Around the Use of SSA Data by SAVE

Of course, beyond the fact that the underlying data is ill-suited for citizenship verification, very little is known about how the administration is implementing these changes to SAVE because very little has been publicly explained by DHS, USCIS, SSA, or DOGE.[29] Recent updates to the SAVE User Reference Guide merely state that "SAVE compares the information against Social Security Administration records."[30]

### What can we learn from E-Verify?

One possibility is that SAVE is copying a mechanism used by another closely related USCIS system that is able to query SSA data. E-Verify is "a web-based system through which employers electronically confirm the employment eligibility of their employees,"[31] originally enacted as the "Basic Pilot" program in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.[32] It is housed within USCIS, like SAVE, but jointly administered by USCIS *and* SSA.[33] Within USCIS, SAVE and E-Verify run on the same "technical infrastructure," the Verification Information System ("VIS")."[34]

---

(29) The Privacy Act of 1964 requires System of Records Notices (SORNs) to be published when there is, among other things, any change to a system of records that is "substantive in nature." Off. of Mgmt. & Budget, Exec. Off. of the President, Circular No. A-108, Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act 5 (Dec. 23, 2016), https://www.whitehouse.gov/wp-content/uploads/legacy_drupal_files/omb/circulars/A108/omb_circular_a-108.pdf. However, as of July 21, 2025, no new SORN has been published documenting the recent changes to SAVE.

(30) *SAVE User Reference Guide*, U.S. Citizenship and Immigr. Servs. § 9.1, https://www.uscis.gov/save/current-user-agencies/guidance/save-user-reference-guide (follow "Print Manual" hyperlink) (last updated June 4, 2025). This specific section of the User Reference Guide appears to have been updated July 16, 2025.

(31) *About E-Verify*, E-Verify, https://www.e-verify.gov/about-e-verify (last updated Apr. 10, 2018).

(32) *History and Milestones: Chronological summary of the milestones of the E-Verify Program*, E-Verify, https://www.e-verify.gov/about-e-verify/history-and-milestones (last updated Mar. 10, 2025); *see also* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 401–05, 110 Stat. 3009-546, -655–66 (1996).

(33) *About E-Verify*, *supra* note 31.

(34) U.S. Dep't of Homeland Sec., Privacy Impact Assessment for the Verification Information System Supporting Verification Programs 2 (Apr. 1, 2007), https://www.dhs.gov/sites/default/files/publications/privacy_pia_uscis_vis.pdf [hereinafter "2007 VIS PIA"]. In fact, the two systems were so intertwined that USCIS used to issue a single E-Government Act of 2002-mandated Privacy Impact Assessment ("PIA") for VIS that discussed both SAVE and E-Verify. It was only around 2010 that they changed this practice to issue separate PIAs for SAVE and E-Verify, although both still rely on VIS. *See* U.S. Dep't of Homeland Sec., Privacy Impact Assessment for the E-Verify Program 2 (May 4, 2010), https://www.dhs.gov/sites/default/files/publications/privacy_pia_uscis_everify.pdf; U.S. Dep't of Homeland Sec., Privacy Impact Assessment for the Systematic Alien Verification for Entitlements (SAVE) Program 2 (August 26, 2011), https://www.dhs.gov/sites/default/files/publications/privacy_pia_uscis_save.pdf.

An employer using E-Verify "creates a case" using the information on a new employee's Form I-9, including their full SSN, and VIS then compares that information to SSA data and, if needed, DHS records to determine the employee's eligibility for employment in the United States.[35] VIS first queries the SSA Numident System for a match; if SSA data indicates that the individual is a noncitizen, VIS will then query DHS data to verify employment eligibility.[36] Until recently, only E-Verify was able to access SSA data and query using an SSN,[37] with VIS interfacing directly with SSA without pulling SSA data into its own system to maintain.[38]

Without further information, it is impossible to decipher how and under what authority SAVE has been equipped to query SSA data, though the E-Verify mechanism discussed here may hold some clues. The pitfalls of E-Verify also foreshadow issues likely to occur with the new SAVE functionality, with its website highlighting the well-known reasons that it often fails to match with SSA data: the employee has not reported a change in name or citizenship status to SSA; the employee's name, SSN, or date of birth is incorrect in SSA records, or there is some other mismatch; or the employer entered the employee's information incorrectly in E-Verify. [39]

