**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    Defendants. | Civil Action No. 26-cv-1114 (CJN) |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>    Defendants. | Civil Action No. 26-cv-1132 (CJN) |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>    Defendants. | Civil Action No. 26-cv-1151 (CJN) |

**<u>DEMOCRATIC PARTY PLAINTIFFS' MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO STATES' MOTION TO INTERVENE</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

LEGAL STANDARD ...................................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

I.      The Court should deny intervention as of right. ................................................................. 4

        A.      The motion to intervene is untimely as to the pending preliminary injunction
                motions ..................................................................................................................... 4

        B.      State Movants have no cognizable interest that could be impaired by this
                litigation. .................................................................................................................. 6

                1.      State Movants fail to identify a cognizable interest in receiving State
                        Citizenship Lists .......................................................................................... 6

                2.      State Movants' purported interest in standardizing ballot envelopes
                        is not at risk of impairment. ...................................................................... 10

                3.      State Movants' generalized interest in election integrity is neither
                        legally protected nor factually supported .................................................. 11

        C.      State Movants' putative interests are adequately represented. ............................. 14

II.     The Court should deny permissive intervention. ............................................................. 17

CONCLUSION ............................................................................................................................. 18

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*100Reporters LLC v. U.S. Dep't of Just.*,
   307 F.R.D. 269 (D.D.C. 2014) ........................................................................................ 6

*Amador Cnty. v. U.S. Dep't of the Interior*,
   772 F.3d 901 (D.C. Cir. 2014) .................................................................................. 4, 17

*Arizona v. Biden*,
   40 F.4th 375 (6th Cir. 2022) .......................................................................................... 6

*Arpaio v. Obama*,
   27 F. Supp. 3d 185 (D.D.C. 2014) ................................................................................. 8

*Biden v. U.S. Internal Revenue Serv.*,
   752 F. Supp. 3d 97 (D.D.C. 2024) ................................................................................. 6

\**Burka v. Aetna Life Ins. Co.*,
   917 F. Supp. 8 (D.D.C. 1996) ............................................................................... 3–5, 18

*Cobell v. Jewell*,
   No. CV 96-01285 (TFH), 2016 WL 10704595 (D.D.C. Mar. 30, 2016) ................................... 15

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019) ...................................................................................................... 7

*Entergy Ark., LLC v. FERC*,
   134 F.4th 576 (D.C. Cir. 2025) .................................................................................... 13

*Env't Def. Fund, Inc. v. Costle*,
   79 F.R.D. 235 (D.D.C. 1978) ......................................................................................... 9

*Eu v. S.F. Cnty. Democratic Cent. Comm.*,
   489 U.S. 214 (1989) ...................................................................................................... 11

*Friends of Earth v. Haaland*,
   No. 21-cv-2317 (RC), 2022 WL 136763 (D.D.C. Jan. 15, 2022) .......................................... 18

*Harris v. Pernsley*,
   820 F.2d 592 (3d Cir. 1987) .......................................................................................... 14

*Haw. Longline Ass'n. v. Nat'l Marine Fisheries Serv.*,
   281 F. Supp. 2d 1 (D.D.C.) ........................................................................................... 14

*Hodgson v. United Mine Workers*,
 473 F.2d 118 (D.C. Cir. 1972) .................................................................................. 4

*HRH Servs. LLC v. Travelers Indem. Co.*,
 No. 23-CV-02300 (JDB), 2024 WL 4699925 (D.D.C. Nov. 6, 2024)...................................... 14

*Hudson v. Am. Fed'n of Gov't Emps.*,
 No. 17-cv-1867 (JEB), 2019 WL 3533602 (D.D.C. Aug. 2, 2019) ........................................ 5

*Jones v. Prince George's Cnty.*,
 348 F.3d 1014 (D.C. Cir. 2003) ............................................................................... 17

*Karsner v. Lothian*,
 532 F.3d 876 (D.C. Cir. 2008) ................................................................................. 3

*\*Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*,
 348 F.R.D. 397 (D.D.C. 2025)........................................................................ 8, 16, 18

*LULAC v. Exec. Off. of the President*,
 780 F. Supp. 3d 135 (D.D.C. 2025) .......................................................................... 13

*LULAC v. Exec. Off. of the President*,
 No. 1:25-cv-0946, 2026 WL 252420 (D.D.C. June 12, 2025)........................................ 14, 16

*Miracle v. Hobbs*,
 333 F.R.D. 151 (D. Ariz. 2019) ............................................................................... 18

*NAACP v. New York*,
 413 U.S. 345 (1973) ............................................................................................ 17

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
 519 F. Supp. 2d 89 (D.D.C. 2007) ............................................................................ 12

*Nat'l Fair Hous. All. v. Carson*,
 330 F. Supp. 3d 14 (D.D.C. 2018) ............................................................................. 3

*New Jersey v. Trump*,
 131 F.4th 27 (1st Cir. 2025) .................................................................................... 7

*O'Rourke v. Dominion Voting Sys. Inc.*,
 No. 20-CV-03747, 2021 WL 1662742 (D. Colo. Apr. 28, 2021) ........................................ 12

*One Wis. Inst., Inc. v. Nichol*,
 310 F.R.D. 394 (W.D. Wis. 2015) ............................................................................ 12

