**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **DSCC**, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **No. 26-cv-01114-CJN** |
| **DONALD J. TRUMP, in his official capacity as President of the United States**, *et al.*, | |
| **Defendants,** | |
| **STATE OF MISSOURI, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, STATE OF SOUTH DAKOTA, and STATE OF TEXAS,** | |
| **Intervener Defendants.** | |
| | |
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS**, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **No. 26-cv-01132-CJN** |
| **EXECUTIVE OFFICE OF THE PRESIDENT**, *et al.*, | |
| **Defendants,** | |
| **STATE OF MISSOURI, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, STATE OF SOUTH DAKOTA, and STATE OF TEXAS,** | |
| **Intervener Defendants.** | |

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,

      Plaintiffs,

          v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

      Defendants,

STATE OF MISSOURI, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, STATE OF SOUTH DAKOTA, and STATE OF TEXAS,

      Intervener Defendants.

No. 26-cv-01151-CJN

## REPLY IN SUPPORT OF MOTION TO INTERVENE

**TABLE OF CONTENTS**

INTRODUCTION...................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

   I.    **Intervener States are entitled to intervention as of right under Rule 24(a).** ............... 2

      A.   **Intervener States' motion to intervene is timely.** ............................................... 2

      B.   **Intervener States have cognizable interests in this case.** ............................................ 4

          1.   Intervener States have a cognizable interest in obtaining the State Citizenship Lists. .................................................................................................................... 4

          2.   States have a cognizable interest in strengthened security for mail ballots in their own elections. ............................................................................................... 6

          3.   States have a cognizable interest in ensuring the integrity of their own elections. ............................................................................................................... 7

          4.   The Court should not limit Intervener States' ability to defend Section 3. ............... 8

      C.   **Disposition of this action may impair the Intervener States' ability to protect their interests.** .................................................................................................. 10

      D.   **The existing parties do not adequately represent the Intervener States' interests.** ............................................................................................................ 10

   II.   **Alternatively, the Court should grant permissive intervention under Rule 24(b).** ... 13

CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022)................................................................................................ 12

*Bost v. Ill. State Bd. of Elections*,
   146 S. Ct. 513 (2026)............................................................................................ 7, 8

*Burka v. Aetna Life Ins. Co.*,
   917 F. Supp. 8 (D.D.C. 1996) .................................................................................. 3

*Campaign Legal Ctr. v. Scott*,
   49 F.4th 931 (5th Cir. 2022)..................................................................................... 5

*Cook v. Boorstin*,
   763 F.2d 1462 (D.C. Cir. 1985) ............................................................................ 5, 6

*\*Dep't of Com. v. New York*,
   588 U.S. 752 (2019).................................................................................... 2, 4, 5, 7

*Diamond Alt. Energy, LLC v. EPA*,
   606 U.S. 100 (2025)................................................................................................. 8

*Env't Def. Fund, Inc. v. Higginson*,
   631 F.2d 738 (D.C. Cir. 1979) ............................................................................... 12

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
   489 U.S. 214 (1989)................................................................................................. 7

*Ex parte Siebold*,
   100 U.S. 371 (1879)............................................................................................... 13

*FEC v. Cruz*,
   596 U.S. 289 (2022)............................................................................................. 6, 8

*Ford v. City of Huntsville*,
   242 F.3d 235 (5th Cir. 2001)................................................................................... 4

*Fund For Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ............................................................................... 12

*Jacobson v. Detzner*,
   No. 4:18-CV-262-MW/CAS, 2018 WL 10509488 (N.D. Fla. July 1, 2018)........................... 14

*Kozak v. Wells*,
   278 F.2d 104 (8th Cir. 1960) ...................................................................... 10

*La Union del Pueblo Entero v. Abbott*,
   29 F.4th 299 (5th Cir. 2022) ........................................................................ 9

*Las Ams. Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*,
   348 F.R.D. 397 (D.D.C. 2025) ...................................................................... 5

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
   584 U.S. 453 (2018) ..................................................................................... 12

*Nat. Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977) ................................................................11, 12

*Newby v. Enron Corp.*,
   443 F.3d 416 (5th Cir. 2006) ...................................................................... 10

*O'Rourke v. Dominion Voting Sys. Inc.*,
   No. 20-cv-03747-NRN, 2021 WL 1662742 (D. Colo. Apr. 28, 2021) ...................................... 7

