**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, et al., | |
| *Plaintiffs,* | |
| v. | Case No. 1:26-cv-01114-CJN |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| *Defendants.* | |

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., | |
| *Plaintiffs,* | |
| v. | Case No. 1:26-cv-01132-CJN |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., | |
| *Defendants.* | |

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., | |
| *Plaintiffs,* | |
| v. | Case No. 1:26-cv-01151-CJN |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| *Defendants.* | |

2

**BRIEF *AMICUS CURIAE* OF**
**AMERICA'S FUTURE AND**
**CITIZENS UNITED**
**IN OPPOSITION TO**
**PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION**

Michael Boos
  Citizens United
  1006 Pennsylvania Avenue SE
  Washington, DC  20003

Patrick M. McSweeney
  3358 John Tree Hill Rd.
  Powhatan, VA  23139

Rick Boyer
  Integrity Law Firm
  P.O. Box 10953
  Lynchburg, VA  24506

William J. Olson (D.C. Bar # 233833)
Jeremiah L. Morgan (D.C. Bar # 1012943)
  William J. Olson, P.C.
  370 Maple Avenue West, Suite 4
  Vienna, VA  22180-5615
  (703) 356-5070
  wjo@mindspring.com
Counsel for *Amici Curiae*
Dated: May 1, 2026

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTEREST OF *AMICI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.     THE DSCC PLAINTIFFS PREMISE THEIR CLAIM ON FALSE AND UNPROVEN
       ALLEGATIONS ABOUT PRESIDENT TRUMP'S MOTIVATIONS. . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PRESIDENT TRUMP HAS AUTHORITY UNDER THE TAKE CARE CLAUSE TO CREATE
       A NATIONAL ELIGIBLE VOTER LIST. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.     Modern Law Demonstrates the President's Authority . . . . . . . . . . . . . . . . . . . . . 6

       B.     The President's Authority to Execute the Law Has Largely Gone
              Unquestioned until President Trump took Office. . . . . . . . . . . . . . . . . . . . . . . . 11

III.   THE RISK OF NONCITIZEN MAIL VOTING IS NEITHER SPECULATIVE NOR
       HYPOTHETICAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.    THE CREATION OF A NATIONAL ELIGIBLE VOTER LIST IS ESSENTIAL TO THE
       IMPLEMENTATION OF EXISTING FEDERAL STATUTES AS WELL AS LEGISLATION
       PENDING IN THE U.S. SENATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ii

**TABLE OF AUTHORITIES**

Page

**CONSTITUTION**
Article II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES**
18 U.S.C. § 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14
18 U.S.C. § 611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-9, 11, 14
18 U.S.C. § 1015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14
28 U.S.C. § 547 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 14
52 U.S.C. § 20511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Illegal Immigration Reform and Immigrant Responsibility Act of 1996 . . . . . . . . . . . . . . . . . . . 7
National Voter Registration Act of 1993 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**CASES**
*Ameron, Inc. v. United States Army Corps of Engineers*, 809 F.2d 979 (3d Cir. 1986). . . . . . . . . *8*
*Baker v. Carr*, 369 U.S. 186 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Buckley v. Valeo*, 424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*In re Neagle*, 135 U.S. 1 (1890) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Kendall v. United States*, 37 U.S. 524 (1838) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Myers v. United States*, 272 U.S. 52 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Printz v. United States*, 521 U.S. 898 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020) . . . . . . . . . . . . . . . . . . . 7
*United States v. Nixon*, 418 U.S. 683 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*United States v. Tingley*, 30 U.S. 115 (1831) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
*Wayte v. United States*, 470 U.S. 598 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**MISCELLANEOUS**
John Adams, 1 Defence of the Constitutions of the United States (Da Capo Press ed., 1971)
(1787) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
1 Annals of Cong. (Gales & Seaton eds., 1789) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
"Building Confidence in U.S. Elections:  Report of the Commission on Federal Election
Reform," *American University* (Sept. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Kathleen Bush-Joseph, "Explainer:  Noncitizen Voting in U.S. Elections," *Migration
Policy Institute* (Sept. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
EO 14,399, "Ensuring Citizenship Verification and Integrity in Federal Elections,"
March 31, 2026 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4
"Legislative Approaches to Ensuring Only Citizens Vote," *National Conference of State
Legislatures* (updated Apr. 27, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*M.I.T. Election Data & Sci. Lab*, "Voting by mail and absentee voting" (last updated
Feb. 28, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

