# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DSCC, *et al*.,<br><br>              *Plaintiffs*,<br><br>     v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,<br><br>              *Defendants*. | Case Number  1:26-cv-01114-CJN |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al*.,<br><br>              *Plaintiffs*,<br><br>     v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al*.,<br><br>              *Defendants*. | Case Number  1:26-cv-01132-CJN |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, COMMON CAUSE, COMMON CAUSE EDUCATION FUND, BLACK VOTERS MATTER FUND, INC., and BVM CAPACITY BUILDING INSTITUTE, INC.,<br><br>              *Plaintiffs*,<br><br>     v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,<br><br>              *Defendants*. | Case Number  1:26-cv-01151-CJN |

**BRIEF OF WISCONSIN DEMOCRACY CAMPAIGN, INC., EXPO OF WISCONSIN, INC., JALEYCE ORAEDU, JASMINE ORAEDU, AND AHARON SHELEF AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION**

## DISCLOSURE STATEMENT

Pursuant to Local Rule of the United States District Court for the District of Columbia LCvR 7(o)(5), *amici curiae* Wisconsin Democracy Campaign, Inc., and EXPO of Wisconsin, Inc., have no parent corporations, and there are no publicly held corporations that own more than 10% of their stock.

Dated: April 26, 2026          Respectfully submitted,

           /s/ *Jeffrey A. Mandell*
           Jeffrey A. Mandell

           *Attorneys for* amici curiae *Wisconsin Democracy Campaign, Inc., EXPO of Wisconsin, Inc., Jaleyce Oraedu, Jasmine Oraedu, and Aharon Shelef*

**TABLE OF CONTENTS**

DISCLOSURE STATEMENT.......................................................................................... i

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES............................................................................................ iii

INTEREST OF *AMICI CURIAE* ................................................................................. 1

INTRODUCTION ........................................................................................................... 4

BACKGROUND ............................................................................................................. 5

ARGUMENT ................................................................................................................ 14

I.      EO 14399 threatens to unlawfully disenfranchise Wisconsin voters. ............ 14

      a.      Verifying voter citizenship with inaccurate federal data will
        disenfranchise eligible Wisconsin voters. ............................................... 14

      b.      Burdening USPS with election duties outside its expertise and without
        additional resources will further delay mailed absentee ballots,
        increasing the risk of disenfranchising Wisconsin voters. .................... 17

II.     EO 14399's conflicts with Wisconsin election laws and practices will cause
        confusion and undermine voter confidence and participation in elections. ... 19

      a.      EO 14399 conflicts with Wisconsin's and federal elections records
        requirements. ........................................................................................... 19

      b.      EO 14399 may prohibit certain Wisconsin residents from voting by
        mail............................................................................................................ 20

      c.      EO 14399 may interfere with Wisconsin's in-person absentee voting
        and increase election day challenges to absentee ballots. .................... 21

III.    EO 14399 threatens the privacy of all Wisconsinites..................................... 23

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Wis. Elections Comm'n,*
  2025 WI 5, 414 Wis. 2d 601, 16 N.W.3d 619 ............................................................. 9

*Carey v. Wis. Elections Comm'n,*
  624 F.Supp.3d 1020 (W.D. Wis. 2022) ..................................................................... 13

*Jefferson v. Dane Cnty.,*
  2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556 ......................................................... 8

*Luedtke v. Yunker,*
  No. 25CV1277, Order (Waukesha Cnty. Cir. Ct. Feb. 13, 2026) ............................ 13

*Priorities USA v. Wis. Elections Comm'n,*
  2024 WI 32, 412 Wis. 2d 594, 8 NW.3d 429 ...................................................... 5, 8, 13

*Rise, Inc. v. Wis. Elections Comm'n,*
  2024 WI App 48, 413 Wis. 2d 366, 11 N.W.3d 241 ..................................................... 8

*Sewell v. Racine Unified Sch. Dist. Bd. of Canvassers,*
  2022 WI 18, 401 Wis. 2d 58, 972 N.W.2d 155 ............................................................ 8

*State ex rel. McGrael v. Phelps,*
  144 Wis. 1, 128 N.W. 1041 (Wis. 1910) .................................................................... 21

*State ex rel. Zignego v. Wis. Elections Comm'n,*
  2021 WI 32, 396 Wis. 2d 391, 957 N.W.2d 208 .................................................. 5, 8, 15

*Teigen v. Wis. Elections Comm'n,*
  2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519 .......................................................... 8

*White v. Wis. Elections Comm'n,*
  2022CV1008, Order (Waukesha Cnty. Cir. Ct, Oct 3, 2022) ..................................... 8

**Statutes**

52 U.S.C. § 20503 ........................................................................................................ 10

52 U.S.C. § 20701 ........................................................................................................ 20

U.S. Const. art. I, § 4, cl. 1 ...................................................................................... 4, 20

Wis. Const. art. I, § 1 .................................................................................................. 21

Wis. Const. art. III ...................................................................................................... 21

Wis. Stat § 6.86 ............................................................................................................. 8

Wis. Stat. chs. 5-10 ....................................................................................................... 7

Wis. Stat. § 5.02 .......................................................................................................... 13

Wis. Stat. § 5.05 ................................................................................................ 6, 7

Wis. Stat. ch. 6 .................................................................................................... 5

Wis. Stat. § 6.02 ............................................................................................ 9, 20

Wis. Stat. § 6.03 ................................................................................................... 9

Wis. Stat. § 6.20 ................................................................................................... 7

Wis. Stat. § 6.22 ................................................................................................. 12

Wis. Stat. § 6.24 ................................................................................................. 12

Wis. Stat. § 6.28 ................................................................................................... 9

Wis. Stat. § 6.29 ................................................................................................... 9

Wis. Stat. § 6.34 ................................................................................................. 12

Wis. Stat. § 6.36 ................................................................................................. 15

Wis. Stat. § 6.55 ................................................................................................... 9

Wis. Stat. § 6.85 ................................................................................................... 7

Wis. Stat. § 6.855 ......................................................................................... 11, 21

Wis. Stat. § 6.86 ................................................................................... 7, 10, 11, 12

