**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1114 (CJN) |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1132 (CJN) |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1151 (CJN) |

# DEMOCRATIC PARTY PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR RENEWED MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND AND PROCEDURAL HISTORY ......................................................................... 2

I. President Trump issues the Order, and Plaintiffs file suit. ................................................ 2

II. The Court denies Plaintiffs' preliminary injunction motions. ........................................... 3

III. Other courts recognize the Order's flagrant illegality. ..................................................... 4

IV. Defendants implement Section 3(b) and publish a Final Rule. ......................................... 5

V. The Democratic Party Plaintiffs renew their challenges and seek immediate relief as to Section 3(b). ........................................................................................................ 6

STANDARD OF REVIEW ......................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

I. This Court has jurisdiction. ........................................................................................ 7

A. The Democratic Party Plaintiffs' claims are ripe. .................................................. 7

B. The Democratic Party Plaintiffs have standing. ..................................................... 8

1. Plaintiffs are suffering several injuries-in-fact. ........................................... 8

2. The remaining prongs of the standing inquiry are satisfied. ..................... 16

II. Plaintiffs are likely to succeed on the merits. ............................................................ 16

A. The Ballot Mail Rule exceeds USPS's statutory authority. ................................. 16

B. The Ballot Mail Rule violates the separation of powers. ..................................... 22

C. The Ballot Mail Rule violates the Privacy Act. .................................................. 24

III. The remaining preliminary injunction factors are satisfied. ........................................... 26

A. The Democratic Party Plaintiffs will be irreparably harmed if Defendants are not quickly enjoined from implementing the Ballot Mail Rule. ................................ 26

B. The equities and public interest favor relief. ...................................................... 29

CONCLUSION ..................................................................................................................... 30

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Aamer v. Obama*,
742 F.3d 1023 (D.C. Cir. 2014) .......... 6

*AFL-CIO v. DOL*,
No. 25-CV-339-JDB, 2026 WL 879518 (D.D.C. Mar. 31, 2026) .......... 15

*Alon Ref. Krotz Springs, Inc. v. EPA*,
936 F.3d 628 (D.C. Cir. 2019) .......... 19, 20

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) .......... 22, 23, 24

*Becker v. IRS*,
34 F.3d 398 (7th Cir. 1994) .......... 26

*Biden v. Nebraska*,
600 U.S. 477 (2023) .......... 21, 22

**Bost v. Ill. State Board of Elections*,
607 U.S. 71 (2026) .......... 8, 9, 28

*California v. HHS*,
390 F. Supp. 3d 1061 (N.D. Cal. 2019) .......... 7

*California v. Trump*,
No. 1:26-CV-11581-IT, 2026 WL 1826490 (D. Mass. June 25, 2026) .......... 4, 23

*California v. Trump*,
138 F.4th 52, 66 (1st Cir. 2026) .......... 4

*Chamber of Com. of U.S. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) .......... 29

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) .......... 27

*Clapper v. Amnesty Int'l, USA*,
568 U.S. 398 (2013) .......... 12

*Clarkson v. IRS*,
678 F.2d 1368 (11th Cir. 1982) .......... 26

*Colo. Republican Fed. Campaign Comm. v. FEC*,
518 U.S. 604 (1996) .......... 9

*Common Cause/Ga. v. Billups*,
554 F.3d 1340 (11th Cir. 2009) .......... 13

*Crawford v. Marion Cnty. Election Bd.*,
472 F.3d 949 (7th Cir. 2007) .......... 12

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) .......... 10, 16

*Doe v. Chao*,
540 U.S. 614 (2004) .......... 17

*DSCC v. Trump*,
No. 26-5193, 2026 WL 2168617 (D.C. Cir. July 28, 2026) .......... *passim*

*DSCC v. Trump*,
No. 26-CV-01114-CJN, 2026 WL 1487833 (D.D.C. May 28, 2026) .......... 1, 3, 7

*Egger v. USPS*,
436 F. Supp. 138 (W.D. Va. 1977) .......... 18

*Ex parte Siebold*,
100 U.S. 371 (1879) .......... 23

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 11, 12

*NRSC v. FEC*,
146 S. Ct. 2404 (2026) .......... 9

*Fish v. Schwab*,
957 F.3d 1105 (10th Cir. 2020) .......... 13

*FTC v. PPG Indus., Inc.*,
798 F.2d 1500 (D.C. Cir. 1986) .......... 28

*Gadelhak v. AT&T Servs.*,
950 F.3d 458 (7th Cir. 2020) .......... 14

*Georgia v. President of the U.S.*,
46 F.4th 1283 (11th Cir. 2022) .......... 16

*Gonzales v. Oregon*,
546 U.S. 243 (2006) .......... 21

*Grover City v. USPS*,
391 F. Supp. 982 (C.D. Cal. 1975)........................................................................ 18

*Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
920 F.3d 1 (D.C. Cir. 2019) ................................................................................ 29

*Hanson v. District of Columbia*,
120 F.4th 223 (D.C. Cir. 2024) ............................................................................ 29

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .................................................................................... 11, 12

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .............................................................................................. 8

*J. Roderick MacArthur Found. v. FBI*,
102 F.3d 600 (D.C. Cir. 1996) ............................................................................ 26

*Jabara v. Webster*,
691 F.2d 272 (6th Cir. 1982)................................................................................ 26

*Kobach v. Election Assistance Comm'n*,
772 F.3d 1183 (10th Cir. 2014)............................................................................ 24

*La. Pub. Serv. Comm'n v. FCC*,
476 U.S. 355 (1986) ............................................................................................ 16

*League of Women Voters of Mass. v. Trump*,
No. 1:26-CV-11549, 2026 WL 2322705 (D. Mass. Aug. 11, 2026) .......................... 5, 7, 12, 23

**League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .............................................................. 6, 26, 29, 30

*League of Women Voters v. DHS*,
No. 25-CV-3501-SLS, 2026 WL 1784297 (D.D.C. June 22, 2026).................................. 15, 21

*League of Women Voters v. North Carolina*,
769 F.3d 224 (4th Cir. 2014)........................................................................... 27, 28

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................................ 16

**LULAC v. Exec. Off. of the President* ("*LULAC I*"),
780 F. Supp. 3d 135 (D.D.C. 2025) ........................................................ 12, 24, 27, 28

*LULAC v. Exec. Off. of the President* ("*LULAC III*"),
818 F. Supp. 3d 34 (D.D.C. 2026) ........................................................................ 10

*Maydak v. United States*,
363 F.3d 512 (D.C. Cir. 2004) ..... 26

*Nat'l Treasury Emps. Union v. Chertoff*,
452 F.3d 839 (D.C. Cir. 2006) ..... 7

*Natural Law Party of U.S. v. FEC*,
111 F. Supp. 2d 33 (D.D.C. 2000) ..... 10

*NFIB v. OSHA*,
595 U.S. 109 (2022) ..... 16

*Nken v. Holder*,
556 U.S. 418 (2009) ..... 6, 29

*Nw. Immigrant Rts. Project v. USCIS*,
496 F. Supp. 3d 31 (D.D.C. 2020) ..... 7

*Pearson v. Dodd*,
410 F.2d 701 (D.C. Cir. 1969) ..... 15

*Pileggi v. Wash. Newspaper Publ'g Co.*,
146 F.4th 1219 (D.C. Cir. 2025) ..... 14, 15

*Pursuing Am.'s Greatness v. FEC*,
831 F.3d 500 (D.C. Cir. 2016) ..... 6

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
120 F.4th 390 (4th Cir. 2024) ..... 10

*Reuber v. United States*,
829 F.2d 133 (D.C. Cir. 1987) ..... 25

*Rockville Reminder, Inc. v. USPS*,
480 F.2d 4 (2d Cir. 1973) ..... 18, 19, 20, 21

**Shays v. FEC*,
414 F.3d 76 (D.C. Cir. 2005) ..... 8, 9, 27

*Soucie v. David*,
448 F.2d 1067 (D.C. Cir. 1971) ..... 29

*Spokeo v. Robins*,
578 U.S. 330 (2016) ..... 14

*Tenn. Conf. of NAACP v. Lee*,
139 F.4th 557 (6th Cir. 2025) ..... 12

*Teva Pharms. v. Kennedy*,
No. 25-5425, 2026 WL 2409591 (D.C. Cir. Aug. 18, 2026) ....................................................... 7

*Thomas More L. Ctr. v. Obama*,
651 F.3d 529 (6th Cir. 2011)....................................................................................................... 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................................................................... 14, 15

**Trump v. California*,
No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026) ......................................................... 4, 7

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026)........................................................................ 24, 25, 26

*USPS v. Council of Greenburgh Civic Ass'ns*,
453 U.S. 114 (1981) ..................................................................................................................... 17

