# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-1114 (CJN) |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-1132 (CJN) |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-1151 (CJN) |

**SECOND DECLARATION OF JUAN PROAÑO**

I, Juan Proaño, pursuant to 28 U.S.C. § 1746, declare that the following statements are true and correct to the best of my knowledge and belief:

1. I am the Chief Executive Officer of League of United Latin American Citizens (LULAC), a position I have held since November 2023. In my role as Chief Executive Officer, I oversee the day-to-day operations at LULAC and work to amplify the organization's advocacy initiatives and action-oriented programs.

2. LULAC is the largest and oldest Latino civil rights organization in the United States. Established in 1929 and headquartered in Washington, D.C., LULAC is a nationwide, non-profit, non-partisan, membership-based organization with more than 300 councils (local chapters) and over 800,000 members, with members in every state in the country. LULAC has a national board, president, and professional staff, as well as several issue-specific committees.

**<u>LULAC's Mission and Activities</u>**

3. LULAC's mission is to improve the lives of Latino families throughout the United States and to protect their civil rights, including their voting rights.

4. LULAC advances the economic conditions, educational attainment, political influence, housing, health, and civil and voting rights of Hispanic Americans through community-based programs.

5. LULAC's members include both U.S. born citizens and naturalized citizens. LULAC provides citizenship application assistance and civics and citizenship education to its members, many of whom are immigrants.

6. LULAC's members are civically engaged. Approximately 70% are registered to vote, and nearly 80% of LULAC's registered members voted in 2020 and approximately 62% voted in 2022.

7. Throughout the year, LULAC's councils register prospective voters and hold voter registration drives at naturalization ceremonies, schools, churches, and other community events. At these events, LULAC councils often, at the request of registrants, collect voter registration forms and return them to local election offices in accordance with state law.

8. LULAC holds get-out-the-vote programs before elections to encourage its members to vote. Through these programs, LULAC councils educate their members and other community members about voter registration, in-person voting options, vote-by-mail applications, and vote-by-mail deadlines. Where permitted by law, LULAC encourages mail-in voting (also known as absentee voting), as many LULAC members have difficulty voting in person because they are elderly, disabled, members of the armed forces or others who are deployed domestically or abroad, have medical issues, live in rural areas, or do not have reliable access to transportation, among other reasons. Many LULAC members choose, state law permitting, to vote-by-mail. Where vote-by-mail is available, LULAC councils also help their members and other voters to apply for vote-by-mail ballots to the extent permitted by law.

**The Final Rule**

9. Based on my understanding of its contents, the U.S. Postal Service's Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026), final rule ("Final Rule"), which implements Section 3 of the President's Executive Order on mail voting, will cause significant harm both to LULAC's members and to LULAC as an organization.

10. As I understand the Final Rule, it makes election offices jump through several new hoops before the U.S. Postal Service will send federal election mail ballots. For example, ballot envelopes have to include new things, including a special barcode on both the envelope sent to the voter and the envelope the voter uses to send the ballot back. The envelopes also must meet other

new design rules. If an election office does not follow those rules, the U.S. Postal Service will not take the ballots.

11. I understand that the Final Rule also says that states must give the U.S. Postal Service a list of everyone who will get a mail ballot. The state has to provide information about each voter on the list, including special barcodes for that voter's outgoing and return ballot envelopes. As I understand it, the U.S. Postal Service will deliver mail ballots only to people on that list. If a voter is not on the list, the U.S. Postal Service will not deliver that voter's ballot.

12. My understanding is that the Final Rule also says that election offices must take outgoing ballots to certain U.S. Postal Service counters, including business-mail or retail counters. Postal workers will check the envelopes there before the U.S. Postal Service accepts them. If even one envelope does not meet the new rules, the U.S. Postal Service can reject the whole mailing, even if the mailing contains hundreds of thousands of ballots.

13. I further understand that the Final Rule also says that election offices are required to keep regular federal election ballots separate from other kinds of ballots, such as military and overseas ballots or ballots for state only or local only elections.

**<u>The Final Rule's Impact on LULAC's Members</u>**

14. The Final Rule will cause harm to LULAC's members who vote by mail by erecting new and unnecessary barriers to the vote-by-mail ballot process and causing confusion. LULAC has tens of thousands of members in virtually every state across the country who routinely cast ballots by mail (in accordance with their state absentee ballot laws) in major federal elections.

