# Exhibit 5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-1114 (CJN) |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-1132 (CJN) |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-1151 (CJN) |

**DECLARATION OF SARAH STREYDER**
**EXECUTIVE DIRECTOR, SECURE FAMILIES INITIATIVE**

I, Sarah Streyder, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over 18 years of age and competent to give this declaration.

2. I am the Founder and Executive Director of Secure Families Initiative (SFI).

3. SFI is a non-partisan 501(c)(4) non-profit organization comprising military spouses and family members.

4. SFI began under an incubation program in January 2020 and then became a standalone non-profit in January 2021. SFI is incorporated in Washington, D.C. and has five full-time staff members, three part-time staff members, and over 44,000 members.

5. SFI's mission is to mobilize diverse military partners, parents, children, and veterans to vote and advocate for their communities. Recognizing that military families make enormous sacrifices to strengthen and defend our country, SFI seeks to influence issues of foreign policy and national security that especially impact SFI's members. SFI believes that mobilizing its community to vote and advocate is the most effective way to reshape the country's conversations around military intervention and ensure its members have a seat at the table over decisions that affect their own lives.

6. Military families reflect America. Military families come from all 50 states, every U.S. territory, and the District of Columbia. They come from rural areas, small and large towns, and cities. They have a variety of educational experiences and backgrounds. They include members from every ethnic group, religion, and sexual orientation. Nearly 50% of service members are Black, Indigenous, or a Person of Color; over 50% are under 30 years-old; and 92% of military spouses are women. SFI's membership is reflective of this diversity.

7. The military community is a network of families stationed all over the world. Most active-duty families move every two or three years. In addition to disruption of established support networks, changes in children's education and social lives, and limits on spouse employment and career paths, these moves also impact the ability of military spouses and eligible dependents to vote.

8. SFI represents military-connected families serving abroad in at least sixteen different countries. SFI members are also posted to military bases within the United States. A portion of SFI's membership are also families living abroad who have transitioned out of military service. Our most recent records indicate that SFI has members residing in all 50 states, as well as the District of Columbia, and registered to vote from out-of-state in 49 states (all but Hawaii) and the District of Columbia.

9. SFI creates and runs military voter education programs to further SFI's mission of closing the voter participation gap between the military and civilian communities. SFI's military voter education programs have been recognized nationally and highlighted as a key information source for active-duty families by the Department of Defense (DoD).

10. One of these programs is SFI's "Voting Ambassador Program," which trains military family members to become volunteer educators. These ambassadors are trained to register voters within their personal networks and educate others on how to navigate the specific voting challenges military families face, such as voting absentee and overseas due to frequent relocations. Voting Ambassadors promote civic participation among their military networks, including by hosting voter registration events targeting military-connected voters in their communities.

11. SFI convenes a monthly Voting Rights Leadership Team that works to expand voting rights, reduce barriers to military voting, and improve America's democratic elections process. The team consists of 37 members living all over the world. If election policy changes, SFI must develop, plan, and provide robust training on those changes to this core team in order to continue its organizational voter engagement and education efforts. These new training programs will require reallocating SFI's limited resources, including staff and volunteer time, away from existing advocacy, outreach, and education programs, such as community building activities to combat the

isolation of military deployments, to instead focus on developing and leading training on these policy changes.

12. SFI founded and leads the Military Vote Coalition (MVC), a nonpartisan group of over 20 military family and veteran support organizations. Through this coalition, SFI and its partners conduct outreach and advocacy to protect and expand military families' access to the ballot box.

13. SFI also partners with other military-serving organizations, such as the National Military Family Association (NMFA), to create educational resources. For example, SFI has collaborated with NMFA on outreach materials designed specifically for military teens, who often face unique challenges as first-time voters due to their family's frequent moves.

14. I am aware that on March 31, 2026, President Trump issued an Executive Order titled "Ensuring Citizenship Verification and Integrity in Federal Elections" (the "Order" or "EO").

