**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1114 (CJN) |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1132 (CJN) |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1151 (CJN) |

**DEMOCRATIC PARTY PLAINTIFFS' MOTION FOR ORDER REQUIRING MATERIAL UPDATES AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND AND PROCEDURAL HISTORY ........ 2

I. This Court set a clear expectation that Defendants must provide material updates of E.O. implementation. ........ 2

II. Defendants continued to represent non-implementation of the E.O. in Massachusetts litigation. ........ 3

III. Defendants' implementation of the E.O. proceeded largely without notice. ........ 4

A. Section 2(a): State Citizenship Lists ........ 4

B. Section 3(b): The USPS Ballot Mail Rule ........ 6

IV. Democratic Party Plaintiffs engage in good-faith, ongoing efforts to obtain material updates as irreparable harm accumulates. ........ 7

LEGAL STANDARD ........ 9

ARGUMENT ........ 10

I. Defendants have failed to notify the Court of material factual developments. ........ 10

A. Defendants failed to provide notice of DHS's State Citizenship List Portal. ........ 11

B. Defendants failed to provide notice of material USPS procedures and timing. ........ 14

II. The requested relief is warranted and proportionate ........ 16

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

**Abbott Laboratories v. Gardner*,
387 U.S. 136 (1967) .......... 10

*Bolger v. District of Columbia*,
248 F.R.D. 339 (D.D.C. 2008) .......... 17

**Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .......... 9, 18

*City of Port Isabel v. Fed. Energy Regul. Comm'n*, 111 F.4th 1198 (D.C. Cir. 2024), *reh'g in part*, 130 F.4th 1034 (D.C. Cir. 2025) .......... 10

*DSCC v. Trump*,
No. 26-5193, 2026 WL 2168617 (D.C. Cir. July 28, 2026) .......... passim

*Hillman v. Am. Fed'n of Gov't Emps., AFL-CIO*,
No. 1:18-CV-999-RCL, 2023 WL 8247155 (D.D.C. Mar. 24, 2023) .......... 17

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
818 F. Supp. 3d 34 (D.D.C. 2026) .......... 13

*League of Women Voters v. DHS*,
No. 1:25-CV-3501-SLS, 2026 WL 1784297 (D.D.C. June 22, 2026) .......... 13

*Shepherd v. Am. Broad. Cos.*,
62 F.3d 1469 (D.C. Cir. 1995) .......... 9, 18

*Shillitani v. United States*,
384 U.S. 364 (1966) .......... 9

**Teva Pharms. USA, Inc. v. Kennedy*,
--- F.4th ----, 2026 WL 2409591 (D.C. Cir. Aug. 18, 2026) .......... 10

*Trump v. California*,
No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026) .......... 4

**Venetian Casino Resort v. EEOC*,
530 F.3d 925 (D.C. Cir. 2008) .......... 10, 12

*Weinstock v. United States*,
231 F.2d 699 (D.C. Cir. 1956) .......... 10

*Young v. Covington & Burling, LLP*,
No. 1:09-CV-464-RBW, 2009 WL 10701132 (D.D.C. Dec. 18, 2009) .................................. 17

**Rules**

Fed. R. Civ. P. 16(f) .......................................................................................................... 2

Fed. R. Civ. P. 16(f)(1)(C) ................................................................................................. 9

Fed. R. Civ. P. 16(f)(2) .................................................................................................. 9, 17

Fed. R. Civ. P. 37(a)(1) ................................................................................................... 2, 9

Fed. R. Civ. P. 37(a)(5)(A) ................................................................................................. 9

**Regulations**

Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026).............................. passim

## INTRODUCTION

This Court has made clear that Defendants have an obligation to "notify the Court of any material factual developments while this litigation remains pending." June 1 Order. Defendants alone possess information about the actions they are taking to implement the challenged Executive Order, information that is crucial to enable the Court to assess whether relief should be granted in this case. *See* PI Order, ECF 143. Yet it has become increasingly apparent that Defendants have been withholding material facts about implementation, leaving Democratic Party Plaintiffs to rely on glimpses of information that makes its way into the public sphere, discovering them through news reports, or Google searches, and now through an anonymous whistleblower, in order to obtain key information about what Defendants are doing.

