**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al.*,<br>*Plaintiffs*<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants.* | No. 1:26cv1114 (CJN) |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br>*Plaintiffs*<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>*Defendants.* | No. 1:26cv1132 (CJN) |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br>*Plaintiffs*<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants.* | No. 1:26cv1151 (CJN) |

# BRIEF OF STATE AND LOCAL ELECTION OFFICIALS AND THE CENTER FOR ELECTION INNOVATION AND RESEARCH AS *AMICI CURIAE* IN SUPPORT OF MOTIONS FOR PRELIMINARY INJUNCTION AGAINST USPS FINAL RULE RE: BALLOT MAIL FOR FEDERAL ELECTIONS

SAMANTHA P. BATEMAN (D.C. Bar No. 492919)
KYLE R. FREENY (D.C. Bar No. 1684764)
ROSA L. BAUM (D.C. Bar No. 90032839)
WASHINGTON LITIGATION GROUP
1717 K Street N.W., Suite 1120
Washington, D.C. 20006
(202) 521-8750
kfreeny@washingtonlitigationgroup.org

*Counsel for Amici Curiae State and Local Election Officials and Center for Election Innovation and Research*

# TABLE OF CONTENTS


TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ ii

INTERESTS OF *AMICI CURIAE* ...................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 2

ARGUMENT ........................................................................................................................ 4

I. The sweeping changes mandated by the Final Rule come too late for the upcoming midterm elections, for which critical election preparations, including those for voting by mail, have already been made. ................................................................................ 4

II. The USPS Final Rule would cause irreparable harm to election administration and voters if permitted to take effect before the November 3, 2026 midterm elections. .................... 8

A. The Final Rule's mandates for re-designing ballot envelopes would be financially costly and likely cannot be accomplished in time for the November 2026 elections.... 9

B. State and local election officials must use a USPS portal that is not yet operational and for which they have not been trained. ............................................................ 12

C. The Final Rule risks undermining state and local election officials' efforts to promote voter confidence and participation in elections. ................................................ 17

D. The Final Rule exists within the context of the threatened prosecution of state and local election officials, and it would thus further discourage election officials and volunteers from serving. ........................................................................................ 19

CONCLUSION ................................................................................................................... 20

APPENDIX: *AMICI CURIAE* ........................................................................................... i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*California, v. USPS*,
No. 1:26-cv-13917-IT (D. Mass. Aug. 26, 2026) .......... 10, 18

*Democratic Nat'l Comm. v. Wis. State Legislature*,
141 S. Ct. 28 (2020) .......... 5

*League of Women Voters of Mass. v. Trump*,
Nos. 1:26-cv-11549-IT, 1:26-cv-13917-IT, 2026 WL 2539946 (D. Mass. Aug. 27, 2026) .......... 2

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) .......... 5

**Statutes, Regulations and Rules**

52 U.S.C. § 20302(a)(8)(A) .......... 6

52 U.S.C. § 20501(a)(1) .......... 1, 19

52 U.S.C. § 20501(a)(2) .......... 1, 19

Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026) .......... *passim*

Cal. Elec. Code § 2166 .......... 17

Cal. Elec. Code § 2166(b)(2) .......... 17

Cal. Elec. Code § 2166.5 .......... 17

Cal. Elec. Code § 2166.5(b)(2) .......... 17

Cal. Elec. Code § 2166.7 .......... 17

Cal. Elec. Code § 2166.7(d)(2) .......... 17

Cal. Elec. Code § 2166.8 .......... 17

Cal. Elec. Code § 2166.8(d)(1) .......... 17

Cal. Elec. Code § 2166.9 .......... 17

Cal. Elec. Code § 2166.9(d)(1) .......... 17

Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026) .......... 19

Military and Overseas Voter Empowerment Act, Pub. L. No. 111-84, 123 Stat. 2190 (2009) .......... 6

**Other Authorities**

*2026 Primary Elections by State and Territory,*
Fed. Voting Assistance Program .......... 5

*2026 State Primary Election Dates*,
Nat'l Conf. of State Legislatures (May 27, 2007) .......... 5

*Anonymous Whistleblower Disclosure, Re: USPS Rushed Implementation of New and Untested IT Systems Threatens U.S. Ballot Mail Delivery*, Whistleblower Aid (Aug. 30, 2026) .......... 13, 16

Dates for 2026 Early In-Person and Mail Voting, Ct. for Election Innovation & Rsch. (June 2026) .......... 11

Dion Nissenbaum et al., *USPS proposal to carry out Trump's Executive Order could create new barriers to mail voting*, VOTEBEAT (May 29, 2026) .......... 10

*Early Voting Dates, 2026*, Ballotpedia .......... 6

Eric Katz, *Postal Officials Say Trump's Mail-Ballot Push Will Create Widespread Errors*, NOTUS (Aug. 27, 2026) .......... 11, 17

Intelligent Mail® for Small Business (IMsb) Fact Sheet (June 1, 2023) .......... 10

Jacob Knutson, *'It Will Destroy the Postal Service': USPS Plan to Crack Down on Mail Voting Spurs Alarm*, Democracy Docket (June 24, 2026) .......... 15

Jenna Monnin, *DOJ Issues Nationwide Threat to Prosecute Local Election Officials* (July 8, 2026) .......... 19

Kate Brumback, *Justice Department Seeks the Names of 2020 Election Workers in Georgia's Fulton County*, AP (May 5, 2026) .......... 7

*Local Election Officials Survey* 3, Brennan Ctr. for Just. (Apr. 13, 2026) .......... 7

*New Report Reveals Alarming Election Official Turnover and Offers Solutions*, Issue One (Feb. 3, 2026) .......... 7

*Update: Review of Claims of Noncitizen Registrants and Voters*, Ctr. for Election Innovation & Rsch. (Feb. 2026) .......... 20

*When States Mail Out Absentee/Mail Ballots*, Nat'l Conf. of State Leg. (Oct. 3, 2024) .......... 6

## INTERESTS OF *AMICI CURIAE*

*Amici Curiae* ("Amici") include a bipartisan group of ninety-nine current and former state and local election officials and local jurisdictions charged with the responsibility for administering elections, including federal elections. Amici hail from a diverse range of states and localities, including from twenty-six states. Amici also include the Center for Election Innovation and Research ("CEIR"), which consists of election experts who support election officials' work.[1] Amici submit this brief in support of the pending motions for a preliminary injunction against the final rule recently promulgated by the United States Postal Service ("USPS"), entitled Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026) (to be codified at 39 C.F.R. pt. 111) (hereinafter the "Final Rule" or "Rule").

