**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DSCC, *et al.*,**

**Plaintiffs,**

**v.**

**DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,**

**Defendants,**

**STATE OF MISSOURI, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, STATE OF SOUTH DAKOTA, and STATE OF TEXAS,**

**Intervener Defendants.**

**No. 26-cv-01114-CJN**

**LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,**

**Plaintiffs,**

**v.**

**EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,**

**Defendants,**

**STATE OF MISSOURI, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, STATE OF SOUTH DAKOTA, and STATE OF TEXAS,**

**Intervener Defendants.**

**No. 26-cv-01132-CJN**

**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,**

**Plaintiffs,**

**v.**

**DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,**

**Defendants,**

**STATE OF MISSOURI, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, STATE OF SOUTH DAKOTA, and STATE OF TEXAS,**

**Intervener Defendants.**

**No. 26-cv-01151-CJN**

## MEMORANDUM IN OPPOSTION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... iv

**INTRODUCTION** .......... 1

**BACKGROUND** .......... 3

**LEGAL STANDARD** .......... 4

**ARGUMENT** .......... 5

**I. Plaintiffs do not have standing to challenge the Mail Ballot Rule.** .......... 5

**A. Plaintiffs are not suffering organizational injuries because of the Rule.** .......... 5

**B. Plaintiffs do not have assocational standing to challenge the Rule** .......... 11

**C. The DSCC Plaintiffs do not have standing to challenge the Mail Ballot Rule under *Bost*.** .......... 12

**II. Plaintiffs are unlikely to succeed on the merits.** .......... 13

**A. The Rule is permitted under Title 39.** .......... 13

**B. The Rule is constitutional.** .......... 17

**C. The Rule does not create an unauthorized category of nonmailable matter.** .......... 18

**D. The Rule does not require USPS to provide non-postal services.** .......... 18

**E. The Rule does not discriminate among users of the mail.** .......... 19

**F. The Rule did not need to be reviewed by the Postal Regulatory Commission.** .......... 19

**G. The Rule does not violate the Privacy Act or the First Amendment.** .......... 21

**III. The other preliminary injunction factors favor Intervener States** .......... 23

**A. Intervener States will be irreparably injured absent a stay** .......... 23

**B. The Public interest is served by a lawful rule** .......... 23

**IV. At a minimum, the Court should limit the scope of any preliminary injunction** .......... 24

**CONCLUSION** .......... 24

# TABLE OF AUTHORITIES

**Cases**

*Aid Ass'n for Lutherans v. U.S. Postal Serv.*,
321 F.3d 1166 (D.C. Cir. 2003) ........ 15

*Ala. Ass'n of Realtors v. HHS*,
594 U.S. 758 (2021) ........ 16

*All. for Retired Ams. v. Bessent*,
770 F. Supp. 3d 79 (D.D.C. 2025) ........ 11

*Allen v. Wright*,
468 U.S. 737 (1984) ........ 5

*Am. Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025) ........ 9, 11

*Ariz. All. for Retired Ams. v. Mayes*,
--- F.4th ---, 2026 WL 2277101 (9th Cir. Aug. 7, 2026) ........ 7

*Associated Third Class Mail Users v. U.S. Postal Service*,
600 F.2d 824 (D.C. Cir. 1979) ........ 14

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) ........ 9

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004) ........ 15

*Bost v. Illinois State Board of Elections*,
607 U.S. 71 (2026) ........ 12

*Brunett v. Convergent Outsourcing, Inc.*,
982 F.3d 1067 (7th Cir. 2020) ........ 8

*Buchanan v. U.S. Postal Serv.*,
508 F.2d 259 (5th Cir. 1975) ........ 19, 20

*Buckley v. Am. Const. L. Found., Inc.*,
525 U.S. 182 (1999) ........ 22

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ........ 5

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 5, 9, 11, 12

*Crawford v. Marion Cty. Election Bd.*,
553 U.S. 181 (2008)....................................................................................................... 23

*DSCC v. Trump*,
No. 26-cv-01114 (CJN), 2026 WL 1487833 (D.D.C May 28, 2026) ..................................... 10

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)....................................................................................................... 6, 7

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) ........................................................................................ 2, 5

*Garland v. Orlans, PC*,
999 F.3d 432 (6th Cir. 2021)............................................................................................... 8

*Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ............................................................................................ 5

*Holmes v. Bax*,
--- F.4th ---, No. 25-1987, 2026 WL 2421803 (8th Cir. Aug. 19, 2026) .................................... 7

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977)....................................................................................................... 11

*Jacobson v. Fla. Sec'y of State*,
974 F.3d 1236 (11th Cir. 2020) ......................................................................................... 11

*Knox v. Brnovich*,
907 F.3d 1167 (9th Cir. 2018) ........................................................................................... 22

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)......................................................................................................... 7

*McDonald v. Bd. of Election Comm'rs of Chi.*,
394 U.S. 802 (1969)....................................................................................................... 22

*Munaf v. Geren*,
553 U.S. 674 (2008)......................................................................................................... 4

*Myers v. United States*,
272 U.S. 52 (1926)......................................................................................................... 21

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................................................................................................... 10

*New York v. Trump*,
181 F.4th 132 (D.C. Cir. 2026) .......................................................................................... 20

*New York v. Trump*,
490 F. Supp. 3d 225 (D.D.C. 2020) .......... 15

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 23

*Pennsylvania v. DeJoy*,
490 F. Supp. 3d 833 (E.D. Pa. 2020) .......... 20

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .......... 23

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
120 F.4th 390 (4th Cir. 2024) .......... 7

*Reuber v. United States*,
829 F.2d 133 (D.C. Cir. 1987) .......... 23

*Rockville Reminder Inc. v. U.S. Postal Serv.*,
480 F.2d 4 (2d Cir. 1973) .......... 2, 13

*Sandoz, Inc. v. Food and Drug Admin.*,
439 F. Supp. 2d 26 (D.D.C. 2006) .......... 4

*Sataki v. Broad. Bd. of Governors*,
733 F. Supp. 2d 22 (D.D.C. 2010) .......... 4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 8, 9

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 11

*Tenn. Conf. of the NAACP v. Lee*,
139 F.4th 557 (6th Cir. 2025) .......... 7

*Tenn. Elec. Power Co. v. Tenn. Valley Authority*,
306 U.S. 118 (1939) .......... 23