## How are election officials acquiring SSNs in the first place?

On top of all of these unknowns, this additional major question stands out: *how are state officials and/or the federal government acquiring the full SSNs needed to query the SAVE system?* Though not expressly stated in public materials, it appears that full, 9-digit SSNs are required to use SAVE's new SSN-query.[40] This would track E-Verify's functionality, which requires entering the full SSN, as provided on Form I-9, into the system. And public reporting confirms as much, noting that the ability to query the SAVE system using the last four digits of an SSN (along with full name and birthdate) is being contemplated for a *forthcoming* SAVE upgrade.[41]

---

(35) *Verification Process*, E-Verify, https://www.e-verify.gov/employers/verification-process (last updated Sept. 15, 2022).

(36) 2007 VIS PIA, *supra* note 34, at 2–3. If SSA is able to confirm citizenship using SSA data, no further action is taken by VIS. *Id*. at 3. If SSA cannot verify the employee's information, the employee will be instructed to update their information with SSA. *Id*.; *DHS and SSA Mismatches, E-Verify*, https://www.e-verify.gov/employers/verification-process/tentative-nonconfirmations/dhs-and-ssa-mismatches (last updated Aug. 1, 2022).

(37) *Compare* Privacy Act of 1974; System of Records, 84 Fed. Reg. 28326, 28330 (June 18, 2019) (SORN for E-Verify explicitly lists the "SSA Numident System" as one of the sources from which "records are obtained" for its operation), *with* Privacy Act of 1974; System of Records, 85 Fed. Reg. 31798, 31802 (May 27, 2020) (SORN for SAVE does not mention any SSA systems as sources of data).

(38) *See* 2007 VIS PIA, *supra* note 34, at 2–3 (describing queries being "sent from VIS" and then SSA "send[ing]" a response back).

(39) *Tentative Nonconfirmations (Mismatches)*, E-Verify, https://www.e-verify.gov/employers/verification-process/tentative-nonconfirmations-mismatches (last updated May 8, 2024).

(40) Screenshots of the SAVE interface show "123456780," nine digits, as an exemplar SSN. *SAVE User Reference Guide, supra* note 30, § 8.1.

(41) Joffe-Block, *supra* note 17.

But in the vast majority of states, election officials do not collect SSNs from voters. Only five states are permitted to request full SSNs on their voter registration applications.[42] In the other forty-five states and the District of Columbia, registrants have the option of providing their driver's license number (issued by the state in which they are seeking to register) or the last four digits of their SSN.[43] So it is far more common for statewide voter registration systems to contain the last four digits of SSNs than full SSNs. But even that truncated identifier is not collected from every voter registration applicant, because many voter registration applicants satisfy the voter registration requirements of state and federal law by simply recording their state driver's license or state ID number.[44] The prospect of running queries with only the last four digits of the SSN is also alarming, as the last four digits alone are not a unique identifier. Even when combined with full name and birthdate, there may still be more than one individual that matches.[45]

The only way for state election officials to obtain full or even partial SSNs for additional voters in their state would be to pull data from the state Department of Motor Vehicles ("DMV"). If that is the mechanism, it only raises more questions than it answers. Does this disclosure of SSNs by the DMV comply with state laws limiting sharing of personal data, especially SSNs? How are state and local election officials ensuring accuracy when matching between voter files and DMV data? And for voters who never provided a driver's license or state ID number to elections officials, how are election officials identifying such voters in DMV records?



---

(42) New Mexico, Kentucky, South Carolina, Tennessee, and Virginia are allowed to request full SSNs on their respective voter registration applications. *Help America Vote Verification (HAVV) Transactions by State*, U.S. Soc. Sec. Admin., https://www.ssa.gov/data/havv/ (last visited July 21, 2025) [hereinafter "HAVV Transactions by State"]; *see also* 52 U.S.C. § 21083(a)(5)(D) (codifying a carveout for states that are permitted to use SSNs on voter registration applications in accordance with section 7 of the Privacy Act of 1974).

(43) HAVV Transactions by State, *supra* note 42; 52 U.S.C. § 21083(a)(5)(A)(i). There are also provisions for registration applicants who do not have either a driver's license or SSN. *See* 52 U.S.C. § 21083(a)(5)(A)(ii).