*PILF v. Benson*,
 No. 1:21-cv-929, 2022 WL 21295936, at \*12 (W.D. Mich. Aug. 25, 2022)............................. 5

*Roeder v. Islamic Republic of Iran*,
   333 F.3d 228 (D.C. Cir. 2003) ........................................................................ 7

*Mova Pharma. Corp. v. Shalala*,
   140 F.3d 1060, 1074 (D.C. Cir. 1998) ........................................................... 11

*Stringfellow v. Concerned Neighbors in Action*,
   480 U.S. 370 (1987) ......................................................................................... 4

*Telligent Masonry, LLC v. Cont'l Cas. Co.*,
   No. 19-CV-1078 (RMC), 2019 WL 13255497 (D.D.C. July 3, 2019) ...................... 15

*Texas v. Pennsylvania*,
   141 S. Ct. 1230 (2020) ................................................................................... 11

*Town of Chester v. Laroe Ests., Inc.*,
   581 U.S. 433 (2017) ....................................................................................... 14

*United Mexican States v. Lion Mexico Consol. L.P.*,
   No. 24-7185, 2026 WL 933128 (D.C. Cir. Apr. 7, 2026) ................................... 17

*United States v. Am. Tel. & Tel. Co.*,
   642 F.2d 1285 (D.C. Cir. 1980) ...................................................................... 14

*United States v. Microsoft Corp.*,
   No. CIV.A.98-1232(CKK), 2002 WL 319819 (D.D.C. Feb. 28, 2002) ................... 12

*\*United States v. Texas*,
   599 U.S. 670 (2023) .................................................................................. 6, 18

*Ute Indian Tribe of Uintah & Ouray Indian Rsrv. v. U.S. Dep't of the Interior*,
   No. 1:18-cv-00547, 2020 WL 1465886 (D.D.C. Feb. 5, 2020) ............................ 5

*Van Valin v. Gutierrez*,
   No. 08-cv-941 (RMC), 2008 WL 7759966 (D.D.C. Aug. 19, 2008) ....................... 4

*\*Van Valin v. Locke*,
   628 F. Supp. 2d 67 (D.D.C. 2009) ................................................................ 4–5

*Washington v. U.S. Food & Drug Admin.*,
   108 F.4th 1163 (9th Cir. 2024) ........................................................................ 6

**STATUTES**

Ala. Code § 17-11-47 ...................................................................................... 11

Mo. Rev. Stat. § 115.285 ................................................................................ 10

Mo. Rev. Stat. § 115.631 ................................................................................ 12

**RULES**

Federal Rule of Civil Procedure 24 ................................................................................. 1, 3, 7–8

**OTHER AUTHORITIES**

Fla. Dep't of State, Report by the Department of State on Vote-by-Mail Voting –
    Security, Privacy, and Election Transparency (2023),
    https://files.floridados.gov/media/706253/dept-of-state-report-vote-by-mail-system-
    20230201.pdf.................................................................................................................... 11

Meredith Lee Hill, SAVE America Act Is 'No. 1 Priority,' Trump Tells Republicans,
    Politico (Mar. 9, 2026), https://www.politico.com/live-updates/2026/03/09/congress/
    trump-save-america-act-gop-00819673 ................................................................................ 15

U.S. Postal Serv., Election Mail, https://about.usps.com/what/government-services/
    election-mail/.................................................................................................................... 10

U.S. Postal Serv., Official Election Mail—Graphic Guidelines and Logos,
    https://about.usps.com/publications/pub631.pdf....................................................................... 10

**INTRODUCTION**

The motion to intervene filed by Missouri, Alabama, Florida, Indiana, Kansas, Louisiana, Montana, Nebraska, Oklahoma, South Carolina, South Dakota, and Texas (together, "State Movants") should be denied. Federal Rule of Civil Procedure 24 allows interested persons to intervene only if they satisfy four requirements: (1) timeliness; (2) legally protected interests; (3) a threat to those interests; and (4) inadequate representation by existing parties. State Movants fail to meet prongs two, three, or four, and have failed to demonstrate timeliness for purposes of participating in the ongoing preliminary injunction proceeding.

First, the motion comes too late for State Movants to participate in the already pending preliminary injunction proceedings. The motions for a preliminary injunction (and supporting briefs) were filed before State Movants informed Plaintiffs of their intent to seek intervention—despite having multiple weeks of advance notice of the briefing schedule—and State Movants' motion leaves unexplained why they are entitled to interject in briefing that is already underway.

The remaining intervention factors require denial in full. State Movants assert interests in receiving lists of the adult citizens in their state, but those interests are not legally cognizable. They assert interests in standardized envelope design, but those interests would not be impaired by this litigation. And they assert generalized interests in election integrity, but those interests are both noncognizable *and* would not be impaired by this litigation.

Most glaringly, Movants are unabashedly aligned with Defendants on the legal issues presented, and are thus adequately represented by those existing parties. In an attempt to manufacture daylight between themselves and Defendants, State Movants hypothesize distinctions that are inconsistent with their assertion of interests. For example, they float the possibility that Defendants will take a narrower view of states' rights relative to the federal government, but they never explain how that purported difference may manifest or how it connects to their claimed

interests; they instead claim an unqualified desire to defend the E.O. as written, which purports to *override* state laws governing who may vote by mail. Nor does Plaintiffs' action threaten to aggrandize federal control of election administration in any way. Thus, State Movants' implication that they should be entitled to intervene because Defendants may not adequately represent states' rights is nonsensical. Movants' utter failure to demonstrate any inadequacy of representation alone requires denial of their request for mandatory intervention.