*One Wis. Inst., Inc. v. Nichol*,
   310 F.R.D. 394 (W.D. Wis. 2015) .................................................................. 7

*Pennington v. Taylor*,
   776 F. Supp. 3d 1118 (M.D. Ala. 2025) ........................................................ 8

*\*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) ................................................................................. 6, 7, 8

*Roane v. Leonhart*,
   741 F.3d 147 (D.C. Cir. 2014) ................................................................... 3, 4

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ...................................................................... 14

*\*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ...........................................................................2, 11, 12

*United States v. S. Fla. Water Mgmt. Dist.*,
   922 F.2d 704 (11th Cir. 1991) .................................................................... 9

*Ute Indian Tribe of Uintah & Ouray Indian Rsrv. v. U.S. Dep't of Interior*,
   No. 1:18-cv-00547 (CJN), 2020 WL 1465886 (D.D.C. Feb. 5, 2020) ...................................... 3

*Van Valin v. Locke*,
   628 F. Supp. 2d 67 (D.D.C. 2009) ............................................................... 3

*W. Watersheds Project v. Interior Bd. of Land Appeals*,
  No. 1:19-CV-95-TS-PMW, 2019 WL 5191244 (D. Utah Oct. 15, 2019) ................................ 12

*Williams & Humbert Ltd. v. W & H Trade Marks (Jersey) Ltd.*,
  840 F.2d 72 (D.C. Cir. 1988) ..................................................................................... 10

**Constitution**

U.S. Const. art. I, § 8, cl. 7 ........................................................................................... 6

U.S. Const. art. VI, cl. 2 ................................................................................................. 6

**Statutes**

39 U.S.C. § 401(2) ........................................................................................................ 12

Mo. Rev. Stat. § 115.285 ............................................................................................... 12

**Rules**

Fed. R. Civ. P. 24(a) ............................................................................................... 2, 4, 8

Fed. R. Civ. P. 24(b) ..................................................................................................... 13

**Other Authorities**

Jim Saksa, *A dozen red states want to help defend Trump's anti-mail voting executive order*,
  Democracy Docket (Apr. 21, 2026) ............................................................................... 1

## INTRODUCTION

In Plaintiffs' own words, this case is about the "careful division of authority" over elections between the federal government and the States.  DSCC Compl. ¶ 3; *see also* LULAC Compl. ¶ 2 (This EO "intrudes on the states' and Congress's authority to set election rules, as well as state and local officials' authority to administer elections."); NAACP Compl. ¶ 1 (This EO "usurp[s] the power to regulate federal elections from the States and Congress.").  Granting Intervener States—who collectively represent tens of millions of voters—a seat at the table via intervention thus makes perfect sense.  Unsurprisingly, the website run by the DSCC Plaintiffs' own counsel acknowledged—in response to Intervener States' motion to intervene—that "courts usually allow such motions."[1]

Appropriately, the federal defendants and most of the plaintiffs only meekly resist intervention as of right, and they do not contest permissive intervention at all.  *See* Doc. 88 (U.S. Resp. Br.) at 2 (no opposition to permissive intervention); Doc. 89 (NAACP Resp. Br.) at 2 (same); Doc. 90 (LULAC Resp. Br.) at 2 (same and even suggesting Intervener States should be allowed to intervene in a closely related case).

Only the DSCC Plaintiffs seriously contest Intervener States' intervention.  They are wrong, as Intervener States satisfy all requirements for intervention as of right.  *See* Doc. 77-1 (Intervener Br.) at 9–16.  On timeliness, Intervener States moved quickly to intervene in this action, and they did so before any substantive brief is due from the defendants.  Intervener States have a concrete interest in receiving the State Citizenship Lists under Section 2 of the EO, just as States routinely have cognizable interests in receiving benefits from the federal government.  *See, e.g.*,

---

[1] Jim Saksa, *A dozen red states want to help defend Trump's anti-mail voting executive order*, Democracy Docket (Apr. 21, 2026), https://www.democracydocket.com/news-alerts/a-dozen-red-states-want-to-help-defend-trumps-anti-mail-voting-executive-order/.