iii

Saikrishna Prakash, "The Essential Meaning of Executive Power," 2003 U. Ill. L. Rev. 701
    (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Jesse Richman and David Earnest, "Could non-citizens decide the November election?"
    *Washington Post* (Oct. 24, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
SAVE Act, H.R. 22 (119th Congress) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
SAVE America Act, H.R. 7296 (119th Congress) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
SAVE America Act, S. 1383 (119th Congress) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
"Schumer on SAVE America Act," *C-SPAN* (Mar. 17, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . 4
U.S. Attorney's Manual, Criminal Resource Manual, Section 1949 . . . . . . . . . . . . . . . . . . . . . 7
4 Works of Alexander Hamilton, Henry Cabot Lodge, ed. (1904) . . . . . . . . . . . . . . . . . . . . . . . 12

## INTEREST OF *AMICI*[1]

The interest of the *amici curiae* is set out in the accompanying motion for leave to file.

## STATEMENT OF THE CASE

Before the court are three consolidated challenges to President Trump's Executive Order ("EO") 14,399, titled, "Ensuring Citizenship Verification and Integrity in Federal Elections," 91 *Fed. Reg.* 17125 (Apr. 3, 2026):  *DSCC, et al. v. Trump, et al.* (Case No. 26-cv-1114) ("*DSCC*"); *League of United Latin American Citizens, et al. v. Executive Office of the President, et al.* (Case No. 26-cv-1132) ("*LULAC*"); and *NAACP, et al. v. Trump, et al.* (Case No. 26-cv-1151) ("*NAACP*").

This *amicus* brief focuses on the *DSCC* case, which was filed by three national Democratic political committees, the Democratic Governor's Association, Senator Chuck Schumer, and Congressman Hakeem Jeffries.[2]

The challenged EO contains a variety of provisions regarding federal elections, including a directive to the Department of Homeland Security ("DHS") to compile a "State Citizenship List" and a directive to the United States Postal Service to propose rules regulating the use of mail-in and absentee ballots.

---

[1] No party's counsel authored the brief in whole or in part.  No party or party's counsel contributed money that was intended to fund preparing or submitting the brief.  No person other than these *amici curiae*, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

[2] Plaintiffs in *LULAC* include League of United Latin American Citizens, Safe Families Initiative, and Arizona Students Association.  Plaintiffs in *NAACP* include National Association for the Advancement of Colored People, BVM Capacity Building Institute, Inc., Black Voters Matter Fund, Inc., Common Cause, and Common Cause Education Fund.

2

## ARGUMENT

The DSCC Plaintiffs' memorandum in support of its motion for preliminary injunction argues that it meets the four factors of the preliminary injunction standard.  *See* DSCC Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction (Apr. 17, 2026) (Doc. #55) ("Memorandum"), at 22.  This *amicus* brief focuses on the "first and most important factor," which is likelihood of success on the merits.  *Amici* assert that Plaintiffs have not demonstrated such likelihood of success for the following reasons.