Wis. Stat. § 6.865 ............................................................................................... 12

Wis. Stat. § 6.87 ........................................................................................ *passim*

Wis. Stat. § 6.88 ................................................................................................. 22

Wis. Stat. § 7.10 ................................................................................................... 6

Wis. Stat. §§ 7.15-7.22 ........................................................................................ 5

Wis. Stat. § 7.20 ................................................................................................... 6

Wis. Stat. § 7.21 ................................................................................................... 6

Wis. Stat. §§ 7.21-7.22 ........................................................................................ 6

Wis. Stat. § 7.23 ................................................................................................. 20

Wis. Stat. §§ 7.51-7.53 ........................................................................................ 5

Wis. Stat. § 7.52 ................................................................................................. 13

Wis. Stat. § 7.60 ................................................................................................... 6

Wis. Stat. § 9.01 ................................................................................................... 5

Wis. Stat. ch. 11 ................................................................................................... 7

Wis. Stat. ch. 12 ................................................................................................... 7

Wis. Stat. § 15.61 ................................................................................................. 6

Wis. Stat. § 19.62 ............................................................................................... 23

Wis. Stat. § 19.69 .............................................................................................. 24

## Other Authorities

Executive Order 14399 ................................................................................*passim*

*Military and Overseas Voters*, WIS. ELECTIONS COMM'N ........................................... 12

Wis. Admin. Code chs. EL-2 to EL-20 .......................................................... 7

Wis. Admin. Code § EL 9.02.......................................................................... 23

Wis. Admin. Code chs. ETH-1 to ETH-26...................................................... 7

## INTEREST OF *AMICI CURIAE*[1]

Wisconsin Democracy Campaign, Inc. (WDC) is a nonpartisan, nonstock corporation organized and operated under Wisconsin law and recognized as tax exempt under Section 501(c)(3) of the Internal Revenue Code. WDC functions as a watchdog with a mission to advocate for and educate about government transparency and accountability to create a just democracy. In support of this mission, WDC engages in many activities designed to encourage Wisconsinites to vote, including voter registration and get-out-the-vote campaigns. WDC advocates for secure, yet broadly accessible, voting regulations and has litigated when appropriate to protect the rights of Wisconsin voters. WDC has a strong interest in ensuring that Executive Order (EO) 14399 does not create chaos in Wisconsin's elections administration, unlawfully disenfranchise eligible voters, or otherwise damage voter confidence in electoral procedure so as to discourage voter participation.

EXPO of Wisconsin, Inc. (EXPO) is a nonpartisan, nonstock corporation organized and operating under Wisconsin law and recognized as tax exempt under Section 501(c)(3) of the Internal Revenue Code. EXPO is a community-based organization dedicated to supporting people impacted by the criminal legal system and strengthening civic engagement across Wisconsin. As part of its work, EXPO conducts voter education, registration, and advocacy efforts, including focused efforts

---

[1] No party's counsel authored this brief in whole or in part; no party's counsel contributed money intended to fund preparing or submitting this brief; and no person—other than *amici* or their counsel—contributed money to fund preparing or submitting this brief.

to ensure that individuals with past or current involvement in the criminal legal system understand their voting rights and are able to exercise those rights where eligible under Wisconsin law. Because eligibility to vote in Wisconsin depends on the status of an individual's sentence, EXPO regularly works with populations for whom voting eligibility may already be complex or misunderstood. EXPO also has advocated for the rights of Wisconsin voters by participating in litigation in Wisconsin state courts. EO 14399 threatens to exacerbate that confusion and create additional barriers to voting, especially for voters who may already face heightened scrutiny and administrative obstacles. EXPO has a strong interest in ensuring that eligible voters are not disenfranchised by inaccurate federal data, conflicting requirements, or increased barriers to absentee voting.

Individual *amici* Jaleyce Oraedu, Jasmine Oraedu, and Aharon Shelef are current or prospective Wisconsin voters who will rely on absentee voting in Wisconsin's November 2026 general election while attending college outside the state. Ms. Jaleyce Oraedu and Ms. Jasmine Oraedu are students at the University of Minnesota–Twin Cities in Minneapolis, Minnesota, and are residents of Germantown, Wisconsin. They are not yet registered to vote in Wisconsin but will be eligible to register to vote and to vote for the first time in the August 2026 partisan primary and November 2026 general election and intend to do so. Mr. Shelef is a student at Yale University in New Haven, Connecticut, and a resident of Madison, Wisconsin. He is a registered Wisconsin voter who previously voted absentee by mail in the April 2026 spring election and who attempted to vote by absentee ballot in the

February 2026 primary but did not receive his ballot.

Because they will be residing out of state for school, each of the individual *amici* will rely on absentee voting to participate in Wisconsin elections. As new or relatively new voters, they are particularly vulnerable to confusion and barriers arising from changes to election procedures. Mr. Shelef's recent experience demonstrates the real challenge that voters face in receiving and returning their ballots in time to be counted—risks that EO 14399 threatens to exacerbate.

EO 14399's requirements, including those affecting absentee ballot transmission, voter verification, and coordination with federal systems, threaten to complicate the absentee voting process and increase the risk that ballots will be delayed or not counted. These risks are especially acute for student voters residing outside Wisconsin, who depend on the consistent, efficient, and reliable functioning of absentee voting systems to exercise their constitutional right to vote.

Together, the organizational and individual *amici* have a strong interest in ensuring that they and other eligible Wisconsin voters are able to exercise their constitutional right to vote through Wisconsin's existing election administration system; that elections in Wisconsin continue to be administered in ways that are accessible, reliable, and consistent with *amici*'s rights under existing state constitutional, statutory, and administrative law; and that eligible voters— particularly those who rely on absentee voting or who face additional barriers to participation—are not disenfranchised by the implementation of EO 14399.