*VoteAmerica v. Schwab*,
121 F.4th 822 (10th Cir. 2024)............................................................................................ 24, 25

**Watson v. Republican Nat'l Comm.*,
146 S. Ct. 2165 (2026) ..................................................................................................... 18, 22, 23

*Webster v. Doe*,
486 U.S. 592 (1988) ..................................................................................................................... 17

*West Virginia v. EPA*,
597 U.S. 697 (2022) ............................................................................................................... 21, 22

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
576 U.S. 1 (2015) ......................................................................................................................... 24

**CONSTITUTION**

*U.S. Const. art. I, § 4, cl. 1 ................................................................................................. 22, 23

U.S. Const. art. II, § 1, cl. 2 ........................................................................................................... 23

**STATUTES**

5 U.S.C. § 552a ................................................................................................................. 14, 24, 25

39 U.S.C. § 101 ......................................................................................................................... 17, 19

39 U.S.C. § 102 ................................................................................................................................. 18

39 U.S.C. § 401 ......................................................................................................................... 20, 23

39 U.S.C. § 403 ........ 19

39 U.S.C. § 404 ........ 16, 17, 18

39 U.S.C. § 3018 ........ 19

Postal Accountability and Enhancement Act of 2006, Pub. L. No. 109-435, 120 Stat. 3198 ...... 17

**REGULATIONS**

Cremated Remains Packaging Requirements,
90 Fed. Reg. 9843 (Feb 19, 2025) ........ 20

Restricting the Mailing of Replica or Inert Explosive Devices,
75 Fed. Reg. 282 (Jan. 5, 2010) ........ 20

Privacy Act of 1974; System of Records,
91 Fed. Reg. 44880 (July 17, 2026) ........ 24, 26

Privacy Act Implementation Guidelines,
40 Fed. Reg. 28949 (July 9, 1975) ........ 26

**OTHER AUTHORITY**

Restatement (Second) of Torts § 652B ........ 15

## INTRODUCTION

The President has *no* constitutional authority over the conduct of elections. He has seized it anyway. With voting for the November election set to begin in days, the President has "undertak[en] a substantial and unfunded overhaul of election procedures" in all 50 States. *DSCC v. Trump*, No. 26-5193, 2026 WL 2168617, at *5 (D.C. Cir. July 28, 2026) (per curiam). Implementing the President's directives in Section 3(b) of E.O. 14399, USPS has now issued a final rule that conditions the ability of all voters to vote by mail on brand new requirements. Ex. 1, *Ballot Mail for Federal Elections* at 29 (Aug. 21, 2026) (acknowledging USPS has never before claimed authority to categorically "reject" ballots "from the mailstream") ("Ballot Mail Rule" or "Rule").

In May, this Court held that the ripeness of Plaintiffs' claims against Section 3(b) depended on "whether the Postal Service issues a notice of proposed rulemaking, what that proposed rule says, what changes occur through notice and comment, whether a final rule issues, and how that final rule affects voters, States, or Plaintiffs." *DSCC v. Trump*, No. 26-CV-01114-CJN, 2026 WL 1487833, at *10 (D.D.C. May 28, 2026), *aff'd*, 2026 WL 2168617 (D.C. Cir. July 28, 2026). Every one of those contingencies has now been resolved to Plaintiffs' detriment. The final rule tracks the proposed rule, which followed the directions of the E.O., which purports to require USPS to refuse to transmit mail ballots sent by noncompliant States to their own voters. This rule is disastrous for Plaintiffs DSCC, DCCC, Democratic National Committee, and Democratic Governors Association (the "Democratic Party Organizations"), their candidate members, House Minority Leader Jeffries, and Senate Minority Leader Schumer, forcing all of them to compete for electoral victories on an illegally structured playing field and revamp campaigns and electoral efforts just days before voting begins. It is equally calamitous for Plaintiffs' members and voters, who must attempt to overcome novel requirements to cast mail ballots and wade through the administrative

chaos inflicted by USPS's attempt to implement the Rule's unworkable procedures at this late date. Because these harms are concrete and imminent, Plaintiffs' claims are ripe; because they are irreparable, the Court should grant interim relief *now*.

The merits of Plaintiffs' claims, which have received little attention to date, including from Defendants themselves, are clearcut: the Ballot Mail Rule is flagrantly unlawful. The Constitution assigns primary responsibility for election administration not to USPS, or even the President, but to the States, and ultimate oversight to Congress—and Congress has enacted *nothing* to empower USPS or the President to interfere with States' decisions about who should receive a mail ballot or how mail-ballot envelopes should be designed. And in fact, Congress has presciently *prohibited* agencies like USPS from storing the personal voter information necessary for this scheme.

Because Section 3(b)'s glaring illegality has now reached final form with devastating consequences, the Court should swiftly grant Plaintiffs' motion for a preliminary injunction.

## BACKGROUND AND PROCEDURAL HISTORY

This Court is already familiar with the factual background of this case, which is discussed at length in the parties' filings and the Court's prior order. *See, e.g.*, ECF Nos. 1, 55, 122, 144. The Democratic Party Plaintiffs incorporate by reference the factual discussion in their memorandum in support of their initial motion for a preliminary injunction, ECF No. 55 at 2–9, and here discuss only key facts, subsequent factual developments, and relevant procedural history.

### I. President Trump issues the Order, and Plaintiffs file suit.

President Trump issued the E.O. on March 31, 2026. Among other unprecedented and sweeping edicts, the E.O. ordered USPS to propose a rulemaking under which USPS would (1) require States to conform their ballot mail envelopes to specific requirements, (2) create a list of every voter "enrolled" to vote by mail, and (3) refuse to transmit any ballot mail for voters who were not enrolled. *Id.* § 3(b)(i)–(iv). The Democratic Party Plaintiffs sued, and, joined by two other

groups of Plaintiffs, sought a preliminary injunction against enforcement or implementation of the E.O. *See* ECF No. 55. At the May 14, 2026, hearing on Plaintiffs' motions, the Court offered Defendants ample opportunities to defend the E.O. on the merits, asking, for example, how USPS might lawfully implement Section 3(b). Defendants had no response. *See* ECF 148 ("Tr.") at 83.

**II. The Court denies Plaintiffs' preliminary injunction motions.**

On May 28, 2026, the Court denied the preliminary injunction motions as premature. *See DSCC*, 2026 WL 1487833. Because Section 3(b) directed USPS to "initiate and then complete a rulemaking," the Court concluded that Plaintiffs' injuries "depend[] on a series of contingencies" related to USPS's adoption of a final rule. *Id.* at *10. The Court relied on the lack of a final rule to reject Plaintiffs' arguments as to the other preliminary-injunction factors as well. On the merits of Plaintiffs' *ultra vires* claim, the Court held that the Order is "not self-executing," and instead "operates solely as an internal directive" between the President and subordinate executive officers. *Id.* at *11. The Court similarly held that Plaintiffs failed to show irreparable harm because "no agency has yet acted pursuant to the Order in a way that could harm Plaintiffs." *Id.* at *13.

In short, the Court's order reflected its determination that the E.O. did not harm Plaintiffs at the time, and that any future harm would stem from the acts of the commanded agencies. The Court expressly recognized that USPS "may ultimately issue a final rule that directly affects Plaintiffs or their members," and invited Plaintiffs to "renew their motions if and when those future actions occur." *Id.* at *10 (finding claim as to Section 3(b) unripe because USPS had not yet "issue[d] a final rule that directly affects Plaintiffs or their members").

The D.C. Circuit affirmed the Court's ripeness holding on July 28, 2026. *See DSCC*, 2026 WL 2168617. It recognized that "Plaintiffs have identified a number of serious questions concerning the lawfulness of proposed actions if implemented on the threshold of the upcoming federal election," but determined "this case likely is unripe in its present posture." *Id.* at *1. The

court did not consider factual developments about agency implementation of the E.O. that were not part of the district court record on the original preliminary injunction motions. *See id.* at *3.

**III. Other courts recognize the Order's flagrant illegality.**

Soon after the Democratic Party Plaintiffs challenged the E.O. in this Court, a group of 23 States and the District of Columbia (the "Plaintiff States") brought a separate challenge to the E.O. in the U.S. District Court for the District of Massachusetts. On June 25, 2026, the District of Massachusetts enjoined the relevant executive agencies from enforcing or implementing provisions of the E.O., including Section 3(b), in those States. *See California v. Trump*, No. 1:26-CV-11581-IT, 2026 WL 1826490 (D. Mass. June 25, 2026).

Regarding Section 3(b), the court determined that the President's command violates a host of constitutional and statutory provisions, emphasizing the Constitution's reservation of "the power to determine voter eligibility to the States alone" and the absence of any congressional authorization for USPS's attempt to "control mail-in voting." *Id.* at *15–16. The court thus enjoined implementation "with respect to the November 3, 2026 or any earlier federal election in the Plaintiff States." *Id.* at *17.