15. LULAC members vote absentee for many different reasons, including because they are disabled, elderly, members of the armed forces or others who are deployed domestically or abroad, medically incapacitated, lacking reliable transportation, or otherwise. Some LULAC members reside in universal vote-by-mail states where all registered voters receive a mail ballot

(such as California, Colorado, Hawaii, Nevada, Oregon, Utah, Vermont and Washington state), states where any voter can be on a permanent absentee ballot mailing list where they sign up once and receive a mail ballot for every election (such as Arizona, District of Columbia, Maine, Maryland, Michigan, Minnesota, Montana, New Jersey, New Mexico and Virginia), states where a person with a disability can be on permanent absentee voter list (such as Alabama, Connecticut, Delaware, Illinois, Kansas, Louisiana, Mississippi, New York, Tennessee, West Virginia and Wisconsin), and other states where voters can request mail ballots, with or without an excuse.

16. For those LULAC members who typically receive their ballots by mail (particularly in states that are universal vote by mail states like California, Colorado, Oregon, and Washington, among others), they may only realize there is a problem when their ballot fails to arrive as expected. And many of these members may not be able to find a way to get to the polls in person, and so would be left without a means to vote at all. In addition, because many LULAC members rely on vote by mail out of necessity (due to physical absence from the county on Election Day, age, or disability), they risk not being able to vote at all if they cannot vote by mail.

17. And in many states, voters can request absentee ballots very close to Election Day. In Arizona, for example, voters can request absentee ballots in person, by mail, or online 11 days before Election Day. My understanding is that other states have similar timelines for requesting absentee ballots (Alaska, 10 days before Election Day; District of Columbia, 15 days before Election Day; Florida, 12 days before Election Day; Massachusetts, 7 days before Election Day; Texas, 11 days before Election Day; South Carolina, 11 days before Election Day). The Final Rule directs Postal Service to generate a Participation List, which determines who receives absentee ballots through the mail. LULAC has members who vote by mail in all of these states. For these LULAC members who request absentee ballots close to the Election, it seems highly possible they

would not appear on Participation List. The practical effect would be that these individuals, despite having timely requested absentee ballots, would not receive them because their names would be absent from the Participation List. For these reasons, I am concerned that some LULAC members who request absentee ballots under state law will not receive those ballots because they were not enrolled in the Participation List, even though they followed state law in requesting the ballots.

18. The envelope design requirements in the Rule also threaten to disenfranchise LULAC's members. Some LULAC members, who timely request absentee ballots, live in jurisdictions that cannot comply with the technicalities required to create the new envelopes, gather and format the data for the portal, including generating two unique barcodes. The Rule appears to say that the U.S. Postal Service will not accept mail ballots if election officials cannot comply with these new requirements. For example, I understand that Travis County, where LULAC members live, does not currently use unique IMbs on both outbound and return mail-in ballot envelopes. If Travis County cannot comply, the Rule requires the Postal Service to refuse to accept ballot envelopes without the proper design elements, and that would prevent LULAC members from receiving mail ballots or returning completed ballots. Other jurisdictions like Travis County are in a similar position because they cannot comply, and LULAC members who vote by mail in those places face a high risk that they will never receive their mail ballots for the November election.

19. On top of that, many LULAC members live in small or rural jurisdictions that do not have the technology and finances to generate, print, track, and use unique IMbs for each mail ballot envelope. Printing these special barcodes requires special printers. I am concerned that some small election offices, including those that prepare or affix mailing labels by hand, do not have access to those systems because they are under resourced and understaffed. So, making these changes is not feasible on a longer timeline and certainly impossible to implement before the 2026

election. The resulting failure of the jurisdiction's inability to comply or any mistakes the jurisdiction makes from attempting to comply in such a short time frame will directly burden and very likely disenfranchise LULAC members.

20. LULAC members also reside in larger jurisdictions, including those like Madison, Wisconsin, which I understand distributes tens of thousands of ballots in its initial mailing and, under the Rule, must present mailings at BMEUs or retail postal counters. But I understand that there is no guarantee that BMEUs and retail postal counters have the necessary equipment, capacity, or expertise to scan large volumes of mail ballots. Delays or failures in processing these mail ballots threaten to prevent LULAC members from receiving or timely returning their mail ballots, risking the loss of their votes.

21. LULAC members' privacy is also harmed by the creation of the Participation List, and the distribution of this data among federal agencies and between federal and state officials. LULAC's members fear what will come of the aggregation, disclosure, and potential misuse of their sensitive personal information. For those members who are newly naturalized, live in mixed-status houses, or otherwise fear immigration enforcement actions, the widespread sharing of their personal information between and amongst federal agencies and state officials intrudes on their sense of security.

**The Final Rule's Impact on LULAC's Core Mission**

22. Tackling the implications of the Final Rule will frustrate LULAC's mission and drain LULAC's scarce resources.

23. The Final Rule will impede LULAC's core mission work relating to voter engagement, including its work to register eligible voters under state law, engage in voter education about other topics, and get out the vote through in-person voting and mail voting. LULAC's councils are trusted community organizations, and prospective voters routinely seek out

LULAC's help to register to vote, to apply to receive an absentee ballot, and to update their voter information.