15. I am also aware that on August 26, 2026, the USPS published a Final Rule implementing Section 3(b) of the Executive Order, which will now require USPS to refuse to send voters their mail ballots if USPS is unable to match the barcode on the outgoing mail ballot envelope to a voter on a list provided by USPS to state and local election officials, known as the "Mail-In and Absentee Participation List[s]". This Rule will harm SFI and its members immediately and in the long term.

<u>Harms to SFI Members</u>

16. SFI's members will be harmed by the USPS Final Rule implementing Section 3(b) of the Order, which requires the creation of lists containing information about Americans and orders USPS to not deliver ballots to or from individuals not included on particular lists submitted to USPS by states or in instances where ballot envelopes do not have certain

individualized intelligent barcodes.

17. SFI's many members who rely on absentee voting are harmed by the Executive Order and Final Rule because they will not be able to vote by mail—and thus will not be able to vote at all—if their ballot is either not delivered or unduly delayed because of any number of likely errors, failures, or delays likely to be occasioned by the Rule.

18. Moreover, my understanding is that the Rule depends on election officials, not voters, to clear the administrative hurdles to ballot delivery created by the Rule. As such, SFI members have little to no control over compliance with the Rule and receipt of their mail ballots and likely will be unable to cure any problems leading to the rejection of their ballot for mail delivery.

19. I understand that the Final Rule purports to exempt "UOCAVA voters" from the Final Rule's requirements. I do not believe that the exception will be effective or provide adequate relief to SFI's constituency for several reasons.

20. First, it is my experience that military families often use the state-created mail ballot application rather than the federal ballot application options, especially military families stationed within the United States. Indeed, a recent survey by the Federal Voting Assistance Program ("FVAP") indicated that 57 percent of military and overseas voters were unaware that they could use the Federal Postcard Application ("FPCA") to register to vote and request an absentee ballot for the November 5, 2024 election. *See* Fed. Voting Assistance Program, *Post-Election Voting Survey: Overseas Citizen Population Analysis (OCPA) Technical Report 2024* (2024) at 81, https://perma.cc/23GZ-P6CZ. SFI spends a considerable amount of time educating voters about the existence of the FPCA, because many of the voters we communicate with think that their state's application is the only way they can vote. For military voters stationed within the United States, it is my experience that some voters simply choose to use the excuse that they

are away from home during the election, rather than denote that they are specifically away on military orders, either because they just don't realize that military orders carry additional protections, or because they prefer to not identify themselves as military affiliated for personal security reasons.

21. Unless the voter's ballot application is specifically marked as a "UOCAVA application," the election official has no reason or ability to identify the voter as a "UOCAVA voter" or thus mark the ballot it sends out as such. And unless the state marks a voter's state-created ballot specifically as a "UOCAVA ballot," USPS has no reason or ability to identify the voter as a "UOCAVA" voter or treat their ballot as such. Therefore, for many of our members and constituents, they will not benefit in any way from the rule's exception for UOCAVA voters.

22. Second, even if those ballots could be distinguished, any delay in processing ballots overall as a result of the upheaval of the Rule will exacerbate the delays that military voters notoriously face in receiving election mail. It is my understanding that election officials, including my co-Plaintiffs, believe that the Rule will necessarily result in such delays. SFI members rely heavily on mail voting because of their family member's service to our country. In order to accommodate the military service of their family members, SFI members move frequently and physically reside in a jurisdiction other than their place of legal residency.

23. SFI has hundreds of members who are stationed, and thus physically "reside," in a state other than the state of their legal residence for the purposes of exercising their right to vote. Still other SFI members are stationed and thus physically reside outside of the United States entirely. These members are legally registered to vote in their home state even though they do not "maintain" a physical "residence" in that state under the plain language of the Executive Order.

24. SFI members absent from their place of residency typically do not have in-person voting or ballot return options. They generally must send and receive their ballot by mail. While

some states allow email or online portal return of absentee ballots for UOCAVA voters, these states do not include many of the top states for military recruitment with large numbers of SFI members, including California, Texas, Florida, Georgia, and New York. Indeed, most military voters use the mail to return their UOCAVA ballots.[11]

25. SFI members stationed abroad not only rely on mail voting but are already subject to the dangers of disenfranchisement due to mail delays. It often takes many weeks to receive international mail, and many weeks to return the mail. SFI has heard from members who have been unable to vote in past elections because they didn't receive their absentee ballot in time. The delays in processing and delivering ballots the Rule is all but certain to cause will hit these voters hardest.