Defendants' obfuscation pertains to both Sections 2(a) and 3(b) of the Executive Order. Defendants' most recent notice about the implementation of Section 2(a)—filed two-and-a-half months ago—indicated that State Citizenship List information would be provided to States by June 30. *See* Notice of Filing of June 8, 2026 DHS Memo, ECF 151. Yet Defendants have denied complying with their own stated timeline while simultaneously launching a website for the portal and declining to provide the additional information necessary to determine whether, when, and what voter information will be shared between agencies and with States—even after those decisions have been made—until very shortly before Defendants will actually share that information. And just yesterday, news coverage of a shocking whistleblower report revealed that Defendants have advanced implementation procedures for Section 3(b) well beyond what they have disclosed, including in USPS's Final Rule, and on a timeline known only to Defendants. *See* Notice of Developments, ECF 174 (filed by LULAC Plaintiffs). In short, Defendants are hiding the nature and timing of their implementation of the challenged provisions, and this defiance of

the Court's expected transparency is prejudicial to Democratic Party Plaintiffs' ability to prosecute their case and obtain timely relief.

Pursuant to this Court's inherent authority, Federal Rules of Civil Procedure 16(f) and 37(a)(1), and the Court's Order of June 1, 2026, Democratic Party Plaintiffs respectfully move for an order (1) compelling Defendants to immediately and completely disclose the status of the government's implementation of Sections 2(a) and 3(b); and (2) awarding Plaintiffs their reasonable attorneys' fees and costs incurred in bringing this motion, together with such further relief as the Court deems just.

## BACKGROUND AND PROCEDURAL HISTORY

### I. This Court set a clear expectation that Defendants must provide material updates of E.O. implementation.

At the May 14, 2026, preliminary injunction hearing, this Court recognized the time-sensitive nature of Plaintiffs' claims and obtained Defendants' commitment to notify the Court when "material steps are taken" while this litigation is "still pending." PI Hearing Tr. 66:8–16. The Court made clear that it expected forthright and complete disclosures regarding factual developments, stating Defendants should notice "anything even approaching a material change in the factual scenario on the government side." *Id.* at 104:7–20.

The Court then denied the motions for preliminary injunction based on Defendants' representations that they had not yet begun to implement the E.O. PI Order. As to Section 2(a), Defendants declared that no infrastructure for compiling or transmitting Lists had been established, no List had been created, and none had been transmitted. Decl. of M. Mayhew ¶¶ 5–8, ECF 117-2; Decl. of J.B. MacBride ¶¶ 4–6, ECF 117-3. As to Section 3(b), Defendants declared that USPS had not yet issued a Rule. Decl. of S. Monteith ¶ 4, ECF 117-4.

The D.C. Circuit subsequently affirmed on ripeness grounds, based on the same representations. *See DSCC v. Trump*, No. 26-5193, 2026 WL 2168617 (D.C. Cir. July 28, 2026) (per curiam). In doing so, the D.C. Circuit confined itself to the record before this Court at the time of its May 28 PI Order, *id.* at *1 n.2, did not "address or affirm" other "aspects" of that Order, *id.* at *3 n.7, and among other things, expressly recognized that alleged harms to Democratic Party Plaintiffs could flow from "DHS['s] *decision to compile* the State Citizenship Lists" and "what, if anything, the Postal Service will require before carrying mail ballots," *id*. at *4–5 (emphasis added).

On May 29, 2026, Defendants filed a "Notice of Case Developments" identifying USPS's publication of a proposed rule pursuant to Section 3(b) of the E.O. *See* ECF 145. In the Notice, Defendants suggested that their duty to continue updating the Court on material developments had expired with the Court's order denying the motions for preliminary injunction. *See id.* at 2 n.1. This Court disagreed and promptly docketed its own "Notice" expressly dispelling any such suggestion. Referencing its prior order and admonition at the May 14 hearing, the Court clarified that, while it "expected the government to notify the Court of any material factual developments that were relevant to Plaintiffs' motions for preliminary injunction while those motions were under consideration," it "continues to expect that the government will notify the Court of any material factual developments while this litigation remains pending." June 1 Order.

## II. Defendants continued to represent non-implementation of the E.O. in Massachusetts litigation.

In parallel litigation in Massachusetts, Defendants represented to the U.S. Supreme Court in August that the agencies' policies remained largely undecided. Reply Supp. Appl. for Stay at 1, *Trump v. California*, No. 26A124 (U.S. Aug. 1, 2026). They stated that "the government cannot provide a hypothetical legal defense for the agencies' still-undecided policies," *id.* at 11 (emphasis

omitted); and that "whether whatever policies that the agencies ultimately adopt comply with legal requirements can only be adjudicated once the agencies have determined what their policies will actually be," *id.* at 13–14. The Supreme Court then stayed the Massachusetts injunction against further implementation of the E.O. *Trump v. California*, No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026) (per curiam). In doing so, the Court held only that the lack of implementation rendered the challenge unripe. *Id.* at *4.