Given their roles and responsibilities, Amici have a strong interest in the fair and efficient administration of elections, in safeguarding the right to vote, and in protecting the constitutionally derived authority of states and localities to regulate elections within their borders. To carry out their duties, election officials develop policies and procedures for their offices, train staff and poll workers, educate voters, and respond to real-time constituent needs within their respective jurisdictions. Amici election officials are also bound under the National Voter Registration Act ("NVRA") to "promote the exercise of" the "fundamental right" to vote. 52 U.S.C. § 20501(a)(1)-(2). Amici are unified in their commitment to ensuring that elections operate in accordance with state and federal law and that every eligible voter has an opportunity to cast a ballot.

[1] A complete list of signatories can be found in the Appendix. Amici state that no counsel for a party to this case authored this brief in whole or in part; no party or counsel for a party contributed monetarily to the preparation or submission of any portion of this brief; and no person other than counsel for Amici contributed money that was intended to fund preparing or submitting the brief. Amici have concurrently filed a motion seeking the Court's leave to file this brief.

As the front-line workers of election administration and election administration experts, Amici understand the practicalities of administering elections and are well-positioned to explain the profound administrative problems introduced by the challenged USPS Final Rule. Based on their extensive experience and expertise, Amici write to offer the Court their first-hand perspective about the on-the-ground impact of the Final Rule, including the disastrous and immediate harms that the Rule would impose on election officials and their ongoing preparations for the upcoming November 2026 midterm elections if the Rule is not enjoined from taking effect during this electoral cycle.[2]

## INTRODUCTION AND SUMMARY OF ARGUMENT

Preparing for a federal election is a massive undertaking, requiring many months, if not years, of advance planning and coordination among thousands of state and local election officials nationwide. And each and every step in that process—including recruiting and training election workers, communicating with voters, printing ballots, and ensuring that voters can cast their ballots, whether in-person or by mail—is critical to protecting the fundamental exercise of the franchise.

Against that backdrop, the late-breaking USPS Final Rule—which was promulgated mere months before the November 3, 2026 general midterm elections, and which mandates sweeping, costly, and burdensome changes to mail-in voting procedures—would prove disastrous for election officials and election administration. And it would seriously undermine the upcoming elections by

[2] Amici recognize that another district court has recently entered a temporary restraining order barring any further efforts to implement or enforce certain provisions of the Final Rule as to elections occurring on or before November 3, 2026. That TRO was issued on August 27, 2026, and lasts, by its terms, for fourteen days. *See League of Women Voters of Mass. v. Trump*, Nos. 1:26-cv-11549-IT, 1:26-cv-13917-IT, 2026 WL 2539946, at *5 (D. Mass. Aug. 27, 2026). Defendants have sought a stay of the TRO pending appeal, Defs. Mot. for Stay Pending Appeal, League of Women Voters of Mass. v. Trump, Nos. 1:26-cv-11549-IT, 1:26-cv-13917-IT (D. Mass. Aug. 28, 2026), Dkt. No. 228, but as of the finalization of this brief, the court has not yet acted on that request.

depriving untold numbers of citizens of their ability to vote by mail effectively, as permitted by state law.

Amici fully agree with Plaintiffs' pending motions that the challenged Final Rule is unconstitutional and unlawful many times over. It violates core constitutional separation-of-powers principles, contravenes multiple statutory limitations on the Postal Service's authority, and is otherwise *ultra vires*. The Rule marks an unprecedented and indefensible assertion of executive power in an area where USPS has neither expertise nor experience, let alone any lawful authority.

But Amici write primarily to highlight the practical consequences of the Rule, which would prove catastrophic, as well as the logistical impossibilities of implementing the Rule's mandates in time for the rapidly approaching midterm elections. As of this filing, only hours remain before mail-in ballots are set to begin being mailed out to voters in certain states. Other states and localities across the country have already designed, purchased, and printed their mail-in ballots and ballot envelopes. Yet the Final Rule would require scrapping those materials, and then re-designing and re-submitting mail-in ballots envelopes to USPS for approval, with no guarantee (and, indeed, essentially no plausible chance) that the agency would grant approval in time for jurisdictions to mail out their ballots to voters. The Rule would then require election officials to devote countless hours to inputting voter information into a brand-new, as-yet-unreleased, and wholly untested federal portal—on which no election officials have yet received any training, and which is almost certain to be overloaded as soon as it comes online. If all that were not enough, the Rule would further require election officials to spend impossibly long periods of time waiting in person at local post offices while their jurisdictions' mail-in ballot envelopes are painstakingly scanned and verified by postal employees.

Every stage of this new, untested, and poorly conceived process is ripe for errors. And the consequences would be grave: Millions of voters across the country rely on mail-in and absentee

voting, and many of those voters would have no effective alternative if USPS precludes their ability to vote by mail. The insurmountable burdens imposed by the Final Rule would thus strike directly at the exercise of the fundamental right to vote, disenfranchising large numbers of voters and ultimately undermining public confidence in elections and election results. That result would be intolerable to the dedicated election administrators and experts who make up Amici here. This Court should not tolerate it, either.

With mail-in voting already about to begin, and with Plaintiffs having satisfied every legal requirement for a preliminary injunction, this Court should grant Plaintiffs' pending motions and enjoin the Final Rule from taking effect before the November 3, 2026 elections.

## ARGUMENT

### I. The sweeping changes mandated by the Final Rule come too late for the upcoming midterm elections, for which critical election preparations, including those for voting by mail, have already been made.

The demands and resulting impacts of implementing the Final Rule would be felt most acutely at the state and local levels, where elections are administered. Given the timelines mandated by the Rule itself and by other state and federal laws, combined with all of the administrative steps required by the Rule and by election administration generally, it is Amici's considered view that it would be impossible for election officials to implement the sweeping changes mandated in the Final Rule in time for the rapidly approaching November 3, 2026 general midterm elections. Indeed, if the Final Rule is permitted to take effect with respect to those upcoming elections, the inevitable result would be widespread chaos and confusion and, ultimately, the disenfranchisement of significant numbers of voters who rely on voting by mail.