*Tex. LULAC v. Hughs*,
978 F.3d 136 (5th Cir. 2020) .......... 23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5, 8, 9, 10

*Trump v. California*,
609 U.S. ---, 2026 WL 2473573 (Aug. 24, 2026) .......... 9

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 3, 24

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) .......... 21

*Tully v. Okeson*,
977 F.3d 608 (7th Cir. 2020) .......... 22

*U.S. Postal Serv. v. Brennan*,
574 F.2d 712 (2d Cir. 1978) .......... 14

*U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*,
453 U.S. 114 (1981) .......... 1, 13, 16

*U.S. Postal Serv. v. Postal Regul. Comm'n*,
599 F.3d 705 (D.C. Cir. 2010) .......... 18

*Voting for Am., Inc. v. Steen*,
732 F.3d 382 (5th Cir. 2013) .......... 22

*West Virginia v. EPA*,
597 U.S. 697 (2022) .......... 16, 17

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 5

*Wis. Voter All. v. Millis*,
166 F.4th 627 (7th Cir. 2026) .......... 7

**Constitutional Provisions**

U.S. Const. art. I, § 4 .......... 17

U.S. Const. art. I, § 8, cl. 7 .......... 17

**Statutes**

5 U.S.C. § 552(e)(7) .......... 22

5 U.S.C. § 552a(e)(1) .......... 22

5 U.S.C. § 552a(e)(7) .......... 22

18 U.S.C. § 611 .......... 15

39 U.S.C. § 401(2) .......... 2, 13, 14, 15

39 U.S.C. § 403(c) .......... 19

39 U.S.C. § 404(a)(1) .......... 14

39 U.S.C. § 404(a)(6) .......... 14

39 U.S.C. § 501 .......... 21

39 U.S.C. § 3661 .......... 19, 20, 21

52 U.S.C. § 20511 .......... 15

**Regulations**

*Ballot Mail for Federal Elections Rule*,
91 Fed. Reg. 54966 (Aug. 26, 2026) .......... *Passim*

*Cremated Remains Packaging Requirements*,
90 Fed. Reg. 9843 (Feb. 19, 2025) .......... 14, 18

*Restricting the Mailing of Replica or Inert Explosives*,
75 Fed. Reg. 282 (Jan. 5, 2010) .......... 15

## INTRODUCTION

USPS's August 26, 2026 Ballot Mail for Federal Elections Rule ("Rule") is not a federal takeover of elections. If it were, the Intervener States would oppose it. But States will retain complete control on who is eligible under state law to vote by mail, just as they always have. 91 Fed. Reg. 54966, 54969 (Aug. 26, 2026) (to be codified 39 C.F.R. pt. 111). And under the Rule, USPS is not authorized to second-guess the States' submissions. *Id.* Instead, USPS is merely doing for election mail what it has long done for many other types of mail—imposing modest mailing conditions that increase the security of mail-in voting, allow tracking through matching barcodes, and prevent violations of federal law.

In painting a different picture, Plaintiffs take hyperbole to the extreme and misrepresent USPS's new mailing requirements. They say this case is about whether USPS can decide who gets to vote by mail. *See, e.g.*, Doc 171-1 ("LULAC Br.") at 1; Doc. 172-1 ("NAACP Br.") at 30. But it is not; the Rule explicitly forbids USPS from making that decision. *See* 91 Fed. Reg. at 54969. Instead, this case is only about whether USPS can impose modest regulations for States that choose to use federal mail. The long history of postal management shows that it can. Indeed, USPS already recommends certain requirements for election mail—like using an "Official Election Mail" label. *See, e.g.*, *Election Mail*, USPS (accessed Aug. 27, 2026).[1] The implication of Plaintiffs' arguments is that imposing even those modest rules is invalid, and that federal election mail must be made available on whatever conditions States or private litigants demand. Title 39 rejects this position, as it gives USPS "broad[]" authority "to adopt rules and regulations" governing the mail. *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 123 (1981).

---

[1] https://about.usps.com/what/government-services/election-mail/.

The Court should reject Plaintiffs' motions for a preliminary injunction because they are unlikely to succeed on the merits. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). This is so for two independently sufficient reasons. *First*, as a threshold matter, Plaintiffs still lack standing to challenge the Executive Order and the recently finalized Rule. Neither Plaintiffs nor their members are the object of the Rule. Only the States are required to satisfy the Rule's modest conditions if they intend to allow their citizens to vote by mail. Thus, to vote by mail, Plaintiffs' members need not do anything different than they had already been required to do before the Rule. They therefore are not injured in any way by it.

*Second*, Plaintiffs are unlikely to succeed on the merits because the Rule does not exceed USPS's statutory authority or the separation of powers. Under Title 39, USPS has a general power to "to adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title." 39 U.S.C. § 401(2). The statute also broadly gives USPS "all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." *Id.* § 401(10). Inherently, the statute recognizes that USPS—rather than federal courts—is most likely to have the expertise to decide how mail should be processed and delivered. *See, e.g.*, *Rockville Reminder Inc. v. U.S. Postal Serv.*, 480 F.2d 4, 7 (2d Cir. 1973) (applying deferential standard of review to USPS regulations under § 401(2)). Nor do the Rule's modest mailpiece design and data reporting standards infringe on State sovereignty. In fact, the Rule states the opposite: "States will retain full autonomy to decide whether (and to what extent) they utilize the U.S. Mail as part of their electoral systems and who can use ballot mail to cast a vote." 91 Fed. Reg. at 54973.

Moreover, the other equitable factors weigh against an injunction because Intervener States would be irreparably harmed by the loss of election integrity measures they lack the ability to implement on their own and because the public benefits from lawful election security measures.

Finally, even if the Court is inclined to enter a preliminary injunction against the Rule, it should not enter nationwide relief. *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). Rather, the Court should at least limit any injunction to ensure that States at least retain the *option* to comply with the Rule for the 2026 General Election—an option Missouri and likely other States want. Ex. A, Hoskins Decl. ¶ 9. Such a limit would also serve the public interest by providing real-world evidence on how easy it is to implement the Rule. *See id.* ¶¶ 5–9.

In all events, the Court should reject Plaintiffs' motions.

## BACKGROUND

On August 26, 2026, USPS published the Rule in the Federal Register. 91 Fed. Reg. 54966. The Rule amends USPS's Domestic Mail Manual to place modest reporting and envelope design requirements on federal ballot mail.