(44) *See* 52 U.S.C. § 21083(a)(5)(A)(i); HAVV Transactions by State, *supra* note 42. When an applicant does provide the last four digits of their SSN, the state can use a verification system set up by the Social Security Administration—the Help America Vote Verification System ("HAVV")—to verify the applicant's identity. HAVV Transactions by State, *supra* note 42. The state provides the applicant's name, date of birth, and last four digits of the SSN, and HAVV looks for matches within its data. *Id.*

(45) *See, e.g.*, *Social Security Administration (SSA) Weekly Data for Help America Vote Verification (HAVV) Transactions by State - January 2011 to Present Totals*, U.S. Soc. Sec. Admin., https://www.ssa.gov/data/havv/havv-totals-since-2011.html (last visited July 21, 2025) (use drop down menu in "HAVV Data" to select "January 2011 to Present Totals") (of the HAVV verification transactions submitted since 2011, where full name, birthdate, and last four of SSN were queried against SSA data, 6,635 transactions matched with multiple *living* people, and 3,859 matched with at least one living person and at least one deceased person).



## New and Unexplained Limit on Required Additional Verification Processes

Another concerning aspect of the overhaul relates to SAVE's process for "additional verification." Additional verification is a critical step that user agencies, if prompted due to a failed initial verification, are *required* to initiate before denying a benefit to an applicant—or here, before they call a voter's or registrant's citizenship status into question.[46] But when USCIS announced it had enabled SAVE queries using an SSN, USCIS also disclosed that "SAVE cannot conduct additional verification using an SSN alone."[47] Additional verification involves escalating the case to a USCIS team of "status verifiers" who attempt to manually verify citizenship.[48] The manual verifier can conduct a more intensive review of DHS records and documents, including correcting for any discrepancies causing a name mismatch such as a missing hyphen or a truncated name, data transposition, letters and numbers out of sequence, typographical errors, and outdated or maiden names that predate a name change due to marriage,[49] as well as accessing additional DHS records.[50]

---

(46) *SAVE User Reference Guide*, *supra* note 30, § 9.2 ("Users must follow proper SAVE verification procedures, including performing additional verification if required by SAVE or requested by the applicant…. User agencies may not rely on an initial SAVE response to deny an application for benefits where additional verification is required by SAVE or requested by the applicant. They must follow all required SAVE verification procedures.").

(47) *Voter Registration and Voter List Maintenance Fact Sheet*, *supra* note 5; *see also SAVE User Reference Guide*, *supra* note 30, § 9.2.

(48) GAO-17-204, *supra* note 5, at 17 ("Additional verification entails an in-depth query by USCIS status verifiers to determine the applicant's immigration status if such status cannot be returned by SAVE upon initial verification.").

(49) *See, e.g.*, USCIS 30(b)(6) Dep. at 112:5-21, 114:5-12, 115:24-116:12, 116:18-117:1, 130:14-131:14, *Mi Familia Vota v. Fontes*, 22-cv-00509 (D. Ariz.), ECF No. 679-3 (available at https://fairelectionscenter.org/wp-content/uploads/2025/07/Excerpted-USCIS-depo-transcriptbw.pdf). The highlights in the transcript are deposition designations submitted to the district court prior to the trial in November 2023 and are original to the filed version.

(50) GAO-17-204, *supra* note 5, at 10–11.

It is clear the Trump administration knows about the required additional verification procedures for SAVE user agencies, mentioning the requirement in both the DHS press release and the fact sheet that announced SAVE could now verify the citizenship of U.S-born citizens.[51] These references are in line with longstanding guidance on the SAVE system, which makes clear that the entire verification process "is necessary because user agencies may not rely on a SAVE response to deny an application for benefits unless the agency has followed all SAVE verification procedures…. Otherwise, the user agency may deny eligible persons benefits that they are lawfully entitled to receive."[52] Yet they have expanded SAVE system capacities to include query by SSN and affirmatively stated that when only an SSN is available, USCIS will not or cannot conduct that mandatory additional verification.[53] But failure to complete the entire verification process leaves individuals susceptible to an unreliable initial query of SAVE that was never intended to represent a final, conclusive determination.[54] Many individuals have their status accurately verified through additional verification, when initial verification failed to return any information. This predicament will only ensnare more voters, as user agencies are now able to submit long lists of individuals using the new bulk upload feature. Even before these changes, user agencies routinely failed to complete additional verification.[55] More troublingly, there is no evidence that DHS or USCIS specifically holds SAVE user agencies accountable when they fail to complete the entire verification process.[56]