State Movants' request for permissive intervention should also be denied. They have not identified any beneficial contribution they would bring to this case and threaten to prejudice Plaintiffs' strong interest in timely relief. For all these reasons and those set forth below, the Court should deny the motion to intervene.

## BACKGROUND

Against the backdrop of several years of baseless claims that "fraudulent" mail voting and "non-citizen" voting caused his electoral defeat in the 2020 presidential election, President Trump issued Executive Order 14399 ("E.O.") on March 31, 2026. *See* Democratic Party Plaintiffs' Compl. ¶¶ 1–8, 53–56, ECF No. 1 ("DPP Compl."). The E.O. orders the U.S. Postal Service ("USPS") to determine who is eligible to vote by mail, and it requires the Department of Homeland Security ("DHS") and other federal agencies to thread data from various federal records into state-specific lists of every adult American citizen. *Id.* ¶¶ 57–60; *see also* Democratic Party Plaintiffs' Mem. Supp. Mot. Prelim. Inj. at 3–7, ECF No. 55 ("DPP PI Mem."). The President issued the E.O. to serve his goal of benefitting his own political party, at the expense of Democrats. DPP Compl. ¶¶ 1–8.

The Democratic Party Plaintiffs filed suit the next day. *Id.* Plaintiffs previewed in their complaint that a motion for preliminary relief was imminent given that the E.O. threatened to disrupt federal elections that were already underway. *See* DPP Compl. ¶¶ 1–8, 83–172; DPP PI

Mem. at 10–18, 42–44. Several nonpartisan advocacy groups filed suit in this District soon thereafter, and the cases were consolidated without objection. Order (April 9, 2026), ECF No. 27.

Shortly after the complaints were filed, recognizing that "these cases involve important matters of election procedure that may affect the conduct of impending elections throughout the country [and] that time is of the essence," Judge Kollar-Kotelly ordered Plaintiffs to file their motion for preliminary injunction by April 10, 2026. Order (Apr. 6, 2026), ECF No. 18. This Court subsequently ordered the parties to file their supporting memoranda by April 17, 2026. Plaintiffs did so. ECF Nos. 53–55. Not until the evening of Saturday, April 18, 2026, did State Movants provide notice that they intended to intervene. State Movants filed their motion on April 20, and this Court ordered Plaintiffs to respond by today, Friday, April 24.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24(a)(2) permits intervention as of right only when the movant "claims an interest relating to the property or transaction that is the subject of the action," disposition of the action "may as a practical matter impair or impede" the movant's ability to protect that interest, and the existing parties do not adequately represent that interest. Consequently, "[t]o intervene as a matter of right under Rule 24(a), '(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests.'" *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 64 (D.D.C. 2018) (quoting *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008)). The Court also has discretion to grant or deny a motion to intervene under Rule 24(b) where "applicant's claim or defense and the main action have a question of law or fact in common," but only if the application is "timely." *Burka v. Aetna Life Ins. Co.*, 917 F. Supp. 8, 12–13 (D.D.C. 1996) (quoting Fed. R. Civ. P. 24(b)), *aff'd*, 107 F.3d 922 (D.C. Cir. 1996) (per curiam).

3

**ARGUMENT**

I.      **The Court should deny intervention as of right.**

A.      **The motion to intervene is untimely as to the pending preliminary injunction motions.**

In this fast-moving and time-sensitive case, State Movants' motion to intervene was filed too late for them to participate in the pending preliminary injunction proceedings.

Courts consider several factors when deciding the timeliness of a motion to intervene—including "time elapsed," the purpose for intervention, and the "need" for intervention to preserve rights—but the D.C. Circuit has repeatedly affirmed that the *decisive* factor is whether the timing of the motion risks prejudice to existing parties in the particular context of the case. *Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 903, 905 (D.C. Cir. 2014) (citing *Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (D.C. Cir. 1972)). Applying this principle, several courts have concluded that motions to intervene filed after preliminary injunction motions were untimely as to the preliminary injunction proceedings. *See, e.g.*, *Van Valin v. Gutierrez*, No. 08-cv-941 (RMC), 2008 WL 7759966, at *2 (D.D.C. Aug. 19, 2008) (denying motion to intervene as defendants in part because the motion "was not timely with regard to the preliminary injunction issue," excluding intervenor from motion and hearing); *Van Valin v. Locke*, 628 F. Supp. 2d 67, 77 (D.D.C. 2009) (similar); *Burka*, 917 F. Supp. at 13 (denying intervention as untimely where proposed intervenor moved only after preliminary injunction motion was filed); *cf. Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987) (endorsing "restrict[ions on an intervenors'] ability to participate as fully as it might wish" to prevent prejudice).