1

*Dep't of Com. v. New York*, 588 U.S. 752, 766–67 (2019). Intervener States also have an interest in Section 3's envisioned postal reforms—which could help ensure that mail votes in Intervener States' elections are more securely cast. Plaintiffs' suit, of course, would impair those interests by denying Intervener States the State Citizenship Lists and blocking reforms only the United States Postal Service (USPS) can implement. Finally, the federal government, which often competes with Intervener States for authority over elections, does not adequately represent the States' distinct and unique interests in this case. Even if Intervener States and the federal government do share the same ultimate goal of seeing the EO upheld, the fact that Intervener States have different *interests*, which the federal government does not share, is dispositive. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972).

The Court should grant intervention as of right. At a minimum, the Court should grant permissive intervention.

## ARGUMENT

### I. Intervener States are entitled to intervention as of right under Rule 24(a).

A movant is entitled to intervene as of right if the movant (1) files a "timely motion," (2) "claims an interest" in the litigation, (3) "may as a practical matter" be "impair[ed] or impede[d]" by the disposition of the suit, and (4) is not "adequately represent[ed]" by the parties in the case. Fed. R. Civ. P. 24(a). Intervener States meet all four requirements. *See* Intervener Br. at 9–16.

#### A. Intervener States' motion to intervene is timely.

No party disputes that Intervener States' motion is timely as a general matter. The DSCC Plaintiffs only question whether Intervener States' motion was "filed too late for them to participate in the pending preliminary injunction proceedings." Doc. 95 (DSCC Opp'n Br.) at 4. But

2

Intervener States will file a proposed brief on the same deadline as the defendants, *see* Intervener Br. at 10, 17, so it is hard to see how that is not timely or prejudices Plaintiffs, *see Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties.").

The DSCC Plaintiffs makes much out of the States not moving to intervene until Monday, April 20, after Plaintiffs had filed their memoranda in support of their preliminary injunction on Friday, April 17.  DSCC Opp'n Br. at 4–5.  However, Plaintiffs' cited cases do not support their contention that the States' motion was untimely in this case.  In *Van Valin v. Gutierrez*, for example, the would-be intervener only filed "after the temporary restraining order" was issued and "only two days before the preliminary injunction hearing."  No. 08-941 (RMC), 2008 WL 7759966, at *2 (D.D.C. Aug. 19, 2008).  None of Plaintiffs' cases address a case where the would-be intervener is merely seeking to file briefs according to the preexisting case schedule.  *See Van Valin v. Locke*, 628 F. Supp. 2d 67, 77–78 (D.D.C. 2009) (addressing standing); *Burka v. Aetna Life Ins. Co.*, 917 F. Supp. 8, 13 (D.D.C. 1996) (denying intervention when party attempted to intervene after "litigation has proceeded for nearly two years" with only the preliminary injunction remaining to be decided); *Ute Indian Tribe of Uintah & Ouray Indian Rsrv. v. U.S. Dep't of Interior*, No. 1:18-cv-00547 (CJN), 2020 WL 1465886, at * 1 (D.D.C. Feb. 5, 2020) ("Utah waited a significant amount of time [over one year] after the initial Complaint was filed before moving to intervene . . . .").

In arguing that Intervener States' intervention would prejudice them, Plaintiffs suggest they would be "deprived" of the opportunity to tailor their preliminary injunction arguments based on the Intervener States' opposition.  DSCC Opp'n Br. at 4–5.  This argument is hard to follow.  As

the movants in the first round of substantive briefing in the case, Plaintiffs have to make merits arguments without seeing *any* of the defendants' merits arguments in advance. That is why Plaintiffs will be allowed to submit reply briefs—where they can respond to Intervenor States' arguments if they wish. In short, Plaintiffs seemingly confuse the prejudice "created by the intervenor's delay in seeking to intervene"—"the relevant prejudice"—with the mere inconvenience of having to respond to more briefs in a lawsuit Plaintiffs initiated. *See, e.g.*, *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001).

As Plaintiffs state, this is a "fast-moving and time-sensitive case." DSCC Opp'n Br. at 4. Intervener States moved to intervene within a couple weeks and quickly filed substantive briefs on intervention and dismissal—before federal Defendants filed any substantive briefs in this case. Thus, Intervener States' proposed intervention has not disrupted the preliminary injunction litigation—much less "unduly disrupt[ed]" it. *Roane*, 741 F.3d at 151. Intervention is timely. *See* Fed. R. Civ. P. 24(a).