## I.    THE DSCC PLAINTIFFS PREMISE THEIR CLAIM ON FALSE AND UNPROVEN ALLEGATIONS ABOUT PRESIDENT TRUMP'S MOTIVATIONS.

The DSCC Plaintiffs describe themselves as and base their standing on their status as partisan Democrat organizations and elected officials.  Therefore, it may be no surprise that the DSCC Complaint (Doc #1) ("Compl.") and Memorandum are replete with hyperbolic political accusations against President Trump and his motivations.  Plaintiffs accuse the President of:

- trying to "rewrite election rules for his own perceived partisan advantage" (Memorandum at 1);

- a "desire for absolute power" (Compl. at ¶2);

- being a "menace ... to ordered liberty" (*id.*);

- promoting "self-aggrandizing election policies" (*id.* at ¶4);

- "run[ning] roughshod over established protections for voters" who prefer to vote by mail, and "threaten[ing] to unjustifiably disenfranchise eligible voters" *(id.* at ¶5);

3

- using "unlawful attempts to upturn the electoral playing field in his own favor" (*id*. at ¶7); and

- attempts to "frustrate the fair administration of federal elections" (*id.*).

The DSCC Plaintiffs allege President Trump's EO "would corrode self-government like an acid." *Id.* at ¶2. They accuse him of "attacks" on the separation of powers, and "manipulat[ing]" that separation "at [his] discretion." *Id.* at ¶3. Plaintiffs also attempt to relitigate the 2020 election, claiming that President Trump has "peddled false claims" in a "blizzard of lies." *Id.* at ¶53. The EO, they claim, is an "antidemocratic agenda," aimed at "burdening and disenfranchising vulnerable voters." *Id.* at ¶56. It is a "unilateral power-grab" (*id*. at ¶79) with "catastrophic effects on voters." *Id.* at ¶86. The EO, they suggest without evidence, is designed to make sure Democrats cannot vote at all, "potentially disenfranchising them altogether." *Id.* at ¶90.

The DSCC Plaintiffs claim in Paragraph 7 of their Complaint that they will be "severely harmed" if mail-in voting is restricted to American citizens. Thus, Plaintiffs' Complaint could be read to make the self-defeating allegation that the Plaintiffs and the Democratic Party generally would be "severely harmed" if voting is restricted to those lawfully entitled to vote under federal law. *See* Section II, *infra*.

Although the superheated tone of the Complaint implies that the EO would eliminate mail-in voting, that is not what the EO says. Instead, it would eliminate mail-in voting by persons unlawfully registered. The act of actually comparing lists of all those registered or requesting to vote with a list of those who are citizens entitled to vote is entirely reasonable, but that is what Plaintiffs claim "severely harms" the Democratic Party. This position seems entirely

4

consistent with the position of Plaintiff Schumer, who stated on March 17, 2026: "Twenty million, maybe more people, when they show up to vote … will be told, you're off the rolls. That's the problem with the bill."[3]

Plaintiffs make these outlandish allegations that the President is acting in a partisan fashion to deny some citizens the right to vote, in order to establish the predicate for their demand for injunctive relief. However, the EO is predicated entirely on the President's expressed desire to ensure that all voters in federal elections are American citizens, and none others.[4] Its title of the EO is "Ensuring Citizenship Verification and Integrity in Federal Elections." Section 1 of the EO explains its "Purpose and Policy" as follows:

> The right to vote in Federal elections is reserved exclusively for **citizens** of the United States under the Constitution and Federal law. Federal statutes explicitly prohibit **non-citizens** from registering to vote or voting in Federal elections and impose criminal penalties for violations. (18 U.S.C. 241; 18 U.S.C. 611; 18 U.S.C. 1015; and 52 U.S.C. 20511).
>
> The Federal Government has an unavoidable **duty** under Article II of the Constitution of the United States **to enforce Federal law**, which includes preventing violations of Federal criminal law and maintaining public confidence in election outcomes.... [EO 14,399 (emphasis added).]

EO Section 2(b) provides the method to develop a list of persons "eligible to vote in a Federal election" which could be called a **national eligible voter list** for the purpose of enforcing the federal law banning non-U.S. citizens from voting in federal elections (discussed in Section II, *infra*).

---

[3]  Schumer on SAVE America Act, *C-SPAN* (Mar. 17, 2026).

[4]  The federal ban on voting by noncitizens is discussed in Section II, *infra*.