## INTRODUCTION

Article I, Section 4, Clause 1 of the United States Constitution, the Elections Clause, is clear. Regulation of federal elections is a legislative duty vested primarily in state legislatures and subject to Congressional enactments. As the Plaintiffs in the consolidated cases demonstrate in their memoranda in support of their motions for preliminary injunction, neither the federal executive branch broadly, nor the Office of the President or any federal agency specifically, has the authority to unilaterally seize control of and dictate the regulation of elections. ECF No. 53 at 13-18; ECF No. 54 at 14-16; ECF No. 55 at 13-14. Yet, this is exactly what EO 14399 seeks to do, with particularly alarming potential consequences for Wisconsin's unique election administration system and Wisconsin voters.

As the Plaintiffs' briefs explain, EO 14399 inserts several federal agencies directly into the electoral processes of all fifty states, unlawfully usurping Congress's power and threatening mass confusion and widespread voter disenfranchisement. *See generally,* ECF Nos. 53, 54, 55. *Amici* submit this brief in support of the three preliminary injunction motions to highlight for the Court several ways in which EO 14399 would affect Wisconsin's electoral process and harm Wisconsin voters. Namely, EO 14399:

(1) establishes procedures that threaten unlawful voter disenfranchisement;

(2) conflicts with Wisconsin election laws and practices, creating procedural confusion and compromising voter confidence in election procedures and results; and

(3) imperils voter privacy.

For these reasons, on top of those advanced by Plaintiffs, *amici* urge the Court to grant Plaintiffs' motions for a preliminary injunction.

## BACKGROUND

It is generally recognized that Wisconsin has a decentralized system of election administration that is unique among states. *State ex rel. Zignego v. Wis. Elections Comm'n*, 2021 WI 32, ¶13, 396 Wis. 2d 391, 400, 957 N.W.2d 208, 212.[2] Unlike many other states, Wisconsin does not have a single official, such as a Secretary of State, who is responsible for overseeing and administering elections. Rather, elections in Wisconsin are conducted by a multi-tiered system of administration. *See Priorities USA v. Wis. Elections Comm'n*, 2024 WI 32, ¶27, 412 Wis. 2d 594, 608, 8 N.W.3d 429, 436; *Zignego*, 2021 WI 32, ¶13, 396 Wis. 2d at 400, 957 N.W.2d at 212. The primary task of conducting elections in Wisconsin occurs at the local level, where approximately 1,850 municipal and town clerks throughout the state conduct and verify voter registrations, accept requests for absentee ballots, send and receive absentee ballots, review and count ballots, complete the local canvass, and conduct any recount that candidates request. *See* Wis. Stat. ch. 6, subchs. II, IV; §§ 7.15-7.22, 7.51-7.53, 9.01.

The county clerks in Wisconsin's 72 counties also play a role in Wisconsin elections. They are responsible for printing ballots and the envelopes in which

---

[2] *See Wisconsin,* MIT ELECTION DATA + SCIENCE LAB, https://electionlab.mit .edu/landscapes/wisconsin ("Wisconsin is notable for having perhaps the most decentralized system of election administration in the nation.") (last visited April 22, 2026).

absentee ballots are returned; distributing the ballots and absentee ballot envelopes to the municipal and town clerks; and conducting a second canvass of all municipal and town elections conducted within the county in an election. Wis. Stat. §§ 7.10, 7.60.[3]

Finally, Wisconsin's election administration is overseen by the Wisconsin Elections Commission, a six-member, bipartisan body established by statute in 2015. The Wisconsin Elections Commission, commonly referred to as "WEC," or the "Commission," is composed of three Republican and three Democratic appointees,[4] with a nonpartisan Administrator, nominated by the Commission and confirmed by the Senate, who runs the Commission on a day-to-day basis and serves as Wisconsin's "chief election officer." Wis. Stat. §§ 5.05(3d), (3g). (4) ("All employees of the commission shall be nonpartisan."); 15.61; *see 2023-2025 Biennial Report of the Wisconsin Elections Commission* at 2-3, https://doa.wi.gov/budget/SBO/2023-25 510 ELEC Biennial Report.pdf. WEC is responsible for the administration of Wisconsin's election code. Wis. Stat. § 5.05(1) (intro), (2w). In fulfillment of that duty and given

---

[3] Because of the size of its population, one Wisconsin municipality—the City of Milwaukee—and one Wisconsin county—Milwaukee County—are statutorily required to have their elections conducted by special commissions, the Milwaukee Election Commission and the Milwaukee County Election Commission, respectively. Wis. Stat. § 7.20. The Milwaukee Election Commission generally fulfills the duties under state law for the City of Milwaukee that are fulfilled by municipal clerks in other cities. Wis. Stat. §§ 7.21-7.22. Likewise, the Milwaukee County Election Commission generally fulfills the duties under state law for Milwaukee County that are fulfilled by county clerks in other counties. Wis. Stat. § 7.21.

[4] WEC membership can be expanded to include representatives from other political parties if any were to qualify for ballot status under Wisconsin law and receive at least 10% of the vote in a gubernatorial election. Wis. Stat. § 15.61(1)(a)6.

the highly decentralized nature of Wisconsin's election administration system, WEC devotes much of its time and effort to creating guidance documents for the 1,850 clerks who conduct elections throughout the state, training clerks, and providing support and resources for them. *See, e.g.*, Wis. Stat. § 5.05(5t)-(7). WEC also plays the central role in developing and maintaining online tools to help Wisconsin voters gather information about elections, including informing them of eligibility requirements, how to register to vote, where to vote, and how to request absentee ballots. Wis. Stat. § 5.05(12)-(13). The primary tool that WEC has developed for voters to use is MyVote, an online portal through which voters can, among other things, request that absentee ballots be mailed to them.[5]

To administer this unique and complex election administration system, the Wisconsin Legislature has—over many years—enacted a comprehensive set of statutes that (along with regulations promulgated by WEC and its predecessor agencies) provide the detailed framework for Wisconsin's elections. *See generally,* Wis. Stat. chs. 5-10, 12; Wis. Admin. Code, chs. EL-2 to EL-20.[6] Wisconsin allows for no-excuse absentee voting, including both in-person absentee voting in the days leading up to an election and absentee voting by mail. Wis. Stat. §§ 6.20, 6.85, 6.86(1)(a). Many Wisconsin statutes and regulations govern absentee voting by mail

---

[5] Although WEC is responsible for operating MyVote, voters' requests for absentee ballots to be mailed to them are transmitted to the requesting voters' municipal or town clerks, and it is those local clerks who review the requests and transmit the absentee ballots to voters making the requests. *See* Wis. Stat § 6.86.