The First Circuit denied the defendants' request to stay the injunction pending appeal. The court of appeals recognized that "the EO lays out a clear set of rapidly approaching deadlines," leaving the plaintiffs "no practical choice but to respond to the EO now." *California v. Trump*, 138 F.4th 52, 66 (1st Cir. 2026). The U.S. Supreme Court nonetheless stayed the district court's injunction pending appeal because the district court had entered its injunction before the challenged provisions had been implemented. *See generally Trump v. California*, No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026) (per curiam). Three justices dissented.

In a related case involving private-organization plaintiffs, the same district court subsequently issued a similar injunction with nationwide effect. Concluding that Section 3(b)

inflicts irreparable harm and threatens further irreparable harm throughout the country, the court enjoined USPS from carrying out several of Section 3(b)'s dictates for this year's elections. *League of Women Voters of Mass. v. Trump*, No. 1:26-CV-11549, 2026 WL 2322705 (D. Mass. Aug. 11, 2026). Defendants have moved to vacate or, alternatively, stay that order. *See infra* n.1.

**IV. Defendants implement Section 3(b) and publish a Final Rule.**

On August 21, USPS adopted the final rule that this Court previewed would ripen the claims against Section 3(b). The Rule makes fundamental changes to mail voting by modifying sections of USPS's compendium of regulations, the Domestic Mail Manual ("DMM"). *See generally* Ballot Mail Rule (amending 39 C.F.R. pt. 111).

*First*, implementing Section 3(b)(i) of the E.O., the Rule modifies Section 24.3 of the DMM to require all outbound and return ballot mail for federal elections to be mailed in envelopes that meet rigid design requirements. Ballot Mail Rule 2, 89–92.

*Second*, implementing Section 3(b)(iii)–(iv) of the E.O., the Rule amends Section 24.4 of the DMM to require state election officers to submit to USPS, via an online portal, voter-identifying information and barcodes corresponding to each piece of ballot mail associated with each voter for inclusion on USPS's "Mail-In and Absentee Participation List." Ballot Mail Rule 2–3, 92–94. According to the Rule, USPS will then provide a "state-specific" list of all "enrolled" individuals within each State to that State's "chief election official" "on or about the date of the federal election." *Id.* at 92–93. The Rule further states that information from the new portal housing the lists will be shared with law enforcement officials. *Id.* at 24–25, 29–30; *see also* 91 Fed. Reg. 44880 (July 17, 2026) (system of records notice stating the same and specifying certain "portal" details).

*Third*, the Rule formalizes the E.O.'s instruction that USPS refuse to transmit mail ballots that do not comply with the Rule. Specifically, it amends Section 24.5 of the DMM to include a

"verification" step for mail ballots, and requires USPS to refuse to transmit ballot mail in "noncomplian[t]" envelopes and to non-"enrolled" voters. Ballot Mail Rule 94.

## V. The Democratic Party Plaintiffs renew their challenges and seek immediate relief as to Section 3(b).

Shortly after USPS finalized the Ballot Mail Rule, the Democratic Party Plaintiffs moved for leave to file a supplemental complaint, along with a proposed supplemental complaint. *See* ECF Nos. 162, 162-1. The supplemental complaint compiles additional factual developments relevant to Plaintiffs' challenges; in particular, it makes clear that Plaintiffs challenge Section 3(b) of the E.O. *and* the Ballot Mail Rule implementing it. *See* ECF No. 162-1.

Pursuant to the Court's invitation to renew their motion for a preliminary injunction after further implementation, the Democratic Party Plaintiffs now seek preliminary injunctive relief against Section 3(b) of the E.O. and the Ballot Mail Rule.

## STANDARD OF REVIEW

To obtain a preliminary injunction, Plaintiffs must show that "four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in [their] favor, and accord with the public interest." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (citation omitted). The "first and most important factor" is whether the movants "have established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). When a preliminary injunction is sought against the government, the final two factors merge. *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I. This Court has jurisdiction.

#### A. The Democratic Party Plaintiffs' claims are ripe.

USPS's finalization of the Ballot Mail Rule means Plaintiffs' challenges to the Rule and Section 3(b) are now ripe under Circuit precedent and this Court's prior order. *See DSCC*, 2026 WL 1487833, at *10 (holding the ripeness inquiry depends on "the action the Postal Service might take in the future to implement Section 3(b)" (citation modified)). Relevant considerations include "whether the agency action is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's position." *Nat'l Treasury Emps. Union v. Chertoff*, 452 F.3d 839, 854 (D.C. Cir. 2006) (citation omitted); *see also Teva Pharms. v. Kennedy*, No. 25-5425, 2026 WL 2409591, at *14–15 (D.C. Cir. Aug. 18, 2026) (same and reaffirming principle that "it is unnecessary to wait for the agency's legal conclusion to be applied [to the plaintiffs] in order to determine its legality" (citation modified)).

The Rule expressly states USPS's final position with respect to its implementation of Section 3(b). *See* Ballot Mail Rule 1–3 ("Effective August 21, 2026"). The Democratic Party Plaintiffs' challenges present purely legal issues, including whether the Rule as published violates separation-of-powers principles or the USPS's statutory mandates. And because no "further administrative action" is needed to clarify USPS's positions on its Final Rule, the Ballot Mail Rule is subject to immediate review. *Chertoff*, 452 F.3d at 854 (citation omitted); *Kennedy*, 2026 WL 2409591, at *15.[1]

---

[1] The existence of another injunction in Massachusetts pausing implementation of Section 3(b), *League of Women Voters of Mass.*, 2026 WL 2322705, does not bear on the harms established in

### B. The Democratic Party Plaintiffs have standing.

#### 1. Plaintiffs are suffering several injuries-in-fact.

The Democratic Party Plaintiffs are suffering cognizable harm from Section 3(b) and its implementation with the Ballot Mail Rule, sufficient to establish standing under multiple independent doctrines: (1) they have standing under *Bost v. Illinois State Board of Elections*, 607 U.S. 71, 78–79 (2026), because they are candidates for office and organizations that represent candidates; (2) they have competitive standing because they are forced to compete on and disadvantaged by an unlawfully structured playing field, *see Shays v. FEC*, 414 F.3d 76, 85–86 (D.C. Cir. 2005); (3) the Party Organizations and their members have organizational standing because the Rule disrupts their core election programs by making unlawful changes to the voting process; and (4) they have associational standing because the Rule infringes on their members' voting and privacy rights. The Party Organizations may sue on their members' behalf because the injuries to their members are germane to the organizations' missions and individual participation is unnecessary. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

---

this case or the justiciability of the issues, *see Nw. Immigrant Rts. Project v. USCIS*, 496 F. Supp. 3d 31, 80–81 (D.D.C. 2020). Indeed, "[o]verlapping injunctions appear to be a common outcome of parallel litigation, rather than a reason for the Court to pass on exercising its duty to determine whether litigants are entitled to relief." *Id.* (quoting *California v. HHS*, 390 F. Supp. 3d 1061, 1065 (N.D. Cal. 2019)). That conclusion is especially warranted where, as here, the injunction may be "overturned or limited at any time." *California v. HHS*, 390 F. Supp. 3d at 1065 (collecting cases); *see also Trump v. California*, No. 26A124, 2026 WL 2473573 (staying injunction issued prior to USPS's adoption of final rule in related litigation). Here, the federal government has moved for the district court in the *Massachusetts* case to "immediately reconsider and vacate its preliminary-injunction order," or alternatively stay the injunction pending appeal by the end of the day today. *See* Motion for Reconsideration, *League of Women Voters of Mass. v. Trump*, No. 1:26-CV-11549 (D. Mass. Aug. 24, 2026), ECF No. 196. And regardless of any temporary injunctive relief, Defendants reiterated their intentions in a filing in the Massachusetts case just earlier today: "it is no secret that the government *wants* to implement th[e Ballot Mail] [R]ule for the November 3, 2026 election, if possible." *See* Opposition to Plaintiffs' Motion to Enforce Preliminary Injunction 13–14, *League of Women Voters of Mass. v. Trump*, No. 1:26-CV-11549 (D. Mass. Aug. 25, 2026), ECF No. 197.