24. The uncertainty surrounding mail-in voting also directly impairs one of LULAC's core functions: providing accurate voting information and encouraging civic participation. LULAC has long encouraged its members to vote through all lawful and available methods, including vote by mail. The Rule makes LULAC's current education on mail voting less relevant and in some sense, obsolete because now, sharing information with members on state laws and local rules is not enough. LULAC needs to overhaul its messaging and guidance on mail voting. But even that is difficult. Because of the uncertainty around the Final Rule's requirements and application to various states and localities prevents LULAC from giving clear, reliable, and tailored advice on whether and how to vote by mail and ensure that the ballot is counted. Thus, the Final Rule hampers LULAC's ability to reach and encourage as many voters as it otherwise would.

25. In the past, LULAC has been able to reassure registrants that the information collected to assist in registering them to vote, applying for a mail ballot, or updating their voter registration forms is safe and secure. But LULAC can no longer provide the same reassurance to community members. Instead, the organization is now fielding questions and concerns from community members about how their information will be used if they register to vote or if they request an absentee ballot. The Final Rule's mandated collection and distribution of voters' information—through the Mail-in and Absentee Participation List—frustrates LULAC's mission to register and encourage voting because the community LULAC serves is increasingly hesitant to interact with federal and state officials in any capacity.

26. The Final Rule's provisions on mail voting have also created and will continue to create chaos and confusion among LULAC's members and throughout the Latino community

LULAC serves. Many LULAC members are confused about whether voting by mail is a reliable option for the November 2026 election. That confusion and uncertainty is especially harmful to LULAC members who depend on voting by mail. Without clear and reliable information, LULAC members will be unable to make an informed and timely plan to cast a ballot with the greatest likelihood of it being counted. As a result, LULAC will devote substantial time and resources to determining how best to ensure its members and community members are able to access vote by mail, including by ensuring that these individuals are included on all relevant lists so that they can receive a mail ballot to begin with. For those who are excluded from the relevant lists, LULAC intends to divert resources to set up programming to assist voters with the complicated process of voting by mail under the Final Rule. And because the Final Rule's mail voting provisions will also implicate the timing of mail voting, LULAC has already diverted resources to educate and assist members and community members about timely receiving and returning their mail ballot.

27. Already, LULAC has had to respond to questions from state presidents and members in its more than 420 Councils nationwide regarding the Final Rule's potential effects in their respective states. LULAC's work is state- and locality-specific because absentee and mail-in ballot rules are different in each state, and on top of that, local jurisdictions use different procedures to administer mail voting (for example, some rely on third party mail vendors and others do not).

28. To respond to its members, LULAC has had to research applicable state laws and contact election officials in particular jurisdictions to determine how they will comply with the Rule, so that LULAC can advise its members who live in those jurisdictions. LULAC has expended staff time investigating whether particular jurisdictions will use compliant envelopes, assign IMbs to outbound and return mail-ballot envelopes, or otherwise be able to satisfy the Rule. And even then, LULAC has not been able to, with certainty, provide accurate information to

members who live in those jurisdictions and vote by mail on how and whether they should, in fact, vote by mail.

29. LULAC has also received numerous questions from individual voters asking whether they should vote by mail and whether their mail ballots will be counted. It is currently spending approximately between four and 20 staff hours a week to determine what guidance it can responsibly provide to its state presidents and members. Even with all these efforts, I know that some of LULAC's members and some of LULAC's community will fall through the cracks of the new system of mail voting created by the Final Rule.

30. To meet the resource needs and staffing required to educate and assist members, navigating the implementation of the Final Rule, LULAC will have to divert significant resources from its other important initiatives. LULAC is currently devoting significant resources and staff time toward issues such as combatting aggressive immigration enforcement, fighting the dismantling of Diversity, Equity, and Inclusion initiatives, and providing economic empowerment programs to its members. These programs, as well as regional, state, and local programs, stand to suffer if LULAC must use its limited resources to combat the effects flowing from the implementation of the Final Rule.

31. Finally, the Rule threatens to harm LULAC's hard-earned reputation as a trusted community partner that helps voters register and cast ballots. For decades, LULAC has been able to tell voters, including thousands who vote by mail, that they can safely use the voting methods authorized by their State so long as they follow the applicable State procedures. The Rule prevents LULAC from offering that same assurance. Because LULAC cannot reliably tell voters whether a mail ballot will be accepted, delivered, or counted under the Rule's new requirements, it has struggled to provide accurate guidance about whether and how voters should vote by mail. That

uncertainty undermines LULAC's credibility with the communities it serves and harms a reputation that LULAC has spent decades building.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of August, 2026, in Washington, DC.

Juan Proaño