26. SFI members are also more likely to change their legal voting residence or update their voter registration with a new address close to Election Day. SFI members move frequently because of their status as military dependents.

27. This includes frequent moves that often occur as part of the permanent change of station (PCS) process during the summer months, which takes place in the weeks leading up to and during federal primary and general elections, known as PCS Season. SFI members relocate frequently, and often multiple times, during the PCS season. PCS season is broadly structured to complement the school year. So, many families find themselves settling into their new neighborhoods in early September – and still more families may move even closer to an election if anything has delayed their move (including extended orders, the delayed arrival of a service member's replacement, or delays in household goods delivery).

---

[1] U.S. Election Assistance Commission, "Election Administration and Voting Survey 2024 Comprehensive Report," 205 fig. 6, https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf.

28. As such, they are more likely to register at their new residence, update their registrations with their current address, and/or apply for absentee ballots closer to the Election than other voters.

29. I myself have moved during PCS Season this year. My family and I have been living overseas for the last three years. We are in the process of moving back to the U.S., to a state we've never lived in before. We are visiting family right now but expect to arrive at our new duty station around mid-September. Though we will live in a new state, we are and will remain registered to vote in our home state, where we maintain our legal residence. This will require me and my spouse to update our voter registration once we have our new mailing address and I cannot apply for my absentee ballot until that is settled. Because the military has no on-base housing to provide to families moving to this new duty station, finding a new house on our own (and subsequently, determining our new mailing address for election mail) has been an especially long, drawn-out process.

30. For all of these reasons, it is highly likely that many SFI members will change their location of physical residency after states have already provided their initial Mail-In and Absentee Voter Participation Lists to USPS. Therefore, these members registering and applying to vote absentee close to Election Day will not be included in any initial list given to USPS and would need to be in a supplemental list, increasing the risk to them of errors, delays, and confusion. At the same time, these voters will have less time to receive and return their ballots than those who can register and apply to vote absentee further in advance of the election.

31. In sum, SFI members are uniquely reliant on mail voting, uniquely at risk of disenfranchisement due to any delays in ballot delivery, and uniquely likely to need to register and apply to vote absentee late in the cycle due to ongoing relocations. All of these characteristics drastically raise the risk of disenfranchisement for SFI members as a result of the

errors, delay, and confusion the rushed implementation of the Rule would cause. Given that many SFI members are most familiar with, and rely upon, their state's absentee voting applications rather than the specific UOCAVA application materials, the technical UOCAVA exception provides little help to many of our members.

32. Further, SFI members are also harmed by the uncertainty and confusion surrounding their ability to vote by absentee ballots (often their only means of participation) as a result of the rushed implementation of the Final Rule.

33. UOCAVA allows military and overseas voters to request an absentee ballot through the Federal Post Card Application at the same time that they register to vote. For SFI members who use the FPCA to simultaneously register and request an absentee ballot within 60 days of a federal election, it is a near certainty that they will not be "enrolled" on the Mail-In and Absentee Participation List and as a result, will be unable to vote by mail. The EO requirement thus defeats the purpose of the FPCA and frustrates the ability of SFI to ensure that its members and constituencies may register and vote.

34. The Order and Final Rule's provisions requiring list creation and sharing of personal information between entities also harm SFI members who have a particular interest in maintaining the security of their personal information due to the commitment of their family members to service. SFI members are a heightened target for foreign adversaries and have often been trained on security risks. Many SFI members have experienced direct threats to their personal security and take measures to protect even basic personal information from disclosure.