## III. Defendants' implementation of the E.O. proceeded largely without notice.

### A. Section 2(a): State Citizenship Lists

On June 8, 2026, the Secretary of the Department of Homeland Security ("DHS") approved a memorandum titled "Executive Order 14399 Implementation." ECF 151; *see also* ECF 151-1 ("June 8 Memo"). The first page represents that it "reflect[s] the current policy of the Administration." June 8 Memo at 1.

The June 8 Memo further states that USCIS "must establish the infrastructure to compile, maintain, and transmit State Citizenship Lists, and designate a DHS point of contact for those lists, within the timeframe directed by EO 14399." *Id.* at 4. It describes a "federated portal" through which state election officials "will be able to download separate outputs from USCIS, [the Social Security Administration ("SSA")], and [the Department of State ("DOS")]" consisting of name, date of birth, and "relevant agency identifiers" (such as Social Security numbers). *Id.* at 2. And it instructed that "[t]he overall solution should establish the operational infrastructure on or around June 30, 2026." *Id.*; *see also id.* ("The core of the proposed approach is a technological mechanism that should be delivered on or around June 30, 2026."); *id.* at 3 ("USCIS is currently on track to deliver the core digital portal infrastructure needed for state access on or around June 30, 2026."); *id.* at 3 ("The first phase focuses on delivering, on or about June 30, 2026, the state facing digital portal . . . .").

Since the June 8 Memo, Defendants have repeatedly refused to share information about decisions regarding implementation of Section 2(a). When asked by news media, DHS declined to say how far along it is in creating State Citizenship Lists and whether the Lists will be shared with the Department of Justice, USPS, and other agencies.[1] And, as described in more detail below, when asked by Plaintiffs in their repeated meet-and-confer efforts, counsel for Defendants have refused to share whether and when a decision to deliver a State Citizenship List Portal would occur consistent with the June 8 Memo, and whether, when, and to whom State Citizenship Lists—or information from those Lists—will be shared. And they do so despite making clear their intention to implement Section 2(a) in advance of the 2026 election.

Defendants have since filed no further updates regarding Section 2(a) of the Executive Order. At some point, however, Defendants launched a web page for a "State Citizenship Lists Portal," located publicly at origin-statecitizenshiplists.uscis.dhs.gov, which counsel for Democratic Party Plaintiffs found only by happenstance through a Google search on the night of August 31, 2026. As of the afternoon of September 1, that page displayed a "Coming Soon" banner, but it has since been taken down. *See* DHS, *State Citizenship List Portal*, https://perma.cc/7N5H-WRS7 (accessed Aug. 31, 2026, and Sep. 1, 2026).[2]

---

[1] *See, e.g.*, CJ Womack, *DHS Chief Mullin Refuses to Rule Out ICE at Polls, Claims Only American Citizens Should Be in Line*, Fox News (June 14, 2026), https://www.foxnews.com/media/dhs-chief-mullin-refuses-rule-ice-polls-claims-american-citizens-line [https://perma.cc/WVD7-8EGR].

[2] It appears this website was created at least as early as August 28. Democratic Party Plaintiffs identified the permalink for this website from the following source, which includes a date stamp of August 28: Jacob Knutson, *DHS Posts 'Citizenship Lists Portal' to Advance Trump's Anti-Voting Order*, Democracy Docket (Sep. 1, 2026), https://www.democracydocket.com/news-alerts/homeland-security-state-citizenship-lists-portal-trump-anti-voting-executive-order. The same permalink appears in other public filings. *See, e.g.*, Compl. ¶ 7, *Electronic Privacy Information Center v. USCIS*, No. 8:26-CV-3457 (D.D.C. filed Aug. 31, 2026).

**B. Section 3(b): The USPS Ballot Mail Rule**

On August 21, 2026, USPS released its final rule, which took effect immediately upon release and was published on August 26, 2026. *See* Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026) ("Ballot Mail Rule"). The Rule provides that ballot mail will be screened against a Federal Ballot Mail Portal, and ballots that USPS deems noncompliant will not be delivered. *Id.* at 54981. It further expressly "decline[s] to conduct, publish, or otherwise disclose any additional analysis or information concerning the rule or Portal," including any anticipated ballot-rejection specifics and anticipated rates of rejection. *Id.* at 54988.