"[R]unning a statewide election is a complicated endeavor," requiring "thousands of state and local officials and volunteers [to] participate in a massive coordinated effort to implement the lawmakers' policy choices on the ground before and during the election," and requiring "at every

step, state and local officials [to] communicate to voters how, when, and where they may cast their ballots through in-person voting on election day, absentee voting, or early voting." *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). Accordingly, the Supreme "Court's precedents recognize a basic tenet of election law: When an election is close at hand, the rules of the road should be clear and settled." *Id.*; *see also Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring in grant of applications for stays) (acknowledging that "state and local election officials need substantial time to plan for elections" because "[r]unning elections state-wide is extraordinarily complicated and difficult . . . and pose[s] significant logistical challenges").

USPS's Final Rule, however, wholly upends the existing rules regarding voting by mail with only two months remaining before the nationwide elections set to occur on November 3, 2026. Meanwhile, as Amici know from their personal experiences, preparations for the upcoming midterm elections, including those for voting by mail, have been well underway in states and localities across the country for quite some time. Yet the Final Rule threatens to derail those efforts at the last minute, causing incalculable harm to election administration, election officials, and voters alike.

Election officials like Amici are actively engaged in both administering primary elections (which are still set to occur in early- to mid-September 2026 in several states[3]) while also preparing for the November 2026 general elections *right now*. This work involves a near-constant stream of critical and time-sensitive tasks required to administer safe, efficient, and fair elections. Those tasks include recruiting, training, and coordinating with election workers and volunteers; working

---

[3] *See 2026 Primary Elections by State and Territory,* Fed. Voting Assistance Program, https://www.fvap.gov/uploads/FVAP/VAO/PrimaryElectionsCalendar.pdf; *2026 State Primary Election Dates*, Nat'l Conf. of State Legislatures (May 27, 2007), https://perma.cc/XY47-8Y6R.

with third-party vendors and contractors; establishing and promulgating guidance and rules for election administration; engaging in voter education; processing voter registrations and handling voter registration challenges; preparing and printing ballots and ballot envelopes; finalizing polling sites and ballot dropbox locations; and preparing, programming, and testing voting machines and tabulation equipment. Moreover, although Election Day itself is November 3, 2026, early voting begins in October 2026 for a majority of states and starts as early as mid-September (e.g., September 18, 19, or 24, 2026) in a handful of states.[4]

As particularly relevant to the significant changes mandated in USPS's Final Rule, states and localities nationwide have already begun preparations in earnest for mail-in balloting and absentee voting by mail in accordance with their respective state's laws. Various states impose different requirements and set different deadlines for voting by mail, with September 4, 2026 (i.e., *tomorrow*) being the earliest date for ballots to be mailed out, and October 16, 2026 being the latest such date.[5] Meanwhile, under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), as amended by the Military and Overseas Voter Empowerment ("MOVE") Act, Pub. L. No. 111-84 § 579(a)(1)(c), 123 Stat. 2190, 2322 (2009), federal law mandates that election officials must mail absentee ballots to overseas and military voters no later than September 19, 2026. *See* 52 U.S.C. § 20302(a)(8)(A) (requiring ballots to be mailed out 45 days in advance of a federal election).[6]

---

[4] *See Early Voting Dates, 2026*, Ballotpedia, https://perma.cc/J9H5-RY57 [https://ballotpedia.org/Early_voting_dates,_2026/].

[5] *See Table 7: When States Mail Out Absentee/Mail Ballots*, Nat'l Conf. of State Leg. (Oct. 3, 2024), https://perma.cc/4XZE-GHH7 (listing deadlines for mailing out absentee/mail-in ballots by state, with North Carolina and Delaware falling at the beginning of the window and Washington and Colorado falling at the later end of the window).

[6] Although Amici recognize that the Final Rule does not itself cover UOCAVA ballots, the UOCAVA deadline informs election officials' preparations of mail-in ballots, and it helps to explain why jurisdictions have already begun preparing, ordering, and printing such ballots and ballot envelopes.

In light of those looming deadlines, most jurisdictions have already designed and placed orders for their mail-in ballots and envelopes, and many jurisdictions have in fact already printed those envelopes and/or received them from third-party vendors. As explained in greater detail below, canceling those pending orders or discarding already-purchased envelopes at this late date would impose significant administrative burdens, resulting in dramatically increased costs for rush-printing services and rendering it exceedingly difficult, if not impossible, for jurisdictions to re-design, re-print, and mail out their ballots in time to comply with their respective states' statutory deadlines.

Moreover, jurisdictions nationwide have already set their budgets for administering the upcoming midterm elections. Funds have been appropriated and, in many cases, allocated and spent on other critical election-related infrastructure and materials. Yet despite requiring costly and administratively burdensome changes, all on a moment's notice, the Final Rule does not provide any financial support whatsoever to states and localities to implement the Rule's mandates. Further compounding these problems, the Final Rule comes at a time when local election offices throughout the country are already facing severe staffing challenges. Since the 2020 election, there has been a well-documented turnover in local election officials, who have faced increased threats to their safety and recently heightened risks of federal criminal investigation and prosecution.[7] This has led to reductions in the overall number of staff and the number of staff with long-term experience. The extraordinarily compressed deadlines that the Final Rule would require for the upcoming

---

[7] *See, e.g.*, *New Report Reveals Alarming Election Official Turnover and Offers Solutions*, Issue One (Feb. 3, 2026), https://perma.cc/5Q7K-7GHE; *Local Election Officials Survey* 3, Brennan Ctr. for Just. (Apr. 13, 2026), https://perma.cc/C49K-EC2S (noting that thirty-two percent of local election officials surveyed reported experiencing threats, harassment, or abuse because of their job, while fifty-two percent reported concern for the safety of their colleagues); Kate Brumback, *Justice Department Seeks the Names of 2020 Election Workers in Georgia's Fulton County*, AP (May 5, 2026), https://perma.cc/5K73-58F7.

midterm elections would thus create intractable operational problems for state and local election officials, who would be required to implement and comply with the Rule's mandates regarding mail-in voting on impossible timelines, with limited personnel and limited financial flexibility.