Specifically, the Rule requires that outbound and inbound federal ballot mail be mailed in an envelope that (1) includes the official election mail logo, (2) is automation compatible, and (3) includes a unique barcode that identifies that envelope as federal ballot mail and its delivery point zip code. 91 Fed. Reg. at 54990–91. Authorized ballot mailers are responsible for barcode creation as well as envelope design and printing for all ballot mail. *Id.* at 54991. The Rule also requires States to upload to an online portal (1) the name of each individual receiving a mail-in or absentee ballot, (2) address of individuals receiving a mail-in or absentee ballot, (3) the unique barcode applied on the outbound federal ballot mail envelope, and (4) the unique barcode applied on the inbound federal ballot mail envelope. *Id.*

The Rule does not impose any federal voter eligibility requirements. In fact, it precludes them: "This rule relates only to the use of the U.S. Mail. The Postal Service does not purport to alter the eligibility of any individual to vote under state or federal law. The Postal Service does not have any legal responsibility for management of state voter rolls or administration of federal elections within each state. States are fully responsible for the contents of each State's Mail-In and Absentee Participation List." *Id.* at 54991–92. States thus "will retain full autonomy to decide whether (and to what extent) they utilize the U.S. Mail as part of their electoral systems and who can use ballot mail to cast a vote." *Id.* at 54973. USPS cannot "second-guess the states' submissions," nor can it "inspect[] [] a mail-in ballot's contents, review [an] individual voter's eligibility, or audit[] [] state voter rolls." *Id.* at 54969. USPS is concerned with verifying only one thing under the Rule: adherence to the modest mailpiece design and data reporting standards. *Id.*

On August 25, the DSCC Plaintiffs filed their second motion to preliminarily enjoin the Rule. Doc. 163. The NAACP and LULAC Plaintiffs likewise filed second motions for preliminary injunction on August 28. Doc. Nos. 171, 172. Also on August 28, all Plaintiffs amended their complaints to challenge the Rule. Doc. Nos. 175, 176, 177.

## LEGAL STANDARD

"A preliminary injunction is an 'extraordinary and drastic remedy,' … it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted), and "must be sparingly granted," *Sandoz, Inc. v. Food and Drug Admin.*, 439 F. Supp. 2d 26, 30 (D.D.C. 2006), *aff'd*, No. 06-5204, 2006 WL 2591087 (D.C. Cir. Aug. 30, 2006). This "very high" standard for granting injunctive relief is "very well established." *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 22, 43–44 (D.D.C. 2010). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Plaintiffs must do more than merely show the possibility of prevailing on the merits; rather they must show "a substantial likelihood of success on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Plaintiffs also must establish irreparable harm, as failure to do so is "grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). This too is a "high standard." *Id.* First, the injury "must be both certain and great; it must be actual and not theoretical." *Id.* (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "The moving party must show the injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id.* (citations omitted) (emphasis in original). "Second, the injury must be beyond remediation." *Id.*

## ARGUMENT

### I. Plaintiffs do not have standing to challenge the Mail Ballot Rule.

#### A. Plaintiffs are not suffering organizational injuries because of the Rule.

To establish Article III standing, Plaintiffs must plausibly allege that they suffered a cognizable injury fairly traceable to Defendants, and that the injury is likely to be redressed by a favorable judicial decision. *See Allen v. Wright*, 468 U.S. 737, 751 (1984). To prove a cognizable injury, Plaintiffs must point to a legal injury analogous to one that could be asserted at common law. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (requiring "a close historical or common-law analogue for [an] asserted injury"). Fears about hypothetical events dependent on third parties not before the Court are not cognizable injuries. *See Clapper v. Amnesty Int'l USA*,

568 U.S. 398, 409–10, 414 n.5 (2013). Nor are expenses incurred by organizations to educate members or the public about legal changes. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

Applying these principles here, Plaintiffs lack standing to challenge the Mail Ballot Rule. *First*, Plaintiffs allege that they have standing to challenge the Rule because they will be impaired from carrying out their core activities, namely educating voters and facilitating civic participation. *See* Doc. 176 ("LULAC Compl.) ¶ 144 ("The uncertainty around mail-in voting directly impairs one of LULAC's core functions: providing accurate voting information and encouraging civic participation."); Doc. 177 ("NAACP Compl.") ¶ 172 ("The new burdens imposed by the Order and Agency Actions will require Plaintiffs, in addition to the current work they do to fulfill their mandate on educating and assisting voters to exercise the franchise, to revise and update educational and outreach materials, respond to increased inquiries and concerns from members, and conduct additional training for staff and volunteers to address the resulting confusion and compliance issues related to the voter lists."). They also allege that "[t]he time and money [Plaintiffs] spend[] responding to the Final Rule will be diverted from other core parts of [Plaintiffs'] work." LULAC Compl. ¶ 174; *see also* NAACP Compl. ¶ 172 ("The Order and the Agency Actions taken pursuant to the Order will impose substantial burdens on Plaintiffs NAACP, BVM, and Common Cause by forcing a diversion of limited resources away from their planned activities in a federal election year and beyond."); Doc. 175 ("DSCC Compl.") ¶ 118 ("The Order and Defendants' actions to effectuate it separately harm the Party Plaintiffs by requiring them to attempt to offset the destructive effects by diverting resources from other mission critical activities.").

However, neither a voter-registration organization's "loss of time and resources they have spent" preparing for absentee mail voting assistance before the Rule nor their "diversion of resources to educate and train voters on the potential effects of the [Rule] can[] independently establish an injury-in-fact." *Ariz. All. for Retired Ams. v. Mayes*, --- F.4th ---, 2026 WL 2277101, at *8 (9th Cir. Aug. 7, 2026) (en banc); *see also Holmes v. Bax*, --- F.4th ---, No. 25-1987, 2026 WL 2421803, at *4 (8th Cir. Aug. 19, 2026). In arguing otherwise, Plaintiffs rely on cases which either predate *Alliance for Hippocratic Medicine*, where the Supreme Court "corrected a common misreading of" resource-diversion standing, *Ariz. All. for Retired Ams.*, 2026 WL 2277101, at *6, or did not fully respect "this new legal landscape," *see Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 411 (4th Cir. 2024) (Diaz, C.J., concurring). But "[a]s in *Hippocratic Medicine*, the [Plaintiffs'] expenditures to 'better inform their members and the public about [the Rule's] risks" and to 'engag[e] in public advocacy and public education' do not confer standing." *Ariz. All. for Retired Ams.*, 2026 WL 2277101, at *6 (quoting *All. for Hippocratic Med.*, 602 U.S. at 394). Holding otherwise "would turn organizational standing into 'nothing more than a game of semantics,' in which advocacy organizations can simply declare that disfavored government conduct impedes their 'core business activities' without further evidence of harm." *Wis. Voter All. v. Millis*, 166 F.4th 627, 637 (7th Cir. 2026) (per curiam) (quoting *Tenn. Conf. of the NAACP v. Lee*, 139 F.4th 557, 566 (6th Cir. 2025)); *see also Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the U.S.*, No. 26A203, 2026 WL 2564318, at *2 (U.S. Aug. 31, 2026) ("[W]e have repeatedly held that mere offense, disagreement, or distaste does not qualify as a concrete and particularized injury under Article III.").