---

(51) *Optimizing SAVE, supra* note 11 (noting that "[u]sers must complete all verification steps required by SAVE before relying on a SAVE response to deny a benefit or license, including requesting and submitting the benefit applicant's immigration documentation to SAVE when required."); *Voter Registration and Voter List Maintenance Fact Sheet, supra* note 5.

(52) *SAVE Program Guide* (revised March 2019), at 6–7. USCIS produced this document in response to a subpoena during the *Mi Familia Vota v. Fontes* consolidated litigation, and it was admitted as an exhibit at trial. The Guide is on file with the author.

(53) *Voter Registration and Voter List Maintenance Fact Sheet*, *supra* note 5; *see also SAVE User Reference Guide, supra* note 30, § 9.2.

(54) *SAVE User Reference Guide, supra* note 30, § 9.2 ("User agencies may not rely on an initial SAVE response to deny an application for benefits where additional verification is required by SAVE or requested by the applicant. They must follow all required SAVE verification procedures."); *see also* GAO-17-204, *supra* note 5, at 15–24.

(55) *See* GAO-17-204, supra note 5, at 15–24. A 2017 report from the Government Accountability Office found that, between 2012 and 2016, an average of 57.3% of user agencies prompted to request additional verification failed to do so over 50% of the time, 44.9% failed to do so over 75% of the time, 25.7% failed to do so over 90% of the time, and 14.1% failed to do so 100% of the time. *Id*. at 18.

(56) *See, e.g.,* GAO-17-204, *supra* note 5, at 17 (noting that "USCIS does not have sufficient controls to help ensure agencies are completing the necessary steps [in the status verification process]."). Numerous recommendations were directed at improving monitoring and compliance of user agency activities. *See id*. at 52.

Noting that user agencies will be unable to request additional verification with just an SSN, system users who receive no information at initial verification in response to an SSN-only query are instead instructed to "verify the information used to enter the case was correct. If entered correctly, user agencies should direct the applicant to contact SSA to update their records. Or, user agencies may enter a new case on the applicant with a DHS enumerator if applicable."[57] This concerning refusal to enable additional verification shifts the burden onto the voter, who now must figure out how to update their records with SSA if election officials rely on that information to threaten the voter's registration. And what happens to the voter's status in the meantime? For currently registered voters subject to SAVE searches as part of list maintenance processes, will they be removed from the voter rolls or placed in a suspense status until they can update their information with SSA? For voter registration applicants, will their applications be outright rejected until their SSA records are updated? Will individuals be able to provide proof of citizenship directly to election officials instead?

> **The actions state and local officials will take in response to the results—or non-results—from the SAVE system remain a crucial unknown.**

It is also unclear what steps DHS is taking—beyond updating the fact sheet on its website—to inform state and local election officials of the changes to the SAVE system and updated requirements. The "SAVE Tutorial for Registered Users" publicly available on the USCIS website is outdated and does not mention anything about the new SSN-query feature.[58] The "SAVE User Reference Guide," advertised as "current as of June 2025," only notes that SSNs may be used to query SAVE and does not mention anything about how state and local officials should interpret results from SSN-queries.[59] The guide was not updated until July 16, 2025, to reflect that SSN-queries would not go through additional verification.[60] Public reporting also suggests that at least some state officials who have entered into agreements with USCIS to use SAVE have not been briefed on any of the changes, including Idaho Secretary of State Phil McGrane.[61]

---

(57) *Voter Registration and Voter List Maintenance Fact Sheet, supra* note 5.

(58) *SAVE Tutorial for Registered Users,* U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/save/current-user-agencies/save-tutorial-for-registered-users (follow "SAVE Tutorial" hyperlink) (last updated May 14, 2025).

(59) *See SAVE User Reference Guide, supra* note 30, §§ 8, 9.