Here, the timing of State Movants' attempted intervention prejudices Plaintiffs, notwithstanding State Movants' offer to respond to the preliminary injunction motions. The "denial of the opportunity to present facts or evidence which would have been offered" is a

4

"paradigmatic" form of prejudice. *E.g.*, *Hudson v. Am. Fed'n of Gov't Emps.*, No. 17-cv-1867 (JEB), 2019 WL 3533602, at *8 (D.D.C. Aug. 2, 2019) (collecting authority). By waiting to provide any notice of their intent to intervene until after the preliminary injunction motions and briefs were filed, State Movants deprived Plaintiffs of information about the parties who would seek to oppose their requested relief and the defenses to be asserted. *See supra* Background; *see also* ECF No. 77-3; *cf.* Fed. R. Civ. P. 24(c) (requiring proposed intervenor to provide notice of claims and defenses).

State Movants offer no reason for their delay, even though they do not—and cannot—claim that they were unaware that Plaintiffs would move for preliminary relief. DPP Compl. ¶ 8; Order (April 9, 2026), ECF No. 27. State Movants' delay is especially consequential in this emergency election law proceeding in the middle of a federal election cycle. *See* DPP PI Mem. at 42–43; Order (Apr. 6, 2026), ECF No. 18; *see also, e.g.*, *PILF v. Benson*, No. 1:21-cv-929, 2022 WL 21295936, at *12 (W.D. Mich. Aug. 25, 2022) (noting "motion [was] arguably untimely filed after the parties had already begun motion practice," and "[m]ore importantly, the subject matter of this case is unique, and timely resolution is critical to the integrity of the election process").

Because allowing State Movants to participate in the already pending motions would work prejudice to Plaintiffs, even if this Court were to permit intervention—and for the reasons that follow, it should not—it should limit State Movants' participation to any proceedings that follow resolution of the pending motions. *See Van Valin*, 628 F. Supp. 2d at 77; *Burka*, 917 F. Supp. at 13; *cf. Ute Indian Tribe of Uintah & Ouray Indian Rsrv. v. U.S. Dep't of the Interior*, No. 1:18-cv-00547, 2020 WL 1465886, at *1 (D.D.C. Feb. 5, 2020) (Nichols, J.) (finding intervention motion timely where the proposed intervenor specifically noted "it does *not* intend to participate in the [already commenced] Motion to Dismiss briefing" (emphasis added)). However, as

discussed further below, State Movants should be denied intervention entirely, based on their failure to meet any of the other required elements to entitle them to intervention as of right, and because permissive intervention, too, is not warranted here.

> **B.    State Movants have no cognizable interest that could be impaired by this litigation.**

"To intervene as of right, a litigant must claim an interest" related to the litigation that (1) qualifies as "a legal interest as distinguished from interests of a general and indefinite character," *see Biden v. U.S. Internal Revenue Serv.*, 752 F. Supp. 3d 97, 113 (D.D.C. 2024) (internal quotation marks and citations omitted), and (2) would be "impaired," so as to cause the intervenor to suffer "practical consequences . . . if intervention is denied." *100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 278 (D.D.C. 2014) (internal quotation marks omitted).

Here, State Movants assert three potential interests in this litigation: (1) receipt of State Citizenship Lists, (2) standardization of ballot envelopes, and (3) election integrity. As set out below, these interests are either too generalized to be "legally protected," too removed from this litigation to be at risk of "impairment," or both. *Biden v. U.S. Internal Revenue Serv.*, 752 F. Supp. 3d at 104, 113 (citations omitted).

> **1.    State Movants fail to identify a cognizable interest in receiving State Citizenship Lists.**

"[T]he Supreme Court has specifically cautioned [courts] to be wary of theories of state standing that rely on the 'indirect effects' of federal policy on state revenue or state spending." *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1175 (9th Cir. 2024) (quoting *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023)); *see also Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022) (rejecting the "boundless theory" where "all peripheral costs imposed on States by

actions of the President" give States a legal interest in court).[1] Here, State Movants' purported interests describe, at the very best, indirect effects of the E.O. But even there they fall short, asserting general interests but then failing to actually connect or substantiate their contention that those interests are in fact connected to or impacted by the E.O. itself.

State Movants' first purported "interest" in this litigation rests on the E.O.'s requirement that the Secretary of Homeland Security compile and distribute "State Citizenship Lists" for every state. E.O. § 2(a). State Movants characterize these State Citizenship Lists as resources, akin to a federal grant, that they would prefer to receive. But State Movants do not identify what costs they might incur in the absence of State Citizenship Lists, or, for that matter, any specific benefits they might obtain from receiving State Citizenship Lists. Consequently, they identify no possible harm from not receiving the Lists. In reality, the State Citizenship Lists are unlike the concrete financial resources provided by federal grants; they are nothing more than an intangible collection of data (and extremely flawed data at that, as explained further below). State Movants' generic justification that they expend "considerable funds" on operating and maintaining their own voter registration systems, *see* State Mem. at 10–11, is entirely untethered to the State Citizenship Lists at issue.

The cases that State Movants cite cut against their intervention by demonstrating exactly the interest they need to—and simply fail—to show. *See Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019) ("Several state respondents here have shown that if noncitizen households are undercounted . . . they will lose out on federal funds . . . ."); *New Jersey v. Trump*, 131 F.4th 27,

---

[1] Because of the substantial overlap between the standing inquiry and the Rule 24(a) inquiry, cases analyzing standing are also probative for whether State Movants can satisfy Rule 24(a). *See, e.g., Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (indicating that the answer is usually the same under both inquiries).