### B. Intervener States have cognizable interests in this case.

#### 1. Intervener States have a cognizable interest in obtaining the State Citizenship Lists.

DSCC Plaintiffs mischaracterize Intervener States' interest in the State Citizenship List as an "indirect" financial injury. DSCC Opp'n Br. at 6–7. That is wrong.

For Intervener States, the State Citizenship Lists are a *direct* federal resource—the loss of which the Supreme Court has recognized is a cognizable injury for a State. *See Dep't of Com.*, 588 U.S. at 766–67. As Intervener States previously explained, "the State Citizenship List is a *resource* that saves them time and money in pursuing election integrity." Intervener Br. at 11. "Indeed, Intervener States see the State Citizenship List as similar to a federal grant—a resource that will help the Intervener States run their elections." *Id.* at 12. If they obtain this resource,

4

Intervener States can check their voter registration lists against the State Citizenship Lists—to ensure the voter registration lists do not have non-citizens on them. This is a resource interest at least as concrete of a resource interest as those alleged by the plaintiff States in *Department of Commerce v. New York*, where the Supreme Court credited an alleged "diminishment of political representation, loss of funds, degradation of census data, and diversion of resources." 588 U.S. at 766–67.

In response, the DSCC questions whether the State Citizenship Lists would be useful to the States because the Lists are not equivalent to lists of registered voters. *See* DSCC Opp'n Br. at 14–15. This is a strawman. Intervener States understand that they are in charge of their own voter registration lists. But the State Citizenship Lists will allow States to check their voter registration lists (a state responsibility) against citizenship lists (a federal responsibility). *See, e.g.*, *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 933 (5th Cir. 2022) ("[T]he Texas Secretary of State periodically compares information in the existing statewide computerized voter registration list against citizenship information . . . ."). This is hardly a "mystery," DSCC Opp'n Br. at 9, or "too attenuated" to support intervention, *Las Ams. Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 348 F.R.D. 397, 403 (D.D.C. 2025) (holding that Texas lacked standing to intervene where injury rested on substantial speculation).

The DSCC Plaintiffs also try to downplay the strength of Intervener States' interest by attacking the accuracy of the State Citizenship Lists. *See* DSCC Opp'n Br. at 9–10. But the alleged inaccuracy of the Lists is pure speculation at this stage of the litigation. Intervener States and DSCC Plaintiffs simply disagree on whether these Lists will be useful. *See* Intervener Br. at 11–12. And at the motion to intervene stage, "[a]ll nonconclusory allegations supporting a motion to intervene are taken as true, absent sham, frivolity, or other objections." *Cook v. Boorstin*, 763 F.2d

5

1462, 1470 (D.C. Cir. 1985) (citation omitted). DSCC Plaintiffs have come nowhere close to showing Intervener State allegations are a "sham, frivolity," or otherwise not to be credited. *Id.* This Court must therefore "accept as valid the merits of [interveners'] legal claims" and "must assume" that the State Citizenship Lists are a resource for the States. *FEC v. Cruz*, 596 U.S. 289, 298 (2022).

> **2.      States have a cognizable interest in strengthened security for mail ballots in their own elections.**

DSCC Plaintiffs contest whether Intervener States have a protected interest traceable to Section 3 of the EO by insisting that the States are free—regardless of this lawsuit—to "adopt [the E.O.'s mail security] measures." DSCC Opp'n Br. at 10. However, Intervener States do not and cannot control the U.S. Postal Service. U.S. Const. art. I, § 8, cl. 7; *id.* art. VI, cl. 2.

Yes, Intervener States may use the "Official Mail Logo" marking, *see* DSCC Opp'n Br. at 10–11, and Intervener States may prescribe their own regulations "with respect to the printing of ballot envelopes and mailing envelopes," *e.g.*, Mo. Rev. Stat. § 115.285. But States cannot control how *USPS* accepts, processes, or delivers election-related mail. *See* 39 U.S.C. § 401(2) (granting authority to Postal Service to "adopt, amend, and repeal" postal rules and regulations). Intervener States may not, for example, prohibit the U.S. Postal Service from transferring election mail that do not bear official election markings, EO § 3(b)(i), or from sending election mail from people who have not been enrolled in a state specific list, EO § 3(b)(iii). Intervener States are powerless to enact these and other additional safeguards that USPS may consider during the forthcoming rulemaking process. *See* 39 U.S.C. § 401(2).