5

The EO, therefore, is designed to protect the integrity of all lawful votes, ensuring that the lawful votes of all American citizens will not be diluted by votes illegally cast by noncitizens. The U.S. Supreme Court has made clear:  "A citizen's **right to a vote** free of arbitrary impairment by state action has been judicially recognized as a right **secured by the Constitution**, when such impairment resulted from **dilution by a false tally**...." *Baker v. Carr*, 369 U.S. 186, 208 (1962) (emphasis added).

Since the ban on voting by noncitizens has criminal sanctions, the EO was designed to carry out the power and duty of the Executive Branch to enforce that federal criminal ban.  Only the U.S. Department of Justice, under the authority of the President, can prosecute persons for the violation of federal laws.  28 U.S.C. § 547 provides, "Except as otherwise provided by law, each United States attorney, within his district, shall ... prosecute for all offenses against the United States."

Additionally, the unspoken and unproven premise of the Complaint by the DSCC Plaintiffs is that efforts to cull noncitizens from the voter list constitutes an attack on their political interests, giving them standing.  A finding of standing on that basis would require the Plaintiffs to demonstrate that noncitizens will primarily vote for Democrat candidates, which has not been established.  Therefore, Plaintiffs' allegations about partisan motivation and partisan effect are speculative and cannot provide the basis for injunctive relief.  Moreover, if the DSCC Plaintiffs could actually show they would be particularly harmed by culling noncitizen voters from the lists, that too would defeat the request for injunctive relief, as it would require the Court to facilitate the commission of a crime.

6

Lastly, DSCC Plaintiffs in Paragraph 1 of their Complaint allege that President Trump demonstrated that he wanted to create a rigged voter system when he said that under his plan, Republicans will "never lose a race — for 50 years." He also said: "We want voter ID, we want proof of citizenship, and we don't want mail-in ballots." Read in context, it is clear that President Trump has consistently stated that he believes voter fraud aids Democrats and that if **only citizens** voted, in accordance with federal law, corrupt elections would be ended. Eliminating methods for voter fraud is his objective. President Trump's goal to minimize voting by mail is entirely consistent with the conclusion of the Commission on Federal Election Reform, also known as the Carter-Baker Commission, that "[a]bsentee ballots remain the largest source of potential voter fraud." "Building Confidence in U.S. Elections: Report of the Commission on Federal Election Reform" at 46, *American University* (Sept. 2005).

## II.    PRESIDENT TRUMP HAS AUTHORITY UNDER THE TAKE CARE CLAUSE TO CREATE A NATIONAL ELIGIBLE VOTER LIST.

### A.    Modern Law Demonstrates the President's Authority.

Not once in the DSCC Complaint do the DSCC Plaintiffs even acknowledge the existence of 18 U.S.C. § 611, which prohibits noncitizens from voting in federal elections, and there was only a single passing reference of it on the last page of their Memorandum. *See also* 18 U.S.C. §§ 241 and 1015. This omission appears strategic, as § 611 is critical as a predicate for the President's authority to execute the law. To carry out the President's constitutional duty to take care that such laws are faithfully executed, he "is bound to avail himself of every appropriate means not forbidden by law." *United States v. Tingey*, 30 U.S. 115, 122 (1831).

7

Plaintiffs correctly observe that voter qualifications have historically been a question of state law, although the Framers expressly authorized Congress with the power to override state law on this subject.  *See* Compl. at 2; *see also* Memorandum at 1.  By 1924, all states barred noncitizens from voting in federal elections,[5] but Congress wanted to ensure that no state would stray from that rule, and therefore, in 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which was signed into law by President Clinton.

The IIRIRA imposed a federal ban on noncitizens voting in federal elections.[6] Additionally, that law imposed up to a one-year prison sentence for aliens attempting to do so, now codified at 18 U.S.C. § 611.[7]  Enforcement of that federal law falls to the President.  As the Supreme Court has noted, "Article II provides that '[t]he executive Power shall be vested in a President,' who must 'take Care that the Laws be faithfully executed.'  Art. II, §1, cl. 1; *id*., §3. The entire 'executive Power' belongs to the President alone."  *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 213 (2020).