[6] Wisconsin campaign finance rules are codified in Wis. Stat. ch. 11 and Wis. Admin. Code chs. ETH-1 to ETH-26, which are administered by the Wisconsin Ethics Commission, a separate six-member, bipartisan body established by statute in 2015.

and are summarized briefly below.

In addition, Wisconsin courts have, over a period of many years, interpreted and applied Wisconsin's election statutes, in the context of our state's constitution and the federal constitution. This body of law is substantial and growing.[7]

Collectively, Wisconsin's enacted statutes governing absentee voting and the court decisions interpreting and applying those laws (as well as state constitutional provisions that are implicated) have created a system that encourages voter participation by ensuring that absentee voting by mail is convenient and secure. Those efforts have been so successful that, in recent years, the number of absentee ballots returned by mail by Wisconsin's approximately 3.6 million registered voters[8]

---

[7] *See, e.g.*, *Brown v. Wis. Elections Comm'n*, 2025 WI 5, 414 Wis. 2d 601, 16 N.W.3d 619 (limiting standing to appeal a WEC administrative decision to parties aggrieved by the decision); *Priorities USA*, 2024 WI 32, 412 Wis. 2d 594, 8 NW.3d 429 (allowing use of drop boxes to return absentee ballots); *Teigen v. Wis. Elections Comm'n*, 2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519 (barring use of drop boxes and ballot return assistance for absentee ballots); *Sewell v. Racine Unified Sch. Dist. Bd. of Canvassers*, 2022 WI 18, 401 Wis. 2d 58, 972 N.W.2d 155 (electors do not independent right to have ballots opened and re-examined); *Zignego*, 2021 WI 32, 396 Wis. 2d 391, 957 N.W.2d 208; *Jefferson v. Dane Cnty.*, 2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556 (photo identification required to obtain absentee ballot during declared health emergency unless voter's own age, physical illness or infirmity renders the voter indefinitely confined); *Rise, Inc. v. Wis. Elections Comm'n*, 2024 WI App 48, 413 Wis. 2d 366, 11 N.W.3d 241 (requiring municipal clerks to count absentee ballots with immaterial omissions from the ballot return envelope); *White v. Wis. Elections Comm'n*, No. 2022CV1008, Order (Waukesha Cnty. Cir. Ct., Oct 3, 2022) (enjoining municipal clerks from curing omissions on absentee ballot envelopes).

[8] According to WEC, Wisconsin had 3,601,785 active registered voters as of February 1, 2026. *February 1, 2026 Voter Registration Statistics*, WIS. ELECTIONS COMM'N, Feb. 2, 2026, https://elections.wi.gov/resources/statistics/february-1-2026-voter-registration-statistics.

8

has risen from 565,591 in 2018[9] to more than 1.5 million in 2024.[10]

### *Eligibility to Vote in Wisconsin*

To vote in Wisconsin, a person must be a United States citizen who is at least 18 years old by election day, and have resided in the city, village, or town in which the person wishes to vote for at least 28 days before election day. Wis. Stat. § 6.02. If convicted of a felony, the person must have fully completed the applicable sentence, including any probation, parole, or extended supervision. Wis. Stat. § 6.03(1)(b).

### *Registering to Vote*

Wisconsin permits eligible electors to register to vote in person at the municipal clerk's office or the county clerk's office, by US mail delivered to the municipal clerk's office, or online by the third Wednesday preceding an election (up to 20 days before the election). Wis. Stat. § 6.28. Beyond that date, eligible electors may continue to register in person at the applicable municipal clerk's office by 5:00 p.m. or the close of business, whichever is later, on the Friday before election day. Wis. Stat. § 6.29. And eligible electors may register and vote in person at the polling location on election day. Wis. Stat. § 6.55. Because Wisconsin permits same-day voter registration at the polls, and has done since before 1994, Wisconsin is exempt from

---

[9] Lawrence Andrea, *Absentee voting numbers in Wisconsin soar over the 2018 midterms*, MILWAUKEE J. SENTINEL, Nov. 8, 2022, available at https://www.jsonline.com/story/news/politics/elections/2022/11/08/absentee-voting-numbers-in-wisconsin-soar-over-the-2018-midterms/69627990007/.

[10] Rich Kremer, *More than 1.5M Wisconsin absentee ballots cast in presidential election*, WIS. PUBLIC RADIO, Nov. 4, 2024, updated Jan. 14, 2025, available at https://www.wpr.org/news/more-than-one-million-absentee-ballots-cast-wisconsin-presidential-election-2024-nov-4.

provisions of the National Voter Registration Act. 52 U.S.C. § 20503(b)(2).

### *Requesting an Absentee Ballot*

Wisconsin provides qualified voters with a range of options to request to vote absentee; most frequently, this is accomplished by mail, in person at the municipal clerk's office, by electronic mail, or through MyVote. Wis. Stat. § 6.86.[11]

When a qualified Wisconsin voter requests to receive an absentee ballot for an election, they may also request to automatically receive absentee ballots "for every election that is held within the same calendar year in which the application is filed." Wis. Stat. § 6.86(2m)(a). This means a voter may submit one request that absentee ballots for up to four elections (spring primary, spring election, partisan primary, general election) in a calendar year be automatically sent to them. If a voter moves during that year that they have made such a request, they are obligated to notify their municipal clerk that they have moved. *Id*. After receiving such notification, the clerk "shall forward" the elector's request for an absentee ballot to the voter's new municipal clerk, and "that municipal clerk shall honor the request." Wis. Stat. § 6.86(2m)(b).

A Wisconsin voter who is indefinitely confined because of age, physical illness, permanent disability or other infirmity may request "that an absentee ballot be sent to the elector automatically for every election." Wis. Stat. § 6.86(2)(a). When such a voter does not return their absentee ballot for an election, the municipal clerk stops

---

[11] *See also*, *Vote Absentee by Mail*, MYVOTE WISCONSIN, available at https://archive.ph/fiux0 (last visited April 22, 2026).

mailing ballots to that voter until and unless another request is made. Wis. Stat. § 6.86(2)(b).