**a. *Bost* standing.** The Democratic Party Plaintiffs—two individual candidates and organizations whose membership includes candidates in all 50 States—have standing under recent Supreme Court precedent to challenge rules governing the election process.[2] *Bost* establishes that candidates "have an interest in a fair process" and "suffer [a cognizable harm] when the process departs from the law." 607 U.S. at 77. By regulating mail voting contrary to law, the Ballot Mail Rule deprives Plaintiffs and their candidate members "of the opportunity to compete for election under the Constitution and laws of the United States" and therefore inflicts a concrete injury. *Id.* at 79; *DSCC*, 2026 WL 2168617, at *4 n.8 ("*Bost* held that candidates have a concrete and particularized interest in the 'process' of elections sufficient on its own to challenge an extant election rule."); *see* Ex. 2, 2d Decl. of Lillie Snyder Boss ("Snyder Decl.") ¶¶ 8, 11; Ex. 3, Decl. of Caitlin Remmel ("Remmel Decl.") ¶¶ 8, 11; Ex. 4, 2d Decl. of Liberty Schneider ("Schneider Decl.") ¶¶ 7, 11; Ex. 5, 2d Decl. of Jillian Edelman ("Edelman Decl.") ¶¶ 8, 11; Ex. 6, 2d Decl. of Hakeem S. Jeffries ("Jeffries Decl.") ¶ 8; Ex. 7, 2d Decl. of Charles E. Schumer ("Schumer Decl.") ¶ 9.

**b. Competitive standing.** Beyond *Bost*, which supplies standing regardless of whether the challenged procedures "help, hurt, or have no effect on a candidate's electoral prospects," 607 U.S. at 77–79, the Democratic Party Plaintiffs separately have standing because the E.O. will disadvantage them relative to their competitors due to Democratic voters' disproportionate reliance on mail voting, *see Shays*, 414 F.3d at 85–86 (recognizing such harm is cognizable for candidates);

---

[2] Plaintiffs' candidate members have standing under *Bost*, as do DSCC, DCCC, DNC, and DGA which represent candidates and as the national party organizations that support those candidates. *See Colo. Republican Fed. Campaign Comm. v. FEC*, 518 U.S. 604, 630 (1996) (Kennedy, J., concurring in part) (recognizing that "during an election," political parties and their candidates share "a practical identity of interests"); *see also NRSC v. FEC*, 146 S. Ct. 2404, 2418, 2425 (2026) (describing "unique," "intertwined relationship of parties and their candidates").

*Natural Law Party of U.S. v. FEC*, 111 F. Supp. 2d 33, 47 (D.D.C. 2000) (similar for party committees); *see also* Ex. 8, Pew Rsch. Ctr., *Voters' and Nonvoters' Experiences with the 2024 Election* (Dec. 4, 2024), https://perma.cc/BXR3-L2GJ (showing that, in the 2024 election, 44% of Democratic candidates' voters voted by mail or absentee ballot, compared to 26% of Republican candidates' voters).[3] Indeed, because of the Ballot Mail Rule—which poses severe risks to Plaintiffs' mail voting strategies—Plaintiffs and their candidate members are injured by the instability and uncertainty of the field on which they are competing. *See DSCC*, 2026 WL 2168617, at *5; *see also* Snyder Decl. ¶ 19; Remmel Decl. ¶ 19; Schneider Decl. ¶ 23; Edelman Decl. ¶ 21; Jeffries Decl. ¶ 12; Schumer Decl. ¶ 13.

**c. Organizational standing.** The Democratic Party Plaintiffs also have organizational standing. *See, e.g.*, *LULAC v. Exec. Off. of the President* ("*LULAC III*"), 818 F. Supp. 3d 34, 111 (D.D.C. 2026) (citing *Dep't of Com. v. New York*, 588 U.S. 752, 767–78 (2019)), *aff'd*, No. 26-5476, 2026 WL 1991571 (D.C. Cir. July 2, 2026); *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 397 (4th Cir. 2024). Plaintiffs' core business activities include ensuring their voters successfully cast their ballots, including by mail. *See* Snyder Decl. ¶¶ 3, 23; Remmel Decl. ¶¶ 3, 20; Schneider Decl. ¶¶ 4, 24; Edelman Decl. ¶¶ 3, 22–23. Plaintiffs invested in vote-by-mail programs under the law as it existed before the E.O. and Ballot Mail Rule; Plaintiffs are deep into preparation and execution of these programs for the 2026 elections, with voting beginning in just 10 days in some states. Snyder Decl. ¶¶ 23–26; Remmel Decl. ¶¶ 24–26; Schneider Decl. ¶¶ 26–27; Edelman Decl. ¶¶ 28–29. The Ballot Mail Rule compromises and wastes Plaintiffs' existing programs and investments, as well as their ability to effectively allocate

---

[3] *See also* Snyder Decl. ¶ 22 (explaining Democratic voters are more likely to vote by mail); Remmel Decl. ¶ 22 (similar); Schneider Decl. ¶ 25 (similar); Edelman Decl. ¶ 26 (similar); Jeffries Decl. ¶ 10 (similar); Schumer Decl. ¶ 11 (similar).

resources to compete, undermining the efficacy of these core business activities and harming their missions. Snyder Decl. ¶ 26–28 ("[T]he assumptions on which the DSCC has built its existing voter outreach and education plans are severely compromised."); Remmel Decl. ¶¶ 25–26 (explaining DCCC is "forced to revise plans that [it is] already executing" and "[w]ith voting starting in just weeks, there is simply not enough time to fully complete these revisions."); Schneider Decl. ¶ 34 (explaining that, because of the Ballot Mail Rule, "the DNC must revamp its voter protection program," and "that team's focus will have to shift away from existing work"); Edelman Decl. ¶¶ 28–30 (describing how the "cloud of uncertainty" from the Ballot Mail Rule frustrates existing investments); Jeffries Decl. ¶ 15 ("My campaign must respond to the Ballot Mail Rule by adjusting our communication strategies, our financial investments, and our allocation of staff time."); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982)).

The Ballot Mail Rule also forces Plaintiffs to develop and invest in new programs to assist voters in ensuring they are "enrolled" in USPS's "Mail-In and Absentee Participation List," confirm that voters are aware of and adhere to the Rule's new envelope requirement for returning their ballots, and help voters successfully cast a ballot if the Rule impedes their ability to vote by mail. *See* Snyder Decl. ¶¶ 30–34; Remmel Decl. ¶¶ 27–33; Schneider Decl. ¶¶ 29–33; Edelman Decl. ¶¶ 31–35; Jeffries Decl. ¶ 15. The significant costs of these programs come at the expense of other mission-critical work. *See* Snyder Decl. ¶¶ 36–38 ("Resources that must be diverted to responding to a seismic change like those demanded in President Trump's E.O. and implemented in the Ballot Mail Rule necessarily come at the cost of other of DSCC's mission-critical planned activities and expenditures."); Remmel Decl. ¶¶ 35–37 (similar); Schneider Decl. ¶¶ 26, 34–36 (similar); Edelman Decl. ¶¶ 38–40 (similar).

As courts have routinely held in analogous circumstances, the direct and current harm Plaintiffs are suffering from the E.O. and Ballot Mail Rule is more than sufficient to establish injury-in-fact. *See All. for Hippocratic Med.*, 602 U.S. at 370, 394–95 (holding a party has standing where the challenged action "directly affect[s] and interfere[s] with [their] core business activities"); *Havens*, 455 U.S. at 379 (holding organization that "had to devote significant resources to identify and counteract" defendant's practices had standing to challenge them (citation omitted)); *Tenn. Conf. of NAACP v. Lee*, 139 F.4th 557, 565 (6th Cir. 2025) (distinguishing *Clapper v. Amnesty International, USA*, 568 U.S. 398 (2013), and holding "organizations can . . . have standing to challenge a government action that does not regulate them [directly] if the action causes them to suffer economic harms"); *see also League of Women Voters of Mass.*, 2026 WL 2322705, at *11; *LULAC v. Exec. Off. of the President* ("*LULAC I*"), 780 F. Supp. 3d 135, 207 (D.D.C. 2025); Snyder Decl. ¶¶ 30–34; Remmel Decl. ¶¶ 27–33; Schneider Decl. ¶¶ 29–33; Edelman Decl. ¶¶ 31–35.

**d. Voter harm.** The Democratic Party Plaintiffs also have associational standing on behalf of their voter members—and Leaders Schumer and Jeffries have individual standing—to challenge the Ballot Mail Rule and Section 3(b), whether or not the Rule ultimately precludes them from voting. *See, e.g.*, Schneider Decl. ¶ 6 (The DNC "considers any registered Democrat to be a member of the DNC."); Jeffries Decl. ¶ 16 (describing risk to voting rights); Schumer Decl. ¶ 17 (similar). A voter has standing to challenge a law that regulates the terms by which they may cast a ballot, even if they are ultimately able to overcome the restriction. *See, e.g.*, *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (noting that standing requires only a "minimal showing of injury," and finding Democratic Party organizations had standing to challenge a law restricting voting on behalf of their members who would be affected), *aff'd*, 553

U.S. 181 (2008); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1351–52 (11th Cir. 2009) (holding, even if voters "possessed an acceptable form of photo identification, they would still have standing to challenge the statute that required them to produce" photo ID to cast a ballot); *Fish v. Schwab*, 957 F.3d 1105, 1119–20 (10th Cir. 2020) (holding even a voter who *could* comply with proof of citizenship law had standing to challenge it).