35. Because of the grave harms to SFI and its members, SFI submitted a public comment opposing the Final Rule. This public comment is attached as Attachment 1. Among other things, SFI made USPS aware of the unique challenges facing military voters which would be exacerbated by the Final Rule. Still, USPS adopted the Final Rule without changes to the

Proposed Rule that would meaningfully mitigate the harms to military voters.

Harms to SFI

36. The mission of the SFI voter engagement program is to increase military connected voter turnout and close the 27% voting gap compared to civilian counterparts. Any action to further complicate and add barriers to voters makes it more difficult for SFI to accomplish our mission.

37. SFI furthers its mission by providing comprehensive voter engagement, education, and assistance services to its membership. The Rule's rushed implementation will directly undermine the adequacy and effectiveness of those services. Voters we have educated and engaged will nonetheless be unable to participate in our elections. To mitigate these harms, we plan to divert resources from other planned activities and programming to rapid response to assist impacted member voters.

38. As a result of the Final Rule, SFI will need to divert staff time and resources toward overhauling its member services programming. As discussed above, the facial exemption for UOCAVA voters will not be an adequate safeguard for our members. Therefore, SFI will be forced to divert resources to educate their members about the Rule and its likely impacts and help its members navigate those impacts.

39. As a result of the Final Rule, SFI has already begun diverting resources towards educating its members. Immediately after the U.S. Supreme Court's stay in *California v. Trump,* and USPS's subsequent issuance of the Final Rule, SFI had to devote significant time educating members about the effect of the Final Rule on their ability to vote absentee or vote by mail.

40. In response to the Rule, SFI plans to add an entire section to its Voting Ambassador Program for members on how to help military families in their networks ensure they are able to vote by mail, and conduct additional training and outreach events, consuming staff time and resources that would not otherwise have been required. These education and outreach

events include events and training on virtual platforms, as well as written materials distributed through email, social media, and other means.

41. In the fall, SFI will host one of its major programs, the Back to School Virtual Summit. Normally, this programming would focus on SFI's other priorities, such as education. Because of the Final Rule, SFI will need to devote a significant amount of time that it would otherwise be spending on other initiatives to educate and counsel its members during the summit on the Final Rule and its implications on military and overseas voting.

42. Further, through its Voting Ambassador Program, SFI directly assists its members who vote by mail. Every year in which there is a major federal election, SFI runs a "rapid response" help line whereby members can electronically submit questions or problems with mail-in voting, and an SFI team member will work with them directly to resolve the issue. The Final Rule will require SFI to respond to inquiries about its requirements and the resulting impacts on its voters. Since the Voter Ambassador Program's volunteer capacity is necessarily finite, responding to an increase in helpline requests about the Rule will come at the cost of other voter assistance activities.

43. This additional work on behalf of our members will also require interfacing with state and local election officials, the United States Postal Service, Department of Homeland Security, Social Security Administration, and other federal government entities on behalf of members to prevent the disenfranchisement of those members.

44. This expanded member education detracts from the activities that SFI had planned to do over the next several months and beyond. SFI staff is already being forced to divert time away from event planning for a major in-person member convening in order to create an explainer video to its members regarding the Final Rule. Additionally, staff time that would have been devoted to having one-on-one meetings with new SFI volunteers is now going into

education, outreach, and response to the Final Rule.

45. Unless and until the Final Rule is declared void, SFI will need to continue to divert resources from its existing projects to educate and directly assist its members who have difficulty casting an absentee ballot in compliance with provisions of the Final Rule. This will continue to divert resources from projects SFI is conducting and planned to conduct, including in-person event planning, volunteer meetings, and educational outreach to state legislators.

46. Even with the extra resources and effort SFI will devote to helping its members register due to the Final Rule, its activities will nevertheless be undermined and rendered less effective, because fewer SFI members and fewer military family members overall will be able to vote and to have their vote counted.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Sarah Streyder

Executed this 27 day of August, 2026 in

Alexandria, Virginia

# Attachment A

FOR: Director, Product Classification
U.S. Postal Service

DATE: 1 July 2026

FROM: Sarah Streyder, Executive Director
Secure Families Initiative
1725 I St. NW
Ste 300 PMB 2179
Washington, DC 20006

SUBJECT: Comment for Notice of Proposed Rulemaking on Ballot Mail for Federal Elections

The Postal Service is proposing to amend the Mailing Standards of the United States Postal Service, Domestic Mail Manual (DMM), regarding the transmission of mail-in and absentee ballots for federal elections pursuant to its rulemaking authority. Pursuant to the U.S. District Court for the District of Massachusetts's June 25th order, this rulemaking process is illegal, and the USPS should permanently abandon the proposed changes included in it.