On August 30, 2026, counsel for a USPS whistleblower with knowledge of USPS's Federal Ballot Mail Portal transmitted a protected disclosure to the office of U.S. Senator Richard Blumenthal. *See* Notice of Developments, ECF 174. The disclosure describes "alarming" operative procedures that appear nowhere in the published Ballot Mail Rule, including a batch-rejection standard under which a single purportedly unreadable or otherwise invalid barcode causes USPS to refuse an entire mailing, and sampling thresholds that vary by facility type and mailing size (detailed further below). ECF 174-1 at 8–9, 18. The disclosure further details other material facts about USPS procedures that the Ballot Mail Rule does not address. It identifies, for instance, an automated verification stage that occurs earlier in the process, preceding physical scanning: before a State may even present ballots to a postal facility, USPS compares a "manifest" against the statewide list stored in the Portal, and if the comparison fails, election officials are not authorized to submit mailings to USPS. *Id.* at 9–12.

Further, the disclosure reveals that, contrary to Defendants' statement that USPS would "not take actions to implement the rule specifically for the 2026 election unless and until the government obtain[ed] relief from [then-existing] injunctions," 91 Fed. Reg. at 54966, USPS

apparently continued implementation throughout. Specifically, the disclosure states that development of the USPS portal began sometime around June 15, was ordered stopped on or about June 25, resumed on or about July 29, and continued after the entry of a TRO in the Massachusetts litigation on August 27. *See* ECF 174-1 at 12–13.

The disclosure also indicates that USPS long planned to implement the undisclosed "verification" standards, as well as its Portal, on or around September 1, despite federal court orders enjoining implementation of Section 3(b) of the E.O. *Id.* at 13–14, 16–19. And, as late as last week, Defendants pushed for a briefing and hearing schedule on Democratic Party Plaintiffs' renewed motion for preliminary injunction that would not be completed until *after* that undisclosed target implementation date.

## IV. Democratic Party Plaintiffs engage in good-faith, ongoing efforts to obtain material updates as irreparable harm accumulates.

Beginning in June, counsel for Plaintiffs requested updates from Defendants regarding implementation of Section 2(a). On June 13, 2026, counsel for NAACP Plaintiffs in these consolidated cases requested production of an administrative record, or information regarding such a production, as to actions to implement Section 2(a) of the E.O. On June 24, Defendants denied that request on the grounds that no further action had yet occurred.

More than a month after that representation, and several weeks after the June 30 deadline referenced in the June 8 Memo had come and gone, Democratic Party Plaintiffs sought to confer with Defendants' counsel regarding the status of Section 2(a) implementation. *See* Ex. A at 22.[3] Specifically, counsel for Plaintiffs stated in an August 13, 2026, email that "[t]he most recent case development regarding E.O. Section 2(a) that you have noticed on the docket is the June 8 DHS

[3] For convenience, Plaintiffs attach a copy of the referenced correspondence as Exhibit A.

memo, which stated that 'USCIS is currently on track to deliver the core digital portal infrastructure needed for state access on or around June 30, 2026.'" *Id.* Plaintiffs further requested:

> To avoid unnecessary motions practice, please confirm whether states have been provided access to voter citizenship information as the memorandum indicates. If states have not been granted such access, please confirm when you intend to file a notice of case developments complying with the June 1 instruction to "notify the Court of any material factual developments while this litigation remains pending."

*Id.* After suggesting in response to multiple follow-up requests that further details might be forthcoming, counsel for Defendants ultimately stated on August 27, 2026:

> [M]y understanding continues to be that there have not been any material factual developments with respect to the DHS portal referenced in your emails and the June 8 memo.

*Id.* at 12–21. Counsel for the Democratic Party Plaintiffs scheduled a teleconference to discuss Defendants' ongoing non-answers to their requests and the relief requested in this motion. *See id.* at 6–11. In response, counsel for Defendants did not identify any inaccuracies in the USPS whistleblower's reporting of USPS's procedures or implementation of the Ballot Mail Rule nor refute that DHS would "soon" launch the "State Citizenship List Portal," and instead insisted that Defendants had no obligation to disclose such "details." *Id.* at 4–5.