In short, and as explained in further detail below, the changes marked by the Final Rule simply come too late and are too burdensome to be workable for the upcoming November 2026 general elections. It would be impossible for Amici and their fellow election officials to implement all these sweeping changes during such a short time period and still administer free and fair elections in which all eligible voters can cast ballots (including by mail, as permitted by their states' laws) with confidence that their votes would be counted.

## II. The USPS Final Rule would cause irreparable harm to election administration and voters if permitted to take effect before the November 3, 2026 midterm elections.

The Final Rule imposes onerous new requirements for mail-in voting, with the burdens of its implementation falling on state and local election officials. The Rule dramatically overhauls the existing system, under which states have long relied on USPS to neutrally and expeditiously mail out and then return their voters' mail-in and absentee ballots. And it replaces that *status quo* with a system under which USPS would now refuse to transmit ballots by mail, unless states scrupulously adhere to all of the Rule's new requirements. But each new step of the process outlined in the Final Rule would introduce delay, confusion, and intolerable risks of errors, all while voters' fundamental right to vote hangs in the balance.

For a state to comply with the Final Rule, it must first ensure that its outbound and return ballot envelopes comply with certain design requirements, including the incorporation of Intelligent Mail barcodes, and it must submit its envelope designs to USPS for review and approval. 91 Fed. Reg. at 54990-91. After obtaining approval of the ballot envelope and return envelope designs, state or local election officials must then input each voter's information into a USPS-run electronic portal. 91 Fed. Reg. at 549991. Notably, the Final Rule provides no timeline for USPS's approval

of ballot envelopes, but it nonetheless precludes election officials from uploading voter information into the portal until USPS first approves the envelope designs, including the required Intelligent Mail barcodes. *Id.* And where state or local election officials do not obtain advance envelope approval from USPS, or do not successfully upload all voter information into the USPS portal, the agency would not mail that state's ballots to voters. *Id.*

Based on Amici's experience, and as outlined more specifically below, attempting to comply with each of these new requirements in advance of the upcoming November 2026 elections would require a significant investment of time and resources, which many jurisdictions simply do not have to spare at this point in the electoral cycle. Amici fear that this may lead some jurisdictions to abandon mail-in voting entirely. And even for those jurisdictions that do attempt to comply with the Final Rule, the compounding delays and inevitable errors introduced throughout the process would almost certainly result in a significant number of voters being unable to effectively cast their votes by mail.

### A. The Final Rule's mandates for re-designing ballot envelopes would be financially costly and likely cannot be accomplished in time for the November 2026 elections.

The Final Rule adopts rigid design specifications for all outbound and return envelopes for absentee and mail-in ballots for federal elections. *See* 91 Fed. Reg. at 54990–91. These requirements include that each envelope include the "official Election Mail logo," be "automation compatible," and bear "the voter's unique [Intelligent Mail barcode]." *Id.* To comply with these demands, many state and local election officials would be required to re-design and even re-print their ballot envelopes. As explained above, many jurisdictions have already ordered their ballot envelopes, and some have already even printed or received those envelopes. The requirement to discard those old envelopes and re-design and re-print new ones in advance of the November 2026 elections would impose significant costs, including for rush printing jobs by third-party vendors that are equipped to handle these new technical requirements on short notice.

The mandated changes regarding envelope design would be felt at every level of election administration—both at the state and local levels. Most states do not have a single design for mail-ballot envelopes. Counties and localities in a single state may use different voting machines and different types and sizes of ballots, requiring different ballot and envelope designs. Changing these processes to comply with the Final Rule's mandates would be a major undertaking, requiring both significant time and monetary resources—burdens which would inevitably fall on state and local election officials. Indeed, under the Final Rule, state and local election officials are "responsible for barcode creation" "as well as envelope design and printing for all ballot mail." *Id*. at 54991. But the Final Rule provides no funding for implementing these major changes.

For example, the requirement that every jurisdiction use Intelligent Mail barcodes on each outbound and return envelope creates onerous new obligations that would be costly and difficult—if not impossible—for election officials to follow, particularly in time for the upcoming midterm elections. This would especially impact rural communities that do not currently have the technology to produce these barcodes[8] and large urban areas that must process high volumes of election mail. USPS's suggestion that it offers "free" tools for generating Intelligent Mail barcodes provides an incomplete solution. *See* 91 Fed. Reg. at 54979. USPS's tool is only available for mailings with fewer than 50,000 pieces of mail.[9] Thus, the largest counties in states across the nation, including in Washington, Arizona, and Colorado, would not be able to use this USPS tool for their election mail. (In fact, not a single one of Arizona's counties prints Intelligent Mail barcodes on return ballot envelopes.[10]) Exacerbating the unexpected expense of this requirement,

[8] *See* Dion Nissenbaum et al., *USPS Proposal to Carry Out Trump's Executive Order Could Create New Barriers to Mail Voting*, VOTEBEAT (May 29, 2026), https://perma.cc/8TV4-MW5K.

[9] *See* Intelligent Mail® for Small Business (IMsb) Fact Sheet (June 1, 2023), https://perma.cc/H744-ZQKD.

[10] Decl. Arizona Secretary of State Adrian Fontes ¶ 24(b), *California, v. USPS*, No. 1:26-cv-13917-IT (D. Mass. Aug. 26, 2026), Dkt. No. 4-5.

many jurisdictions would have to move from in-house printing to a rush order submitted to a commercial mail vendor in hopes of printing envelopes in time for the November 3, 2026 elections.

Moreover, USPS itself acknowledges that there are currently technical impediments that would prevent the creation of Intelligent Mail barcodes for certain voters, such as when a voter's address cannot be verified using Delivery Point Verification, which can often miss certain non-traditional mailing addresses (e.g., tribal addresses, college dormitory addresses, and nursing-home addresses). *See* 91 Fed. Reg. at 54979-80. While USPS "anticipates" that it will make modifications to this tool, it provides no timeline for these changes. *Id.* Typically, USPS would spend at least a year implementing a new system like the verification process the Final Rule outlines. It would hold a conference for all impacted jurisdictions and provide trainings for those required to interact with the system.[11] Comparatively, as of the date of this filing, with only ***one*** day before the window for mailing ballots opens in North Carolina and Delaware, the first two states to begin mail-in voting, this threshold technological step mandated by the Final Rule is extraordinarily rushed and is bound to cause significant chaos and delays for election officials and, ultimately, for the voters whom they serve.[12]

In addition to the time and resources that merely printing the Intelligent Mail barcodes would require, the Final Rule also introduces exorbitant time demands and delays into the process of mailing ballots. Federal-ballot mailers would each need to be segregated from, for example, UOCAVA ballots and state-election-only ballots, both of which are not subject to the Final Rule, and then individually scanned and processed in-person at a local post office location. *See* 91 Fed.