Moreover, the Ballot Mail Rule does not prohibit Plaintiffs from educating their members or providing information to the public (things they would do anyway), meaning that any "need"

for Plaintiffs to educate and assist their members is not caused by the Rule or fairly traceable to it. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

*Second*, Plaintiffs also assert injuries based on "confusion" due to uncertainty about the rules governing future elections. *See, e.g.*, DSCC Compl. ¶ 116 ("The Ballot Mail Rule is likely to have devastating effects on mail voting throughout the country, including because it introduces multiple complex procedural steps that could result in confusion and disruption."); NAACP Compl. ¶ 257 ("Plaintiffs will suffer irreparable injury if the Executive Order is not declared unlawful and enjoined because the Order will … create confusion among voters and election officials."). But "[c]onfusion does not have 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit.'" *Garland v. Orlans, PC*, 999 F.3d 432, 437 (6th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)); *see also TransUnion LLC*, 594 U.S. at 424 (requiring "a close historical or common-law analogue for [an] asserted injury"). If confusion were an Article III injury, "then everyone would have standing to litigate about everything." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020) (Easterbrook, J.); *see also id.* at 1068–69 (giving absurd examples about how confusion could defeat Article III standing limits). Simply put, "the state of confusion is not itself an injury." *Id.* at 1068.

*Third*, Plaintiffs once again allege disenfranchisement under the theory that States will not agree to or will not be able to comply with the Rule's requirements. *See, e.g.*, LULAC Compl. ¶ 137 ("The resulting failure of the jurisdiction's inability to comply or any mistakes the jurisdiction makes from attempting to comply in such a short time frame would directly burden and very likely disenfranchise LULAC members."); DSCC Compl. ¶ 153 ("States must comply with these strictures or risk a complete collapse of their mail voting programs—disenfranchising

voters along the way." (emphasis omitted)). But, just as before, this is too speculative to confer standing. Neither Plaintiffs nor their members are the object of the Rule. Rather the Rule requires *States* who wish to allow their citizens to transmit their ballots by mail to provide their voters' basic information and barcodes to USPS. *See* 91 Fed. Reg. at 54979. The Rule "does not . . . alter the eligibility of any individual to vote under state or federal law." *Id.* at 54991. In other words, to vote by mail, Plaintiffs' members need not do anything different than they had already been required to do before the Rule. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (To challenge a statute prospectively, Plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute."). So "Plaintiffs would suffer injury (disenfranchisement) *only if* the [State] in which" their members are registered to vote "failed" to comply with the Rule. *Am. Encore v. Fontes*, 152 F.4th 1097, 1112 (9th Cir. 2025). And Plaintiffs have not made "a clear showing that is more than hypothetical or conjectural that a State would fail" to comply with the Rule, *id.*, so this injury is "too speculative for Article III purposes," *Clapper*, 568 U.S. at 409. After all, "Article III prohibits federal courts from stacking hypothetical on hypothetical to speculate that harm will eventually materialize." *Trump v. California*, 609 U.S. ---, 2026 WL 2473573, at *2 (Aug. 24, 2026) (citing *Clapper*, 568 U.S. at 414–415, n.5).

*Finally*, the DSCC Plaintiffs argue that the Mail Ballot Rule harms their privacy interests, which confers Article III standing. *See* Doc. 163-1 ("DSCC Br.") at 14–15. But Plaintiffs offer no precedent suggesting that the sharing of voter information between different parts of the American government constitutes a cognizable injury. In *Spokeo v. Robins*, the Supreme Court held that, in assessing concreteness, courts must consider whether a plaintiff's asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in

American courts. 578 U.S. at 340–41. "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). For standing purposes, therefore, "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426–27. In this case, Plaintiffs allege that they would be injured by USPS receiving voters' names and addresses. But there is no historical or common-law analogue for the notion that citizens may be injured by USPS, which delivers mail to residences nationwide, having this information. *See id.* at 424–25.

This Court rejected a nearly identical argument in response to Plaintiffs' first preliminary injunction motion where it held that "Plaintiffs have not identified a historical or common-law analogue for the asserted injury their members face—the sharing of non-sensitive personal data (name, citizenship status, and age) between and among different federal agencies." *DSCC v. Trump*, No. 26-cv-01114 (CJN), 2026 WL 1487833, at *7 (D.D.C May 28, 2026). The existence of an historical analogue is even more far-fetched regarding the Postal Service, which possesses the name and address of any citizen which has ever used their mailing services, including mailing ballots in prior elections. It is hard to see how Plaintiffs can complain about names and addresses being shared with USPS when they already must provide that information to vote. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (Courts estop parties from "deliberately changing positions according to the exigencies of the moment." (internal quotation omitted)). Plaintiffs have thus failed to meet their burden of pleading a cognizable injury.

### B. Plaintiffs do not have associational standing to challenge the Rule.

Plaintiffs also claim to have associational standing to bring suit on behalf of their members. DSCC Br. at 12–14; LULAC Br. at 16–18; NAACP Br. at 20–25. They do not. An organization can only establish standing to bring suit on behalf of its members when establishes that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). As part of the first requirement, Plaintiffs must identify specific members that have suffered or imminently will suffer an injury in fact. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497–98 (2009); *All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 99 (D.D.C. 2025). But Plaintiffs point to *zero* specific members who would be likely injured by the Mail Ballot Rule—foreclosing associational standing here. *See Summers*, 555 U.S. at 497–98.