(60) *SAVE User Reference Guide, supra* note 30, §§ 9.1, 9.2 (follow hyperlinks on left to navigate to section-specific pages with "last reviewed/updated" dates).

(61) Joffe-Block, *supra* note 17.

## Leaving Voters at Risk

*The data reliability concerns, combined with new limits on the additional verification process, raise the specter that state election officials will be given inaccurate or incomplete citizenship information.*

If state officials are not aware of these pitfalls, voters in their states will pay the price. And with the advent of bulk searches, states will likely be reviewing SAVE results for hundreds if not thousands of voters at a time. The potential impact to voters can be divided into two categories:

**First**, how will state officials react if SAVE queries SSA data and reports that an individual is *not a citizen*? As discussed above, this result is likely to ensnare naturalized citizens who did not update their citizenship status with SSA after naturalizing. If election officials rely on the stale SSA data instead of the voter's attestation to citizenship, will the voter at least be given an opportunity to troubleshoot with SSA or otherwise prove their citizenship before being removed from the rolls?

**Second**, what conclusions will USCIS, DOGE, or state and local election officials draw from the *absence* of information in response to the query? If no information is available regarding an individual in response to a query of the newly modified SAVE system, it is unknown how that result will be conveyed to state and local election officials, and just as important, it is unknown what election officials using the system may conclude from that result. As discussed above, this absence of SSA data is most likely to impact voters who received an SSN before SSA began collecting citizenship data in the 1970s. And the disregard for additional verification procedures means that failed initial verifications will be the last word for voters subjected to an SSN-query. Will election officials then ignore the voter's registration application attesting to citizenship in favor of *an absence* of information in SAVE or SSA? The Trump administration has been largely silent on this question, which leaves room for varying treatment across states.



## New States Gaining Access to SAVE, Additional Changes Announced

In recent weeks, additional state and local agencies have been added to the list of user agencies for SAVE. Election-related agencies for Alabama, Arkansas, Indiana, Iowa, Louisiana, Michigan, Missouri, North Carolina, North Dakota, Texas, and Wyoming, as well as 30 Florida counties, are now listed publicly on USCIS's website as authorized to use SAVE for voter registration and/or list maintenance purposes.[62]

In addition to enabling bulk searches, the Trump administration has also announced that it is eliminating the fees associated with running a query through SAVE as of April 1, 2025.[63]

---

(62) *SAVE Agency Search Tool: Filtered Results,* U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/save/about-save/save-agency-search-tool?benefit_category[0]=97&benefit_category[1]=98&items_per_page=10&page=0 (last visited July 28, 2025) (filtering the list of agencies to the "Benefit Categor[ies]" of "Voter List Maintenance" and "Voter Registration").

(63) *DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database, supra* note 14; *USCIS Deploys Common Sense Tools to Verify Voters*, *supra* note 13.

13

## CONCLUSION

Recent modifications to the SAVE system raise questions of accuracy, data reliability, and federal administrative overreach into election administration. Advocates and journalists need to ensure the transparency of system changes to the greatest extent possible. To protect the freedom to vote for all citizens, election officials should avoid relying on incomplete, inaccurate, or even absent information. In particular, the ways states interpret the retooled SAVE system's results should be closely scrutinized to ensure these new processes do not make it harder for eligible voters to vote.

*Fair Elections Center intends the information contained herein to be used only as a general guide. This document does not constitute legal advice and should not be used as a substitute for consultation with a legal professional licensed in the appropriate jurisdiction.*



### GET IN TOUCH



**Fair Elections Center**
**1825 K St. NW | Suite 701**
**Washington, DC | 20006**

**info@fairelectionscenter.org**

**www.fairelectionscenter.org**

*Fair Elections Center is a nonpartisan organization dedicated to safeguarding the future of our democracy through innovative efforts focused on voting rights and civic engagement. We use advocacy, litigation, organizing, education, and technology to protect and expand the right to vote, understanding the particular impact on disenfranchised, underrepresented, and marginalized communities. Through our unique partnerships with hundreds of campuses across the country, we are able to empower millions of new voters to participate in our democracy. Our litigation and advocacy efforts across dozens of states allows us to anticipate and counteract threats to free and fair elections. With our visionary use of technology we are able to support election administration throughout the nation.*