35 (1st Cir. 2025) ("The Plaintiff-States' contentions in this regard included that they likely could show that the enforcement of the Executive Order would 'directly' cause the Plaintiff-States the 'loss of federal . . . funds . . . .'" (first alteration in original)). Unlike the actions challenged in those cases, the E.O. does not provide funding associated with the State Citizenship Lists that States would lose because of Plaintiffs' lawsuit. To the contrary, the E.O. contemplates "*withholding Federal funds*" from States the federal government deems noncompliant with the E.O.'s requirements. E.O. § 5 (emphasis added).

State Movants suggest that the Lists might facilitate their maintenance of their state voter registration systems—for example, by allowing them to cross-check individual voters against the List. *See* State Mem. at 11. But the E.O. itself belies this theory: its plain text makes clear that the Lists will not indicate whether any individual voter is properly registered to vote in any state. *See* E.O. § 2(a)(ii) (specifying that "[a]n individual's identification on the State Citizenship List [will] not indicate that the individual has been properly registered to vote in the State").

To the extent State Movants suggest that the Lists could be useful as an additional reference point for determining whether a registered voter is a U.S. citizen and resides in their state, they fail to allege any facts that would support such a theory or explain how they suffer any injury without such lists. Courts consistently reject state attempts to defend federal government actions that bear such an "indirect" relationship on state policy. *See Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 348 F.R.D. 397, 403 (D.D.C. 2025) (denying Texas's motion to intervene as defendant because its "theory of injury is too attenuated to support Article III standing" and "[f]or the same reason" holding it did not assert "a legal interest sufficient to satisfy the interest element of Rule 24(a)"); *see also, e.g.*, *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014) (rejecting an argument that would "permit nearly all state officials to challenge a host of Federal

8

laws simply because they disagree with how many—or how few—Federal resources are brought to bear on local interests"), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015).

Notably, State Movants say nothing about their current procedures for confirming the citizenship of U.S. voters or their residency, and they certainly do not contend that they are inadequate. Nor do they describe how they plan to incorporate the State Citizenship Lists into their voter registration and list maintenance activities. All they say is that the State Citizenship Lists would "save[] them time and money." State Mem. at 11. That conclusory allegation leaves as a mystery just how State Movants would suffer a cognizable injury without the Lists—and that mystery confirms that State Movants have not "shoulder[ed] the burden" of proving they are entitled to intervene as of right. *Env't Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 239 (D.D.C. 1978), *aff'd*, 12 ERC 1255 (D.C. Cir. 1978).

The facts also belie the suggestion that the State Citizenship Lists would provide State Movants any information of value. While State Movants baldly assert that the Lists are "[m]ore accurate," State Mem. at 11, this is at odds with the record. The E.O. dictates that the Lists "shall be derived from Federal citizenship and naturalization records, SSA records, SAVE [("Systematic Alien Verification for Entitlements")] data, and other relevant Federal databases." E.O. § 2(a). But the SAVE and SSA databases are notoriously inaccurate for determining whether an individual is a U.S. citizen. *See* DPP PI Mem., Ex. 10, Expert Decl. of Dr. Kenneth Mayer ("Mayer Decl.") at 1, ECF No. 55-12. Indeed, attempts to use SAVE in Movant State Missouri have led to error rates as high as 80%. *See id.* at 5. State Movants ignore all of this.

Because the Lists will be compiled from unreliable sources, they will be utterly unhelpful for verifying the accuracy of states' voter registration lists. Further still, inconsistencies in the categories of identifying information and gaps in federal data will undermine any possibility of

9

efficient matching or "verification" at the state level. *See id*. at 7. Thus, State Movants have no protectable interest in receiving a list that will serve to repeat these errors, and in fact, the State Citizenship Lists threaten to *waste* their resources by forcing State Movants to correct mistaken identifications of eligible voters as ineligible.

### 2.    State Movants' purported interest in standardizing ballot envelopes is not at risk of impairment.

State Movants' next asserted interest is profoundly illogical. Pointing to Section 3(b)(i)'s requirement that USPS implement regulations "specifying that all outbound ballot mail must be mailed in an envelope" that "is marked as Official Election Mail," "is automation-compatible and bears a unique Intelligent Mail barcode," and "has undergone a mail envelope design review by the USPS," State Movants assert that these requirements could be a "useful and important security measure." State Mem. at 11–12. But even if these States see value in these measures, nothing about the E.O.—or Plaintiffs' lawsuit—restricts their abilities to adopt such measures.

In short, State Movants are free, regardless of the outcome of this litigation, to take steps to ensure that their ballot mail is "automation-compatible" and "marked as Official Election Mail." *See, e.g.*, U.S. Postal Serv., *Official Election Mail—Graphic Guidelines and Logos*, https://about.usps.com/publications/pub631.pdf (authorizing marking); U.S. Postal Serv., *Election Mail*, https://about.usps.com/what/government-services/election-mail/ ("The Official Election Mail logo should be used on any mailpiece created by an election official that is mailed to or from a citizen of the United States for the purpose of enabling participation in the voting process."); Mo.