DSCC Plaintiffs try to mischaracterize the Intervener States' interest here as seeking to monitor their "neighboring states' electoral processes." DSCC Opp'n Br. at 11. But this is incorrect. Intervener States want these mail ballot reforms to help "secure their [own] elections."

6

Intervener Br. at 13; *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) ("State[s] indisputably ha[ve] a compelling interest in preserving the integrity of [their] election process[es]." (quoting *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989))). That is a cognizable interest. *See id.* That it may also increase the integrity of their neighboring States' elections does not negate the Intervener States' cognizable interest in ensuring that mail ballots in their own jurisdictions are safely and securely handled by USPS. *See* Intervener Br. at 12.

### 3. States have a cognizable interest in ensuring the integrity of their own elections.

Dissatisfied with Intervener States' specific resource-related interests, DSCC Plaintiffs assert that States cannot assert a cognizable interest in the integrity of their own elections. DSCC Opp'n Br. at 11. But States "indisputably ha[ve] a compelling interest in preserving the integrity of [their] election process[es]." *Purcell*, 549 U.S. at 4 (quoting *Eu*, 489 U.S. at 231). Where federal actions directly affect the ability of States to ensure the integrity of their voter registration lists and the handling of mail ballots cast by their voters, States have a cognizable interest for purposes of intervention. *Cf. Dep't of Com.*, 588 U.S. at 766–67. And as previously explained, the reforms envisioned in the EO—which only the federal government can undertake—will help Intervener States secure the integrity of their voter registration lists and mail ballots. *See* Intervener Br. at 12.

In response, DSCC Plaintiffs cite inapt cases. For example, *One Wis. Inst., Inc. v. Nichol* addressed the ability of political candidates to assert an interest in secure elections—not States. 310 F.R.D. 394, 397 (W.D. Wis. 2015); *see also O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-cv-03747-NRN, 2021 WL 1662742, at *6–8 (D. Colo. Apr. 28, 2021) (collecting cases where candidates and voters lacked standing to challenge election integrity). Regardless, the Supreme Court recently recognized candidate standing to seek integrity measures, "regardless whether those

rules harm their electoral prospects or increase the cost of their campaigns." *Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 522–23 (2026).  Just as candidates "are not 'mere bystanders' in their own elections," *id.* (quoting *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025)), States are not either, *see Purcell*, 549 U.S. at 4.

DSCC Plaintiffs also suggest that because States "are free to implement measures to enforce their voter registration laws," that they lack an interest in the EO.  DSCC Opp'n Br. at 13. "But [plaintiffs] are mistaken; the availability of alternative relief does not deprive a [proposed intervener] of standing."  *Pennington v. Taylor*, 776 F. Supp. 3d 1118, 1145 (M.D. Ala. 2025) (citing *Cruz*, 596 U.S. at 298).  Rule 24(a) requires that Intervener States "claim[] *an* interest" relating to the EO.  Fed. R. Civ. P. 24(a) (emphasis added).  In demanding that Intervener States show that "their current methods for verifying citizenship are deficient," DSCC Opp'n Br. at 13, DSCC Plaintiffs impermissibly attempt to increase Intervener States' burden under Rule 24.  Rule 24 (or standing analysis) has never required this form of narrow tailoring, much less perfect tailoring.  *See, e.g.*, *Pennington*, 776 F. Supp. 3d at 1145.  Intervener States' "compelling interest in preserving the integrity of [their] election process[es]" and "preventing voter fraud" thus meets Rule 24(a)'s requirement.  *See Purcell*, 549 U.S. at 4 (quotation omitted).

### 4.    The Court should not limit Intervener States' ability to defend Section 3.

DSCC Plaintiffs argue that if Intervener States are permitted intervention, this Court should "limit" the States' involvement "to the defense of the EO provisions relevant to the recognized interest."  DSCC Opp'n Br. at 13–14 (attempting to cut off intervention to defend Sections 3(b)(iii) and 3(b)(iv)).