Plaintiffs make the unremarkable argument that the President cannot enforce laws not on the books.  But the IIRIRA is on the books, as the DSCC Plaintiffs well know.[8]  It states:

> It shall be **unlawful for any alien to vote** in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President,

---

[5] Kathleen Bush-Joseph, "Explainer: Noncitizen Voting in U.S. Elections," *Migration Policy Institute* (Sept. 2024).

[6] "Legislative Approaches to Ensuring Only Citizens Vote," *National Conference of State Legislatures* (updated Apr. 27, 2026).

[7] *See* Section 1949, U.S. Attorney's Manual, Criminal Resource Manual.

[8] *See* Memorandum at 45 ("It is a crime to vote as a noncitizen, and the consequences for doing so are severe.").

8

> Presidential elector, Member of the Senate, Member of the House of
> Representatives....  [18 U.S.C. § 611(a) (emphasis added).]

Where a law is on the books, and Congress has not dictated how it shall be enforced (as here), the

President has wide discretion.  "[O]nce Congress has delegated authority to the executive, the

executive must be allowed to operate freely within the sphere of discretion created for him by

that legislation."  *Ameron, Inc. v. United States Army Corps of Engineers*, 809 F.2d 979, 993 (3d

Cir. 1986).

Indeed, the Supreme Court has endorsed the inherent authority for the President to

enforce federal law where the governing statute does not prohibit it.  The High Court explained

that authority includes efforts to guard against future violations of the law:

> if the President or the Postmaster General is advised that the mails of the United
> States, possibly carrying treasure, are liable to be robbed and the mail carriers
> assaulted and murdered in any particular region of country, who can doubt the
> authority of the President or of one of the executive departments under him to
> make an order **for the protection of the mail** and of the persons and lives of its
> carriers.  [*In re Neagle*, 135 U.S. 1, 65 (1890) (emphasis added).]

The Court viewed this authority as inherent in the responsibility to "take care that the laws be

faithfully enforced."

While the "Take Care Clause" has primarily been litigated in the context of removal of

executive officers, it is noteworthy that in the seminal case delineating the removal power, the

Court found that power to exist even where only implicit, since removal is not explicitly

mentioned in Article II:

> As he is charged specifically to take care that they be faithfully executed, **the
> reasonable implication, even in the absence of express words**, was that as part
> of his executive power he should select those who were to act for him under his
> direction in the execution of the laws.  The further implication must be, **in the
> absence of any express limitation respecting removals**, that as his selection of

9

> administrative officers is essential to the execution of the laws by him, so must be his power of removing those for whom he can not continue to be responsible. [*Myers v. United States*, 272 U.S. 52, 117 (1926) (emphasis added).]

Likewise, the President has the implied power to act through lesser officers to ensure that the ban on alien voting is enforced.

In 1838, the Supreme Court held that "the obligation imposed on the President to see the laws faithfully executed" did not "impl[y] a power to forbid their execution." *Kendall v. United States*, 37 U.S. 524, 613 (1838). The President makes no claim of a power to forbid execution of any law, only that he possesses the inherent power endorsed in *Neagle* to enforce the law where Congress is silent as to enforcement.

Likewise, criminal prosecution is the domain of the executive. IIRIRA criminalized violations of that law. 18 U.S.C. § 611. "Under the authority of Art. II, § 2, Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government. 28 U.S.C. § 516." *United States v. Nixon*, 418 U.S. 683, 694 (1974).

Plaintiffs attempt to narrow this case to present a pure matter of state authority, but that effort disregards the fact that the President's order involves the investigation and prosecution of federal crimes, including the federal ban on voting by noncitizens — the very statute the Plaintiffs barely mention. The states are the primary governments responsible for determining voting qualifications — except where, as here, they are pre-empted by Congress. But the states have no authority to prosecute federal election law violations. 28 U.S.C. § 547 provides, "Except as otherwise provided by law, each United States attorney, within his district, shall ... prosecute for all offenses against the United States." There is no provision for states to undertake such prosecutions. Federal election law violations, such as criminal voting by aliens, are the peculiar

10

province of the federal executive, and certainly not the states:  "it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'"  *Buckley v. Valeo*, 424 U.S. 1, 138 (1976).