Requests for absentee ballots made by mail must generally be received no later than 5:00 p.m. on the Thursday (the fifth day) before election day. Wis. Stat. § 6.86(1)(b). Requests made in person must be made no earlier than 14 days before the election and no later than the Sunday before the election. *Id.*

A clerk, in response to a proper request by a qualified voter for an absentee ballot, shall initial an absentee ballot, Wis. Stat. § 6.87(1), "verify that the name or proof of identification" matches that found on the absentee ballot request form and place the absentee ballot in an unsealed envelope, Wis. Stat. § 6.87(2). On one side of the envelope, a certificate must be printed for the voter and the voter's witness to fill out. *Id.* Through that certificate, the voter certifies, under state penalties for false statements, that they are qualified to vote absentee, and further certify that they marked their ballot in the presence of a witness. *Id.* The same certification provides space for the witness to certify, under state penalties for false statements, that they (the witness) are a United States citizen, and that the relevant absentee ballot was properly executed, as described on the certificate. *Id.*

The ballot and certificate envelope are then mailed by the municipal clerk to the voter's residence or may be delivered "personally" to the voter at the clerk's office or at an alternate site that has, in accordance with Wis. Stat. § 6.855, been designated well in advance of the election. Wis. Stat. § 6.87(3).

Military and overseas voters have additional options for voting absentee. They

11

are permitted not only to request absentee ballots by email or fax, but also to receive absentee ballots from the municipal clerk by email or fax or, if eligible, by direct download from MyVote.[12] Wis. Stat. § 6.22(1)(b). They are also permitted to request an absentee ballot using a federal absentee ballot request form. Wis. Stat. §§ 6.24(4)(b), 6.865. Requests for overseas voters must be submitted and received by the clerk by 5:00 p.m. on the Thursday (fifth day) before the election. Wis. Stat. § 6.86(1)(b). Requests for military voters must generally be submitted and received by the clerk by 5:00 p.m. on the Friday before election day, Wis. Stat. §§ 6.22(4)(b), 6.86(1)(c), except that for elections involving a federal office, active military voters may request an absentee ballot up until 5:00 p.m. on election day. Wis. Stat. §§ 6.34(1), 6.86(1)(b).

### *Marking an Absentee Ballot*

Upon receipt of their absentee ballot (contained in the certificate envelope) the voter marks the ballot in the presence of a witness and places the ballot in the certificate envelope. The voter must then seal, sign, date, and put their residential address on the envelope. The witness must also sign, date, and put their printed name and residential address on the envelope. Wis. Stat. § 6.87(4).

### *Returning an Absentee Ballot*

Wisconsin does not currently allow for absentee ballots to be returned electronically. Rather, absentee ballots must be returned by mail or delivered in

---

[12] *See also, Military and Overseas Voters*, WIS. ELECTIONS COMM'N at https://myvote.wi.gov/Military-Overseas-Voters (last visited April 22, 2026).

person to the municipal clerk. Wis. Stat. § 6.87(4)(b)1. State law has been interpreted to allow electors to also return their absentee ballot to their polling location on election day. *See Luedtke v. Yunker*, No. 25CV1277, Order (Waukesha Cnty. Cir. Ct. Feb. 13, 2026) (dismissing challenge to WEC's guidance permitting return of absentee ballots to polling place on election day). Municipal clerks may, but are not required to, provide secure drop boxes for absentee voters to return their completed ballots. *Priorities USA*, 2024 WI 32, ¶34, 412 Wis. 2d 611, 8 N.W.2d at 437. In general, each voter must personally return an absentee ballot; only voters with disabilities may use assistance to return their ballots. *Carey v. Wis. Elections Comm'n,* 624 F.Supp.3d 1020, 1033 (W.D. Wis. 2022). In all circumstances, absentee ballots must be delivered to the polling place or, in municipalities that use a central-count procedure to canvass absentee ballots, to the municipal clerk by 8:00 p.m. on election day or they will not be counted. Wis. Stat. §§ 6.87(6), 7.52(1)(a).

### *Wisconsin Elections Schedule*

Wisconsin holds as many as four regularly scheduled elections in a calendar year. Nonpartisan elections occur every year in a spring election held during the first week of April, with the primary for that election occurring in February. Wis. Stat. § 5.02(21), (22). Partisan elections are held in November of even-numbered years, with the partisan primary occurring during the second week of August. Wis. Stat. § 5.02(5), (12s). Wisconsin already has held two elections in 2026: the spring election for nonpartisan offices was held on April 7, and the primary for the spring election was held on February 17. The general election, which includes elections for partisan

state and federal offices (such as congressional elections), will be held on November 3, 2026, with the partisan primary being held on August 11, 2026.

## ARGUMENT

### I.  EO 14399 threatens to unlawfully disenfranchise Wisconsin voters.

To date, Congress has considered and declined to enact several bills that would impose documentary proof of citizenship requirements for voter registration and participation in federal elections and would restrict the use of mail-in absentee votes. *See,* SAVE Act, H.R. 22, 119th Congress (2025-2026); SAVE America Act, H.R. 7296, 119th Congress (2025-2026); Make Elections Great Again Act, H.R. 7300, 119th Congress (2025-2026). In the face of legislative inaction, EO 14399 is an attempted executive end-run around Congress that threatens voter disenfranchisement for at least two reasons. First, EO 14399 foists inaccurate federal databases—known to misidentify naturalized citizens as noncitizens—upon state election infrastructure. Second, EO 14399 imposes significant election-related burdens on the United States Postal Service (USPS), increasing the existing risk that mailed absentee ballots arrive late and go uncounted. EO 14399, Sec. 4. Plaintiffs addressed the federal concerns in detail in their respective briefs. *See generally,* ECF Nos. 53, 54, 55. *Amici* here present how EO 14399, if allowed to take effect, would affect Wisconsin distinctly.