The Ballot Mail Rule conditions transmission of a mail ballot on whether a voter appears on USPS's list and follows USPS's envelope requirements. As such, it plainly regulates the terms by which the Democratic Party Plaintiffs' members will vote, causing them injury. Even if voters qualify for mail ballots under their respective States' election laws, the transmission of those ballots will be controlled by USPS's new gatekeeping authority, threatening their right to vote and conditioning it on successful compliance with the Rule. *See* Snyder Decl. ¶¶ 13–14; Remmel Decl. ¶¶ 13–14; Schneider Decl. ¶¶ 17–18; Edelman Decl. ¶¶ 15–16.

The Rule will inject severe chaos and confusion into the voting process and disenfranchise voters. Because voters have no way to enroll themselves onto USPS's enrolled voter lists or even check if they are on it, they may not know that USPS has refused to transmit their ballot until it is too late for them to make plans to vote in person. *See* Snyder Decl. ¶ 17; Remmel Decl. ¶ 17; Schneider Decl. ¶ 21; Edelman Decl. ¶ 19. This risk will be especially detrimental for the many voters for whom voting by mail is their only option, whether because of health conditions or absence from their jurisdiction on election day. *See* Snyder Decl. ¶ 17; Remmel Decl. ¶ 17; Schneider Decl. ¶ 21; Edelman Decl. ¶ 19. Voters' ballots also stand to be significantly delayed because of the Ballot Mail Rule's extremely onerous (if not impossible) requirements; for instance, USPS's own description of the Rule's ballot mail verification process reveals that it will likely take over *160 days'* worth of time to verify the ballot mail in *just one* congressional district. *See*

Snyder Decl. ¶¶ 13–16; Remmel Decl. ¶¶ 13–16; Schneider Decl. ¶¶ 17–20; Edelman Decl. ¶¶ 15–18. The Ballot Mail Rule will also confuse voters by imposing brand new restrictions on mail voting just days before voting starts for the 2026 general election, and it will ultimately discourage some voters from voting altogether. Snyder Decl. ¶¶ 34–35; Remmel Decl. ¶¶ 31–32; Schneider Decl. ¶¶ 31–32; Edelman Decl. ¶¶ 35–36.

**e. Privacy harm.** As explained below, the Ballot Mail Rule requires USPS to "maintain" records concerning how voters "exercise[] rights guaranteed by the First Amendment," in violation of 5 U.S.C. § 552a(e)(7), and to further disclose those newly maintained records to other agencies, *infra* Argument § II.B. Because the Rule violates the privacy rights of Leaders Jeffries and Schumer and the Organizational Plaintiffs' members, they have standing to challenge it on this basis.

A plaintiff's injury satisfies Article III if it has "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). Such harms include "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* at 425. The common-law analogue need not be an exact match; Congress may elevate the status of injuries previously inadequate at law, and it may identify modern relatives. *Pileggi v. Wash. Newspaper Publ'g Co.*, 146 F.4th 1219, 1227–30 (D.C. Cir. 2025); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.). What matters is whether the harm has "a 'close relationship' in kind, not degree." *Gadelhak*, 950 F.3d at 462 (quoting *Spokeo*, 578 U.S. at 341).

As several courts have now held, harms stemming from violations of privacy safeguards embedded in the Privacy Act satisfy this standard, meaning that Plaintiffs suffer a "concrete" injury

to their privacy interests when federal agencies transgress the Privacy Act. *AFL-CIO v. DOL*, No. 25-CV-339-JDB, 2026 WL 879518, at *10 (D.D.C. Mar. 31, 2026) (collecting cases); *League of Women Voters v. DHS*, No. 25-CV-3501-SLS, 2026 WL 1784297, at *12 (D.D.C. June 22, 2026) (same), *appeal docketed*, No. 26-5243 (D.C. Cir. June 29, 2026). In other words, by enacting specific restrictions in the Privacy Act, Congress "simply gave protection to a common law injury"—*i.e.*, infringements of privacy interests—"cloaked in more modern garb." *Pileggi*, 146 F.4th at 1229–30 (citing *TransUnion*, 594 U.S. at 425). The Privacy Act harms here have a close relationship to privacy torts.

For example, intrusion-upon-seclusion forbids "intentionally intrud[ing], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns" if "the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. The tort is "founded upon the discomfort produced by [such] intrusions." *AFL-CIO*, 2026 WL 879518, at *10. "[W]hat produces the injury it recognizes is not targeting, as in malicious prosecution, but the knowledge that one's private space or affairs have been entered or exposed without consent." *Id.* at *10 (citing *Pearson v. Dodd*, 410 F.2d 701, 704 (D.C. Cir. 1969)). This is what Section 3(b) and the Rule does: it intrudes on the "sphere of privacy surrounding [Plaintiffs'] members' personal affairs" by requiring USPS to compile otherwise private information from States about them in a new database, allowing USPS officials to "access" their "private information" and further disclose it to law-enforcement without permission. *Id.*; *see* Ballot Mail Rule 15 (acknowledging Privacy Act restrictions). Plaintiffs and their members are suffering "deep unease," *AFL-CIO*, 2026 WL 879518, at *10, from these intrusions, *see* Snyder Decl. ¶ 39; Remmel Decl. ¶ 38; Schneider Decl. ¶ 37; Edelman Decl. ¶ 43; Jeffries Decl. ¶ 17; Schumer Decl. ¶ 18.

**2. The remaining prongs of the standing inquiry are satisfied.**

The Democratic Party Plaintiffs' injuries are traceable to Defendants, who have taken final action to implement the E.O.'s unlawful commands. *See Dep't of Com.*, 588 U.S. at 768. And there is no question declaratory and equitable relief would redress their injuries by preventing Defendants from following the Final Rule altogether. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

## II. Plaintiffs are likely to succeed on the merits.

The Ballot Mail Rule is blatantly unlawful in several ways. When this Court asked Defendants' counsel to identify any legal authorization for a Rule that, like the Ballot Mail Rule, tracked Section 3(b)'s commands, the attorney demurred, stating only that he was "very hesitant to just sort of canvas the U.S. Code for how . . . the Postal Service [could] do such a thing." Tr. 83:3–15. Even had Defendants' attorney canvassed the U.S. Code, he would have found no support for the Rule, which violates a plethora of constitutional doctrines and statutory provisions.

### A. The Ballot Mail Rule exceeds USPS's statutory authority.

The Ballot Mail Rule clearly exceeds the authority that Congress has assigned to USPS. Agencies like USPS "are creatures of statute," and accordingly "possess only the authority that Congress has provided" to them. *NFIB v. OSHA*, 595 U.S. 109, 117 (2022) (per curiam). "[A]n agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). The President may therefore direct agencies only to "carry out their own lawful statutory authority," not to "exceed[] the limitations imposed" by their authorizing statutes. *Georgia v. President of the U.S.*, 46 F.4th 1283, 1295 (11th Cir. 2022). USPS's governing statute makes clear that its designated role is to provide "postal services"—*i.e.*, "the collection, handling, transportation, delivery, forwarding, returning, and holding of mail." 39

U.S.C. § 404(a)(1). And the statute does not authorize USPS to perform "any nonpostal service." *Id.* § 404(e)(1)–(2).

Nevertheless, under the Ballot Mail Rule, USPS inserts itself into election administration—an indisputably "nonpostal" domain—at the President's command. The Rule requires voters to be "enroll[ed]" on lists maintained by USPS before they may receive mail ballots and imposes design parameters on States' ballot envelopes that voters must use to return their ballots. Under the Rule, USPS will refuse to transmit ballots that do not conform to the Rule's dictates—just as Section 3(b) of the E.O. required. Nothing in USPS's governing statute authorizes this interference with election administration. *See* 39 U.S.C. § 101(a) (defining Postal Service powers).