To the extent USPS continues to consider these changes, we write to submit comment on the proposed rulemaking on ballot mail for federal elections. Secure Families is a nonpartisan, nonprofit organization whose mission is to educate and mobilize diverse military spouses and family members to be voters and advocates for their community. We are a go-to nonpartisan resource regarding voter registration and ballot return processes and deadlines, for active-duty military spouses and adult-aged dependents stationed all across the country and globe. On behalf of military and overseas voters, we write to provide comments on the proposed Rule on Ballot Mail for Federal Elections.

It is imperative that the USPS understand the unique harms that the proposed Rule would have if implemented, on military families serving our country. The proposed new rule would allow USPS to control who can receive and return a ballot through the mail. If implemented, eligible American citizens will assuredly be blocked from participating in our elections. The Rule is illegal, impractical, and impossible to implement without harming voters for the 2026 general election for several reasons:

1. **The Rule violates USPS's own mandates and undermines public trust in the institution**. USPS's duty is to receive, transmit, and deliver the mail to everyone in the United States (and on U.S. military installations or vessels overseas), unless a law passed by Congress says otherwise. This duty is especially necessary and cherished by military families stationed overseas, whose connection to both loved ones and democracy "back home" is predicated on USPS access through U.S. military installations. This Rule would allow USPS to violate that important duty by deciding not to deliver ballots to certain voters–and in doing so, drive a wedge between service families and the very democratic practices they serve to protect.

2. **The Rule violates the Constitution and federal law**. On June 25, 2026, the U.S. District Court for the District of Massachusetts issued an order declaring that Sections 2 and 3 of the Executive Order are legally void, and holding that USPS cannot refuse to deliver mail ballots to voters who do not appear on a federally-mandated list. USPS should not take steps to implement an illegal Executive Order.

3. **The Rule forces USPS to take on the role of election administrator**, which USPS is not equipped to take. The proposed Rule would do away with the many practical benefits of trusting states to administer mail-in voting in federal elections, including local knowledge of populations such as voters covered by the Uniformed and Overseas Citizen Absentee Voting Act (UOCAVA), which have their own distinct set of voting processes and protections. USPS would be thrust into the role of nationwide election administrator—a function for which it has no funding, expertise or ability, and which would divert already limited resources from its critically important core functions.

4. **The Rule will disenfranchise voters** due to technical and administrative errors that are no fault of their own. It is unavoidable that USPS will be denying countless voters access to their mail ballots because any implementation of this Rule will necessarily rely on inconsistent and stale data that cannot possibly accommodate the transience of military families. Over one-third of families in the entire U.S. Armed Forces move duty assignments every year, most commonly during the summer and early fall months (in order to line up with school calendars). As a result, residential data regarding military families changes frequently, especially leading up to fall-time elections. There is no way the USPS could feasibly keep up with these changes–and the Rule leaves no way for voters to fix any issues until after it is too late. Military voters already vote at 27% lower rates than civilians; this will only exacerbate that discrepancy.

**Summary**

The proposed Rule on mail ballots is a direct response to the Executive Order 14399, which aims to limit access to voting by mail. In doing so, it undercuts one of our country's most secure institutions–one that military families have relied on for over a century.

We have several concerns regarding the proposed Rule, as outlined above. We urge the Post Office to defend the independence of our election systems, and their own independence, by refraining from implementing any of the President's unlawful commands.

Sincerely,

Sarah Streyder, Executive Director
Secure Families Initiative
1725 I St. NW
Ste 300 PMB 2179
Washington, DC 20006