During the subsequent conference today, counsel for Defendants continued to dispute the scope of their obligations to provide the "material factual developments" ordered by the Court. Counsel for Defendants stated that the State Citizenship List Portal is not "complete," but remained unable to confirm whether or not USCIS had delivered the technological infrastructure consistent with the June 8 Memo. Defendants further stated that DHS would not take the State Citizenship List Portal "live" prior to September 4—but could provide no information of plans beyond September 4. Instead, counsel for Defendants said the most Defendants could commit to at this time was that they would provide "48-hours' notice" to Plaintiffs prior to the portal being launched. In other words, Defendants agreed only to provide 48-hours' notice of when protected voter data

would be shared to the States from Defendants, regardless of when a decision to do so is made. Defendants further stated that SSA has not shared records with DHS to carry out Section 2(a), but that they cannot make the same representation about DOS at this time. Finally, Defendants stated that they had no obligation to update the Court regarding the ballot-mail procedures described in the whistleblower complaint, even while conceding that USPS may implement those procedures, stating only that USPS has not committed to using those procedures yet.

## LEGAL STANDARD

"There can be no question that courts have inherent power to enforce compliance with their lawful orders," *Shillitani v. United States*, 384 U.S. 364, 370 (1966), and to otherwise sanction conduct that abuses the judicial process, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474–75 (D.C. Cir. 1995). Rule 16(f) likewise authorizes sanctions where a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). And Rule 37 further authorizes "an order compelling disclosure." Fed. R. Civ. P. 37(a)(1).

Where noncompliance with a court order was unjustified, an award of attorney's fees is mandatory. *See* Fed. R. Civ. P. 16(f)(2) ("Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."); *see also* Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted—or if the disclosure [] is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").

## ARGUMENT

### I. Defendants have failed to notify the Court of material factual developments.

The June 1 Order requires Defendants to notify the Court of "any material factual developments while this litigation remains pending." Materiality of "new information," as in any context, is necessarily measured against the questions "this case" presents. *City of Port Isabel v. Fed. Energy Regul. Comm'n*, 111 F.4th 1198, 1208 (D.C. Cir. 2024), *reh'g in part*, 130 F.4th 1034 (D.C. Cir. 2025); *see Weinstock v. United States*, 231 F.2d 699, 701–02 (D.C. Cir. 1956) ("The meaning of [material] appears to be consistent in these various fields. The test is whether [a fact] has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made.").

This Court confirmed the scope of materiality when it endorsed Defendants' argument that "whether the government's actions under the Order are lawful or unlawful will depend on how those agencies decide to implement the Order." PI Order at 23. The D.C. Circuit further identified the specific inquiries to which factual development would be material. As for Plaintiffs' injuries from Section 2(a), the Court noted "uncertainty" about "which databases DHS might tap to compile State Citizenship Lists or whether DHS would even do so at all." *DSCC*, 2026 WL 2168617, at *5. As for Section 3(b), the Court identified the need for facts about "what, if anything, the Postal Service will require before carrying mail ballots." *Id.* These holdings are consistent with longstanding precedent that disputes over administrative action are ripe when the agency arrives at a definitive position on the relevant issue, and not on whether the action has literally been implemented. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–53 (1967); *Teva Pharms. USA, Inc. v. Kennedy*, --- F.4th ----, 2026 WL 2409591, at *15 (D.C. Cir. Aug. 18, 2026) (citing *Energy Future Coal. v. EPA*, 793 F.3d 141, 146 (D.C. Cir. 2015) (Kavanaugh, J.)); *Venetian Casino Resort v. EEOC*, 530 F.3d 925, 931 (D.C. Cir. 2008).

It has now become clear that Defendants, based on a prejudicially narrow view of materiality, have failed to meet the Court's expectation to disclose indisputably "material factual developments." June 1 Order.

**A. Defendants failed to provide notice of DHS's State Citizenship List Portal.**

Updates bearing on how—and whether—DHS has decided to implement Section 2(a) cannot plausibly be characterized as anything other than material, yet Plaintiffs have been left to discover such information about the implementation status of DHS's State Citizenship List Portal and sharing of "citizenship list information" through Google and news reporting.

***State Citizenship List Portal.*** The ongoing status of the State Citizenship List Portal, and especially the decision to deploy it, is plainly material. Defendants have effectively conceded as much, as in their last Notice to this Court in June, they identified the architecture DHS would build and the databases it would draw upon, the data elements state officials would be able to download, and a delivery date of on or about June 30. *See* ECF 148.