---

[11] Eric Katz, *Postal Officials Say Trump's Mail-Ballot Push Will Create Widespread Errors*, NOTUS (Aug. 27, 2026), https://perma.cc/V56K-PAS5.

[12] Dates for 2026 Early In-Person and Mail Voting, Ct. for Election Innovation & Rsch. (June 2026), https://perma.cc/UWE2-W945; *See Table 7: When States Mail Out Absentee/Mail Ballots*, Nat'l Conf. of State Leg. (Oct. 3, 2024), https://perma.cc/4XZE-GHH7.

Reg. at 54981. This scanning and verification process alone would likely take more time than state and local election officials have to spare. Because even if USPS employees physically scan the mail-in ballot envelopes for verification, state and local election officials like Amici must "***remain***" at the "postal retail location during the verification process." 91 Fed. Reg. at 54981 (emphasis added). An example using USPS's own estimates illustrates the unworkable nature of the Final Rule's demands. USPS estimates that scanning each of these envelope barcodes generally takes roughly one minute. *Id*. At that rate, it would take more than 66,000 hours to scan all of Colorado's more than four million mail ballots. 66,000 hours is equivalent to 2,750 *days* of 24-hour per day work. With thousands of ballots arriving at a time and millions upon millions of ballots in total across the country, this delay is an infeasible and unworkable demand on worker hours that state and local election officials cannot afford—particularly at an already extraordinarily busy time during the final months and weeks leading up to a major election.

**B. State and local election officials must use a USPS portal that is not yet operational and for which they have not been trained.**

If the Final Rule's burdens associated with the envelope re-designs were not enough to cause irreparable harm (they are), the Final Rule imposes further burdens on state and local election officials. Before any ballots can be mailed out under the Final Rule, state and local election officials like Amici must enter voter information into USPS's Federal Ballot Mail Portal—a portal that is not operational, on which no election officials have been trained, and for which no timeline has been provided. The chief election official of each state would be charged with authorizing users within their state to access this new Federal Ballot Mail Portal. *See* 91 Fed. Reg. at 54991. Local election officials like Amici would then be required to use that portal to notify USPS of individuals to whom they plan to mail a ballot, including the unique barcodes associated with the outbound mailings and return ballots assigned to each voter. *Id*. (As explained above, this means that before state and local election officials can begin to input the required information into the Portal,

envelopes must already be printed with the Intelligent Mail barcodes associated with each voter. *See supra* Section II.A.) This information would be compiled to create the state's "Mail-In and Absentee Participation List." *Id*.

To input all of this information into this yet-to-be-released portal, state and local election officials would be required to stand up wholly new procedures and train staff to input information to form the basis of the state-specific Mail-In and Absentee Participation Lists mandated by the Final Rule. But, just 60 days before the election, let alone one day before ballots can begin to be mailed out in some states, not even the portal's technical specifications have been announced. And Amici have no sense of when the portal itself will be ready for intake. Yet the Final Rule demands that while information can be updated at a later date, state and local election officials "must" provide the information for the Mail-In and Absentee Participation Lists "at least 30 days before the date of the federal election" "or by the date on which mail-in or absentee ballots may begin to be mailed under state law." 91 Fed. Reg. at 54991. North Carolina is allowed to begin mailing ballots on September 4, 2026; ballots in Wisconsin may go out starting September 17, 2026; and eighteen other states can mail out their ballots by September 19, 2026. These timelines place election officials like Amici in an impossible position, and—absent an injunction—would require them to begin expending and diverting resources to prepare to comply with these new mandates before USPS has even provided a platform for inputting this information.

Elevating concerns further, on September 1, 2026, Senator Richard Blumenthal made public an anonymous whistleblower report from a federal official with direct knowledge of the Rule.[13] The report addressed the rushed implementation of the USPS's system for verifying and

[13] *Anonymous Whistleblower Disclosure, Re: USPS Rushed Implementation of New and Untested IT Systems Threatens U.S. Ballot Mail Delivery*, Whistleblower Aid (Aug. 30, 2026), https://perma.cc/Z3Z4-QD2A (hereinafter "Whistleblower Report").

transporting mail-in ballots, with the whistleblower explicitly warning that "[e]lection officials will be responsible for reconciling issues with three new components USPS is adding to the election ballot system."[14] On top of the burden of logging voter information into the Federal Ballot Mail Portal, the whistleblower explained that there is a *second* system into which election officials will need to input "batch manifest information."[15] Additionally and even more concerningly, USPS has adopted a "zero percent failure rate," meaning that when USPS clerks scan tranches of ballots they receive from states to confirm that they match the information in the Federal Ballot Mail Portal, an issue with *even one* of the ballots will result in USPS returning the entire batch of ballots to the state or local jurisdiction without mailing them.[16] Batches may consist of tens of thousands of ballots. Multiple USPS officials have reportedly described the development of this process—a process that relies on state and local election officials like Amici to fix system errors—as a "s**t show."[17]

But even if the federal framework to input this voter information was in place and available to state and local election officials, it would indisputably be extremely time-consuming. Election officials would need to update the portal data nearly daily as voters move, new voters register, or voters request mail-in ballots (including requesting replacement ballots if they lose the original). Voter rolls are updated until the very last day that a jurisdiction can mail ballots. In some jurisdictions, this last day can be as close to four days before election day.[18] Updating a list four

---

[14] *Id.* ¶ 3.

[15] *Id.* ¶ 3(b).

[16] *Id.* ¶ 3(c).

[17] *Id.* at ¶ 19 (citation modified).