Even in Plaintiffs had identified members, Plaintiffs' associational theory of standing is too speculative. As LULAC states, their members could be disenfranchised "*if* their [States'] election officials are not able to comply with the Rule's requirements or the[ir] members are not accurately included on the Participation Lists for the 2026 election" by their States. LULAC Br. at 16 (emphasis added). Thus, Plaintiffs' disenfranchisement theory rests on a "speculative chain of possibilities" such that it is not certainly impending or fairly traceable to the Rule. *Clapper*, 568 U.S. at 414. Regarding certainly impending, again Plaintiffs "fail to make a clear showing that is more than hypothetical or conjectural that a [State] would fail" to comply. *Am. Encore*, 152 F.4th at 1112. And because any fear of disenfranchisement will not be caused by USPS, but by a voter's State's failure to comply with the Rule, this alleged disenfranchisement injury is "not

traceable" to USPS because of "the reality that [States] are independent [sovereigns] who are not subject to [USPS's] control." *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253–54 (11th Cir. 2020). States, as the regulated entity under the Rule, do have standing to challenge the Rule. *See* Intervener States' Opp'n to Prelim. Inj., *California v. USPS*, No. 1:26-cv-13917 (D. Mass. filed Aug. 29, 2026), Doc. 64 (not contesting Plaintiff States' standing).

Lastly, Plaintiffs' alleged harm to their members are the same as pled in their complaints: voting becoming more difficult, *see* DSCC Br. at 12–14; LULAC Br. at 17; NAACP Br. at 20–21, and injury to privacy rights, *see* DSCC Br. at 14–15. For the reasons explained above, both these alleged harms are far too speculative to confer standing. *See Clapper*, 568 U.S. at 414.

### C. The DSCC Plaintiffs do not have standing to challenge the Mail Ballot Rule under *Bost*.

The DSCC Plaintiffs claim that candidates for office have standing because the Mail Ballot Rule deprives them of the "of the opportunity to compete for election under the Constitution and laws of the United States." DSCC Br. at 17 (citation omitted). DSCC Plaintiffs rely solely on *Bost v. Illinois State Board of Elections*, 607 U.S. 71 (2026), but *Bost* does not provide standing in this case. In *Bost*, the Supreme Court held a candidate had standing to challenge an Illinois law requiring election officials to count mail-in ballots postmarked by election day but received up to two weeks later. *Id.* at 77–79. Standing existed because that rule affected the counting of votes—which directly affected candidates competing for those votes. *Id.* But the Supreme Court addressed "*only* candidates' standing to challenge rules that . . . govern the *counting* of votes in their elections." *Id.* at 82 n.7 (emphasis added). Here, by contrast, the Mail Ballot Rule does not pertain to the counting of votes but instead merely imposes modest conditions for States to provide mail ballots through USPS. *Bost* simply does not create candidate standing to challenge this Rule. *Contra* DSCC Br. at 9. While Plaintiffs claim that this will result in some votes not getting counted

if the States fail to comply with the Rule, this is too speculative to confer standing for the reasons explained above. *See Clapper*, 568 U.S. at 414; *supra* Section I.A.

## II. Plaintiffs are unlikely to succeed on the merits.

### A. The Rule is permitted under Title 39.

Plaintiffs are also unlikely to succeed on the merits because the Rule does not exceed USPS's statutory authority. Plaintiffs claim that Congress has not authorized USPS to regulate election mail. DSCC Br. at 16–22; NAACP Br. at 29–39. This is wrong. While Plaintiffs repeatedly misrepresent the Rule as regulating who may vote, *see, e.g.*, LULAC Br. at 1, it merely imposes modest conditions on the sending of mail, which USPS is broadly authorized to do under its governing statute. Indeed, USPS has a general power to "to adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title." 39 U.S.C. § 401(2). The statute also broadly gives USPS "all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." *Id.* § 401(10). The statute recognizes that USPS—rather than federal courts—is most likely to have the expertise to decide how mail should be processed and delivered. *See, e.g.*, *Rockville Reminder Inc.*, 480 F.2d at 7 (applying deferential standard of review to USPS regulations under § 401(2)).

The Supreme Court has directly addressed the scope of § 401(2), stating that USPS is "broadly empowered" to adopt rules and regulations designed to accomplish an efficient system of collection, sorting, and delivery of mail nationwide. *Council of Greenburgh Civic Ass'ns*, 453 U.S. at 123. This interpretation of § 401(2) forecloses Plaintiffs' argument that the Court must

confine USPS's authority to only those regulations that are strictly or literally indispensable. *See* DSCC Br. at 17; NAACP Br. at 35; LULAC Br. at 24.

The D.C. Circuit has similarly recognized the breadth of this authority. In *Associated Third Class Mail Users v. U.S. Postal Service*, the court held that the Postal Service is authorized under § 401(2) to promulgate regulations to further the objectives of Title 39, and that a fair reading of the rulemaking authority of 39 U.S.C. § 401(2) extends even to provisions of law that are not literally part of Title 39, so long as their purpose is properly connected to that title. 600 F.2d 824, 826 n.5 (D.C. Cir. 1979).

More specifically, USPS's powers also include the ability "to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail," 39 U.S.C. § 404(a)(1), and "to investigate postal offenses and civil matters relating to the Postal Service," § 404(a)(6). By the same token, Title 39 states that "nonmailable matter which reaches the office of delivery, *or which may be seized or detained for violation of law*, shall be disposed of as the Postal Service shall direct." *Id.* § 3001(b) (emphasis added). Both USPS's general and specific powers show that its delegated regulatory authority includes reasonable measures to prevent fraudulent voting through the mail.