10

Rev. Stat. § 115.285 (stating that Missouri has authority to set its own "regulations with respect to the printing of ballot envelopes and mailing envelopes").[2]

And State Movants have not asserted, and could not plausibly assert, a cognizable interest in ensuring that *other* states comply with these requirements. While a state may have an "interest in preserving the integrity of its election process," *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), it does *not* have an interest in monitoring its neighboring states' electoral processes. *See, e.g.*, *Texas v. Pennsylvania*, 141 S. Ct. 1230 (2020) ("Texas has not demonstrated a judicially cognizable interest in the manner in which another State conducts its elections."). Because nothing about this litigation threatens State Movants' purported interest in the design of their mail ballot envelopes, it cannot provide the requisite interest that Rule 24(a) requires to entitle them to intervention as of right.

### 3. State Movants' generalized interest in election integrity is neither legally protected nor factually supported.

State Movants' final purported interest is a generalized desire for election integrity. *See* State Mem. at 11–12. But this fails to warrant intervention under black-letter D.C. Circuit law. "Rule 24(a) impliedly refers not to any interest the applicant can put forward, but only to a legally protectable one." *Mova Pharma. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) (emphasis

---

[2] In their brief, State Movants suggest that they possess "limited authority to regulate and supervise absentee ballots completed by out-of-state voters and sent through interstate mail." State Mem. at 13. This is wrong: State Movants themselves design, print, and send out any mail ballot envelopes to voters within and outside their borders, and states are entirely capable of marking these envelopes as "Official Election Mail," adding a barcode, or taking any other steps they believe are necessary to "supervise" the ballots. *See, e.g.*, Ala. Code § 17-11-47 (setting out requirements for certain absentee ballots in Alabama); Fla. Dep't of State, *Report by the Department of State on Vote-by-Mail Voting – Security, Privacy, and Election Transparency* 14 (2023), https://files.floridados.gov/media/706253/dept-of-state-report-vote-by-mail-system-20230201.pdf (describing Florida's mail voting system, which includes the use of barcode tracking).

omitted) (internal quotation marks and citation omitted). "A [litigant's] interest in seeing that the law is adhered to is too general an interest" to satisfy this requirement. *United States v. Microsoft Corp.*, No. CIV.A.98-1232(CKK), 2002 WL 319819, at *2 (D.D.C. Feb. 28, 2002) (denying motion to intervene based on generalized interest). Here, State Movants' desire for "election integrity" is just that: a "generalized interest" in ensuring the law is followed, which is "not sufficiently concrete" to warrant intervention. *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 92–93 (D.D.C. 2007) (internal quotation marks and citation omitted) (denying motion to intervene based on a "generalized interest in the protection of the environment"); *see also One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis. 2015) (denying motion to intervene as defendants based on generalized interest in "fraud-free elections," which was "really just the proposed intervenors' agreement with the policy underlying the challenged legislation"); *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747, 2021 WL 1662742, at *6–8 (D. Colo. Apr. 28, 2021) (collecting numerous cases holding that generalized concerns about voter fraud or election integrity do not give rise to Article III standing), *aff'd*, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022).

Even if "election integrity" were a sufficiently particularized interest, Plaintiffs' success in this action would in no way impair State Movants from ensuring the integrity of their elections, and in fact would *protect* the states from unwarranted federal intrusion. States are free to implement measures to enforce their voter registration laws with or without the E.O. And they have, including State Movants. *See, e.g.*, Mo. Rev. Stat. § 115.631 (imposing criminal penalties for perjury related to voter qualifications). Any contrary argument that the Statewide Citizenship Lists advance a state interest in regulating elections seemingly relies on the incorrect belief that noncitizen voting is a material problem. But there is "no credible evidence of material numbers of

12

noncitizens voting in U.S. elections," Mayer Decl. at 10, and State Movants do not say otherwise. And Congress has already concluded, in passing the NVRA, that "the signature of the applicant, under penalty of perjury, certifying the applicant's eligibility to vote, without any requirement for notarization or other formal authentication, was sufficient to protect the public interest in the integrity of the electoral process." *LULAC v. Exec. Off. of the President* ("*LULAC I*"), 780 F. Supp. 3d 135, 211–12 (D.D.C. 2025) (citation modified) (citing 52 U.S.C. §§ 20501(b)(3), 20508(b)(2)(B)–(C), (b)(3)). Nor have State Movants so much as suggested that their current methods for verifying citizenship are deficient. Thus, even if the Statewide Citizenship Lists were not doomed to inaccuracy, and they are, *see supra* Argument § I.B.1, they would be addressing a non-existent problem.

While State Movants focus extensively on two sections of the Order, they ignore two of the most problematic sections—Section 3(b)(iii) and 3(b)(iv), which purport to restrict USPS from transmitting ballots from individuals who are not on the "Mail-In and Absentee Participation List" that it requires USPS to provide to each state. State Movants do not discuss these sections at all, and have thus failed entirely to suggest they are entitled to intervene to defend these provisions.[3] State Movants' silence is for good reason: their purported interest in election integrity cannot possibly justify intervention to defend these provisions. States already do not register to vote or mail ballots to individuals they believe to be unqualified. Thus, these sections can only operate to disenfranchise citizens that states have deemed qualified to vote and sent a mail ballot. No state has an interest in restricting the voting rights of individuals that it believes to be eligible.

---

[3] State Movants cannot address this glaring omission in a reply: "Forfeiture ordinarily applies whenever a party relies on an argument not raised in its opening brief." *Entergy Ark., LLC v. FERC*, 134 F.4th 576, 580 (D.C. Cir. 2025).