To begin, part of the problem in this case is that the parties do not know what Section 3 will lead to.  DSCC Plaintiffs are speculating about what postal regulations USPS will issue.  *See* DSCC Compl. ¶ 160–61 (Although "[t]he Order says nothing about how the USPS may compile

8

the 'Mail-In and Absentee Participation List,' or what 'enrollment' procedures for voters the USPS must develop . . . . [it] is a substantial and unjustified burden."). Intervener States want to defend the right of USPS to consider the full range of election integrity measures envisioned in the EO. Intervener States should not have to speculate about everything USPS *could* do under the EO in order to oppose Plaintiffs' lawsuit that would shut down consideration of *any* postal reforms related to mail voting.

Further, DSCC Plaintiffs offer no good reason for the Court to limit the scope of Intervener States' intervention. Doing so would only cause confusion and give rise to potential disputes down the line about what parts of the EO (or subsequent USPS regulations) Intervener States can be heard on. Imposing such burdens on Intervener States would be especially odd in a case where Plaintiffs do not have separate legal claims for each subsection of the EO, but challenge it en masse, *see* DSCC Compl. ¶¶ 106–72; NAACP Compl. ¶¶ 145–214, or by EO section, *see* LULAC Compl. ¶¶ 214–327. The right to intervene "depends on the specific claims that [Plaintiffs] make[] in [their] . . . Complaint." *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *see id.* at 707–11 (analyzing intervention by plaintiff's claims). Because Plaintiffs do not tailor their challenges to particular subsections of the EO in separate counts, Intervener States should not be forced to do so on defense.

Instead, the Court should follow the example of other courts, who have allowed full intervention on defense even when the would-be intervener defendant's alleged interest focused only on part of the lawsuit. For example, in *La Union del Pueblo Entero v. Abbott*, the Fifth Circuit granted full intervener-defendant status to Republican Party entities in a lawsuit challenging a wide range of Texas's election integrity provisions. 29 F.4th 299, 306 (5th Cir. 2022). The court granted full intervention to defend "in these proceedings" even though the Republican Committees only

9

articulated an interest in opposing the claims related to poll watchers. *See id.* The same approach would be warranted here—where, by comparison, Intervener States have articulated clear interests in most of the EO.

## C. Disposition of this action may impair the Intervener States' ability to protect their interests.

Neither Plaintiffs nor Defendants contest that Intervener States' interests will be impaired in Plaintiffs prevail in this case. *See* DSCC Opp'n Br. at 12–20 (only discussing impairment with cognizable interest); *see also* U.S. Resp. Br.; LULAC Resp. Br.; NAACP Resp. Br. To the extent that DSCC Plaintiffs argue that Intervener States' interest will impaired, they are simply repeating their merits argument that the EO will not enhance election integrity. "Whether the allegations are eventually proved is beside the point for [the Court] [is] now concerned only with the question of right to intervene and not with ultimate results on the merits." *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960) (Blackmun, J.); *see also Williams & Humbert Ltd. v. W & H Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988) ("An application to intervene should be viewed on the tendered pleadings—that is, whether those pleadings allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits."); *Newby v. Enron Corp.*, 443 F.3d 416, 420 (5th Cir. 2006) ("[T]he question of whether or not the Board may intervene is plainly independent from the underlying case."). The Court should therefore reject the DSCC Plaintiffs' invitation to prematurely wade into merits disputes. *See Williams & Humbert*, 840 F.2d at 75.

## D. The existing parties do not adequately represent the Intervener States' interests.

Plaintiffs and the United States suggest that, because Intervener States and the United States have the same "ultimate objective" of upholding the EO, the United States adequately represents the Intervener States' interests. DSCC Opp'n Br. at 15; *see also* U.S. Resp. Br. at 2

10

(stating that Intervener States "adequately represented by the United States" because they "intend[] to vigorously defend this suit").

Helpfully, the Supreme Court rejected this position in *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).  There, The Supreme Court allowed a union member to intervene as a plaintiff in a suit brought by the Secretary of Labor to void a union election.  *Id.* at 529–30.  As relevant here, both the union member and the federal government had the *exact same litigation object*—and yet the Supreme Court found that the federal government did not adequately represent the union member.  *Id.* at 537–39.  As the Supreme Court explained, would-be interveners need only "show[] that representation of [their] interest[s] '*may be*' inadequate."  *Id.* at 538 n.10 (emphasis added).  This burden is "minimal."  *Id.*; *accord Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) ("permissive standard").  In *Trbovich* itself, even though the federal government and the union member had the same object in the suit, they did not have the same *interests* because the federal government's obligation to protect the public interest "transcend[ed] the narrower interest of the complaining union member."  *Trbovich*, 404 U.S. at 538–39.  That could result in the two parties not taking "the same approach to the conduct of the litigation."  *Id.* at 539.