The Court has further made clear that it cannot remove the enforcement power from the President and transfer it elsewhere.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992).  In striking down the Brady Bill's "conscription" of state law enforcement agencies to enforce the law, the Court noted that "the power of the President would be subject to reduction, if Congress could act as effectively without the President as with him, by simply requiring state officers to execute its laws."  *Printz v. United States*, 521 U.S. 898, 923 (1997).

Plaintiffs in essence ask this Court to interfere in the core executive function of the prosecution of federal crimes.  But just like the states, the courts have no role in determining whether to prosecute federal election law violations and no authority to prevent the executive from doing so.  "In our criminal justice system, the Government retains broad discretion as to whom to prosecute.  [So] long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely **in his discretion**.  This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review."  *Wayte v. United States*, 470 U.S. 598, 607 (1985) (emphasis added; internal quotes and citations omitted).  Plaintiffs' request that this Court serve as both arbiter and prosecutor is impermissible.

11

**B.      The President's Authority to Execute the Law Has Largely Gone Unquestioned until President Trump Took Office.**

Longstanding practice since President Washington confirms the authority of the President to execute the laws.  "In a letter to Alexander Hamilton regarding the Whiskey Rebellion, Washington observed '[i]t is my duty to see the Laws executed:  to permit them to be trampled upon with impunity would be repugnant to it.'"  Saikrishna Prakash, "The Essential Meaning of Executive Power," 2003 U. Ill. L. Rev. 701, 725 (2003) (quoting G. Washington, "Letter to Alexander Hamilton" (Sept. 7, 1792), in 32 Writings of Washington at 143-44, John C. Fitzpatrick, ed. (1939)).

> Several days later, Washington issued a public proclamation ordering ... officers to bring the tax dodgers to justice, citing his "particular duty" to take care that the laws be faithfully executed.  When that proclamation proved ineffective, Washington called forth the state militia units to suppress the Whiskey Rebellion, once again citing his "high and irresistible duty, consigned ... by the Constitution, 'to take care that the laws be faithfully executed.'"  [*Id*. at 725.]

Our second President, John Adams, wrote that "[t]he executive power is properly the government; the laws are a dead letter until an administration begins to carry them into execution."[9]  Prior to President Trump's EO, 18 U.S.C. § 611 may have been on the books as a law, but it was a "dead letter."  Indeed, Plaintiffs' entire complaint is predicated on it remaining so.

President Washington's Treasury Secretary Alexander Hamilton, one of the authors of the Federalist Papers, wrote, "By virtue of [the Take Care] clause, [t]he President is the Constitutional Executor of the laws....  He who is to execute the laws must first judge for himself

---

[9] John Adams, I Defence of the Constitutions of the United States at 372 (Da Capo Press ed., 1971) (1787).

12

of their meaning."[10]  Another author of the <u>Federalist Papers</u>, James Madison, after assuming the

presidency, wrote, "If the Constitution has invested all Executive power in the President, I

venture to assert that the Legislature has no right to diminish or modify his Executive authority"

already granted by the Constitution.[11]

James Wilson, a Washington appointee to the Supreme Court, was the first law professor

in America under the Constitution, and the author of the seminal early treatise, <u>Lectures on Law</u>.

In his chapter on executive power, "[t]he 'first power and duty' that Wilson mentioned was the

president's faithful execution duty."  *Id.* at 798.

Plaintiffs' hyperbolic and myopic view of the President's authority cannot withstand a

review of the text, history, and tradition of the Take Care Clause.  President Trump's EO is

within his authority, as demonstrated by Founding-era history and practice.