### a.  Verifying voter citizenship with inaccurate federal data will disenfranchise eligible Wisconsin voters.

The order requires the Department of Homeland Security and the Social Security Administration to jointly "compile and transmit to the chief election official

of each State a list of individuals confirmed to be United States citizens who will be above the age of 18 at the time of an upcoming Federal election and who maintain a residence in the subject State." EO 14399, Sec. 2. And although the order does not specify what a state must do with the list, it goes on to command the US Attorney General to "prioritize the investigation and … prosecution" of state and local officials, and anyone else involved in federal elections administration, who issue ballots to individuals not eligible to vote in federal elections. *Id*. Likewise, EO 14399 requires the US Attorney General to "prioritize the investigation and, as appropriate, the prosecution of individuals and public or private entities engaged in, or aiding and abetting, the printing, production, shipment, or distribution of ballots to individuals who are not eligible to vote in a Federal election." *Id*. The order is plainly a threat against state and local election officials designed to coerce compliance with the federal government's current desire that states use the federal SAVE System to verify voter citizenship and vet the accuracy of state voter registration lists.

Wisconsin already has appropriate mechanisms in place to continuously verify the accuracy of its voter registration list. The task is a shared responsibility, shouldered primarily by municipal clerks with support from WEC. *See Zignego*, 2021 WI 32, ¶13, 396 Wis. 2d at 399, 957 N.W.2d at 212. Specifically, by law, Wisconsin is enrolled in the Electronic Registration Information Center (ERIC), Wis. Stat. § 6.36(1)(ae), which is a nonprofit, nonpartisan membership organization created by and comprised of state election officials. Currently, 26 states and the District of

15

Columbia have joined ERIC.[13] At least every 60 days, members securely submit certain voter registration, motor vehicle licensing, and identification data to ERIC. In turn, ERIC's technical staff compares the data received from all states to create list maintenance reports that identify voters who appear to have moved to other states or within the same state, who have duplicate registrations within the same state, and who have died. Wisconsin and other member states use these reports to keep their voter registration lists up to date.[14]

With respect to the use of the SAVE System, as explained by Plaintiffs, it was not designed for the purpose of verifying the accuracy of voter registration lists and has significant limitations that threaten to disenfranchise eligible voters.[15] ECF No. 53 at 20-22; ECF No. 54 at 36-40; ECF No. 55 at 16-19. Use of the SAVE System is most threatening for naturalized citizens. In Wisconsin, there are over 140,000 naturalized citizens, of whom nearly 21,000 were naturalized between 2016 and 2020.[16] In a state where the results of presidential elections are frequently decided by fewer than 30,000 votes, the consequence of unlawfully disenfranchising voters can be significant. For example, Donald Trump won Wisconsin in the 2016

---

[13] *What is ERIC?,* ELECTRONIC REGISTRATION INFORMATION CENTER, https://ericst ates.org/about/ (last visited Apr. 22, 2026).

[14] *How ERIC Works*, ELECTRONIC REGISTRATION INFORMATION CENTER, https://ericstates.org/how-does-it-work/ (last visited Apr. 22, 2026).

[15] *See also* https://fairelectionscenter.org/wp-content/uploads/2025/07/Examining-Changes-to-USCISs-SAVE-System.pdf (last visited April 24, 2026).

[16] *New American Voters in Wisconsin: Building the Electoral Power of Naturalized Citizens*, NATIONAL PARTNERSHIPS FOR NEW AMERICANS, 5 (Sept. 2022) available at https://partnershipfornewamericans.org/wp-content/uploads/2022/09/WI-NAV-State-Report-Final-2.pdf#:~:text=There%20are%20more%20than%20140.

16

presidential election by 22,748 votes and the 2024 presidential election by 29,397 votes; Joe Biden won Wisconsin in the 2020 presidential election by 20,682 votes.[17] This not a new development in Wisconsin; Al Gore won Wisconsin in the 2000 presidential election by 5,708 votes.[18]

### b. Burdening USPS with election duties outside its expertise and without additional resources will further delay mailed absentee ballots, increasing the risk of disenfranchising Wisconsin voters.

EO 14399 puts significant responsibility to take a proactive role in mail-in voting on the shoulders of USPS, an agency that has no role in elections other than to deliver mailed ballots. Within 60 days of the date of the EO, the Postmaster General is required to initiate proposed rulemaking, and final rules must be issued no later than 120 days after the EO's issuance. EO 14399, Sec. 3. The rules must include at least the following requirements:

- Any federal absentee ballots distributed by USPS must be mailed in a USPS approved special envelope that includes unique identifying markings and a unique intelligent barcode so that each ballot can be tracked;

- At least 90 days before a federal election, each state "may" notify USPS whether it intends to allow for mail-in or absentee ballots to be transmitted by USPS;

- Each state that provides notice of its intent to allow mail-in or absentee voting via US Mail "should" also specify whether it will submit a list of voters who will vote by mail to USPS at least 60 days before the election;

- Each individual who intends to vote by US Mail must enroll as a mail-in or absentee voter with USPS;

- USPS will not transmit ballots from individuals who have not enrolled with

---

[17] *Wisconsin vote in presidential elections since 1848*, WISCONSIN BLUE BOOK 2025-2026, 495, available at https://legis.wisconsin.gov/lrb/media/10uewg3p/2025200-elections-and-political-parties.pdf.

[18] *See id.*

USPS; and

- USPS will provide each state with a list of the state's residents who have enrolled as mail-in or absentee voters with USPS. *Id.*

EO 14399 provides no further details about how USPS is to implement these requirements, leaving it instead to USPS to fill the logical gaps with rules yet to be developed on an extremely compressed timeline.