The Rule repeatedly relies on USPS's general authority to issue regulations, but USPS disregards that any such regulations must be *necessary* to carry out *Postal Service* functions defined *by statute*. *See id.* § 401(2). And while USPS insists that it enjoys "broad" discretion to deem new regulatory requirements "necessary," Ballot Mail Rule 22, its only cites in support are decades-old cases construing statutory language providing regulatory discretion that was *eliminated* by a 2006 amendment. Section 401(2) once authorized USPS to regulate "*as it deems necessary* to accomplish the objectives of this title," but the Postal Accountability and Enhancement Act of 2006 deleted "*as it deems*," and replaced "objectives of this title" with "execution of its *functions under this title*." Postal Accountability and Enhancement Act of 2006, Pub. L. No. 109-435, § 504, 120 Stat. 3198, 3235 (emphasis added); *cf. Webster v. Doe*, 486 U.S. 592, 600 (1988) (explaining that Congress uses "as it deems" to embed discretion); *Doe v. Chao*, 540 U.S. 614, 622–23 (2004) (explaining that courts cannot ignore Congress's legislative deletions). Thus, even if the cases USPS cites could suggest it possesses discretionary authority to impose election regulations, they have been abrogated by statute. *See USPS v. Council of*

*Greenburgh Civic Ass'ns*, 453 U.S. 114, 122 (1981); *Grover City v. USPS*, 391 F. Supp. 982, 986 (C.D. Cal. 1975); *Rockville Reminder, Inc. v. USPS*, 480 F.2d 4, 7 (2d Cir. 1973); *Egger v. USPS*, 436 F. Supp. 138, 142 (W.D. Va. 1977).

Nor is the Ballot Mail Rule conceivably "necessary" to carry out USPS's functions. The Constitution and Congress left determinations about who can vote by mail and the rules voters must adhere to cast mail ballots to the States, and the States have utilized USPS's existing mail services and procedures without serious issues related to ballot design or fraudulent voting. *See Watson v. Republican Nat'l Comm.*, 146 S. Ct. 2165, 2170–71, 2180–81 (2026); *see also, e.g.*, Ballot Mail Rule 70 (conceding that "existing processes are designed to support the timely delivery and smooth processing of ballot mail").

A straightforward review of the provisions cited by USPS in its Final Rule further confirms that Congress has conferred no authority to USPS to impose the strictures of the Ballot Mail Rule, and that the Rule could not conceivably be deemed "necessary" to carry out USPS's statutory responsibilities. Congress authorized USPS to carry out "postal service[s]," which are defined to include the "delivery of letters, printed matter, or mailable packages, including acceptance, collection, sorting, transportation, or other functions ancillary thereto." 39 U.S.C. § 102(5). USPS is not permitted to conduct "nonpostal service[s]," which are "any service that is not [such] a postal service," *id.* § 404(e)(1).

Take for example the Rule's requirement that USPS develop and maintain lists of voters—clearly a "nonpostal service[]." *Id.* To argue otherwise, USPS recasts its Rule, claiming it "set[s] forth preparation and data standards that are tailored to the sending of ballots, and hence to the use of the mail." Ballot Mail Rule 34. But USPS cannot even begin to coherently explain how the lists "set forth preparation and data standards" that are relevant (much less necessary) to "legitimate"

"postal service" functions. And USPS even admits that the lists are *not* necessary to send ballots through the mail *at all*, *see* Ballot Mail Rule 70, and itself insists that States themselves "maintain complete control" over contents of the lists, *id.* at 12.

The Rule further prohibits USPS from sending a wide range of ballot mail, even though USPS's governing statute already sets out a comprehensive list of "nonmailable matter" (such as "hazardous material") that the USPS may not process or transmit. 39 U.S.C. § 3018(b)(1). Especially against the backdrop of USPS's general mandates to "provide prompt, reliable, and efficient services to patrons in all areas," *id.* § 101(a); *see also id.* § 403(a), USPS's "reject[ion]" of mailed ballots due to "noncompliance" with its own rules, Ballot Mail Rule 29, 94–95, effectively creates a new category of "nonmailable matter" from whole cloth—one entirely disjoined from the statutory definition. But an agency may not promulgate rules or regulations that are "inconsistent with the statute," *Alon Ref. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 643–44 (D.C. Cir. 2019), and the Ballot Mail Rule does just that.

It makes no difference that USPS did not "prohibit federal ballots from being mailed altogether," Ballot Mail Rule 29, because USPS is precluded from inventing *any* new categories—whether partial or comprehensive—of nonmailable material. Nor is it any answer to claim that ballot rejections are merely "incidental to [USPS's] ability to impose standards in furtherance of [its] legitimate objectives." *Id.* at 31. No legitimate objective has been identified, nor could USPS claim a legitimate objective in refusing to transmit eligible voters' mail ballots. The statutory scheme *requires* USPS to deliver mail *unless* USPS has determined through valid regulations that refusing to do so is *necessary* to a *USPS function*. Rather than identify any USPS function assigned by statute that requires the non-delivery of certain ballot mail, USPS justifies its Rule only by

reference to the President's policy goals, as expressed through the Rule itself—a woefully deficient substitute.[4]

Finally, while USPS claims that it has "previously relied on its authority under 39 U.S.C. § 401(2) to establish" general regulations that impose "mail-entry conditions" regarding "certain unique articles," it immediately gives the game away—conceding that those regulations pertain to "cremated human and animal remains" and "replica explosives," Ballot Mail Rule 30 (citing Cremated Remains Packaging Requirements, 90 Fed. Reg. 9843 (Feb 19, 2025); and then citing Restricting the Mailing of Replica or Inert Explosive Devices, 75 Fed. Reg. 282 (Jan. 5, 2010)). In those regulations, USPS determined that "entry" restrictions were needed to protect "*operational* interruptions," including by protecting "safety of the mail and postal employees." 75 Fed. Reg. at 283. Thus, those regulations were based on the possibility that the mailpieces in question, if not regulated, could prevent USPS from fulfilling its mission of transmitting the mail: for example, an explosive package could injure employees and damage infrastructure or other mailpieces. But *ballot mail* involves no such concerns. The transmission of a piece of ballot mail cannot possibly inhibit USPS's ability to carry out its mission. Indeed, as noted, the Rule itself acknowledges that ballots can be smoothly transmitted *without* the new requirements. Ballot Mail Rule 70. Thus, whether gating restrictions on "articles that appear to be explosive devices," 75 Fed. Reg. at 283, for example, are necessary to protect the ability of USPS to carry out its

---

[4] *E.g.*, Ballot Mail Rule 72 (asserting that "inclusion of the verification and rejection procedures" are required "in order to fulfill the purposes of the rule"); *id.* ("A less restrictive approach would not achieve all of the rule's benefits."); *id.* ("the Postal Service believes [a] more restrictive approach is unnecessary to achieve the goals of the rule and realize the related benefits"); *see also id.* at 39 ("the Postal Service has determined that, to help achieve the goals articulated by the [Executive] Order as necessary to faithfully execute federal law and also to advance the Postal Service's operational interests, it is appropriate to exercise its statutory authority to promulgate these provisions").

operations obviously presents distinct questions from the kind of "unique" considerations USPS suggests that ballot mailings present, Ballot Mail Rule 30–31. Here too, the agency's own purported legal authority cuts against its stated position.

Even if this case presented a close question of statutory interpretation—and it does not—the Rule clearly violates the major-questions doctrine. *See, e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023). This doctrine is typically implicated where the executive branch uses a longstanding statute to impose new substantive policies, especially on issues of ongoing public "debate." *West Virginia v. EPA*, 597 U.S. 697, 732 (2022) (quoting *Gonzales v. Oregon*, 546 U.S. 243, 267–68 (2006)). In these circumstances, the Supreme Court has held that agencies must identify a "clear statement" from Congress conferring authority to the Executive to act in such circumstances. *Id.* at 717; *Biden*, 600 U.S. at 506. While this Court need not determine whether Defendants "satisfy the 'clear statement' rule" if it determines that they lack a basis for the Rule based on the USPS statutes' plain text, *see, e.g.*, *League of Women Voters*, 2026 WL 1784297, at *32 n.15 (reaching this conclusion in setting aside DHS's major overhaul of the SAVE program), Defendants clearly could not do so. Indeed, the Rule *admits* that it addresses issues of national "importance" and "political significance" and accepts that Congress did not expressly authorize the overhaul. Ballot Mail Rule 28; *see also, e.g.*, *id.* at 29, 66–72 (variously acknowledging Congress did not authorize "rejecting" noncompliant election mail); *id.* at 36 (suggesting existing "federal legislation serves as [a] *template*" for USPS's lists (emphasis added)).

In attempting to rebuff the major-questions doctrine, USPS asserts only that "envelope preparation and data transmission and verification requirements of the sort contemplated here fall well short of an 'unheralded transformation' of regulatory authority." Ballot Mail Rule 26. Yet, here again, USPS simply fails to acknowledge that the consequence of imposing those

requirements is that otherwise legitimate mail ballots—bound up with the fundamental rights of the voters who cast them—will "be rejected from the mailstream" whenever USPS determines that ballots do not comply with its own election-mail-specific Rule. *Id.* at 29; *see also id.* at 69–72 (acknowledging but rejecting "less restrictive" alternatives). If Congress intended USPS to set up a system to enroll voters and refuse to send ballots that do not conform to its own dictates—especially where Congress has acted to give USPS such specific authority in certain areas, and especially where such power implicates fundamental rights of millions—Congress would have said so, but it did not. *Cf. West Virginia*, 597 U.S. at 724; *Biden*, 600 U.S. at 505–06.