Having told the Court that much, Defendants were obligated to reveal what happened next. If DHS delivered the Portal on or about the June 30 date its own Memorandum specified, then a completed implementation step—the very step whose absence anchored the denial of preliminary relief, *see* PI Order at 13–14 (citing Mayhew Decl. ¶¶ 5–8 and MacBride Decl. ¶¶ 4–6 for the proposition that DHS "has not yet created the 'infrastructure'")—occurred and went unnoticed to this Court. If DHS did *not* deliver the Portal (on June 30 or any date thereafter), as now appears to be the case based on Defendants' September 2 representations, then the operative statement of "current" agency policy has been superseded by something Defendants have never disclosed, and the record on which multiple courts have now relied is not, in fact, "current." June 8 Memo at 1. Plaintiffs specifically requested—on multiple occasions—that Defendants provide "confirmation" as to whether "USCIS 'deliver[ed] the core digital portal infrastructure needed for state access on

or around June 30, 2026' or any time after that date." Ex. A at 18 (August 16 correspondence quoting August 13 correspondence); *id.* at 7–8 (September 1 correspondence reiterating request again). Yet Defendants failed to provide any update until today, when they stated only that a State Citizenship List Portal would not be launched before September 4, and that they would only commit to providing 48-hours notice before State Citizenship Lists are made available to the States. But agency *decisions* to disseminate protected information—not just the actual dissemination of that information—are material to the issues in this case. *DSCC*, 2026 WL 2168617, at *5; *see also Venetian Casino Resort*, 530 F.3d at 931 (holding that a "decision of the Commission to adopt a policy of disclosing confidential information" constituted final agency action that cognizably injured parties whose information was to be shared).

In short, the Court should not permit Defendants to escape their straightforward disclosure obligations. Their silence as to plainly material updates regarding Section 2(a)'s implementation has left the record misleading. The operative statement of agency policy before this Court promises a State Citizenship List Portal by June 30; more than two months have since passed, and Plaintiffs only discovered that a Portal is "Coming Soon" because DHS left a now-inactive web page accessible to the public for some period of time shortly before the filing of this motion. *Supra* Background § III.A. And other questions the June 8 Memo raised, *see infra* Argument § II—questions that must be answered prior to transmission of State Citizenship Lists, *see DSCC*, 2026 WL 2168617, at *5—are likewise plainly material to relevant, live questions in this case, but have to date been left unanswered by Defendants for months.

***Sharing of citizenship list information.*** Defendants separately remain unable to disclose the extent to which they have been sharing "citizenship list information" across agencies within the Federal Government. Regrettably, Defendants have previously been found to violate the

Privacy Act in similar circumstances. *See League of United Latin Am. Citizens v. Exec. Off. of the President*, 818 F. Supp. 3d 34, 115–16 (D.D.C. 2026), *judgment entered*, No. 1:25-CV-946-CKK, 2026 WL 880056 (D.D.C. Mar. 31, 2026) (granting declaratory judgment to the Democratic Party Plaintiffs under the Privacy Act and APA, noting that some of the same Defendants similarly withheld information about "a major new data-sharing program affecting the sensitive data of millions of Americans," only seeking to "validate that program . . . months after it ha[d] begun"); *see also id.* (expressing "serious concerns that DHS and SSA may each have been violating the Privacy Act in significant ways" throughout litigation over March 2025 executive order); *accord League of Women Voters v. DHS*, No. 1:25-CV-3501-SLS, 2026 WL 1784297, at *1–2, 17–28 (D.D.C. June 22, 2026) (same, further holding that DHS and SSA violated a host of procedural and substantive provisions of the Privacy Act and other federal laws in implementing March 2025 executive order).

As of September 2, counsel for Defendants could not confirm one way or another whether DOS had provided DHS with records to compile State Citizenship Lists as contemplated in the June 8 Memo. Background § III.A. Defendants were further unable to provide information about whether USCIS delivered technological infrastructure described the June 8 Memo, even though Defendants have repeatedly confirmed that they are trying to implement Section 2(a) for the upcoming 2026 election. *See id.*[4] As the D.C. Circuit recognized, "decision[s]" about this process alone can cause direct injuries to their privacy interests, *DSCC*, 2026 WL 2168617, at *4; *see also*

[4] *See also* Suppl. Compl. ¶¶ 92–-93, ECF 175; Nick Corasaniti & Dustin Volz, *Trump's Homeland Security Chief Threatens Election Officials With Prison Time*, N.Y. Times (July 17, 2026), https://www.nytimes.com/2026/07/17/us/politics/markwayne-mullin-election-officials-threats-trump.html.

Suppl. Compl. ¶¶ 124–26, 182–84 (detailing irreparable harms stemming from privacy violations), making them plainly "material."