[18] In addition, some states, such as Minnesota, have no deadline for requesting a mail ballot. Jacob Knutson, *'It Will Destroy the Postal Service': USPS Plan to Crack Down on Mail Voting Spurs Alarm*, Democracy Docket (June 24, 2026), https://perma.cc/TBP9-9VH7.

days before election day is already an administrative burden for local election officials. Under the Final Rule, in order to fulfill their duty of administering elections and allowing every eligible voter to participate, local election administrators would then immediately have to make sure that the USPS list reflects updated voter information, all while local election officials are focused on many of the other critical statutory and administrative duties they already perform. Inputting voter information into the portal would thus pose a continuing obligation on state and local election officials like Amici. Additionally, this process is bound to cause confusion that would burden election officials and voters. For example, Pennsylvania law allows a voter to visit a satellite election office, apply for a mail ballot, and receive the ballot in one transaction. The voter may complete their ballot and return it to the local board of elections at that moment, or they can take it home, complete it, and then return it via the USPS. Under the Final Rule, it is unclear whether Pennsylvania voters would continue to have this option.

In addition to the logistical challenges, neither the Final Rule nor any other federal provision provides funding for this effort. The federal government has devoted no new USPS funds or employees to this process. *See* 91 Fed. Reg. at 54986. Instead, each jurisdiction would be required to hire additional staff or pay current staff for extra hours of work to complete the registration of voters in USPS's portal. This is not a small ask, as election officials and workers nationwide would likely be required to spend many hours being trained on this portal and its procedures, all without any committed support from the federal government. Moreover, in many jurisdictions, election officials would be required to input data into the portal manually (and likely even on an individual voter-by-voter basis), because states' and localities' existing data storage systems are unlikely to be compatible with the portal (e.g., because many jurisdictions' databases do not include fields that can capture information about the Intelligent Mail barcodes that must be submitted into the portal). And most jurisdictions are constrained by state and local procurement rules and consequently

cannot simply purchase new equipment or software on the timeline the proposed Rule imposes. Some jurisdictions would require approval from the governing board or council and a competitive and time-consuming procurement process before they can purchase the equipment or software necessary to implement the requirements of the Final Rule.

Handling all this voter information cannot be taken lightly, either. Voters' privacy and their basic right to vote are at risk should errors be made in this mandated yet under-resourced data-sharing requirement. Indeed, the Final Rule expressly states that outbound mailings that do not comply with the USPS portal enrollment requirements "will not be accepted and will be returned." 91 Fed. Reg. at 54991. Thus, seemingly any error—regardless of how minor—would result in a ballot not being mailed to a voter. But there is no indication of how a jurisdiction would be notified of an issue or on what timeline. Indeed, the Final Rule provides no guidance on how errors in portal submissions or compiled Mail-In and Absentee Participation Lists would be identified and addressed, or how long that process would take. By all accounts, handling any issues with data input would also fall to state and local election officials. The USPS whistleblower's account confirms this impending reality.[19] Furthermore, USPS has also provided no guidance as to how election officials can submit information into the portal while still complying with their state's laws regarding privacy and confidentiality of voter data.[20]

---

[19] Whistleblower Report ¶ 3(b).

[20] For example, California law allows voters that meet certain qualifications to register as "confidential voters" for a variety of reasons, including personal safety, life-threatening circumstances as determined by a California court, and a person's role as a public safety officer, election worker, or candidate or elected official. *See* Cal. Elec. Code §§ 2166, 2166.5, 2166.7, 2166.8, 2166.9 (West 2016). State law prohibits California from including confidential voters' information on any roster or list, which would presumably include the newly mandated USPS portal. *See id.* §§ 2166(b)(2), 2166.5(b)(2), 2166.7(d)(2), 2166.8(d)(1), 2166.9(d)(1) (West 2016).

Finally, even if the portal worked seamlessly, it would present substantial challenges and difficulties for election officials to adopt at this late date, for all the reasons explained above. But as anyone who has ever used a new, untested portal on a government (or other) website likely knows, there is a significant chance that the roll-out of the new portal would be far from seamless. As a longtime USPS executive who was "personally responsible for developing the network technology the agency would need to carry out its rule" has stated: "This is not something where you just flip the switch and turn it on."[21] Rushing the portal into operation for the upcoming midterm elections, without the kind of advance planning and testing that would typically occur for technological changes of such magnitude, is almost certain to result in errors, bugs, intermittent system outages, or other failures. Indeed, that same USPS executive predicted that the portal is likely to suffer a 20% to 30% error rate, which "would be a disaster"[22]—not least because it would result in disenfranchising many voters who rely on voting by mail due to age, disability, and/or holding a temporary residence.

**C. The Final Rule risks undermining state and local election officials' efforts to promote voter confidence and participation in elections.**

Election officials also play an important role in promoting voter confidence and increasing voter participation. Because the Final Rule imposes significant changes immediately preceding nationwide elections, election officials like Amici are struggling to prepare communications and trainings for election workers and the public to assuage confusion or concerns. These issues include how the Mail-in and Absentee Participation Lists would be used, how USPS would address or resolve errors on those lists, and how registered voters can assure that they receive their mail-in or

[21] Eric Katz, *Postal Officials Say Trump's Mail-Ballot Push Will Create Widespread Errors* (Aug. 27, 2026), https://perma.cc/V56K-PAS5.

[22] *Id.*

absentee ballot and can then confidently return it. To meet these growing concerns about the November 2026 midterm elections, state and local election officials already need to devote time and resources to voter education regarding the Final Rule's changes. The price for these sorts of educational campaigns is substantial. For example, in Cook County, Illinois, election officials estimate that a public education effort would cost approximately $2,746,000.[23] These are expenditures for which jurisdictions have not accounted and for which the federal government has offered no support. Yet they are critical to assuring that state and local election officials can administer free and fair elections in which voters can trust this November.