The breadth of Title 39 also recognizes the need for USPS to address a wide variety of postal-related issues and promulgate regulations to resolve them. *See, e.g.*, *U.S. Postal Serv. v. Brennan*, 574 F.2d 712, 716 (2d Cir. 1978) ("Broad rule-making authority must be allowed a federal agency such as the postal service whose activities are national in scope and are geared to meet varied conditions and circumstances throughout the country." (citation omitted)). For this reason, there is a long history of USPS imposing conditions on sending various types of mail, even those not specifically enumerated in Title 39. *See, e.g.*, *Cremated Remains Packaging*

*Requirements*, 90 Fed. Reg. 9843 (Feb. 19, 2025) (cremated human and animal remains must be transported through specific types of USPS-provided boxes, and must be trackable via barcode); *Restricting the Mailing of Replica or Inert Explosives*, 75 Fed. Reg. 282 (Jan. 5, 2010) (replica explosives must be mailed in certain ways, including in-person presentation to a retail counter and shipment via Registered Mail). That is precisely what USPS is doing here. This is not a case where USPS has invoked general rulemaking power to circumvent specific statutory requirements, a narrow circumstance where courts have found postal regulations to be inconsistent with Title 39. *See, e.g.*, *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1176 (D.C. Cir. 2003) (affirming judgment against USPS regulation concerning the "type of insurance" offered where statute permits the agency to regulate solely with respect to "coverage provided by [an insurance] policy."); *New York v. Trump*, 490 F. Supp. 3d 225, 241 (D.D.C. 2020) (issuing preliminary injunctions against USPS policies that restricted overtime and eliminated late and extra mail delivery trips without first obtaining statutorily-required PRC review).

The plain text of 39 U.S.C. § 401(2) unambiguously authorizes the Rule. Requiring States to specify *who* is eligible to receive ballots through the federal mails is a "regulation[]" "necessary in the execution of [USPS's] function[]" of ensuring the secure delivery of mail. And it is "necessary" based on "other functions as may be assigned to the Postal Service under any provisions of law outside of this title"—here, ensuring that the federal mails are not used to cast ballots that violate federal law. *See* 18 U.S.C. § 611; 52 U.S.C. § 20511. Given the clarity of the statutory text, Plaintiffs' case should be at an end. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion) ("The inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").

Unable to grapple with the plain text, Plaintiffs ask the Court to give an artificially narrow construction to 39 U.S.C. § 401(2) under the major questions doctrine. *See* DSCC Br. at 21–22; NAACP Br. at 34; LULAC Br. at 25. But Plaintiffs' invocation of the major questions doctrine is only plausible because they frame the Rule with high level of generality using hyperbole and misrepresent the Rule as regulating voter eligibility. *See, e.g.*, NAACP Br. at 4. But USPS merely wants States to provide a list of individuals *they deem* eligible to vote by mail—so that USPS can use security barcodes to assist in tracking in election mail. 91 Fed. Reg. at 54969. The States surely already keep lists of individuals they deem eligible to vote by mail. Requiring States to provide an already-existing list of individuals eligible to vote by mail, and using unique barcodes for each voter, is not an "unheralded power representing a transformative expansion in [USPS's] regulatory authority." *West Virginia v. EPA*, 597 U.S. 697, 724 (2022) (internal quotations and citation omitted). It is a simply a new instantiation of authority long exercised by USPS. *See Council of Greenburgh Civic Ass'ns*, 453 U.S. at 123.

Nor are the markers deemed relevant by the Supreme Court in assessing major questions doctrine cases relevant here. The Supreme Court has previously suggested that a rule implicates a major question if it imposes an "economic impact" of around $50 billion. *See Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764 (2021) (per curiam). Plaintiffs' alleged compliance costs are *de minimis* by comparison. *See* DSCC Br. at 11; LULAC Br. at 10. Nor are there outlandish implications to USPS's regulatory theory. *See West Virginia*, 597 U.S. at 722–23. Whereas the EPA's regulatory theory in *West Virginia* would have given it the power to shut down coal and natural-gas-powered plants around the country, *see id.* at 728–29, USPS's theory is merely that it can impose conditions on the sending of mail—a reality anyone who has ever bought a postage stamp understands. And while mail voting—as a general matter—is controversial, *cf. West*

*Virginia*, 597 U.S. at 732, USPS is *not* claiming that it could simply bar States from sending election mail. USPS's regulation is more akin to EPA trying to limit carbon emissions by mandating the use of new technology for smokestacks—something the Supreme Court agreed would not be a major question even though it related to a nationwide debate about climate change. *See West Virginia*, 597 U.S. at 725.

**B. The Rule is constitutional.**

Despite the clear congressional authorization, Plaintiffs contend that election-related mail must be treated differently because of the Constitution's Elections Clause. *See* DSCC Br. at 22–24; NAACP Br. at 39–40; LULAC Br. at 25. But this is a red herring. The Elections Clause specifically empowers Congress to set rules for federal elections. U.S. Const. art. I, § 4. The Constitution also specifically authorizes Congress to set rules for a federal postal service. U.S. Const. art. I, § 8, cl. 7. As discussed above, Congress delegated broad authority to USPS to place conditions on the sending of mail. Under plain statutory text, that broad authority extends to election mail—just like any other type of mail. This is plainly consistent with Congress's authority under the Elections and Postal Clauses.

Nor does the Rule infringe on State sovereignty in violation of the Elections Clause or Tenth Amendment. It does not determine "which voters are eligible to vote by mail" or intrude on any other powers reserved to the States. LULAC Br. at 22 (emphasis omitted). Again, "States . . . retain complete autonomy to determine the extent to which they utilize the postal system as an aspect of their elections" under the Rule and, assuming they do decide to utilize it, "States maintain complete control over their own voter registration rolls, deciding who within their jurisdiction is eligible to vote by mail." 91 Fed. Reg. at 54969. By its plain terms, the Rule makes clear that States retain sovereignty over determining voter eligibility.

**C. The Rule does not create an unauthorized category of nonmailable matter.**

Plaintiffs claim that imposing modest conditions for sending federal mail ballots somehow makes them "nonmailable." *See* DSCC Br. at 19; NAACP Br. at 32–33; LULAC Br. at 26–28. But the Rule does not create a new category of nonmailable matter, either on its face or through any reasonable interpretation. USPS has represented in a parallel proceeding that it "hopes to mail as many lawful ballots as the States wish to send, no more and no less." Doc. 17 at 10, *California v. USPS*, No. 1:26-cv-13917-IT. By Plaintiffs' logic, for example, USPS's decision to require cremated human and animal remains to be transported through specific types of USPS-provided boxes and be trackable via barcode made the remains nonmailable. *See generally* 90 Fed. Reg. 9843. That was not the case then and it is not the case now.