If the Court disagrees with the Democratic Party Plaintiffs regarding any of State Movants' asserted interests, it should limit the remainder of the Rule 24(a) analysis and any ultimate grant of intervention to the defense of the E.O. provisions relevant to the recognized interest. *See United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1291 (D.C. Cir. 1980) (advising that the "limited nature of the intervenor's interest determin[es] the scope of intervention that should be allowed" under Rule 24); *cf. Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (holding that "standing is not dispensed in gross" and that a party "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought" (citation omitted)). For example, when the Republican National Committee moved to intervene as a defendant in the case challenging President Trump's previous election-related executive order, Judge Kollar-Kotelly limited its intervention to defending specific provisions. Mem. Op. & Order at 8, *LULAC v. Exec. Off. of the President*, No. 1:25-cv-0946, 2026 WL 252420 (D.D.C. June 12, 2025), ECF No. 135.[4] This Court should do the same.

## C.    State Movants' putative interests are adequately represented.

The putative interests State Movants assert all come down to an interest in defending the legality of the E.O. That interest, however, is adequately represented by the existing Defendants.

State Movants face an uphill battle on this prong because "a presumption of adequate representation exists if both the intervenor and existing party have the same ultimate objective." *HRH Servs. LLC v. Travelers Indem. Co.*, No. 23-CV-02300 (JDB), 2024 WL 4699925, at *9

---

[4] Although Judge Kollar-Kotelly analyzed the RNC's connection to the E.O. as a matter of Article III standing, given the overlap between the inquiries, the same reasoning applies under Rule 24(a). *Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987) (movant "may have a sufficient interest to intervene as to certain issues . . . without having an interest in the litigation as a whole"); *Haw. Longline Ass'n. v. Nat'l Marine Fisheries Serv.*, 281 F. Supp. 2d 1, 11 (D.D.C.) (Kollar-Kotelly, J.) ("[C]ourts need not consider a motion to intervene as an all-or-nothing proposition." (citing *Harris*, 820 F.2d at 599)), *on reconsideration in part*, 288 F. Supp. 2d 7 (D.D.C. 2003) .

(D.D.C. Nov. 6, 2024) (citation omitted); *see also Telligent Masonry, LLC v. Cont'l Cas. Co.*, No. 19-CV-1078 (RMC), 2019 WL 13255497, at *2 (D.D.C. July 3, 2019); *Cobell v. Jewell*, No. CV 96-01285 (TFH), 2016 WL 10704595, at *2 (D.D.C. Mar. 30, 2016). That is plainly the case here: the "ultimate objective" of both State Movants and Defendants is upholding the Order and defeating Plaintiffs' claims, and indeed, State Movants do not argue otherwise. *See* State Mem. at 13–15. The burden, then, is on State Movants to "demonstrat[e] special circumstances that make the representation inadequate, such as adversity of interest, collusion, or nonfeasance." *Corbell*, 2016 WL 10704595, at *2 (internal quotation marks and citation omitted).

State Movants fail to identify any meaningful daylight between themselves and Defendants, much less show any of these special circumstances. They first argue that their interests might differ from Defendants' because they "have a stronger interest in defending some parts of the EO than others," while Defendants "have an obligation to vigorously defend all parts of the EO." State Mem. at 13–14. But the sections in which they say they have a unique interest— "Sections 2 and 3"—are the *only* sections Plaintiffs substantively challenge. The remaining section Plaintiffs challenge, Section 4, is challenged only because it commands implementation of Sections 2 and 3. In other words, there is a complete overlap between the provisions Defendants will defend and the sections State Movants claim an interest in defending.

Regardless, State Movants *concede* that Defendants will defend "*all parts* of the EO," including the parts with which they are most concerned. *Id.* Indeed, President Trump has repeatedly described his efforts to control voting as his number one priority, *see* Meredith Lee Hill, *SAVE America Act Is 'No. 1 Priority,' Trump Tells Republicans*, Politico (Mar. 9, 2026), https://www.politico.com/live-updates/2026/03/09/congress/trump-save-america-act-gop-

00819673,[5] and his administration has defended and continues to defend a related executive order through multiple rounds of litigation. *See, e.g.*, *LULAC v. Exec. Off. of the President* ("*LULAC III*"), No. 1:25-cv-0946, 2026 WL 252420 (D.D.C. Jan. 30, 2026), *appeal docketed*, No. 26-5102 (D.C. Cir. Apr. 2, 2026). Already here, Defendants have indicated that they will oppose Plaintiffs' preliminary injunction motions and that they will move to dismiss Plaintiffs' complaints. *See, e.g.*, ECF No. 86. And in opposing State Movants' intervention as of right, Defendants stress that the United States "intends to vigorously defend this suit." Defs.' Resp. Mot. Intervene at 2, ECF No. 88. There is therefore no doubt that the government will robustly defend this E.O., confirming that State Movants' purported interest in the validity of the E.O. is adequately represented. *Las Americas Immigrant Advoc. Ctr.*, 348 F.R.D. at 403 (finding adequate representation of movant's interests on this basis when movant failed to show "that Defendants have failed or will fail to vigorously defend" challenged law).