So too here.  The federal government does not share the unique and narrower interests of Intervener States in obtaining election integrity resources.  The federal government's interest thus "transcends the narrower interest" of Intervener States.  *Id.* at 539.  And because the federal government and Intervener States often compete—under the U.S. Constitution's Elections Clause—for authority over federal elections, they are *highly unlikely* to take "the same approach to the conduct of the litigation."  *Id.*  *Trbovich* thus requires intervention as of right.

11

In response, DSCC Plaintiffs' argument invokes the "presumption of adequate representation exist[ing] if both the intervenor and existing party have the same ultimate objective." DSCC Opp'n Br. at 14–15 (quotation omitted).[2] But the D.C. Circuit has rejected applying any such presumption to intervention motions when the existing defendant is a government litigant. *See Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736–37 (D.C. Cir. 2003). As the D.C. Circuit explained, governmental entities often "do not adequately represent the interests of aspiring intervenors," even when the aspiring intervenor may "itself [be] a governmental entity." *Id.*

Even if there were some kind of presumption of adequate representation based on alignment of objectives—there is not, *see Trbovich*, 404 U.S. at 538–39—Intervener States would overcome that presumption here. "[T]he public interest the federal government is obligated to represent may differ from the state government's interests." *See W. Watersheds Project v. Interior Bd. of Land Appeals*, No. 1:19-CV-95-TS-PMW, 2019 WL 5191244, at *3 (D. Utah Oct. 15, 2019); *accord Fund for Animals*, 322 F.3d at 735–37. The federal government and Intervener States "may well have honest disagreements . . . on legal and factual matters." *Costle*, 561 F.2d at 912. That is certainly true here. Intervener States are largely focused on defending Sections 2 and 3 of the

---

[2] To Intervener States' knowledge, the D.C. Circuit has only once (and many years ago) applied a "presumption of adequate representation"—in a case where the existing litigant was a State and the proposed intervener was "a party, a citizen, or subdivision of that state." *Env't Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979). That is, of course, not this case. *Cf. Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) (recognizing system of "dual sovereignty" between the federal and state governments).

Even assuming the D.C. Circuit still recognizes a presumption of adequate representation, it may no longer be good law. *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) (reserving the question of "whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance").

12

EO—because they provide valuable resources to the States, *see* Intervener Br. at 14–15—whereas Defendants are obligated to defend the entire EO, *see* U.S. Resp. Br. at 2. And even in defending Sections 2 and 3, Intervener States and the federal government likely disagree over the division of authority between the States and the federal government in federal elections. *See* Intervener Br. at 15. In a case about the division of authority between the federal government and the States over elections, the federal government does not adequately represent Intervener States. *Cf. Ex parte Siebold*, 100 U.S. 371, 384–85 (1879) ("The peculiarity of the case consists in the concurrent authority of the two sovereignties, State and National, over the same subject-matter.").

For all these reasons, the Court should grant intervention as of right.

## II.    Alternatively, the Court should grant permissive intervention under Rule 24(b).

Even if the Court disagrees on intervention as of right, the Court should still grant permissive intervention under Rule 24(b). The Court may grant permissive intervention "[o]n timely motion" when the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Tellingly, the other parties barely contest permissive intervention—because there is no good reason to deny it. *See* U.S. Resp. Br. at 2 (no opposition); LULAC Resp. Br. at 2 (no opposition and even suggesting Intervener States should be allowed to intervene in a closely related case); NAACP Resp. Br. at 2 (no opposition).

Intervener States clearly meet the requirements of Rule 24(b). No one contests that Intervener States have a "defense that shares with the main action a common question of law or fact." *Id.* And DSCC Plaintiffs contest timeliness only with respect to the preliminary injunction briefing, *see* DSCC Opp'n Br. at 17–18—and their arguments on that fail for the reasons provided above. *See supra* at 8–9.