## III.    THE RISK OF NONCITIZEN MAIL VOTING IS NEITHER SPECULATIVE NOR HYPOTHETICAL.

The DSCC Plaintiffs cite an MIT study which claims that "documented instances of fraud

related to [voting by mail] VBM are rare."  Memorandum at 8.  They conveniently fail to quote

the next sentence, which reads, "[h]owever, even many scholars who argue that fraud is generally

rare agree that **fraud with VBM voting seems to be more frequent than with in-person**

**voting**."  *M.I.T. Election Data & Sci. Lab*, "Voting by mail and absentee voting" (last updated

Feb. 28, 2024) (emphasis added).  In essence, Plaintiffs argue that there are not "too many"

illegal votes, so this Court should enjoin the effort to stop them.  *See* Memorandum at 44-45

---

[10]  Henry Cabot Lodge, ed., 4 <u>Works of Alexander Hamilton</u> at 444 (1904).

[11]  1 <u>Annals of Cong.</u> at 463 (Gales & Seaton eds., 1789).

13

("there is similarly 'no credible evidence of material numbers of noncitizens voting in U.S. elections.'").

They likewise claim the existence of "other studies" that supposedly show that mail-in vote fraud is "rare." Compl. at ¶38. But they cite no such studies. On the other hand, a 2014 study by professors Jesse Richman and David Earnest, and based on more than 80,000 survey contacts by Harvard University in 2008 and 2010, found that 14 percent of noncitizens who were willing to respond to the survey stated that they were in fact registered to vote.[12] Notably, these numbers reflect only aliens willing to admit to the researchers that they had committed a federal crime, and are thus likely quite underreported. More than 80 percent of those noncitizen respondents indicated that they had voted for Barack Obama, the Democrat candidate, in the 2008 election. *Id.* After assessing the results, the professors concluded it is likely that fully "6.4 percent of non-citizens voted in 2008." *Id.* The professors note that "[i]t is also possible that non-citizen votes were responsible for Obama's 2008 victory in North Carolina. Obama won the state by 14,177 votes, so a turnout by 5.1 percent of North Carolina's adult non-citizens would have provided this victory margin." *Id.*

In effect, Plaintiffs seek injunctive relief based on the notion that they will be "severely harmed" if this Court bars the President from trying to turn off the valve of illegal, noncitizen voters. This is a stunning predicate on which to demonstrate standing and seek injunctive relief.

---

[12] Jesse Richman and David Earnest, "Could non-citizens decide the November election?" *Washington Post* (Oct. 24, 2014).

14

**IV.   THE CREATION OF A NATIONAL ELIGIBLE VOTER LIST IS ESSENTIAL TO THE IMPLEMENTATION OF EXISTING FEDERAL STATUTES AS WELL AS LEGISLATION PENDING IN THE U.S. SENATE.**

The DSCC Plaintiffs assert that the President's Executive Order was issued due to Congress' unwillingness to enact federal legislation.  Memorandum at 23, n.7.  These Plaintiffs appear to believe that in the absence of additional federal legislation, the President has no authority to act.  However, the DSCC Plaintiffs never address the federal legislation which exists.  For the reasons stated above, these *amici* submit that the President needs no further authority to create a nationwide list of eligible voters.  Ordering the preparation of a national eligible voter list is within his authority to take care that 18 U.S.C. §§ 241, 611, and 1015, 28 U.S.C. § 547, and 52 U.S.C. § 20511 are faithfully executed.  Such a list also would be essential to the execution of the SAVE legislation that is currently pending in the U.S. Senate and could be enacted at any time.

Now pending in the U.S. Senate is a bill introduced by Congressman Chip Roy (R-TX) designed to ensure that voters in federal elections are U.S. citizens.[13]  The SAVE America Act (short for "Safeguard American Voter Eligibility Act"), H.R. 7296 (119th Congress), was introduced on January 30, 2026.  This bill amends the "National Voter Registration Act of 1993" (also known as the "Motor Voter" law).  It passed the House on February 11, 2026, by a vote of 218-213 (with one Democrat voting yes), as an amendment to a Senate bill, S. 1383.  It is being actively considered by the U.S. Senate.