The duties imposed upon USPS are problematic for several reasons. Notably, the agency is already underfunded and overburdened, and the implementation of EO 14399 in light of this would have significant effects on Wisconsin voters.[19] USPS already frequently delivers absentee ballots postmarked before election day after election day, and in Wisconsin, absentee ballots received after election day are not counted. Wis. Stat. § 6.87(6). Just this month, 269 Milwaukee County absentee ballots cast in Wisconsin's spring election were received after election day and not counted.[20] Wisconsin has only two major USPS sorting facilities—called regional processing and distribution centers—located in Milwaukee and Green Bay. Most mail in Wisconsin, even when sent from one local address to another in the same municipality, must go to Milwaukee or Green Bay, get sorted, and then get

---

[19] Hansi Lo Wang, *The Postal Service may be out of cash in 2027 without Congress' help, postmaster says*, NATIONAL PUBLIC RADIO, Mar. 17, 2026, available at https://www.npr.org/2026/03/17/nx-s1-5750419/usps-running-out-of-money-postal-service-david-steiner; Richelle Wilson, *Wisconsin village faces mail delivery delays amid financial crisis for US Postal Service*, WIS. PUBLIC RADIO, Apr. 16, 2026, available at https://www.wpr.org/news/wisconsin-village-brown-deer-usps-postal-service-crisis.

[20] Mariana La Roche, *Milwaukee Election Commission reports late delivery of absentee ballots*, WISN 12, Apr. 9, 2026, available at https://www.wisn.com/article/milwaukee-election-commission-reports-late-delivery-of-absentee-ballots/70977867.

transmitted back to the local post office before delivery. From a smaller portion of Wisconsin, mail gets sent to the Twin Cities in Minnesota for sorting and then returned to Wisconsin for delivery.[21] All of this takes time and resources.

The order provides no funding to USPS to fulfill the initial mandate nor to comply with its obligations under the order on an ongoing basis. This additional work, without additional resources, is likely to only further delay the delivery of mailed ballots, disenfranchising every Wisconsin voter whose ballot is delivered after election day.

## II. EO 14399's conflicts with Wisconsin election laws and practices will cause confusion and undermine voter confidence and participation in elections.

It is no surprise that EO 14399 conflicts with Wisconsin election laws and practices in many ways. As discussed above, states are primarily responsible for regulating elections, and each state's rules vary. But EO 14399's sweeping language makes no effort to accommodate state-specific rules, with particularly significant consequences for Wisconsin voters, given Wisconsin's unique approach to election administration.

### a. EO 14399 conflicts with Wisconsin's and federal elections records requirements.

Under Wisconsin law, poll lists, ballots, absentee ballot applications,

---

[21] *61 Regions with RPDCs*, RESEARCH HUB, available at https://www.randymajors .org/customgmap?x=-89.4641473&y=44.2557563&cx=-98.2092645&cy=37.5562624 &zoom=5&mapbuilder=true&areatype=zips&sheetid=1pN41Qgq4thAjpFnqX7j74T NSVE1bcQDbABvb8Lx0LIs&markertype=sheet&markers=1eW0lrO6425MJDEvu4- LrKOGWjp5jSa6831aiSx0wRro&title=61+Regions+with+RPDCs&hidelegend=hide (last visited Apr. 24, 2026).

registration forms, and other records and papers "requisite to voting at any federal election, other than registration cards, may be destroyed after 22 months." Wis. Stat. § 7.23(1)(e)-(g). This aligns with the federal statutory requirement that also mandates such records be kept for 22 months. 52 U.S.C. § 20701. But EO 14399 nearly triples this requirement, declaring that "States and localities should preserve, for a *5-year period*, all records and materials—excluding ballots cast—evidencing voter participation in any Federal election (e.g. ballot envelopes, regardless of carrier)." EO 14399, Sec. 5 (emphasis added). And the order provides states and local governments with no practical support or guidance to navigate these direct conflicts (let alone, any funding to do so). At bottom, it appears EO 14399 is designed to conflict with—and perhaps supersede—these state and federal laws, a facially unlawful proposition. *See* U.S. Const. art. I, § 4, cl. 1.

Moreover, five years of document retention—more than double the window created by the Congress and state legislatures (*see* 52 U.S.C. § 20701; Wis. Stat. § 7.23(1)(e)-(g))—would do little more than burden elections officials and risk the finality of elections. The longer the retention period, the more time for challenges to election results. The more challenges, meritorious or not, the more public confidence in the election process and results will be eroded.

### b. EO 14399 may prohibit certain Wisconsin residents from voting by mail.

Qualified Wisconsinites enjoy the right to vote in Wisconsin upon 28 days of residency. Wis. Stat. § 6.02. And Wisconsin permits residents to register as voters and to obtain absentee ballots until a few days before the election. *See* Background,

*supra.* But the order prohibits USPS from transmitting ballots for individuals not enrolled on the USPS mail-in and absentee participation list, which must be prepared, finalized, and transmitted at least 60 days before election day. A person who moves to Wisconsin fewer than 60 days but more than 28 days before election day and is otherwise qualified to vote in Wisconsin presumably would not appear on the USPS list, although they would be eligible to vote, including by mail-in absentee ballot. Implementation of the EO could therefore foreclose eligible voters from voting by mail, thwarting their right to vote, and at the very least, creating an equal protection problem under the Wisconsin Constitution which prescribes equal protection and recognizes and protects the fundamental right to vote. Wis. Const. art. I, § 1; Wis. Const. art. III; *State ex rel McGrael v. Phelps*, 144 Wis. 1, 14-15, 128 N.W. 1041, 1046 (Wis. 1910) (the right to vote is "guaranteed by the declaration of rights and by sec. 1, art. III, of the [Wisconsin] [C]onstitution.")

### c. EO 14399 may interfere with Wisconsin's in-person absentee voting and increase election day challenges to absentee ballots.

Wisconsin's absentee voters may return their ballots in several ways, including through the mail and "in-person absentee voting." *See* Wis. Stat. §§ 6.855, 6.87. Whether returned by mail or cast in-person, Wisconsin currently provides its absentee voters with the same ballots, envelopes, and certifications. EO 14399's form and its return-procedure requirements purport to apply only to ballots returned via US mail in federal elections. Wisconsin could choose a different ballot format for absentee ballots cast in person, rather than by mail, or for absentee ballots cast in nonfederal elections. But doing so could be problematic. It is foreseeable that in our

current political climate, using one ballot form for absentee ballots delivered by mail and another for in-person absentee voting may invite unnecessary challenges to absentee ballots cast in person. In other words, inconsistency in absentee ballot form may exacerbate suspicion about election integrity. This will force Wisconsin to either adopt the EO's form and return requirements for all elections or risk potential voter confusion, complaints, and litigation.