In short, because the Rule plainly exceeds USPS's existing statutory authority, Plaintiffs are likely to succeed on the merits.

**B. The Ballot Mail Rule violates the separation of powers.**

Because the Ballot Mail Rule lacks any congressional authorization, it also violates separation of powers principles multiple times over. First, the Rule violates the "vertical separation of powers between the National Government and the States." *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 564 (6th Cir. 2011) (Sutton, J., concurring in part). The Constitution delegates to the States the power to regulate the "Times, Places and Manner of holding [federal] Elections," absent Congressional preemption. U.S. Const. art. I, § 4, cl. 1. And States alone set voter qualifications. *Arizona v. Inter Tribal Council of Ariz., Inc.* ("*ITCA*"), 570 U.S. 1, 16 (2013) (recognizing "the Elections Clause empowers Congress to regulate *how* federal elections are held, but not *who* may vote in them"). States have exercised their authority by permitting mail ballots to be submitted by classes of voters that they select, and according to rules of their choosing. *See generally Watson*, 146 S. Ct. at 2170. USPS's Ballot Mail Rule infringes on these State prerogatives by requiring enrollment of mail voters with USPS, requiring States to conform their ballot mail envelopes to USPS's specific design parameters, and by refusing to transmit ballots that do not comply with

these unlawful requirements. *See California*, 2026 WL 1826490, at *15–16 (noting that the Rule violates the constitutional delegation to the States of the authority to set voter qualifications); *League of Women Voters of Mass.*, 2026 WL 2322705, at *10 (similar).

The Rule also violates the horizontal separation of powers between the executive and legislative branches. The Constitution entrusts power over federal elections to "State legislatures 'primarily' and to Congress '*ultimately*.'" *Watson*, 146 S. Ct. at 2170 (citing The Federalist No. 59 at 362 (Alexander Hamilton) (C. Rossiter ed. 1961)); *see also* U.S. Const. art. I, § 4, cl. 1; *id.* art. II, § 1, cl. 2. The Constitution also makes clear that it "empowers [only] Congress to pre-empt state regulations governing" federal elections, not the President. *ITCA*, 570 U.S. at 8 (emphasis added); *accord DSCC*, 2026 WL 2168617, at *5 (noting the Constitution affords the President "no express authority over the conduct of elections"); *Ex parte Siebold*, 100 U.S. 371, 384 (1879) (recognizing only "the action of Congress," not the President, may "supersede[]" contrary State law). Even then, Congress's authority goes only "so far as it is exercised, and no farther." *ITCA*, 570 U.S. at 9 (quoting *Ex parte Siebold*, 100 U.S. at 371).

The Rule, which creates a system under which USPS enrolls voters, tracks ballot mailings sent to voters, regulates state ballot envelope design, and refuses to transmit nonconforming ballot mail, has zero Congressional authorization—nor have Defendants meaningfully attempted to identify any. *See California*, 2026 WL 1826490, at *15–16 (noting absence of any congressional authorization for USPS to "control mail-in voting"). While the Rule states that USPS is authorized "to adopt, amend, and repeal such rules and regulations, *not inconsistent with this title*, as may be *necessary in the execution of [existing USPS] functions*," Ballot Mail Rule 21 (citing 39 U.S.C. § 401(2)), that grant of statutory authority to carry out USPS's congressionally prescribed functions in no way permits it to enact *election* regulations that federal agencies have no inherent

or express power to proscribe, *see, e.g.*, *Kobach v. Election Assistance Comm'n*, 772 F.3d 1183, 1193–97 (10th Cir. 2014); *see also, e.g.*, *LULAC I*, 780 F. Supp. 3d at 194–95 (first citing *ITCA*, 570 U.S. at 8; and then citing *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015)).

**C. The Ballot Mail Rule violates the Privacy Act.**

The Ballot Mail Rule also facially violates the Privacy Act. That Act provides, in relevant part, that agencies must "maintain *no record* describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7) (emphasis added).

Contrary to that command, the Rule requires States to submit "Mail-In and Absentee Participation Lists" of voters authorized to vote by mail to USPS. Ballot Mail Rule 92–94. Those lists necessarily include information about individuals' exercise of their First Amendment right to vote by mail, *see, e.g.*, *VoteAmerica v. Schwab*, 121 F.4th 822, 834 (10th Cir. 2024) (holding that voting by mail involves the exercise of First Amendment rights); *United States v. Weber*, 816 F. Supp. 3d 1168, 1193 (C.D. Cal. 2026) (holding that "voter registration [and] participation in elections" are "types of political expression protected by the First Amendment" (collecting cases)). Under the Rule, USPS must then transmit those lists of "enrolled" individuals to "federal law enforcement" agencies. Ballot Mail Rule 92–94; *see also id.* at 60–61.

The Rule admits this information will be "collected" and "maintained" by USPS and other federal agencies. Ballot Mail Rule 16–17; *see also* Privacy Act of 1974; System of Records, 91 Fed. Reg. 44880 (July 17, 2026). It nonetheless asserts that it complies with the Privacy Act because that statute's restrictions "could only be invoked here if the Postal Service were gathering and maintaining records indicating the 'content' of an individual's exercise of their First Amendment rights (*i.e.*, the content of an individual's ballot, and thus the candidate for which an

individual voted).” Ballot Mail Rule 16–17. But “how any individual exercises rights guaranteed by the First Amendment” is not in this context or in any other context limited to the candidate(s) a voter supports in any given election. 5 U.S.C. § 552a(e)(7). While forced disclosure of such information could constitute an independent violation of the First Amendment, “[t]he relevant question is not whether [any particular] rights secured by the First Amendment have been invaded but whether the agencies *kept a record* on *how* such rights were *exercised*.” *Reuber v. United States*, 829 F.2d 133, 142 (D.C. Cir. 1987) (emphases added). To answer that question, the D.C. Circuit has instructed this Court to look at relevant First Amendment “precedents,” *id.*—and here, such precedents hold that whether and in what elections an individual votes by mail is information about *how* they exercised First Amendment rights, *see VoteAmerica*, 121 F.4th at 834; *see also Weber*, 816 F. Supp. 3d at 1193 (“The Privacy Act bars DOJ’s request for California’s unredacted voter roll because fulfillment of that request would include information regarding previous election participation.”).

The only remaining question is whether Section 552a(e)(7)’s exceptions apply, and they clearly do not. USPS’s collection of absentee or mail-in voting lists is not “expressly authorized by statute,” 5 U.S.C. § 552a(e)(7)—to the contrary, as explained above, it *violates* the agency’s statutory prerogatives. The Rule also does not require USPS to obtain authorization from “the individual[s] about whom the record[s] [are] maintained.” *Id.* The Rule instead suggests that maintenance of the lists is “pertinent to and within the scope of an authorized law enforcement activity,” *id.*, but the argument goes nowhere. That “activity” has been consistently construed to mean “authorized criminal, intelligence, or administrative investigation[s],” not broad prophylactic compilations that *might* prove helpful to investigations that do not yet exist. *Maydak v. United States*, 363 F.3d 512, 517 (D.C. Cir. 2004).

The Rule points to USPS's own limited investigatory power, and states that USPS intends to disclose information from the lists to other law enforcement agencies, *see* Ballot Mail Rule 11, 16; *see also* 91 Fed. Reg. 44880 (July 17, 2026), but it does no more than speculate that information from the lists might be relevant to some authorized activity in the future. That kind of speculation cannot make a brand-new compilation of information about the exercise of voting rights "pertinent to and within the scope of an authorized law enforcement activity." *Maydak*, 363 F.3d at 517; *see also, e.g.*, *Weber*, 816 F. Supp. 3d at 1193 (holding that "none of the exceptions that would allow for agencies to collect information falling under the first Amendment apply in the present case," where DOJ claimed general authority to investigate voter rolls to justify compilation of California's voter list).[5] And the Rule cites nothing to suggest that the voters whose First Amendment activities will be documented by USPS are subjects of an "authorized criminal, intelligence, or administrative investigation." *Maydak*, 363 F.3d at 517. The Rule therefore facially violates the Privacy Act.

## III. The remaining preliminary injunction factors are satisfied.

### A. The Democratic Party Plaintiffs will be irreparably harmed if Defendants are not quickly enjoined from implementing the Ballot Mail Rule.