Further, decisions about and actions toward providing Citizenship List information to State or local officials are material to the likelihood that implementation of Section 2(a) will have consequences for the modification of state voter rolls and thus impact Plaintiffs' mission-critical programs, and the fundamental voting rights of their members. *See, e.g.*, Suppl. Compl. ¶¶ 101–23. This Court's and the D.C. Circuit's Article III holdings as to these harms rested on the purported attenuation between the compilation of State Citizenship Lists and consequences to Plaintiffs—a chain that, according to Defendants, begins with the premise that "[f]ederal officials *must determine that they can lawfully compile and transmit*" the information in the first place. PI Order at 18 (emphasis added).

At bottom, decisions about when a State Citizenship List Portal will be created or go "live," whether citizenship information has been or will be compiled across agencies within the federal government, and whether that information has been or will be shared with State election officials would resolve the very contingencies Defendants continue to argue preclude relief—making them plainly "material" and subject to disclosure. June 1 Order.

**B. Defendants failed to provide notice of material USPS procedures and timing.**

Defendants have engaged in similarly dilatory conduct with respect to their ongoing implementation of Section 3(b). USPS issued its Final Rule and accompanying materials describing some aspects of implementation on August 21, 2026. 91 Fed. Reg. 54966. But the Ballot Mail Rule does not fully disclose material implementation features that a USPS whistleblower revealed earlier this week. The Ballot Mail Rule will reportedly be implemented according to a set

of verification procedures that have never been disclosed.[5] And it appears USPS has long-planned to launch these undisclosed procedures on or about September 1, *see* ECF 174-1, yet another indisputably "material factual development" about implementation of the Executive Order that Defendants failed to provide this Court.

The Ballot Mail Rule asserts that verification will be "straightforward" at "entry" points to the mailstream, that the process "should take no more than a few hours for larger mailings," and that mailers "will be informed of the escalation procedures should they decide to challenge a rejection" without identifying those procedures. 91 Fed. Reg. 54981–82. New disclosures, however, show that the likely operative procedures are materially different and far more fraught than what that text conveys, all while the Rule expressly "decline[s] to conduct, publish, or otherwise disclose any additional analysis or information concerning" these aspects of the Rule. 91 Fed. Reg. 54988.

Specifically, a protected disclosure submitted to the United States Senate on August 30, 2026, states (among other things) that USPS has unduly rushed its process and abandoned any reasonable effort to test this brand new system, putting inconceivable strain on State election systems across the country and threatening widespread disenfranchisement. *See* ECF 174-1. It further states that USPS will use a zero-tolerance batch-acceptance standard pursuant to which USPS will refuse the entire batch of ballots proffered by a State if it fails to validate even a *single* barcode within the batch. *See id.* at 7–9; *see also id.* at 2–3. To illustrate, if a single piece of ballot mail in a submission of 10,000 ballots fails USPS's verification process, the other 9,999 ballots will also be rejected for transmission. *Id.* at 2. As the whistleblower's disclosure explains, failures

[5] Defendants deny having made final determinations about some aspects of Ballot Mail Rule implementation, but the whistleblower report suggests those denials may reflect semantic parsing rather than full candor.

in validation may occur for a number of reasons, including known and recurring scanning problems that have been documented by the USPS Office of the Inspector General. *Id.* at 17.

The disclosure further states that USPS will use certain sampling thresholds that will subject ballots to unequal standards depending on the number of ballots submitted and the type of "entry" point (i.e., what kind of USPS facility that receives the ballot mail): every ballot is to be scanned at retail locations, but at a "business mail" entry location, 15 pieces will be scanned for mailings including fewer than 1,000 ballots, 350 for mailings including between 1,000 and 10,000 ballots, and 400 for mailings including above 10,000 ballots. *Id.* Such procedures would threaten to arbitrarily and unequally subject voters to different standards for their ballots to be mailed to them, depending on which batch their ballots end up in and which type of USPS facility a specific election official uses.

Defendants have claimed that the Ballot Mail Rule will amount merely to "data reporting standards," 91 Fed. Reg. at 54973, but they have failed to provide notice of key facts about how the Ballot Mail Rule will be implemented by USPS—key facts that stand to injure Plaintiffs and their members. *See DSCC*, 2026 WL 2168617, at *4 (holding that voting rights injuries "will occur" if USPS imposes a "condition" on the "transmission of a mail ballot"); *id.* (observing that organizational and electoral harms are "premised on the threatened impact" of not-yet final Ballot Mail Rule).