Finally, the many uncertainties posed by the Rule would undermine election officials' ability to assure voters that their votes will count. Because USPS will refuse to deliver ballots if a state does not comply with the Final Rule—including because of inadvertent errors in data entry into the portal, problems with the Intelligent Mail barcodes on the ballot envelopes, or otherwise—the end result is that USPS would end up refusing to transmit ballots for some citizens who are in fact properly registered to vote, and who are entitled to vote by mail under their state's laws. And because election officials cannot predict in advance which ballots USPS may disallow, they would not be able to effectively counsel voters about how to ensure that they are able to successfully vote by mail. Furthermore, the Rule's complicated requirements would likely lead some eligible voters to misunderstand whether they are able to use a mail-in ballot at all, and it may even lead some eligible voters to conclude that the added requirements make voting too confusing to be worthwhile. This runs directly counter to election officials' mandate to "promote the exercise of" the "fundamental right" to vote. 52 U.S.C. § 20501(a)(1)-(2).

---

[23] Decl. Edmund Michalowski ¶ 46, *California, v. USPS*, No. 1:26-cv-13917-IT (D. Mass. Aug. 26, 2026), Dkt. No. 4-24 (filed Aug. 26, 2026).

**D. The Final Rule exists within the context of the threatened prosecution of state and local election officials, and it would thus further discourage election officials and volunteers from serving.**

The Final Rule imposes upon state and local election officials, including Amici, demands that are impossible to meet—all the while threatening them, through the Executive Order that precipitated the Final Rule, with federal criminal prosecution. Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026), https://perma.cc/NY6V-KJV3 (hereinafter "EO"). USPS has made clear that the primary purpose of the Federal Ballot Mail Portal and the Mail-in and Absentee Participation Lists is to "provide valuable insight" into mail-in voting for federal law enforcement, specifically through disclosing "a list of individuals to whom states planned to mail a ballot (and who may potentially use the mail to vote), along with the associated barcode data," which in turn can purportedly be used to "identify potentially anomalous incidents that may merit further investigation." 91 Fed. Reg. at 54980, 54982. This all comes in the context of an EO directing federal agencies to prioritize the investigation and prosecution "of State and local officials . . . who issue Federal ballots to individuals not eligible to vote in a Federal election." EO § 2(b); *see also id.* § 5 (providing that "State or local election officials . . . [and] individuals involved in the administration of Federal elections; or public [] entities engaged in the printing, production, shipment, or distribution of ballots may be referred to the Department of Justice for consideration of investigation or charges under" various federal criminal laws).[24]

These baseless legal threats have already harmed ongoing election preparations, including by deterring staff, volunteers, and contractors from agreeing to assist in election administration. Layering onto these threats the additional onerous requirements of the Final Rule—which

[24] State election officials have also recently received targeted communications from the U.S. Department of Justice threatening to prosecute them if they facilitate voting by anyone whom the federal government believes is ineligible to vote. *See* Jenna Monnin, *DOJ Issues Nationwide Threat to Prosecute Local Election Officials* (July 8, 2026), https://perma.cc/MQ69-NGGY.

mandates multiple new steps for the mail-in voting process, each of which introduces additional possibilities for inadvertent errors—would only further depress recruitment and retention efforts for both election officials and election volunteers alike.

Amici are well aware that the Executive Branch has claimed that these measures are justified because there is widespread fraud supposedly allowing non-citizens to vote. But election officials carefully follow state and federal law, adopting strict processes to ensure that only eligible voters can cast a ballot. As a result, in Amici's experience—and as confirmed by numerous independent research studies—non-citizen voting is vanishingly rare.[25] Accordingly, the significant burdens and costs imposed by the Final Rule cannot be justified, and the Rule would carry downstream chilling effects throughout the electoral apparatus. Amici, and other officials like them, cannot effectively do their jobs under such conditions.

* * *

In short, it is far too late in the election cycle to introduce such dramatic and unwarranted changes to the mail-in voting process. Enjoining the Final Rule in advance of the November 3, 2026 midterm elections would serve as a critical safeguard of effective preparations for those rapidly approaching federal elections.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motions and enjoin the USPS Final Rule.

Respectfully submitted,

*/s/ Kyle R. Freeny*
SAMANTHA P. BATEMAN (D.C. Bar No. 492919)
KYLE R. FREENY (D.C. Bar No. 1684764)
ROSA L. BAUM (D.C. Bar No. 90032839)

[25] *See Claims of Noncitizen Registration or Voting: Analysis and Tracker*, Ctr. for Election Innovation & Rsch. (July 2, 2026), https://perma.cc/5893-J5YS.

WASHINGTON LITIGATION GROUP
1717 K Street N.W., Suite 1120
Washington, D.C. 20006
(202) 521-8750
kfreeny@washingtonlitigationgroup.org

*Counsel for Amici Curiae State and Local Election Officials and Center for Election Innovation and Research*

## APPENDIX: *AMICI CURIAE*

Amici include the Center for Election Innovation and Research ("CEIR"), a nonpartisan nonprofit whose core mission is to work with election officials and build confidence in elections that voters should trust and do trust. Amici also include the following local jurisdictions and current or former election officials, listed alphabetically by last name, along with their titles and jurisdictions:

### LOCAL JURISDICTIONS & OFFICES

- Allegheny County, Pennsylvania
- County of Los Angeles, California
- County of San Diego, California
- Santa Fe County Clerk's Office, New Mexico

### STATE AND LOCAL ELECTION OFFICIALS

- Vasu Abhiraman, Board of Registration and Elections Vice Chair, DeKalb County, Georgia
- Natalie Adona, Registrar of Voters, Marin County, California
- Laura Anna, Director of Elections, Venango County, Pennsylvania
- Brandi Bantz, Director of Elections, Mesa County, Colorado
- Shenna Bellows, Secretary of State, Maine
- Karen Brinson Bell, Former North Carolina State Elections Director and Chief Election Official, North Carolina
- Martin Brook, Clerk, Bloomfield Township, Michigan
- Bill Burgess, County Clerk, Marion County, Oregon
- John Butkovich, Elections Specialist, Pueblo County, Colorado
- Barb Byrum, County Clerk, Ingham County, Michigan
- Elaina Cano, County Clerk-Recorder and Registrar of Voters, San Luis Obispo County, California
- Laura Cantrell, Board of Election Commissioner, Hot Spring County, Arizona
- Juan Pablo Cervantes, County Clerk and Recorder & Registrar of Voters, Humboldt County, California
- Mary R. Clark, Clerk, Delta Township, Michigan
- Becky Close, County Clerk and Recorder, Eagle County, Colorado
- Jana Coen, Clerk & Recorder, Prowers County, Colorado
- Ethan Compton, Election Supervisor, Irwin County, Georgia

- Kristin Braun Connelly, Clerk-Recorder and Registrar of Voters, Contra Costa County, California
- Brenda L. Corbett, Clerk and Recorder, Clear Creek County, Colorado
- Cynthia Cox, Election Administrator, Brewster County, Texas
- Matt Crane, Executive Director, Colorado County Clerks Association, Colorado
- Teresa K. Crawford, Board of Registrations and Elections Member, Fulton County, Georgia
- Daryl Daugs, Former Chief of Staff to County Auditor, Kitsap County, Washington
- R. Todd Davidson, Director of Elections, City and County of Denver, Colorado
- David Del Terzo, Senior Software Developer, Miami-Dade County, Florida
- Keaton Denlay, County Clerk-Recorder/Registrar of Voters, Butte County, California
- Francisco Diaz, County Clerk-Recorder/Registrar of Voters, San Benito County, California
- Justin Douglas, Commissioner, Dauphin County, Pennsylvania
- Mark S. Earley, Supervisor of Elections, Leon County, Florida
- Daniel Adams Eaton, Moderator and Chief Election Officer, Town of Stoddard, New Hampshire
- Adrian Fontes, Secretary of State, Arizona
- J. Elliott, Elections Deputy Clerk, Brewster County, Texas
- Susan Esmond, Deputy Clerk of Elections, Summit County, Colorado
- Eileen Giesbrecht, Clerk, Southfield Township, Michigan
- Jacob P. Gonzales, Chief Deputy Clerk, San Miguel County, New Mexico
- Amanda Gonzalez, Clerk and Recorder, Jefferson County, Colorado
- Monica Gordon, Clerk, Cook County, IL
- Bobbie Gross, County Clerk, Mesa County, Colorado
- Ingrid Grueter, Clerk & Recorder, Pitkin County, Colorado
- Richard Guerra, Elections Administrator, Jim Wells County, Texas
- Philip Hatcher, Moderator, City of Dover, New Hampshire
- Deidre Henderson, Lieutenant Governor, Utah
- Keri Hinton, Clerk, Yamhill County, Oregon
- Rebecca Hochard, Elections Deputy, Chaffee County, Colorado
- Hayle M. Johnson, Clerk, County of Jackson, Colorado
- Kevin J. Kennedy, Former Chief State Election Officer, Wisconsin
- William George Kingston, Supervisor of the Checklist, Town of New Castle, New Hampshire
- Michele Konopka, Supervising Clerk, Atlantic County, New Jersey
- Carly Koppes, Clerk and Recorder, Weld County, Colorado
- Sandy Kraemer, Clerk, Town of Springville, Wisconsin

- Liz Krizenesky, Election Manager, Pend Oreille County, Washington
- Tracey Lauritzen, Clerk & Recorder, Lake County, Colorado
- Debra Lee, County Clerk, Laramie County, Wyoming
- Tiffany Lee, County Clerk, La Plata County, Colorado
- Corinne Lengel, Clerk and Recorder, Lincoln County, Colorado
- Nicholas J. Lima, Registrar/Director of Elections, City of Cranston, Rhode Island
- Dean C. Logan, Registrar-Recorder & County Clerk, Los Angeles County, California
- Dele Lowman, Board of Registration & Elections Member, DeKalb County, Georgia
- Robin Major, Elections Administrator, Monmouth County, New Jersey
- Kate Martin, City Clerk, City of Menomonie, Wisconsin
- Sahari McCormick, Clerk and Recorder, Gilpin County, Colorado
- Claudia McDaniel, County Clerk, Dimmit County, Texas
- Kirk McDonough, Board of Canvassers Chairperson, City of Cranston, Rhode Island
- Catherine McMullen, County Clerk, Clackamas County, Oregon
- Laura Miller, Election Chairperson, Fredonia Township, Michigan
- Lori Mitchell, County Clerk & Recorder, Chaffee County, Colorado
- Jennifer Mosbacher, Board of Elections Chair, Cobb County, Georgia
- Kylee Muench, Elections Staff, Jackson County, North Carolina
- Uriel Najera, Town Clerk, Town of Guilford, Vermont
- Cheryl A. Neilsen, County Clerk, Montmorency County, Michigan
- Vickie Norris, Deputy Director, County Board of Elections, Hocking County, Ohio
- Chris Piper, Former Commissioner, Department of Elections, Virginia
- Creed Pogue, Board of Elections Chair, Atlantic County, New Jersey
- Taryn Power, Clerk & Recorder, Summit County, Colorado
- James Sabatino, Council Chair, Luzerne County, Pennsylvania
- Jesse Salinas, County Registrar of Voters, Yolo County, California
- Armando Salud-Ambriz, Clerk-Recorder/Registrar of Voters, Nevada County, California
- Paula Schermerhorn, Board of Elections Democratic Deputy Commissioner, Delaware County, New York
- Lisa Schwartze, Director, County Board of Elections, Hocking County, Ohio
- Joseph Self, Chief Deputy Clerk & Recorder, Gilpin County, Colorado
- Jameson D. Shew, County Clerk, Douglas County, Kansas
- Philbert Sherlock Smith, Election Official, Douglas County, Georgia
- Susan Spring, County Clerk, Parmer County, Texas
- Karli Swift, Board of Voter Registration and Elections Chair, DeKalb County, Georgia
- Chris Swope, City Clerk, City of Lansing, Michigan
- Damon Todd, Clerk & Recorder, Ouray County, Colorado
- Anita Tucker, Secretary, Board of Registrations and Elections, Forsyth County, Georgia

- Walter Turner, Supervisor of the Checklist, Town of Bennington, New Hampshire
- Baoky Nguyen Vu, Former Board of Elections Vice-Chair, DeKalb County, Georgia
- Christine Walker, County Clerk, Jackson County, Oregon
- Kenneth Lee Warner, Board of Elections Commissioner, Cayuga County, New York
- Tricia Webber, County Clerk/Registrar of Voters, Santa Cruz County, California
- Wesley Wilcox, Supervisor of Elections, Marion County, Florida
- Julie Wise, Elections Director, King County, Washington
- Adrienne Yates, County Clerk & Recorder, Kiowa County, Colorado