**D. The Rule does not require USPS to provide non-postal services.**

The Rule's conditions on transmission of election mail are neither non-postal nor services. Plaintiffs say otherwise. *See* DSCC Br. at 17–18; NAACP Br. at 30–31; LULAC Br. at 34–35. The Postal Regulatory Commission, however, has defined "service" to mean "any ongoing commercial activity offered to the public for the purpose of financial gain." *U.S. Postal Serv. v. Postal Regul. Comm'n*, 599 F.3d 705, 708 (D.C. Cir. 2010). But the only thing the public receives by USPS requiring unique barcodes for election envelopes is added security for their ballots. There is nothing commercial about that. And while not a service, the Ballot Mail Rule is postal in nature. Election mail, like any other type of mail sent through USPS, is postal. If rules governing requirements for a specific type of mail to be sent is not so, it is hard to imagine what would qualify as being postal.

**E. The Rule does not discriminate among users of the mail.**

Plaintiffs argue that the Rule is unlawfully discriminatory because it "affords less favorable service to election officials tendering covered federal ballots than to anyone else presenting ordinary mail." NAACP Br. at 32; *see also* LULAC Br. at 35 (claiming discrimination because "[t]he Rule offers them markedly different services depending on [election officials'] capacity to satisfy the new preconditions on acceptance and delivery of ballot mail"). By that logic, any conditions on any type of mail would also be unlawful. For example, stamp requirements would too be unreasonably discriminatory, even though no one challenges that different services require different postage, because some mail of identical weight will not be accepted and delivered, while others are, if they do not have enough postage. But neither set of requirements are discriminatory under 39 U.S.C. § 403(c) for two reasons. First, the Rule applies equally across all States and authorized ballot senders. And second, because § 403(c) prohibits "undue or unreasonable discrimination" while "providing services and in establishing classifications, rates, and fees." As discussed above, the Rule is not a service, and it does not establish any classifications, rates, or fees.

**F. The Rule did not need to be reviewed by the Postal Regulatory Commission.**

The Mail Ballot Rule is not required to be reviewed by the Postal Regulatory Commission. Section 3661 "appl[ies] to only a specified class of decisions." *Buchanan v. U.S. Postal Serv.*, 508 F.2d 259, 262 (5th Cir. 1975). To determine if the USPS's decision is required to be reviewed by the PRC under § 3661, courts evaluate: (1) if there is "some meaningful impact on service"; (2) the change must "qualitative[ly]" alter "'the nature of postal services'"; and (3) the "change must affect service 'on a nationwide or substantially nationwide basis.'" *Id.* at 262–63 (quoting 39 U.S.C. § 3661(b)). Intervener States agree with the LULAC Plaintiffs that the third factor is met

as the Rule operates nationwide. *See* 91 Fed. Reg. at 54990–92. However, the first two *Buchanan* factors are not met.

The first factor requires a "meaningful impact on service." *Buchanan*, 508 F.2d at 262. Although Plaintiffs characterize the transmission of ballots as a "service," they offer no law to support this assertion. *See* LULAC Br. at 32–33. But "election mail" is not a service under § 3661(b). Rather, "services" are "operational changes" to the postal system. *See, e.g.*, *New York v. Trump*, 181 F.4th 132, 136 (D.C. Cir. 2026) (describing "operational changes" as "a reduction in the number of high-speed mail sorting machines, a decrease in employee overtime, the elimination of late or extra mail delivery trips, and a change in the sequence by which some mail carriers sort and deliver the mail"). *Pennsylvania v. DeJoy*, 490 F. Supp. 3d 833 (E.D. Pa. 2020), touched on election mail. However, the "question in th[at] case [wa]s whether the Postal Service [had] alter[ed] its treatment of Election Mail" from First-Class mail to Marketing Mail. *Id.* at 853. Here, the Rule is only imposing data and design requirements; it does not alter the class of service for election mail, so it does not satisfy the first *Buchanan* factor. *See id.* at 853–54

Nor is the second factor met. LULAC Plaintiffs suggest that the Rule preventing the unauthorized transmission of ballots changes the availability of "postal services." LULAC Br. at 33. They are wrong. First, their argument for this factor makes the same error as they did for the first, mischaracterizing what constitutes "postal services" under § 3661(b). Second, this factor "involves a qualitative examination of the manner in which postal services available to the user will be altered." *Buchanan*, 508 F.2d at 263. The Rule altering *how* States can use the USPS to transmit mail-in and absentee ballots does not alter the availability of postal services; it merely alters *what* qualifies for transmission. *See DeJoy*, F. Supp. 3d at 885–86 (citing evidence of "delays" to show that "postal customers ha[d] experienced an alteration in the availability of postal

services"). So even if the Rule alters a postal service (it does not), Plaintiffs still have not shown that the Rule will have a qualitative impact on services. All they can offer is speculation, insufficient to even confer standing, that the Rule will "threaten[] systemic delays in the delivery of ballots." LULAC Br. at 33. This conclusory hypothetical does not satisfy the second factor. As the Rule does not satisfy the first two *Buchanan* factors, the Rule is not subject to review by the PRC.

If Plaintiffs are correct that the Rule required pre-promulgation review, by the Postal Regulatory Commission, then § 3661 is unconstitutional to the extent it prevents USPS from implementing the Ballot Mail Rule consistent with the President's wishes. Article II of the Constitution generally requires that the President have supervisory control over the executive branch. *Trump v. Slaughter*, 146 S. Ct. 2283, 2294–95 (2026). The Postal Regulatory Commission is set by statute as an independent agency. 39 U.S.C. § 501. Requiring a separate entity to review a presidential directive before it can be carried out unduly interferes with the President's Article II authority. *See Myers v. United States*, 272 U.S. 52, 135 (1926). And *if* the Postal Regulatory Commission indeed *must* review postal regulations like the Ballot Mail Rule, 39 U.S.C. § 3661(b) is unconstitutional to the extent it prevents the President from removing the Commission's members. *See Slaughter*, 146 S. Ct. at 2304–05.

**G. The Rule does not violate the Privacy Act or the First Amendment.**

DSCC Plaintiffs argue that the Rule violates the Privacy Act because it "requires States to submit 'Mail-In and Absentee Participation Lists' of voters authorized to vote by mail to USPS," which Plaintiffs maintain creates a record of how individuals exercise their First Amendment rights. DSCC Br. at 24–26. Their argument is both factually and legally wrong. Factually, the Rule does "not in any way" create "a federal voting database." 91 Fed. Reg. at 54977. "[I]nstead,

it establishes a mechanism whereby states can provide data, which is fully within their possession and control, regarding Federal Ballot mailings." *Id.*

But even ignoring Plaintiffs' factual error, they are nonetheless legally wrong. The Privacy Act allows the USPS to maintain records "necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). The Rule was mandated by § 3 of Executive Order 14399. As explained above, the USPS validly promulgated this Rule so there can be no Privacy Act violation. *See* 5 U.S.C. § 552a(e)(1).

Nor does the Rule violate the Privacy Act's restrictions on data related to how individuals exercise their First Amendment rights. *See* DSCC Br. at 24–26 (citing 5 U.S.C. § 552a(e)(7)). Even though voting registration is protected by the First Amendment, *see Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999), "there is nothing inherently expressive about" collecting voter registration documents, *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 392 (5th Cir. 2013). Nor is "the conduct of collecting ballots" a form of expressive conduct under the First Amendment. *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018). So where "the fundamental right to vote does not extend to a claimed right to case an absentee ballot by mail," *Tully v. Okeson*, 977 F.3d 608, 611 (7th Cir. 2020) (citing *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807 (1969)), it certainly must be true that whether a voter casts his ballot by mail or in-person does not implicate the First Amendment, *see Knox*, 907 F.3d at 1181; *Voting for Am.*, 732 F.3d at 392. As mailing a ballot is not expressive conduct, there is no record on of how an individual expresses her First Amendment rights. *See* 5 U.S.C. § 552a(e)(7).

And even if mailing a ballot were First Amendment expressive conduct, no record of the content of individuals' protected First Amendment activity is recorded under the Rule. *See* 91 Fed.

Reg. at 54970. Rather, the USPS will only have access to Mail-In and Absentee Participation Lists provided by the States, *see id.*, and an agency's retention of the method of exercising First Amendment rights without the content does "not run afoul of the proscription of Subsection (e)(7)." *Reuber v. United States*, 829 F.2d 133, 143 (D.C. Cir. 1987). Therefore, the Rule does not violate the Privacy Act's prohibition on maintaining records of First Amendment expression.

## III. The other preliminary injunction factors favor Intervener States.

### A. Intervener States will be irreparably injured absent a stay.

The States "indisputably ha[ve] a compelling interest in preserving the integrity of [their] election process[es]." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) (citation omitted). This election integrity interest extends to "the orderly administration of elections and in vigilantly reducing opportunities for voting fraud." *Tex. LULAC v. Hughs*, 978 F.3d 136, 146 (5th Cir. 2020) (citing *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 195–96 (2008)). And this interest is "acute when it comes to mail-in ballots." *Id.* at 147. This Rule directly addresses this "acute" interest by improving mail-in and absentee voting security in Intervener States. Ex. A, Hoskins Decl. ¶ 6. If this Rule is enjoined, Intervener States who wish to benefit from the Rule's enhanced ballot transmission security provisions, like Intervener States, Ex. A, Hoskins Decl. ¶ 9, will be directly and irreparably harmed through the loss of election integrity measures they lack the ability to implement on their own.

### B. The public interest is served by a lawful rule.

The third and fourth stay factors largely turn on the merits of the Rule. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (balance of the equities and public interest "merge" when seeking relief against the government). As explained above, the Rule is lawful. It is "always" in the public interest to enforce the law, *see id.*, and a party cannot be harmed through the enforcement of a

valid law, *see Tenn. Elec. Power Co. v. Tenn. Valley Authority*, 306 U.S. 118, 140 (1939). Therefore, Intervener States satisfy the remaining stay factors, and this Court should deny the motions for preliminary injunction.

**IV. <u>At a minimum, the Court should limit the scope of any preliminary injunction.</u>**

If the Court is inclined to grant a preliminary injunction, it should not grant nationwide relief. Courts cannot give remedies "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). Applying that rule here, the Court should limit any injunction to make clear that—for the 2026 General Election—States at least have the *option* to fully comply with the Rule. Some States—like Missouri—do not think complying with the Rule is especially burdensome and want to see increased security in their elections' mail voting. *See* Ex. A, Hoskins Decl. ¶¶ 4–9 (stating that Missouri could implement the Rule's reforms and would like the option to use the Rule for the upcoming 2026 General Election). There is no good reason to grant a remedy that prevents such *voluntary* compliance with the Rule. *See CASA*, 606 U.S. at 861. And indeed, the Court (and the whole country) might benefit from having real-world evidence of how the Rule operates in practice.

**<u>CONCLUSION</u>**

The Court should deny Plaintiffs' motions for a preliminary injunction.

Date: September 4, 2026

Respectfully submitted,

**STEVE MARSHALL**
ALABAMA ATTORNEY GENERAL

*/s/ A. Barrett Bowdre*
A. Barrett Bowdre*
*Solicitor General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 353-8892
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III, DC Bar No. 90018764
*Solicitor General*
J. Michael Patton*
*Deputy Solicitor General*
Benjamin S. Gilberg*
*Deputy Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
Michael.Patton@ago.mo.gov
Benjamin.Gilberg@ago.mo.gov

**JAMES UTHMEIER**
FLORIDA ATTORNEY GENERAL

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst*
*Solicitor General*
Jason J. Muehlhoff**
*Chief Deputy Solicitor General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com

**THEODORE E. ROKITA**
INDIANA ATTORNEY GENERAL

*/s/ James A. Barta*
James. A Barta, DC Bar No. 1032613
*Solicitor General*
Office of the Indiana Attorney General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/ James R. Rodriguez*
James R. Rodriguez*
*Assistant Attorney General*
Kansas Office of the Attorney General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov

**ELIZABETH B. MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
*Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

*/s/ Christian B. Corrigan*
Christian B. Corrigan*
*Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov

**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett*
*Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*
*Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ALAN WILSON**
SOUTH CAROLINA ATTORNEY GENERAL

*/s/ Joseph D. Spate*
Joseph D. Spate*
*Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ *Grant Flynn*
Grant Flynn*
*Assistant Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889,
Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: grant.flynn@state.sd.us

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

s/ *David Bryant*
David Bryant**
*Senior Special Counsel*
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

* *Government attorney admitted under Local Rule 83.2(e)*
** *Pro hac vice forthcoming*

**CERTIFICATE OF SERVICE**

I certify that on September 4, 2026, the above was filed electronically through the Court's electronic filing system to be served electronically on counsel for the parties.

/s/ *Louis J. Capozzi III*