Nor can State Movants cure their deficiency by vaguely claiming that they "will vigorously defend state sovereignty over elections and resist federal commandeering attempts." State Mem. at 15. As an initial matter, because some of Plaintiffs' claims (for example, their Privacy Act claim) are unrelated to federalism issues, the assertion of this limited interest would not justify intervention to defend against those claims in any event. And even where Plaintiffs' claims *do* concern the relative power of the state and federal government (for example, their claim that the federal government cannot override states' rights to determine who is qualified to vote by mail), State Movants have failed to identify any way in which their views might differ from Defendants'.

---

[5] The E.O. is a direct response to the President's inability to pass this priority through Congress. *See* DPP PI Mem., Ex. 12, *Fact Sheet: President Donald J. Trump Ensures Citizenship Verification and Voter Eligibility in Federal Elections*, The White House (Mar. 31, 2026), ECF No. 55-14 (placing E.O. in context of "President Trump['s] repeated[] call[s] on Congress to pass the SAVE America Act").

16

Finally, and perhaps most importantly, the interests State Movants claim in this action—all variations on the theme of election integrity—have *nothing* to do with the purported federalism interests State Movants claim Defendants may not adequately represent. Indeed, any interest in preventing federal overreach is simply not threatened by Plaintiffs' lawsuit—which seeks to prevent the federal government from overstepping its constitutional and legal bounds—and would in fact be vindicated if Plaintiffs prevail.

State Movants also have not identified a single way in which their approach might differ from Defendants in pursuit of their shared goal in defending this litigation. But even if they could, that *still* would be insufficient for intervention as of right. Under binding D.C. Circuit law, "disagreement about litigation strategy" does "not make inadequate the representation of those whose interests are identical with that of an existing party." *United Mexican States v. Lion Mexico Consol. L.P.*, No. 24-7185, 2026 WL 933128, at *7 (D.C. Cir. Apr. 7, 2026) (citation omitted); *see also Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1020 (D.C. Cir. 2003) ("quibbles over litigation tactics" do not support allegations of inadequate representation). It is plain that Defendants and State Movants are in lock-step in their efforts to defend the E.O.'s validity—making their interests identical, and Defendants' representation of those interests adequate.

## II.    The Court should deny permissive intervention.

The Court should also deny State Movants' alternative request for permissive intervention under Rule 24(b). As State Movants acknowledge, district courts have broad discretion to deny or grant such requests—but a motion must always satisfy the Rule's timeliness "threshold." *Amador Cnty.*, 772 F.3d at 906; *see* State Mem. at 17 (citing *NAACP v. New York*, 413 U.S. 345, 365 (1973)). Their motion to intervene permissively is therefore untimely as to the pending preliminary injunction motions for the same reasons described above. *Supra* Argument § I.A.

17

The Court should also deny permissive intervention writ large. As explained, State Movants assert little more than generalized interests that are not protectable under any identified authority, and they are already adequately represented by Defendants. *See supra* Argument §§ I.A, I.B. The Supreme Court has further warned that interests of the kind asserted by State Movants here are "more attenuated" than direct pocketbook injuries given that "federal policies frequently generate indirect effects on state revenues or state spending" in our "system of dual . . . sovereignty," *United States v. Texas*, 599 U.S. at 680 n.3, and courts in this Circuit have in turn specifically recognized that the same concern "cautions against granting permissive intervention to States in cases like this," *Las Americas Immigrant Advoc. Ctr.*, 348 F.R.D. at 403.

To the extent the Court is persuaded that State Movants may be able to offer any useful perspective, the Court may allow them to participate as amici—as other groups already have sought—which will allow the Court to consider such perspectives "to the extent they will be impacted by the Court's decision [on the] preliminary injunction." *Burka*, 917 F. Supp. at 13; *see also, e.g.*, *Friends of Earth v. Haaland*, No. 21-cv-2317 (RC), 2022 WL 136763, at *6 (D.D.C. Jan. 15, 2022) ("[C]ourts in this district have allowed would-be intervenors to participate as amici if they did not satisfy the requirements for intervention but otherwise offered input that could benefit the Court."); *Las Americas Immigrant Advoc. Ctr.*, 348 F.R.D. at 404 (similar); *Miracle v. Hobbs*, 333 F.R.D. 151, 156–57 (D. Ariz. 2019) (similar). And, as explained above, if the Court is inclined to grant permissive intervention, it should do so only on those provisions for which State Movants have asserted a sufficient interest. *Supra* Argument § I.B.

## CONCLUSION

For the reasons stated above, the Court should deny State Movants' motion to intervene.

18

Dated: April 24, 2026

Respectfully submitted,

*/s/ Lalitha D. Madduri*

**ELIAS LAW GROUP LLP**
Marc E. Elias (DC 442007)
Lalitha D. Madduri (DC 1659412)
Jacob D. Shelly (DC 90010127)
Christina Ford (DC 1655542)
Max Accardi (DC 90021259)*
Kevin R. Kowalewski (NY 5946645)**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
eliasm@elias.law
lmadduri@elias.law
jshelly@elias.law
cford@elias.law
maccardi@elias.law
kkowalewski@elias.law

Tyler L. Bishop (DC 90014111)
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
T: (206) 656-0177
tbishop@elias.law

*Application for admission pending
**Admitted *pro hac vice*

*Counsel for Plaintiffs DSCC, DCCC, Democratic National Committee, Democratic Governors Association, Senate Minority Leader Schumer, and House Minority Leader Jeffries*

19