Finally, permissive intervention would prejudice no party. The only thing DSCC Plaintiffs can point to is extra briefs and arguments to which they may wish to respond. DSCC Opp'n Br.

13

at 4–5.  But this is not prejudicial within the meaning of Rule 24(b).  *See Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994).  And permissive intervention will cause no delays, because Intervener States have committed to abiding by all existing deadlines (including filing a proposed opposition to preliminary injunction on the same date as the federal defendants).  Ultimately, allowing Intervener States to join fully now is easier and less prejudicial to all parties than forcing Intervener States to take an interlocutory appeal.  If Intervener States are wrongly kept out of the case, and then allowed to intervene later, *that* could cause delays.  *See Jacobson v. Detzner*, No. 4:18-CV-262-MW/CAS, 2018 WL 10509488, at *1 (N.D. Fla. July 1, 2018) ("[D]enying Proposed Intervenors' motion opens the door to delaying the adjudication of this case's merits for months— if not longer").  Permissive intervention avoids any such risk.

## CONCLUSION

The Court should grant intervention as of right.  At a minimum, the Court should grant permissive intervention

Date: April 27, 2026                                       Respectfully submitted,

**STEVE MARSHALL**                                **CATHERINE L. HANAWAY**
ALABAMA ATTORNEY GENERAL                          MISSOURI ATTORNEY GENERAL

*/s/ A. Barrett Bowdre*                           */s/ Louis J. Capozzi III*
A. Barrett Bowdre*                                Louis J. Capozzi III, DC Bar No. 90018764
  *Solicitor General*                               *Solicitor General*
STATE OF ALABAMA                                  J. Michael Patton*
OFFICE OF THE ATTORNEY GENERAL                      *Deputy Solicitor General*
501 Washington Avenue                             Benjamin S. Gilberg*
Montgomery, Alabama 36104                           *Deputy Solicitor General*
Telephone: (334) 353-8892                         Missouri Attorney General's Office
Fax: (334) 353-8400                               815 Olive Street, Suite 200
Barrett.Bowdre@AlabamaAG.gov                      St. Louis, MO 63101
                                                  Tel. (573) 645-9662
                                                  Fax (573) 751-0774
                                                  Louis.Capozzi@ago.mo.gov
                                                  Michael.Patton@ago.mo.gov
                                                  Benjamin.Gilberg@ago.mo.gov

**JAMES UTHMEIER**                                **THEODORE E. ROKITA**
FLORIDA ATTORNEY GENERAL                          INDIANA ATTORNEY GENERAL

*/s/ David M.S. Dewhirst*                         /s/ *James A. Barta*
David M.S. Dewhirst*                              James. A Barta, DC Bar No. 1032613
  *Solicitor General*                               *Solicitor General*
Jason J. Muehlhoff**                              Office of the Indiana Attorney General
  *Chief Deputy Solicitor General*                302 W. Washington Street
Office of the Attorney General                    IGC South, Fifth Floor
PL-01, The Capitol                                Indianapolis, IN 46204-2770
Tallahassee, FL 32399-1050                        Phone: (317) 232-0709
(850) 414-3300                                    Fax: (317) 232-7979
david.dewhirst@myfloridalegal.com                 James.Barta@atg.in.gov
jason.muehlhoff@myfloridalegal.com

15

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/ James R. Rodriguez*
James R. Rodriguez*
*Assistant Attorney General*
Kansas Office of the Attorney General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov

**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

*/s/ Christian B. Corrigan*
Christian B. Corrigan*
 *Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov

**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*
 *Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ELIZABETH B. MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
 *Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett*
 *Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

**ALAN WILSON**
SOUTH CAROLINA ATTORNEY GENERAL

*/s/ Joseph D. Spate*
Joseph D. Spate*
 *Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ Grant Flynn
Grant Flynn**
  *Assistant Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889,
Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: grant.flynn@state.sd.us

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

/s/ David Bryant
David Bryant**
  *Senior Special Counsel*
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

* *Government attorney admitted under Local Rule 83.2(e)*
** *Pro hac vice forthcoming*

17

## CERTIFICATE OF SERVICE

I certify that on April 27, 2026, the above was filed electronically through the Court's electronic filing system to be serve electronically on counsel for the parties.

/s/ *Louis J. Capozzi III*

18