---

[13]  The SAVE America Act is a refinement on H.R. 22, the SAVE Act (short for "Safeguard American Voter Eligibility Act"), which also was introduced by Congressman Roy. It passed the House on April 10, 2025 by a vote of 220 to 208, with four Democrats voting yes.

15

Under this bill, states would be prohibited from accepting or processing voter registration applications for federal elections unless the applicant provides documentary proof of U.S. citizenship at the time of application.  Additionally, voters would be required to show a valid photo ID to vote.

For purposes relevant here, states would be required to take ongoing affirmative steps to ensure only citizens are registered, including using Department of Homeland Security and Social Security Administration data to identify and remove noncitizens.

The Congressional Research Service Summary of S. 1383 explains:

Within 30 days of the bill's enactment, each state must take affirmative steps on an ongoing basis to ensure that only U.S. citizens are registered to vote, which shall include establishing a program to identify individuals who are not U.S. citizens using information supplied by certain sources.  Further, each state must submit its complete official list of eligible voters to the Department of Homeland Security for comparison with the Systematic Alien Verification for Entitlements system, which is used to verify immigration status.  Individuals who are identified as noncitizens must be given the opportunity to provide documentary proof of U.S. citizenship.  Additionally, states must remove noncitizens from their official lists of eligible voters.[14]

---

[14]  Bill Summary, "Passed House (02/11/2026)," *Congress.gov*.  The text provides: "(4) State requirements. – Not later than 30 days after the date of the enactment of this subsection:

"(A) Each State shall take affirmative steps, on an ongoing basis, to ensure that only United States citizens are registered to vote under the provisions of this Act, and such affirmative steps shall include the establishment of a program described in subparagraphs (B) and (C).

"(B) Each State shall submit the complete, official list of individuals registered as eligible voters for Federal office in the State to the Department of Homeland Security for comparison through the Systematic Alien Verification for Entitlements ('SAVE') system for the purposes of identifying individuals who are not citizens of the United States and taking the necessary steps to remove such individuals who are not citizens from the official list, after notice is given to such individuals and such individuals are given the opportunity to provide documentary proof of United States citizenship, but a State with a memorandum of agreement for such purposes with the Department of Homeland Security on the date of the enactment of this subsection may comply with this subparagraph by carrying out such purposes under the memorandum." [Bill Text, "Engrossed Amendment House (02/11/2026)," *Congress.gov*.]

16

If the President is barred from developing a list of eligible voters until the SAVE America Act is enacted, and if that enactment is delayed until the weeks before the mid-term elections in November, it would become practically impossible to give effect to the new legislation before the election. That appears to be the goal of the DSCC Plaintiffs. Plaintiffs appear to want to prevent the preparation of an eligible voter list until after the legislation is enacted, hoping that enactment can be delayed by opposition from Plaintiff Schumer and others, and that even if enacted before the election, it will be too late to create the list of eligible voters and give effect to the law.

Although there is Democrat opposition, this bill could be passed by the Senate at any time, and if it is, it would be signed by the President. Preparation of the national eligible voter list now would allow that bill to be given full effect even if it does not occur until later in the session.

**CONCLUSION**

Plaintiffs' motions for injunctive relief should be denied.

<div style="margin-left:50%">

Respectfully submitted,
 */s/  William J. Olson*

</div>

|  |  |
|---|---|
| Michael Boos | William J. Olson (D.C. Bar # 233833) |
|  Citizens United |  Jeremiah L. Morgan (D.C. Bar # 1012943) |
|  1006 Pennsylvania Avenue SE |   William J. Olson, P.C. |
|  Washington, DC  20003 |   370 Maple Avenue West, Suite 4 |
|  |   Vienna, VA  22180-5615 |
| Patrick M. McSweeney |   (703) 356-5070 |
|  3358 John Tree Hill Rd. |   wjo@mindspring.com |
|  Powhatan, VA  23139 |  Counsel for *Amici Curiae* |
|  |  Dated: May 1, 2026 |
| Rick Boyer |  |
|  Integrity Law Firm |  |
|  P.O. Box 10953 |  |
|  Lynchburg, VA  24506 |  |