Moreover, even without such a format change, the EO could throw Wisconsin's absentee voting program into chaos. As noted above, Wisconsin voters have multiple options for returning absentee ballots to their local clerks—including mail, hand delivery to the clerk's office, completing their absentee ballot during in-person absentee voting, and, in some municipalities, via absentee ballot drop box. Wisconsin formally processes and counts all absentee ballots on election day. Wis. Stat. § 6.88(1). Once the ballots have been returned and are sorted for counting, they are not segregated by the method of their transmittal. Once the ballots are intermixed, there is often no way to tell how any particular ballot was returned to the clerk's office. And, were the EO's provisions to take effect, this itself could lead to confusion, as some election observers may seek to challenge absentee ballots from voters who are not registered with USPS for voting purposes, though often it will not be apparent from the returned absentee ballot whether that voter returned their absentee ballot through the mail. This is likely despite the fact that state law prescribes only seven legitimate bases for challenging a voter, none of which is contemplates the provision

22

of EO 14399, Wis. Admin. Code § EL 9.02(d),[22] and, as clearly articulated by Plaintiffs'
counsel, an executive order does not supersede properly enacted state law. ECF No.
53 at 13-18; ECF No. 54 at 14-16; ECF No. 55 at 13-14.

## III.   EO 14399 threatens the privacy of all Wisconsinites.

Wisconsin law protects the privacy of personally identifiable information,
including with respect to matching programs. As defined, a matching program is "the
computerized comparison of information in one records series to information in
another records series for use by an authority or a federal agency to establish or verify
an individual's eligibility for any right, privilege or benefit or to recoup payments or
delinquent debts under programs of an authority or federal agency." Wis. Stat.
§ 19.62(3). The state may not "use or allow the use of personally identifiable
information maintained by the state authority in a match under a matching program,
or provide personally identifiable information for use in a match under a matching
program unless the authority has" put the following things in writing and submitted
the written materials to the state Public Records Board:

- The "purpose and legal authority for the matching program"; and

- The "justification for the program and the anticipated results, including
  an estimate of any savings."

---

[22] "Any elector may challenge for cause any person offering to vote whom the elector knows or suspects is not a qualified elector." Wis. Admin. Code § EL 9.02(intro). A person may not be eligible to vote because the person is: (1) not a U.S. citizen; (2) not at least 18 years old; or (3) not yet a resident, for voting purposes, of the ward in which the person tries to cast a ballot. Wis. Admin. Code § EL 9.02(2). A person may be disqualified from voting for being: (1) a felon and still serving probation, parole, or extended supervision; (2) found incompetent by a court to vote; (3) found to have bet or wagered on the election; or (4) found to have already voted in the same election. *Id.*

23

Wis. Stat. § 19.69(1)-(2).

Here, EO 14399 encourages states to provide USPS with lists of voters who will vote by mail. At the same time, USPS is required to create its own list of individuals who have enrolled with USPS as intended mail-in voters and USPS must refuse to transmit ballots from any individual who is not on the USPS list. EO 14399, Sec. 3. Likewise, the order requires the federal creation of state citizenship lists, the sharing of those lists with state election officials, and the creation of a procedure pursuant to which states may suggest updates and amendments to the state citizenship lists. EO 14399, Sec. 2. This mutual sharing of personally identifiable voter information is arguably a matching program under Wisconsin law, for which the necessary written materials have not been prepared or filed with the Public Records Board. Moreover, for the reasons discussed in this brief, there is no legal authority for the program.

Any person who violates Wisconsin's matching program requirements may be subject to penalties, including discharge or suspension without pay for individuals employed by Wisconsin governmental entities or financial forfeitures for anyone else. Although the EO declares it must be implemented in compliance with federal privacy law, it is not clear how that would be accomplished, nor does it account for compliance with Wisconsin privacy laws.

## CONCLUSION

*Amici* respectfully urge the Court to grant the Plaintiffs' motions for a preliminary injunction and prevent Executive Order 14399 from being implemented in Wisconsin.

24

Dated: April 26, 2026        Respectfully submitted,

By: <u>*Electronically signed by Jeffrey A. Mandell*</u>
Jeffrey A. Mandell (D.C. Bar No. 999791)*
Douglas M. Poland (Wis. State Bar No. 1055189)**
Rachel E. Snyder (Wis. State Bar No. 1090427)**
LAW FORWARD, INC.
222 W. Washington Ave., Ste. 680
Madison, Wisconsin 53703
jmandell@lawforward.org
dpoland@lawforward.org
rsnyder@lawforward.org
608.283.9822

*Admitted in the U.S. District Court for the District of Columbia

**Motions for admission *pro hac vice* pending

*Attorneys for* amici curiae *Wisconsin Democracy Campaign, Inc., EXPO of Wisconsin, Inc., Jaleyce Oraedu, Jasmine Oraedu, and Aharon Shelef*

25

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the typeface and type-style requirements set forth in D.D.C. LCvR 5.1 because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 12-point Century Schoolbook font and with the type-volume limitation set forth in D.D.C. LCvR 7(o)(4) because its length does not exceed twenty-five pages.

Dated: April 26, 2026             Respectfully submitted,

By: _Electronically signed by Jeffrey A. Mandell_
    Jeffrey A. Mandell (D.C. Bar No. 999791)*
    Douglas M. Poland (Wis. State Bar No. 1055189)**
    Rachel E. Snyder (Wis. State Bar No. 1090427)**
    LAW FORWARD, INC.
    222 W. Washington Ave., Ste. 680
    Madison, Wisconsin 53703
    jmandell@lawforward.org
    dpoland@lawforward.org
    rsnyder@lawforward.org
    608.283.9822

    *Admitted in the U.S. District Court for the District of Columbia

    **Motions for admission _pro hac vice_ pending

    _Attorneys for_ amici curiae _Wisconsin Democracy Campaign, Inc., EXPO of Wisconsin, Inc. Jaleyce Oraedu, Jasmine Oraedu, and Aharon Shelef_

26