Unless Defendants are enjoined, the Democratic Party Plaintiffs are *certain* to experience several harms, each of which is irreparable because once an election occurs, "there can be no do over and no redress." *Newby*, 838 F.3d at 9 (citation omitted). *First*, the Organizational Plaintiffs represent candidates who are running for election this year in all 50 States, and Leader Jeffries is himself a candidate this fall. Forcing these candidates to compete on an unlawfully structured

[5] *See also* Privacy Act Implementation Guidelines, 40 Fed. Reg. 28949, 28965 (July 9, 1975); *accord Clarkson v. IRS*, 678 F.2d 1368, 1375 (11th Cir. 1982); *Jabara v. Webster*, 691 F.2d 272, 279–80 (6th Cir. 1982); *J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 603–05 (D.C. Cir. 1996); *Becker v. IRS*, 34 F.3d 398, 408–09 (7th Cir. 1994).

playing field will inflict an irreparable injury that cannot be undone. *See, e.g.*, *LULAC I*, 780 F. Supp. 3d at 201–02 (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)); *accord Shays*, 414 F.3d at 90 (recognizing time-sensitive nature of electoral harms); Snyder Decl. ¶¶ 11, 38; Remmel Decl. ¶¶ 11, 37; Schneider Decl. ¶¶ 11, 36; Edelman Decl. ¶¶ 11, 41; *see also* Jeffries Decl. ¶¶ 8, 18, Schumer Decl. ¶¶ 9, 19.

*Second*, the Ballot Mail Rule fundamentally disrupts Democratic Party Plaintiffs' planning and execution of their plans for the 2026 elections, which are well underway. *See* Snyder Decl. ¶¶ 5, 19–29; Remmel Decl. ¶¶ 5, 19–26; Schneider Decl. ¶¶ 8, 28–29; Edelman Decl. ¶¶ 23–24, 27–30. With the Rule in effect, Plaintiffs must revamp their voter education and turnout programs at the expense of their persuasion and mobilization programs, making it more difficult to accomplish their fundamental purpose of turning out Democratic voters and electing Democrats—a quintessential irreparable harm. *See, e.g.*, *id.*; *League of Women Voters v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). These harms are already being felt. Voting starts in early September, and Plaintiffs are already executing their election strategies and programs based on the law as it existed before the Rule. *See* Snyder Decl. ¶¶ 23–38; Remmel Decl. ¶¶ 23–26, 34–37; Schneider Decl. ¶¶ 23–28, 34–36; Edelman Decl. ¶¶ 23–30, 37–41; *see also* Jeffries Decl. ¶ 12; Schumer Decl. ¶ 13. Plaintiffs must immediately retool those programs and reallocate resources if the Rule is not enjoined. *See* Snyder Decl. ¶¶ 26–36; Remmel Decl. ¶¶ 19, 25–30; Schneider Decl. ¶¶ 28–34; Edelman Decl. ¶¶ 30–37; Jeffries Decl. ¶ 15; Schumer Decl. ¶ 16.

Every moment and resource that the Democratic Party Plaintiffs are forced to spend planning and implementing programs to counteract the harm of the Ballot Mail Rule cannot be recovered. *See* Snyder Decl. ¶¶ 24–38; Remmel Decl. ¶¶ 24–37; Schneider Decl. ¶¶ 26–36; Edelman Decl. ¶¶ 28–41; *see also* Jeffries Decl. ¶ 15; Schumer Decl. ¶ 16. "[B]ecause each day

presents an opportunity to recruit candidates, persuade voters, and galvanize supporters that cannot be restored once lost, the [E.O.'s changes to the election process] irreparably harm the Democratic Party Plaintiffs' interests throughout the country." *LULAC I*, 780 F. Supp. 3d at 201; *see also id.* (recognizing the court "can neither postpone an election nor turn back the clock to give Plaintiffs additional time to pursue their campaigns"). The E.O. and Ballot Mail Rule are especially harmful to Plaintiffs' candidate members, who the Supreme Court has recognized have a special interest in ensuring a lawful electoral process. *Bost*, 607 U.S. at 77.

*Third*, precisely because the E.O. will compromise Plaintiffs' existing programs and force them to reallocate planned investments, Plaintiffs will also suffer irreparable competitive harm to their electoral prospects. *See FTC v. PPG Indus., Inc.*, 798 F.2d 1500, 1508 (D.C. Cir. 1986) (recognizing prospect of competitive harm, even outside the elections context, as irreparable harm). And Plaintiffs have no choice but to act to prevent damage to their campaigns and electoral prospects. *See Bost*, 607 U.S. at 80 (recognizing that "[o]nly [after election day] will many candidates be able to predict with any certainty that a rule will be outcome determinative").

*Fourth*, Plaintiffs' members are likely to suffer irreparable harm to their voting rights when they are erroneously omitted from the Mail-In and Absentee Participation List or when their ballots are not transmitted because they were in an envelope that did not comply with the Ballot Mail Rule. Courts "routinely deem" such threats of injury to "voting rights irreparable injury." *League of Women Voters*, 769 F.3d at 247. Ultimately, given that Plaintiffs have millions of voter members nationwide, it is inconceivable that they all emerge unscathed when the E.O. is implemented. *See* Snyder Decl. ¶¶ 4, 13–22; Remmel Decl. ¶¶ 4–5, 13–22; Schneider Decl. ¶¶ 4–6, 11–23; Edelman Decl. ¶¶ 4–6, 15–21. Even if voters appear on the Mail-In and Absentee Participation Lists, the inevitable and significant delays from the Ballot Mail Rule, *see supra* Argument § I.B, mean that

some ballots may arrive too late for voters to return them, leaving them disenfranchised or scrambling to find another way to vote. *See* Snyder Decl. ¶¶ 13–17; Remmel Decl. ¶¶ 13–17; Schneider Decl. ¶¶ 17–21; Edelman Decl. ¶¶ 15–19; Jeffries Decl. ¶ 16; Schumer Decl. ¶ 17.

**B. The equities and public interest favor relief.**

The public interest and the equities unquestionably favor the issuance of a preliminary injunction, too. In considering these factors, courts "weigh[] the harm to the moving party and the public if there is no injunction against the harm to the government and the public if there is." *Hanson v. District of Columbia*, 120 F.4th 223, 246 (D.C. Cir. 2024). Because here "the Government is the opposing party," the assessment of the equities and the public interest "merge." *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) (quoting *Nken*, 556 U.S. at 435).

*First*, Defendants face no harm at all from an order temporarily enjoining unlawful provisions while this litigation proceeds. *See Newby*, 838 F.3d at 12 ("There is generally no public interest in the perpetuation of unlawful agency action."). *Second*, an injunction would not circumscribe the President's lawful exercise of his authority, as Defendants have argued in the past; it would merely prevent subordinates from enforcing an unlawful regulation. *See Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("[C]ourts have power to compel subordinate executive officials to disobey illegal Presidential commands." (quoting *Soucie v. David*, 448 F.2d 1067, 1072 n.12 (D.C. Cir. 1971)). And *third*, although there is a public interest in "preserving the integrity of [the] election process," *Newby*, 838 F.3d at 13 (alteration in original) (citation omitted), the Rule does not suggest a problem with existing mail procedures, instead conceding that they are designed to ensure smooth and efficient mail-ballot delivery, Ballot Mail Rule 70.

On the other side of the scale, without a preliminary injunction, USPS will enforce a rule that will fundamentally transform and disrupt mail voting throughout the country. As the First Circuit recognized, "were the EO to take effect for the elections taking place in September and November, it would sow confusion and threaten disenfranchisement of many eligible voters." *California*, 183 F.4th at 73; *see also Newby*, 838 F.3d at 13 (warning that "[c]onfusion will create a disincentive for citizens who would otherwise attempt to register to vote"); Snyder Decl. ¶¶ 34–35 (explaining how the Ballot Mail Rule will confuse voters); Remmel Decl. ¶¶ 31–32 (same); Schneider Decl. ¶¶ 31–32 (same); Edelman Decl. ¶¶ 35–36 (same). Further, privacy breaches will affect every person who votes by mail, and parties and candidates will have to compete on an unlawful playing field, *see supra* Argument § I.B.

The balance of equities and public interest therefore overwhelmingly favor preliminary relief.

**CONCLUSION**

The Court should grant the preliminary injunction.

Dated: August 25, 2026

Respectfully submitted,

*/s/ Lalitha D. Madduri*

**ELIAS LAW GROUP LLP**
Marc E. Elias (DC 442007)
Lalitha D. Madduri (DC 1659412)
Jacob D. Shelly (DC 90010127)
Max Accardi (DC 90021259)
Kevin R. Kowalewski (DC 90045467)
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 948-1135
eliasm@elias.law
lmadduri@elias.law
jshelly@elias.law
maccardi@elias.law
kkowalewski@elias.law

Tyler L. Bishop (DC 90014111)
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
T: (206) 656-0177
tbishop@elias.law

*Counsel for Plaintiffs DSCC, DCCC, Democratic National Committee, Democratic Governors Association, Senate Minority Leader Schumer, and House Minority Leader Jeffries*