## II. The requested relief is warranted and proportionate.

Democratic Party Plaintiffs' requested remedy—an order (1) compelling Defendants to immediately and completely disclose the status of their implementation of the E.O. and (2) awarding Plaintiffs their fees and costs incurred in bringing this motion—is calibrated to restore the transparency the June 1 Order required and minimize prejudice to Plaintiffs. Specifically, Democratic Party Plaintiffs request an order requiring Defendants to disclose material

implementation decisions with regard to Sections 2(a) and 3(b) of the Executive Order and USPS's Ballot Mail Rule within 24 hours of when those decisions are made. Such decisions should include, but are not limited to, the following information:

Section 2(a): State Citizenship Lists

- Whether and when voter information will be shared between federal agencies;
- Whether and when voter information will be shared with or otherwise made accessible to State or local election officials;
- Final decisions about DHS's portal design, including for example, what specific voter data the portal will include;

Section 3(b): USPS Final Rule

- Whether and when the Federal Ballot Mail Portal will be launched; and
- All material aspects of USPS's plans to implement 3(b) and the Ballot Mail Rule. This should include, for example, material portal design determinations, any policies implementing a failure standard for acceptance of ballot mail by USPS, and any operative sampling protocol, by facility type and mailing size, as described above.

Given the exigency and need to secure meaningful relief before suffering further injury and irreparable harm, Democratic Party Plaintiffs also request that Defendants be ordered to provide any undisclosed information satisfying this standard no later than September 4, 2026.

Because the June 1 Order is a pretrial order governing the conduct of this litigation, Rule 16(f)(1)(C) supplies authority to sanction its violation, and Rule 16(f)(2) makes an award of expenses, including attorneys' fees, mandatory "unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).[6] No

[6] *See also, e.g.*, *Young v. Covington & Burling, LLP*, No. 1:09-CV-464-RBW, 2009 WL 10701132 (D.D.C. Dec. 18, 2009) (granting fees where party failed to adequately confer during pretrial period); *Hillman v. Am. Fed'n of Gov't Emps., AFL-CIO*, No. 1:18-CV-999-RCL, 2023 WL 8247155 (D.D.C. Mar. 24, 2023) (ordering party to submit reasonable expenses after finding violation of scheduling order); *cf. Bolger v. District of Columbia*, 248 F.R.D. 339, 343 (D.D.C.

such justification exists here. Defendants have not asserted that they were unaware of their own actions to implement the E.O. Nor have they asserted that further Notices were impracticable. In addition to the explicit requirement for sanctions in the Federal Rules, this Court possesses inherent authority to address conduct that abuses the judicial process. *See Chambers*, 501 U.S. at 43–46; *Shepherd*, 62 F.3d at 1474–75. There is therefore no obstacle to ordering Defendants to remedy their violation and compensate Plaintiffs for the additional expenses they were forced to accrue in order to resolve this needless dispute.[7]

## CONCLUSION

Democratic Party Plaintiffs request that the Court (1) order Defendants to immediately and completely disclose the status of their implementation of Sections 2(a) and 3(b), as described above, and (2) award Democratic Party Plaintiffs their reasonable attorneys' fees and costs incurred in bringing this motion, together with such further relief as the Court deems just.

2008) (discussing district courts' discretion under the Federal Rules to permit reasonable fees where violations caused opposing party to incur expenses and granting fees under Rule 37).

[7] In this litigation, time is of the essence in granting relief, specifically as to the disclosure of key information material to this litigation. Thus, while Plaintiffs request a fee award consistent with the Federal Rules that govern this motion, any such decision on that request should not delay resolution of the critically time sensitive request for information contained herein—a request for information that the Government previously committed to timely providing to the parties and this Court.

Dated: September 2, 2026

Respectfully submitted,

*<u>/s/ Lalitha D. Madduri</u>*

**ELIAS LAW GROUP LLP**
Marc E. Elias (DC 442007)
Lalitha D. Madduri (DC 1659412)
Jacob D. Shelly (DC 90010127)
Max Accardi (DC 90021259)
Kevin R. Kowalewski (DC 90045467)
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 948-1135
eliasm@elias.law
lmadduri@elias.law
jshelly@elias.law
maccardi@elias.law
kkowalewski@elias.law

Tyler L. Bishop (DC 90014111)
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
T: (206) 656-0177
tbishop@elias.law

*Counsel for Plaintiffs DSCC, DCCC, Democratic National Committee, Democratic Governors Association, Senate Minority Leader Schumer, and House Minority Leader Jeffries*

**CERTIFICATE OF CONFERRAL**

I hereby certify that I conferred with counsel for Defendants via videoconference on September 2, 2026, in an effort to resolve this dispute. The parties were unable to reach agreement because Defendants continue to refuse to provide the information requested.

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri