**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-1114 (CJN) |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-1132 (CJN) |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-1151 (CJN) |

**LULAC PLAINTIFFS'[1] REPLY IN SUPPORT OF THEIR SECOND MOTION FOR PRELIMINARY INJUNCTION**

[1] Plaintiffs League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association, the City of Madison, Wisconsin, Travis County, Texas and Travis County Clerk, in her official capacity.

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................2

I. Plaintiffs Are Likely to Succeed on the Merits. ..........................................................2

A. The Rule is unconstitutional. ...............................................................................2

1. The Rule regulates elections. ...................................................................2

2. No Executive Branch actor has inherent constitutional authority to regulate elections. .........................................................................5

3. The Rule unconstitutionally usurps Congress's and the States' elections authority. ..................................................................................5

B. The Rule violates and is not authorized by statute. .........................................7

1. Congress has passed no law authorizing the Rule. ....................................8

2. The Rule violates multiple provisions of the Postal Reorganization Act. .10

a. The Rule creates an unauthorized category of nonmailable matter. ....10

b. The Rule was issued in violation of USPS's obligation to seek Postal Regulatory Commission review. .........................................................13

c. The Rule violates the PRA's universal service requirement and its prohibitions on provision of non-postal services and undue discrimination. .........................................................................16

II. All Plaintiffs Have Standing and Face Irreparable Harm. ..........................................16

III. The Balance of Equities and Public Interest Favors Relief. .......................................23

IV. Plaintiffs' Requested Relief Is Not Overbroad. .........................................................24

CONCLUSION ...........................................................................................................25

**TABLE OF AUTHORITIES**

*Ahuruonye v. United States Department of Interior*, 239 F. Supp. 3d 136 (D.D.C. 2017)............20

*American Association of Nurse Practitioners v. McMahon*, CIV-A No. 26-1780 (BAH), 2026 WL 1826176 (D.D.C. June 24, 2026)..............................................................21

*American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902)...............................1, 8

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013)............................................2

*Asseo v. Pan American Grain Co., Inc.*, 805 F.2d 23 (1st Cir. 1986)...........................................5

*Bowie v. Williams*, 351 F. Supp. 628 (E.D. Pa. 1972)...................................................................8

*Buchanan v. United States Postal Service*, 508 F.2d 259 (5th Cir. 1975).............................13, 15

*Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218 (D.C. Cir. 2026).............................21

*Colorado v. DeJoy*, No. 20-cv-2768, 2020 WL 5513567 (D. Colo. Sep. 14, 2020).......................5

*Columbia Broadcasting System v. United States*, 316 U.S. 407 (1942).......................................11

*District of Columbia v. United States Department of Agriculture*, 444 F. Supp. 3d 1 (D.D.C. 2020)..........................................................................................................20

*DSCC v. Trump*, No. 26-5193, 2026 WL 2168617 (D.C. Cir. July 28, 2026)........................10, 25

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016)...................................................13

*Esteras v. United States*, 606 U.S. 185 (2025)................................................................. 9, 11-12

*Federal Trade Commission v. Sysco Corporation*, 308 F.R.D. 19 (D.D.C. 2015)........................20

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016).............................................................................23

*Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024).......22

*Foster v. Love*, 522 U.S. 67 (1997).................................................................................................5

*Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957).........................................9

*Hannegan v. Esquire, Inc.*, 327 U.S. 146 (1946)......................................................................9, 10

*Hines Immigration Law, PLLC v. Executive Office for Immigration Review*, No. 1:26-CV-01018 (CJN), 2026 WL 969020 (D.D.C. Apr. 10, 2026)...............................................................22

*Humane Society of United States v. United State Postal Service*, 609 F. Supp. 2d 85 (D.D.C. 2009)..........................................................................................................10

*League of United Latin American Citizens v. Executive Office of the President*, 780 F. Supp. 3d 135 (D.D.C. 2025) ("*LULAC I*") ....................5

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ....................17, 23

*Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026) ....................6, 7

*Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) ....................16

*Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996)....................17

*National Association for Advancement of Colored People v. United States Postal Service*, 496 F. Supp. 3d 1 (D.D.C. 2020) ....................15

*New York v. Trump*, 181 F.4th 132 (D.C. Cir. 2026)....................15

*New York v. Trump*, 490 F. Supp. 3d 225 (D.D.C. 2020)....................15

*Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012) ....................23, 24

*Pennsylvania v. DeJoy*, 490 F. Supp. 3d 833 (E.D. Pa. 2020)....................14

*Sierra Club v. Costle*, 657 F.2d 298 (D.C. Cir. 1981) ....................10

*TikTok Inc. v. Trump*, 507 F. Supp. 3d 92 (D.D.C. 2020) ....................23

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025)....................24

*Watson v. Republican National Committee*, 146 S. Ct. 2165 (2026)....................2

*West Virgina v. Environmental Protection Agency*, 597 U.S. 697 (2022)....................6

**Constitutional Provisions**

U.S. Const. art. I, § 4, cl. 1....................5

**Statutes**

5 U.S.C. § 551(5) ....................10

5 U.S.C. § 553(d) ....................13

5 U.S.C. § 551(12) ....................10

18 U.S.C. § 1715....................11

18 U.S.C. § 1716....................12

18 U.S.C. § 1716(b) ....................11

18 U.S.C. § 1716(g) ....................11

39 U.S.C. § 102(5) ....................16

39 U.S.C. § 201 ....................5

39 U.S.C. § 401(2) ....................8

39 U.S.C. § 403(a) ....................8

39 U.S.C. § 403(b) ....................8

39 U.S.C. § 403(c) ....................16

39 U.S.C. § 404(a)(1) ....................8

39 U.S.C. § 404(a)(6) ....................8

39 U.S.C. §§ 3001-18 ....................8, 9, 11

39 U.S.C. § 3001(a) ....................9, 11

39 U.S.C. § 3001(c)(1) ....................13

39 U.S.C. § 3001(d) ....................12

39 U.S.C. § 3001(g) ....................11

39 U.S.C. § 3001(h)-(k) ....................12

39 U.S.C. § 3001(m) ....................10, 25

39 U.S.C. § 3001(n)(1) ....................11

39 U.S.C. § 3002(a) ....................12

39 U.S.C. § 3003(a) ....................9

39 U.S.C. § 3005 ....................10

39 U.S.C. § 3007 ....................10

39 U.S.C. § 3010(b) ....................11, 12

39 U.S.C. § 3012(c) ....................10

39 U.S.C. § 3014(c) ....................11

39 U.S.C. § 3406 ....................10

39 U.S.C. § 3629 .......... 10

39 U.S.C. § 3661(b) .......... 13

39 U.S.C. § 3662(c) .......... 15

52 U.S.C. § 10502 .......... 6

52 U.S.C. § 20506-07 .......... 6

52 U.S.C. § 21081 .......... 6

52 U.S.C. § 21081(d) .......... 6

52 U.S.C. § 21083 .......... 6

52 U.S.C. § 21083(d)(1)(B) .......... 6

52 U.S.C. § 21084 .......... 6

**Codes**

39 C.F.R. § 233.1 .......... 24

39 C.F.R. § 3010.150-.170 .......... 15

39 C.F.R. § 3022.1-.30 .......... 15

39 C.F.R. § 3022.50 .......... 15

**Domestic Mail Manual**

DMM § 705.24.3.1-.3 .......... 3

DMM § 705.24.4.1-.2 .......... 3

DMM § 705.24.4.2 .......... 3, 12

DMM § 705.24.5.1-.3 .......... 3

DMM § 705.24.5.3 .......... 3

DMM § 705.24.5.3(a) .......... 11, 12

**Other Authorities**

Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026) (to be codified at 39 C.F.R. pt. 111) (“Rule” or “Final Rule”) .......... 3, 9, 10, 19

Complaint of LULAC *et al.* re Proposed Rule for Ballot Mail, Postal Regulatory Commission, Dkt. C2026-27, https://prc.arkcase.com/portal/dockets/11558 (last visited Sep. 6, 2026)......15

Cremated Remains Packaging Requirements, 90 Fed. Reg. 9843 (Feb. 19, 2025).......................12

Declaration of Don Millis, *California v. USPS*, No. 1:26-cv-13917-IT (D. Mass. Aug. 31, 2026), ECF No. 100-1 ..........................................................................................................6

Declaration of Steven W. Monteith, *League of Women Voters of Massachusetts v. Trump*, No. 1:26-cv-11549-IT (D. Mass. Sep. 3, 2026), ECF No. 280-1 ...........................................20

Declarations in Support of Motion for Temporary Restraining Order, *California v. USPS*, No. 1:26-cv-13917-IT (D. Mass. Aug. 26, 2026), ECF Nos. 4-1–4-26....................................... 4-5

National Voter Registration Act, Pub. L. No. 103-21, 107 Stat. 77 (1993)....................................6

Restricting the Mailing of Replica or Inert Explosive Devices, 75 Fed. Reg. 282 (Jan. 5, 2010)..........................................................................................................................12

United States Postal Service, Postal Explorer, Publication 52, https://perma.cc/2BWE-2FE7 (last visited Sep. 7, 2026)..........................................................................................12

## INTRODUCTION

The Postal Service cannot "exclude letters" from the mail absent "some law of Congress" authorizing it to do so. *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 109 (1902). But at the eleventh hour before the November 2026 elections, USPS, through the challenged Final Rule, has granted itself authority to serve as a nationwide gatekeeper for all mail voting. The Final Rule imposes new and burdensome requirements that Congress has never authorized, that violate other provisions of federal law, and that upend the mail voting regimes in place in every State. The Final Rule blocks States from sending ballots to their voters unless States and election jurisdictions use a particular envelope design and provide USPS—*through a web portal that does not yet exist*—an advance accounting of all mail voters with detailed information that exactly matches each ballot envelope. This is all unprecedented. According to the unrebutted testimony of LULAC Plaintiffs' election administration expert Tammy Patrick, USPS has *never before* rejected ballots based on envelope design, refused entire ballot mailings because of a defect with a single mailpiece, subjected ballots to requirements inapplicable to other mail, or required ballot recipients to appear on a list—because Congress has authorized none of this. Nor does USPS have inherent constitutional authority to set mandatory election rules that displace State law. By overriding States' authority to decide how and when their eligible voters may vote by mail, the Final Rule violates the Elections Clause and the separation of powers. The Final Rule further violates multiple substantive and procedural requirements that Congress has enacted. Moreover, the Rule cannot be implemented for the November 2026 election without causing delay, chaos, and mass disfranchisement, both for the election jurisdictions who are plaintiffs here, as well as for the organizational plaintiffs and their members who rely on mail voting. LULAC Plaintiffs face irreparable harm, and the balance of equities is sharply in their favor. Plaintiffs respectfully ask

that the Court grant their motion for preliminary injunctive and APA stay relief as to the 2026 election.

## ARGUMENT

### I. Plaintiffs Are Likely to Succeed on the Merits.

#### A. The Rule is unconstitutional.

The Constitution assigns primary responsibility for regulating elections to the States, subject only to preemption by Congress. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013); *Watson v. Republican Nat'l Comm.*, 146 S. Ct. 2165, 2170 (2026). Neither the Constitution nor any congressional enactment assigns any responsibility to USPS to regulate elections by mandatory displacement of State law. And, despite Defendants' protestations that the Rule represents merely a "modest exercise" of USPS's authority to regulate the mail, this is not so. Through the Rule, USPS claims the power to determine whether voters receive their mail ballots at all, and indeed whether entire *States* may conduct *any* voting by mail. This turns election administration in the United States on its head. The Rule therefore can only be constitutional if it falls within USPS's inherent constitutional authority or has been specifically authorized by Congress. Neither is true, and the Rule is therefore unconstitutional.

##### 1. The Rule regulates elections.

As an initial matter, the Rule regulates elections. Defendants cite repeatedly to the Rule Preface's claim to "leave[] the administration of elections firmly in the hands of the [S]tates" because "[e]ligibility for mail-in and absentee voting will continue to be governed by state law," and State and local officials will "determine whether completed ballots are eligible to be counted." Defs.' Opp'n to Pls.' Mots. for Prelim. Inj., ECF No. 184 at 19 ("Opp'n"). The Rule's title, the explanation for its purpose, and its operative language all disprove this claim, however. The title of the Rule is "Ballot Mail for Federal Elections." The opening paragraph of the Preface explains

that, in USPS and the President's view, the federal government must "prevent[] violations of [f]ederal criminal law and maintain[] public confidence in election outcomes." Ballot Mail for Federal Elections, 91 Fed. Reg. 54966, 54966 (Aug. 26, 2026) (to be codified at 39 C.F.R. pt. 111) ("Rule" or "Final Rule"). It further explains USPS's belief in "the need for additional measures concerning the use of the mail in order to facilitate enforcement of federal law, reduce the risk of fraud, and help protect the integrity of federal elections." *Id.* The Preface repeatedly emphasizes that a primary purpose of the Rule is to "promote the faithful execution of federal law"—namely, election law—and that its "intended benefits" are "election integrity and voter access." *Id.* at 54985-86.

Moreover, the Rule alters the administration of elections. As detailed in LULAC Plaintiffs' opening brief, ECF No. 171-1 at 3-6, the Rule creates a new federal Portal to log, track, and gatekeep voters' receipt of mail ballots. DMM §§ 24.4.1-.2, 24.5.1-.3. It requires jurisdictions to redesign their mail ballot envelopes—the design of which is often set by State law—and submit them for USPS review and approval as a condition of mailing any ballots at all. DMM § 24.3.1-.3. It requires election administrators to upload voter data to the Portal to facilitate an unprecedented pre-mailing verification step, DMM § 24.4.2, that is unique as to ballot mail among all mailpieces, *see* Decl. of Tammy Patrick, ECF No. 171-3 ¶ 118 ("Patrick Decl."). And the penalty for noncompliance with any one of the burdensome new steps is that USPS will block delivery of mail ballots. DMM § 24.5.3. Depending on the circumstances of noncompliance, USPS will refuse to mail an entire batch of ballots (which may include tens or hundreds of thousands of ballots), all ballots for an entire jurisdiction, or even all ballots for an entire State. Defendants' argument that the Rule leaves it to the States to determine voter eligibility to receive a ballot cannot be squared with the actual requirements of the Rule.

The Rule gives USPS the power to determine which voters receive their ballots and which jurisdictions are permitted to conduct any voting by mail. The record here contains evidence that Election Official Plaintiffs, the City of Madison and Travis County, cannot comply with the Rule not only due to budgetary, logistical, and resource constraints, but also because key elements of compliance depend on state law and state-level election administrators over whom Election Official Plaintiffs have no control. Decl. of Lydia McComas, ECF No. 171-4 ¶¶ 20-21, 31 ("McComas Decl."); Decl. of Dyana Limon-Mercado, ECF No. 171-5 ¶¶ 19-20 ("Limon-Mercado Decl."). Moreover, Plaintiffs' expert has explained that these circumstances are not unique to Madison and Travis County, but that indeed many, if not most, jurisdictions are unable to comply with the Rule. Patrick Decl. ¶¶ 18-20.[2] The result will be delayed ballots and the inevitable

[2] Ms. Patrick's testimony that election officials cannot possibly implement the Rule before November 2026 is consistent with the granular detail contained in the declarations submitted by the Plaintiff States in litigation challenging the Rule in the District of Massachusetts. *See* Decls. in Supp. of Mot. for TRO, *California v. USPS*, No. 1:26-cv-13917-IT (D. Mass. Aug. 26, 2026), ECF Nos. 4-1–4-26. The Plaintiff States' declarations uniformly show that timely compliance is impossible or functionally impossible because the States and the local jurisdictions within them cannot redesign or reprint ballot materials, implement new barcodes for outbound and return envelopes, reconcile USPS and State voter data, enroll millions of voters on the list within the available time, hire and train sufficient staff, segregate federal and nonfederal ballots, or obtain the necessary funding from the state legislatures to implement the Rule. Decl. of Joanna Southhard, CA, ECF No. 4-1 ¶¶ 39, 40, 41; Decl. of Michelle Tassinari, MA, ECF No. 4-2 ¶¶ 46, 65, 71; Decl. of Mark Wlaschin, NV, ECF No. 4-3 ¶¶ 23, 55; Decl. of Stuart Holmes, WA, ECF No. 4-4 ¶¶ 12, 62, 65; Decl. of Adrian Fontes, AZ, ECF No. 4-5 ¶¶ 38, 53; Decl. of Hilary Rudy, CO, ECF No. 4-6 ¶¶ 13, 17, 28, 61; Decl. of Gabe Rosenberg, CT, ECF No. 4-7 ¶¶ 20, 46, 61, 64; Decl. of Anthony Albence, DE, ECF No. 4-8 ¶¶ 16, 28, 33, 34(c), 34(d), 50, 51, 54; Decl. of Alice Miller, DC, ECF No. 4-9 ¶¶ 19, 24; Decl. of Scott Nago, HI, ECF No. 4-10 ¶¶ 43-45, 59; Decl. of Julie Flynn, ME, ECF No. 4-11 ¶¶ 36, 52, 53, 56; Decl. of Melissia Dorsey, MD, ECF No. 4-12 ¶¶ 22, 23, 40, 48, 49, 69; Decl. of Jonathan Brater, MI, ECF No. 4-13 ¶¶ 44, 60, 66; Decl. of Paul Linnell, MN, ECF No. 4-14 ¶¶ 37, 38, 55, 58; Decl. of Donna Barber, NJ, ECF No. 4-15 ¶¶ 29, 36, 51; Decl. of Mandy Vigil, NM, ECF No. 4-16 ¶¶ 36, 52; Decl. of Kristen Zebrowski Stavisky, NY, ECF No. 4-17 ¶¶ 19, 22, 38, 51, 59, 75; Decl. of Marc Brunton, NC, ECF No. 4-18 ¶ 32, Ex. A at 7; Decl. of Dena Dawson, OR, ECF No. 4-19 ¶¶ 24, 37, 38, 56, 59; Decl. of Jonathan Marks, PA, ECF No. 4-20 ¶¶ 36, 37, 55; Decl. of Rob Rock, RI, ECF No. 4-21 ¶¶ 18, 40, 41, 44, 45, 62; Decl. of Sarah Copeland Hanzas, VT, ECF No. 4-22 ¶ 53, Ex. A ¶ 2; Decl. of Steven Koski, VA, ECF No. 4-23 ¶¶ 29, 53; Decl. of Edmund Michalowski, Cook County, IL, ECF No. 4-24 ¶¶ 42, 54;

disenfranchisement of many eligible voters—citizens who are eligible to vote by mail under their States' laws, including those who have no other viable way to vote. This is no "modest exercise" of the authority to regulate the mail. This is USPS's assertion of the power to regulate who is allowed to vote by mail in federal elections.

**2. No Executive Branch actor has inherent constitutional authority to regulate elections.**

The Rule exceeds the scope of any inherent authority USPS possesses. The Postal Service was created by Congress as "an independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201. The Constitution assigns no role to either the President or USPS in election administration. *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 194 (D.D.C. 2025) ("*LULAC I*"); *see also Colorado v. DeJoy*, No. 20-cv-2768, 2020 WL 5513567, at *2 (D. Colo. Sep. 14, 2020). No part of the Executive Branch, including USPS, is directly granted constitutional authority to regulate elections. USPS has no freestanding authority to supplant States' choices over when voters may vote by mail.

**3. The Rule unconstitutionally usurps Congress's and the States' elections authority.**

The Rule unconstitutionally trespasses on Congress's and States' authority to regulate elections. The Elections Clause provides that States shall prescribe the "Times, Places and Manner of holding" congressional elections. U.S. Const. art. I, § 4, cl. 1. The Elections Clause further gives States "responsibility for the mechanics of congressional elections, but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (internal

---

Decl. of Julie Wise, King County, WA, ECF No. 4-25 ¶¶ 40, 45, 46, 51, 71, 73; Decl. of Elena Hilby, City of Sun Prairie, WI, ECF No. 4-26 ¶ 22. This Court can properly take judicial notice of the facts of those declarations. *See Asseo v. Pan Am. Grain Co., Inc.*, 805 F.2d 23, 26 (1st Cir. 1986) ("Affidavits and other hearsay materials are often received in preliminary injunction proceedings.").

citation omitted). The Constitution thus gives States and Congress the power to decide when and how elections take place. The Constitution nowhere empowers any federal agency to act without due authority. Here, the Rule contradicts and supplants state laws that regulate how, when, and whether State citizens may vote by mail—quintessential "Time[], Place[], and Manner" regulations. In the federal election statutes that Congress has passed, including the Help America Vote Act ("HAVA"), the National Voter Registration Act ("NVRA"), and the Voting Rights Act ("VRA"), Congress specifically delineated where federal law alters and where federal law preserves State authority concerning the election practices addressed by the Final Rule—voter lists, delivery of "any . . . paper ballots" to voters, and absentee balloting. 52 U.S.C. §§ 21081, 21083, 20506-07, 10502. Except where expressly altered by those statutes, Congress specifically preserved State authority concerning these election practices and "election technology and administration requirements" for the States only, *not* USPS. 52 U.S.C. § 21084. In this context where election administration remains primarily the responsibility of States, USPS must "identify clear congressional authorization." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 255 (2026). The Rule's vast political significance—as every State in the country allows some degree of voting by mail—triggers the major questions doctrine regardless of economic impact. *See West Virgina v. Env't Prot. Agency*, 597 U.S. 697, 743 (2022) (Gorsuch, J., concurring). Indeed, the "political consequences" of USPS's assertion of power through the Rule are "astonishing." *Learning Res.*, 607 U.S. at 246.[3]

[3] It is further notable that when Congress has acted to displace State law pursuant to its Election Clause powers, it has not done so with the immediate, reckless effect as USPS attempts here. The NVRA was enacted on May 20, 1993, but was effective January 1, 1995. Pub. L. No. 103-21, 107 Stat. 77, 89 (1993). HAVA was enacted October 29, 2002, but its voter list and voting system provisions were effective January 1, 2006. 52 U.S.C. §§ 21081(d), 21083(d)(1)(B). It is not credible to assert that Congress has silently authorized immediate displacement of State mail balloting laws at the discretion of USPS. *See Learning Res.*, 607 U.S. at 231.

As just one example, the entire state of Wisconsin is at risk of losing its ability to have *any* absentee voting by mail for the November 2026 election. The City of Madison has explained in depth all the reasons it would be unable to comply with the Rule. *See generally* McComas Decl.; Ex. 1, Decl. of Kaitlyn Bernarde ("Bernarde Decl."). And a declaration from the Republican-appointed Chair of the Wisconsin Elections Commission Don Millis, filed in *California v. USPS*, confirms that the entire State of Wisconsin is unable to comply with the Rule. Decl. of Don Millis, *California v. USPS*, No. 1:26-cv-13917-IT (D. Mass. Aug. 31, 2026), ECF No. 100-1 ("Millis Decl."). Among other things, Chair Millis states that: (1) the November 2026 election is already underway in Wisconsin and ballots began to be mailed out on September 1, 2026; (2) it would be "virtually impossible for Wisconsin to comply with the Rule"; (3) Wisconsin Elections Commission ("WEC") lacks resources to hire administrative support to assist municipal clerks in enrolling voters in the Portal; (4) ballot envelopes are already printed, and there is neither time nor money to reprint them; and (5) WEC does not have the capability to generate unique IMbs for return ballot mail, and developing that capability would be a "complex task" that requires "[n]ew code" that "would have to be written, extensively tested, and deployed." Millis Decl. ¶¶ 13-14, 21, 27, 29, 31. Wisconsin is far from the only state that will be unable to comply. *See supra* n.2. It is difficult to imagine weightier "political consequences" than denying States the ability to run vote-by-mail programs that are consistent with and required by their own laws. Such a "sweeping delegation[] . . . of core congressional power[]" cannot be found in Congressional silence. *See Learning Res.*, 607 U.S. at 246, 248.

### B. The Rule violates and is not authorized by statute.

Congress never authorized USPS to exercise this new mail-ballot gatekeeping role that it has assigned to itself in the Rule. Contrary to Defendants' arguments (Opp'n at 13-16; Intervenor States' Opp'n to Pls.' Mots. for Prelim. Inj., ECF No. 183 at 13-17 ("Int. Opp'n")), Sections 401

to 404 of Title 39 do not provide USPS with the authority that it has claimed here. The power to "adopt, amend, and repeal . . . rules and regulations, not inconsistent" with Title 39, 39 U.S.C. § 401(2), is not a blank check, much less one that lets USPS violate explicit statutory obligations that Congress has enacted. The bedrock obligation that Congress has assigned to USPS is to "receive, transmit, and deliver" the mail, and to "serve as nearly as practicable the entire population of the United States." *Id.* § 403(a); *see also id.* §§ 403(b), 404(a)(1). The Rule violates these and multiple other provisions of Title 39.

**1. Congress has passed no law authorizing the Rule.**

Congress has passed no law permitting USPS to refuse delivery of mail ballots, and thus USPS has no power to "exclude or refuse to deliver" such mailings. *See McAnnulty*, 187 U.S. at 109. The provisions of Title 39 that Defendants and Defendant-Intervenors rely on authorize USPS to provide for the "collection, handling, transportation, delivery, forwarding, returning, and holding of mail" and the investigation of "postal offenses." 39 U.S.C. § 404(a)(1), (6); *id.* § 401(2). But none of these provisions authorize USPS to refuse ballot mail when its intended recipient is not enrolled on a USPS-administered list. USPS "must deliver the mail unless an item is 'nonmailable' within the definition[s] of 39 U.S.C. § 3001." *Bowie v. Williams*, 351 F. Supp. 628, 634 (E.D. Pa. 1972).

Defendants also rely on Section 401 of Title 39 because it grants USPS "all other powers incidental, necessary, or appropriate" to carrying out "the exercise of its specific powers." 39 U.S.C. § 401(2), (10). But these provisions cannot be read to swallow the distinction core to Title 39 between mailable and nonmailable materials. Defendants' reading would allow USPS to use its "incidental" powers to create new categories of nonmailable materials. But that is not how basic statutory interpretation, nor Title 39 itself, works. Title 39 has specific terms about exactly what categories of material USPS can deem nonmailable and under what conditions. 39 U.S.C. §§ 3001-

18 specify all the categories that are "nonmailable." Ballots—or ballots without bar codes, pre-approved design, or a match to a portal list—are not among those categories. "Specific terms prevail over the general in the same or another statute which otherwise might be controlling." *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228-29 (1957).

Moreover, "[t]he postal laws make a clear-cut division between mailable and nonmailable material." *Hannegan v. Esquire, Inc.*, 327 U.S. 146, 152 (1946). The "power" to make nonmailability rules "has been zealously watched and strictly confined" by Congress. *Id.* at 156 n.18. Congress has created a comprehensive statutory scheme identifying particular types of matter as "nonmailable." Under it, USPS must deliver mail unless it identifies a specific statutory authorization permitting it not to do so. The incidental and general rulemaking powers in Section 401 do not provide USPS with an end-run around Congress's specific enumeration of nonmailable materials in 39 U.S.C. §§ 3001-18. *See generally* Amicus Br. for Soc'y for Rule of L., ECF No. 170 at 9-11. Instead, Congress's "established series" of provisions identifying nonmailable matter "necessarily bespeaks a negative implication" as to categories Congress omitted. *Esteras v. United States*, 606 U.S. 185, 195 (2025) (internal quotation marks omitted). Nor does Defendants' invocation of law enforcement concerns, such as investigating fraud, mean that the Rule is authorized by statute. 39 U.S.C. §§ 3001(a) and 3003(a) limit criminal-based nonmailability to when an individual item is in "violation" of one of ten specified criminal-law statutes. 39 U.S.C. §§ 3001(a), 3003(a). None are relevant here. Finally, Defendants are wrong in asserting that if this Rule is not authorized by statute, the Postal Service must be "disabled from adopting *any* election-mail-specific rules." Opp'n at 17. Not so. Kit 600, which Defendants rely on, is *optional*, and merely offers a set of nonbinding recommendations and guidance for election mail. *See* Rule at

54991 (§ 24.5.3). It does not do what the Rule here does: displace and block the operation of State law regarding who may receive ballots by mail.[4]

**2. The Rule violates multiple provisions of the Postal Reorganization Act.**

**a. The Rule creates an unauthorized category of nonmailable matter.**

Congress has "zealously watched and strictly confined" USPS's "power" over nonmailable material. *Hannegan*, 327 U.S. at 156 n.18. USPS has transgressed those limits, and Congress has expressly assured that such claims receive full APA review. *See* 39 U.S.C. § 3001(m). Defendants raise only three objections to Plaintiffs' claim and none have merit.[5]

*First*, Defendants contend the Rule is not subject to APA review because it did not arise from a "proceeding[] concerning the mailability of matter" under 39 U.S.C. § 3001(m). Opp'n at 21. Their only textual basis is that other sections—§§ 3005, 3007, 3012(c)—describe enforcement proceedings. But those sections identify just one type of mailability proceeding, and Section 3001(m) does not cross-reference them. Instead, Section 3001(m)'s text makes clear that a rulemaking is a proceeding too: it subjects mailability "proceedings" to chapter 5 of the APA, which defines "agency proceeding" to include "rule making." 5 U.S.C. § 551(5), (12). This comports with USPS's own repeated reference to the Rule as "this proceeding." Rule at 54967-68. Consistent with long standing precedent, the D.C. Circuit has already indicated that the Rule is subject to APA review as a result of a Section 3001(m) claim. *See DSCC v. Trump*, No. 26-5193, 2026 WL 2168617, at *1 n.6 (D.C. Cir. July 28, 2026) (per curiam); *see also Sierra Club v. Costle*,

---

[4] The limited election-related responsibilities Congress has assigned to USPS in Title 39 plainly do not support the Rule. In the NVRA, Congress required USPS to give favorable postage rates to registration mail. *See* 39 U.S.C. § 3629. And in UOCAVA, Congress required expedient and free carriage of materials for certain military and overseas voters. 39 U.S.C. § 3406.

[5] The Intervenor States' only contribution on this claim is to repeat Defendants' cremated-remains analogy, Int. Opp'n at 18, which is addressed below. They do not otherwise address Claim III.

657 F.2d 298, 400-01 (D.C. Cir. 1981) (identifying informal rulemaking as a "proceeding"); *Humane Soc'y of U.S. v. USPS*, 609 F. Supp. 2d 85, 94-97 (D.D.C. 2009) (informal letter declining to declare a publication nonmailable was a "proceeding" under Section 3001(m)).

Defendants further claim the Rule is exempt from Section 3001(m) because USPS "expressly disclaimed" creating a nonmailable category on the face of the Rule. Opp'n at 21. But that is a label, and agency action is judged on its substance. *Columbia Broad. Sys. v. United States*, 316 U.S. 407, 416 (1942). The substance of the Rule is clear: noncompliant ballot mailings "will not be accepted and will be returned to the authorized ballot mailer." DMM § 24.5.3(a). By setting conditions under which certain matter will not be delivered, the Rule operates the same way as nonmailability rules that Congress has enacted.[6]

*Second*, Defendants contend that Congress's nonmailable enactments—many of which operate conditionally, like the Rule—are not the "*exclusive* categories of 'nonmailable matter.'" Opp'n at 21-22. Not so. Nonmailability rules and conditions appear in a detailed series—39 U.S.C. §§ 3001-18 (including incorporated Title 18 provisions, *see* Section 3001(a)) and represent Congress's exhaustive judgment about what USPS may refuse to carry. Where Congress has empowered USPS to define a nonmailable class or identify mailability conditions, it has said so expressly.[7] When the law is expressed in such an "established series, . . . any omission from that

---

[6] *See, e.g.*, 39 U.S.C. § 3001(g) (fragrance ad samples nonmailable, unless sealed in certain way); *id.* § 3010(b) (requirement to check USPS-maintained list before mailing sexually oriented ads).

[7] *See, e.g.*, *id.* § 3001(n)(1) (hazardous material nonmailable "[e]xcept as otherwise authorized by . . . regulations of the Postal Service"); § 3014(c) (nonmailable plants); 18 U.S.C. § 1715 (concealable firearms mailable only to specified recipients "under such regulations as the Postal Service shall prescribe"); *id.* § 1716(b) (authorizing USPS to permit mailing of otherwise nonmailable injurious articles "under such rules and regulations as it shall prescribe as to preparation and packing"); *id.* § 1716(g) (authorizing USPS to restrict switchblades to enumerated government and dealer recipients, and to require a mailer's written explanation "as a condition of conveying" them).

series necessarily bespeaks a negative implication." *Esteras*, 606 U.S. at 195 (citation modified). USPS has no power to create new nonmailability categories by fiat.

*Third*, Defendants contend that placing "certain conditions on acceptance" is "not enough to create a new category of non-mailable matter." Opp'n at 22. But Congress's nonmailability provisions are themselves overwhelmingly conditional. For example, solicitations that resemble financial bills or imply government connection will not be delivered, *unless* they bear a prescribed notice or disclaimer. 39 U.S.C. § 3001(d), (h)-(k). Locksmithing devices will not be delivered, *unless* sent to specified recipients. *Id.* § 3002(a). Sexually oriented advertisements will not be delivered, *unless* the sender first checks a USPS-maintained list of addresses who have opted out of such advertisements. *Id.* § 3010(b). The Rule operates in the same way: outbound ballot mail will not be accepted or delivered, *unless* the envelope bears a prescribed marking and IMb, *and* the sender certifies it has undergone mandatory design review, *and* the sender first enrolls each addressee on a USPS-maintained list. DMM §§ 24.4.2, 24.5.3(a). The Rule is a nonmailability standard Congress neither wrote nor authorized USPS to write.

Defendants' inapt regulatory analogies confirm that the Rule is a nonmailability standard. Defendants repeatedly compare the Rule to the conditional acceptance regulations for cremated remains and replica explosives. But those regulations implement an express nonmailability provision, 18 U.S.C. § 1716, which makes explosives and other hazardous matter nonmailable, while also authorizing USPS to allow delivery of matter that is "not outwardly or of [its] own force dangerous" via "preparation and packing" regulations. The regulations appear in Publication 52, USPS's manual of "nonmailable articles," which expressly cites Section 1716 as its authority. *See* Cremated Remains Packaging Requirements, 90 Fed. Reg. 9843 (Feb. 19, 2025); Restricting the Mailing of Replica or Inert Explosive Devices, 75 Fed. Reg. 282 (Jan. 5, 2010); USPS, Postal

Explorer, Publication 52, § 2.21.211, https://perma.cc/2BWE-2FE7 (last visited Sep. 7, 2026). Whereas those regulations hold a nonmailable line Congress drew, the Rule here draws a line for ballot mail that Congress never legislated. Similarly, Defendants' comparison to insufficiently posted heavy packages, which they say is not a nonmailability standard "in the relevant sense," Opp'n at 22, is both incorrect and proves Plaintiffs' point: weight is a mailability condition Congress expressly enacted, unlike the ballot mail conditions here. *See* 39 U.S.C. § 3001(c)(1) ("Matter which . . . exceeds the size and weight limits prescribed for the particular class of mail . . . is nonmailable.").

Finally, Defendants offer *no* defense of the Rule as reasoned decisionmaking, at most repeating USPS's bare assertion that the Rule's "benefits" left "no compelling reason for any delay." Opp'n at 29 (quoting Rule at 54985). But "conclusory statements do not suffice to explain [an agency's] decision." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016). Nor do Defendants offer any defense of the Rule's violation of the APA's prohibition on immediate effectiveness dates. 5 U.S.C. § 553(d) (requiring publication of a final rule "not less than 30 days before its effective date"). The Rule fails APA review as both in excess of USPS's statutory authority and as arbitrary and capricious.

**b. The Rule was issued in violation of USPS's obligation to seek Postal Regulatory Commission review.**

The Rule is unlawful because USPS failed to obtain a required advisory opinion from the Postal Regulatory Commission ("PRC") prior to undertaking the rulemaking. Defendants try to recast the Rule as a mere mailpiece-design regulation to evade Section 3661(b)'s advisory opinion requirement. But the Rule plainly meets all three factors that trigger an advisory opinion because it is (1) a meaningful change, (2) in the nature of postal services, (3) that impacts services nationwide. 39 U.S.C. § 3661(b); *Buchanan v. USPS*, 508 F.2d 259, 262-63 (5th Cir. 1975).

Defendants concede that the Rule operates nationwide and therefore agree the third factor is satisfied, but they unpersuasively argue that the Rule does not have a meaningful impact on postal services and therefore does not meet the first two factors. Opp'n at 26; Int. Opp'n at 19-20. As to the first factor, Defendants claim that the Rule's impact is not large enough to be meaningful, Opp'n at 25, but the "facts in the record" demonstrate that "there has been a 'meaningful impact on service.'" *See Pennsylvania v. DeJoy*, 490 F. Supp. 3d 833, 884 (E.D. Pa. 2020) (quoting *Buchanan*, 508 F.2d at 265).[8] The record demonstrates that the Rule's quantitative impact is massive, extending both to Federal Ballot Mail, Patrick Decl. ¶ 92, and other outbound mailpieces in any mailings with Federal Ballot Mail. Patrick Decl. ¶ 112. The record further demonstrates that the Rule's ballot verification requirement will have a meaningful impact on service by creating unprecedented backlogs and delays for all mail during election season because scanning and verifying Outbound Federal Ballot mailings could take days, months, or years under the Rule's requirements. Patrick Decl. ¶¶ 108-13. The record therefore demonstrates a meaningful impact and meets the first Section 3661(b) factor. As to the second factor, Defendants do not refute that the Rule will cause delays that change postal services for customers, Patrick Decl. ¶¶ 108-13, nor do they refute that the Rule affirmatively conditions acceptance and delivery of mail that change postal services for customers, Patrick Decl. ¶ 94. Instead, Defendants quibble with whether to classify the Rule as an impact on postal services or postal operations. Opp'n at 26; Int. Opp'n at 19-20. But "a qualitative examination of the manner in which postal services available to the users

---

[8] USPS's characterizations of the Rule's impact are not dispositive in assessing whether the Rule triggers Section 3661(b). "The agency's description of its own change is not determinative; rather, courts may look at facts in the record to determine whether there has been a meaningful impact on service." *DeJoy*, 490 F. Supp. at 884 (internal quotations omitted). "[T]he Service's claim that [the Rule] is designed to maintain existing overall levels of postal service, and will produce no aggregate change in the service it provided, is not controlling." *Id.* (citation omitted).

will be altered," reveals that the Rule impacts postal services, regardless of Defendants' semantic hang-ups. *Buchanan*, 508 F.2d at 263. Before the Rule, election officials tendered ballot mail, and USPS delivered it. After the Rule, election officials must satisfy federal preconditions before USPS will accept and deliver ballot mail. That is a qualitative change in service availability. Changing who may access a service, on what terms, and on what timeline is plainly a change in the nature of service that triggers Section 3661(b). *See NAACP v. USPS*, 496 F. Supp. 3d 1, 17 (D.D.C. 2020); *New York v. Trump*, 490 F. Supp. 3d 225, 242 (D.D.C. 2020).

Federal Defendants wrongly contend that the Court should not reach the merits of this claim or Plaintiffs' undue discrimination claim, *see infra* p. 16, because the PRC must review them first. Opp'n at 23-26. But this interpretation of the statutory scheme would "foreclose[] all meaningful judicial review" in a manner that the D.C. Circuit has not permitted. *New York v. Trump*, 181 F.4th 132, 140 n.3 (D.C. Cir. 2026). Indeed, LULAC Plaintiffs filed a complaint before the PRC in August.[9] But the PRC cannot provide adequate relief to protect Plaintiffs from the Rule's harms in the November election. The PRC has neither procedures for emergency motions nor the power to order interim injunctive relief. *See* 39 U.S.C. § 3662(c); 39 C.F.R. §§ 3010.150-.170, 3022.1-.30, 3022.50. Defendants' claim that the D.C. Circuit could vacate the Rule after Plaintiffs proceed through the PRC is therefore false for the November 2026 election, which is the only relief requested in the instant motion. Opp'n at 24. This Court's action is required to give Plaintiffs a certain and meaningful remedy for the 2026 election.

[9] *See* Compl. of LULAC *et al.* re Proposed Rule for Ballot Mail, Postal Regul. Comm'n, Dkt. C2026-27, https://prc.arkcase.com/portal/dockets/11558 (last visited Sep. 6, 2026).

**c. The Rule violates the PRA's universal service requirement and its prohibitions on provision of non-postal services and undue discrimination.**

The Rule also violates Congress's mandate that USPS treat similarly situated users of the mail the same because it discriminates between local election officials (whose service will differ depending on their use of the Portal and Participation List) and voters (who may receive their ballots late, or never, if their elections office has difficulty complying with the Rule). *See* 39 U.S.C. § 403(c). *First*, Defendants' threshold contention—that the Rule's requirements are "acceptance preconditions" and not "services" within the meaning of Section 403(c)—fails on the statute's face. Opp'n at 24; Int. Opp'n at 19. Section 403(c) applies "[i]n providing services." 39 U.S.C. § 403(c). Congress defines "postal service" to mean "the delivery of letters, printed matter, or mailable packages, *including acceptance*, collection, sorting, transportation, or other functions ancillary thereto." 39 U.S.C. § 102(5) (emphasis added). Thus, acceptance is not antecedent to providing service; it *is* providing service. And discriminatory conditions on acceptance *are* discriminatory conditions on service. The Rule therefore involves services within the scope of 403(c). *Second*, Defendants argue that the Rule does not unduly discriminate because its burdens apply equally to all users. Opp'n at 24; Int. Opp'n at 19. But the barriers the Rule creates will predictably lead to unequal outcomes and less favorable service for some. Limon-Mercado Decl. ¶ 8; McComas Decl. ¶ 9; Patrick Decl. ¶¶ 12-13. As a result, the Rule violates Section 403(c).

## II. All Plaintiffs Have Standing And Face Irreparable Harm.

Defendants challenge the standing of Organizational Plaintiffs, LULAC, SFI, and ASA, but concede that Election Official Plaintiffs have standing. Opp'n at 8-11; Int. Opp'n at 5-12. The Court therefore has jurisdiction to grant the preliminary injunction and/or issue APA stay relief. *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) ("To establish jurisdiction, the court need

only find one plaintiff who has standing.”).[10] As discussed further below, all plaintiffs have standing and all face irreparable harm. *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (voter registration obstacles “provide injury for purposes both of standing and irreparable harm”).

Defendants’ primary argument against LULAC Plaintiffs’ showing of irreparable harm is that the harms claimed are speculative. Opp’n at 31. Nothing could be further from the truth or the record evidence before this Court. The declarations submitted in support of Plaintiffs’ motion, including the declaration of Plaintiffs’ expert Tammy Patrick, are factually uncontested and unrebutted. Ms. Patrick concluded that “[n]one of the Rule’s requirements can feasibly be implemented before the November 3, 2026, General Election.” Patrick Decl. ¶ 18. Specifically, Ms. Patrick observed that the Rule conflicts with the 2026 election calendar, as local election officials across the country have already set their governmental budgets for elections, as well as “designed, approved, and printed or ordered their ballot envelopes.” *Id.* ¶ 34. Those processes take months, and most election officials would have begun this process more than a year ago. *Id.* ¶¶ 33-34. USPS also completed its election-related trainings months ago, as Ms. Patrick herself witnessed. *Id.* ¶ 35

Ms. Patrick additionally laid out the technical infeasibility of the Ballot Portal, envelope requirements, and added verification requirements. As to the Portal, Ms. Patrick noted that its implementation will require election officials “to build technical infrastructure, develop new data management and transfer protocols, set up user authentications, and draft policies and training material,” all on the eve of early voting. Patrick Decl. ¶ 38. As to the envelope requirements, Ms.

[10] Because “constitutional and prudential standing” have indisputably been established as to Election Official Plaintiffs, the Court “need not consider the standing of the other plaintiffs.” *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996).

Patrick concluded that "[b]ased on my personal conversations with dozens, if not hundreds, of election officials, I can say with a high level of confidence that a substantial number of election officials will not be able to comply with the envelope design requirements in Section 24.3 in time for the 2026 election." *Id.* ¶ 88. Ms. Patrick explained that this would lead to "disastrous consequences for the 2026 election" as "[h]undreds of thousands of voters may never receive their ballots because USPS rejects ballot mailings sent in envelopes deemed noncompliant." *Id.* ¶ 92. Ms. Patrick also drew from recent experience to conclude that she had "never witnessed USPS impose a change with such a dramatic impact on election administration so close to an upcoming election." *Id.* ¶ 61.

Recent disclosures underscore the irreparable harm that the Rule will cause to all Plaintiffs. On September 1, 2026, a whistleblower employed by USPS disclosed serious concerns about the haphazard implementation of the Final Rule. *See* Whistleblower Rep., ECF No. 174-1. Following the disclosure, LULAC Plaintiffs obtained a supplemental declaration from Ms. Patrick. *See* Ex. 2, Suppl. Decl. of Tammy Patrick ("Patrick Suppl. Decl."). Ms. Patrick corroborated the concerns presented by the whistleblower, namely, that "election offices cannot reasonably be expected to satisfy these new requirements in time for the 2026 general election without the proper technical specifications, clear instructions, tested systems, and adequate training of staff." Patrick Suppl. Decl. ¶ 16. Moreover, the Whistleblower Report corroborated Ms. Patrick's concerns that a single envelope mismatch will result in the rejection of an entire mailing. *See id.* ¶ 12; Whistleblower Rep. ¶ 2. In addition, the Whistleblower Report noted concerns about timing, testing, mail ballot delays, and "unclear and changing operational requirements," consistent with Ms. Patricks' first report. Patrick Suppl. Decl. ¶¶ 13-15.

The Whistleblower Report also indicated that USPS would not only verify ballot mailings at the point of induction when election officials present the mailing to USPS for outbound delivery, but also conduct an antecedent verification mentioned nowhere in the Rule that will require election officials to upload a "manifest" into a legacy bulk-mail system for comparison to the Portal. *Id.* ¶¶ 9-10; Whistleblower Rep. ¶¶ 13, 23, 25. The Whistleblower Report indicated that the "second verification step" at the point of induction "will involve scanning a sampling of ballots in each batch." Patrick Suppl. Decl. ¶ 11 (citing Whistleblower Rep. ¶¶ 13, 23, 25). However, the Rule itself nowhere states that scanning verification will be done by sampling, nor that there are in fact two separate stages to verification. *See* Patrick Suppl. Decl. ¶ 11. The whistleblower disclosures emphasize how little Defendants have shared, or even decided internally, as to how the Rule could be immediately implemented in practice. This slapdash effort necessarily magnifies the likelihood of catastrophic breakdowns, both at USPS and in election offices struggling to comply with the Rule's requirements.

All of this impending harm is further buttressed by Plaintiffs' own declarations. The Election Official Plaintiffs cannot acquire new ballot envelopes in time, due to cost and logistical constraints. McComas Decl. ¶¶ 19, 22; Limon-Mercado Decl. ¶¶ 17, 22. Nor do they have the budget, time, training, or staff to comply with the voter list submission requirements. McComas Decl. ¶¶ 30-33; Limon-Mercado Decl. ¶¶ 26-28. Complying with the Rule would require changing the City's processes and envelopes while City Clerk staff are actively mailing out ballots every business day—a near impossibility. Bernarde Decl. ¶ 10. USPS's promise of "educational and other support resources" does not solve any of these problems. Rule at 54985. All the training in the world cannot create time, staff, and money from nothing. Defendants' claim that "[t]he Rule requires merely that States that choose to use the U.S. mail as part of their elections adhere to

certain standard mailpiece design and data reporting standards when sending Federal Ballot Mail," Opp'n at 32, borders on the absurd. *All* States have some form of vote by mail. Patrick Decl. ¶ 21. States have *already* made the choice, through the passage of State laws requiring the provision of vote-by-mail to eligible voters, to "use the U.S. mail as part of their elections." *See, e.g.*, *Dist. of Columbia v. U.S. Dep't of Agric*., 444 F. Supp. 3d 1, 38 (D.D.C. 2020) (irreparable harm where states would have to comply with significant changes to "complex program serving about forty million people," because "rewriting legal notices . . . , mass mailing thousands of citizens, and training staff and building technological infrastructure to do all of that is a massive undertaking, especially on a very short time frame of less than three months").

On the other side of the ledger, Defendants offer *no* meaningful evidence that USPS, States, or local election jurisdictions are prepared to implement the Rule, or that otherwise rebuts Plaintiffs' evidence.[11] Indeed, Defendants fail even to mention that, in *League of Women Voters of Massachusetts v. Trump*, they were forced to concede that the Portal is still not operational.[12]

---

[11] The *only* evidence offered whatsoever was provided by the Intervenor Defendants States, who include a brief declaration from the Missouri Secretary of State that, without offering any facts or specifics to support the assertion, claims that, "Although my staff are still figuring out some details of implementation, I believe it is possible to implement this rule for the 2026 election." Decl. of Denny Hoskins, ECF No. 183-1 ¶ 5. This conclusory statement, absent a factual basis to support it, is insufficient to rebut Plaintiffs' detailed showings of harm. *See, e.g.*, *Fed. Trade Comm'n v. Sysco Corp.*, 308 F.R.D. 19, 25 (D.D.C. 2015) (finding declarations' conclusory allegations of harm unpersuasive because they "did not offer a specific demonstration of facts to support their concerns"); *Ahuruonye v. U.S. Dep't of Interior*, 239 F. Supp. 3d 136, 143 (D.D.C. 2017) ("speculative allegations [that] are devoid of specific facts" insufficient to rebut detailed declaration). This lone declaration is also outweighed by a mountain of specific evidence to the contrary. *See supra* n.2.

[12] *See* Decl. of Steven W. Monteith at 2, *League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549-IT (D. Mass. Sep. 3, 2026), ECF No. 280-1 (on September 3, 2026, stating: "We anticipate being in a position to make the Portal available to users for voluntary use by sometime next week").

The inability of many election jurisdictions to comply with the Rule, and the confusion that the Rule will cause regardless, plainly injures the Organizational Plaintiffs and their members. Enforcement of the Rule will prevent Organization Plaintiffs' members from casting mail ballots. Decl. of Juan Proaño, ECF No. 171-6 ¶¶ 14-16 ("Proaño Decl."); Decl. of Sarah Streyder, ECF No. 171-7 ¶¶ 25-31 ("Streyder Decl."); Decl. of Jessica Mendoza, ECF No. 171-8 ¶¶ 8-9 ("Mendoza Decl."). And Organizational Plaintiffs' members have already been harmed by the uncertainty and confusion surrounding their ability to vote by mail in the November election. Proaño Decl. ¶¶ 14-15; Streyder Decl. ¶¶ 35-39; Mendoza Decl. ¶¶ 15, 17-18, 20, 22. The Rule is clear about the consequences of noncompliance: USPS *will not* mail ballots that are noncompliant or are in batches that contain noncompliant ballots. Accordingly, some voters, including those who are members of Organizational Plaintiffs, *will be* disenfranchised. This is especially true given that Organizational Plaintiffs have established that their respective memberships include voters who depend on mail voting because they are elderly, disabled, serve in the armed forces deployed domestically or abroad, lack reliable transportation, reside far from home like college students, and more. Proaño Decl. ¶¶ 14-15; Streyder Decl. ¶¶ 26-28; Mendoza Decl. ¶¶ 15-19. Thus, if the Rule is enforced, the risk of disenfranchisement is not speculative, it is a certainty. All of these harms are sufficient to cause LULAC, ASA, and SFI to suffer Article III injury and give them standing. As to associational standing, Defendants object that no specific members have been identified by name. Opp'n at 10-11; Int. Opp'n at 11-12. But this argument is misplaced. "Defendants' objection that plaintiffs have not specifically identified members who have suffered the requisite harm is . . . premature" at the preliminary injunction stage.[13] *Am. Ass'n of Nurse*

[13] As the D.C. Circuit held in *Centro de Trabajadores Unidos v. Bessent*, "the question on a motion for a preliminary injunction is whether [plaintiffs are] likely to be able to establish standing later in the case." 167 F.4th 1218, 1229 (D.C. Cir. 2026). And a record establishing that "some unnamed

*Pracs. v. McMahon*, CIV-A No. 26-1780 (BAH), 2026 WL 1826176, at *11 (D.D.C. June 24, 2026) (citation modified) (quoting *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011)).

LULAC, ASA, and SFI further satisfy the requirements for organizational standing because the Rule erects "new obstacles" that "unquestionably make it more difficult for [voter registration organizations] to accomplish their primary mission" of registering voters and ensuring that they are able to cast an effective ballot. *Newby*, 838 F.3d at 9. Contrary to Defendants and Intervenors arguments, *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*AHM*") does not undermine either *Newby* or Plaintiffs' standing. *AHM* rejected standing based on a "setback to the organization's abstract social interests" and advocacy expenditures to oppose a government policy. 602 U.S. at 394-95. Plaintiffs' standing here depends on neither of those. Instead, Plaintiffs are harmed by the Rule's interference with voter-assistance activities central to their missions. And the resources they are forced to expend are due to the Rule's impact on those activities, not on expenditures undertaken to oppose the Rule. Proaño Decl. ¶¶ 24-26, 30; Streyder Decl. ¶¶ 35-41; Mendoza Decl. ¶¶ 24-28. Organizational Plaintiffs have already diverted resources to additional voter education, taking time away from other initiatives. Streyder Decl. ¶¶ 36, 39-41; Mendoza Decl. ¶¶ 24-28; Proaño Decl. ¶ 26. Organizational Plaintiffs are "using [their] resources to counteract [the Rule's] harm." *Hines Immigr. L., PLLC v. Exec. Off. for Immigr. Rev.*,

members" face harm is sufficient to establish standing at the preliminary injunction stage. *McMahon*, 2026 WL 1826176, at *11 (citing *Bessent*, 167 F.4th at 1229). Although Organizational Plaintiffs have not identified impacted members by name, they have established that the Rule injures their members, which is enough to obtain relief at this stage. Organizational Plaintiffs have members who reside in jurisdictions that cannot comply with the Rule's new ballot-envelope requirements and will face delays in voting or may be completely disenfranchised. Proaño Decl. ¶¶ 2, 14-20; Streyder Decl. ¶¶ 6, 8, 23; Mendoza Decl. ¶¶ 15-19.

No. 1:26-CV-01018 (CJN), 2026 WL 969020, at *4-5 (D.D.C. Apr. 10, 2026). All Plaintiffs here thus have standing.

**III. The Balance of Equities and Public Interest Favors Relief.**

Defendants assert that the equities "favor continued steps toward compliance with the Rule" and that an injunction risks deterring States from voluntary compliance. Opp'n at 32. Those assertions are wrongheaded. The public interest strongly favors protecting the fundamental right to vote. *See Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). LULAC Plaintiffs are not seeking any relief that would prevent States from voluntary compliance with most of the Rule's provisions, insofar as they are consistent with their own laws. If States wish to keep their own lists of mail voters or redesign their ballot envelopes, they may choose to do so. But the public interest is not served by "the perpetuation of unlawful agency action." *Newby*, 838 F.3d at 12. And while Intervenors claim irreparable harm from "the loss of election integrity measures," Int. Opp'n at 23, they do not explain how preventing USPS from refusing to accept their own ballots—to voters the States themselves deemed eligible and their jurisdictions mailed—serves those interests.

Defendants try to diminish Plaintiffs' harms, claiming that they are already resolved by existing injunctions from another court. Opp'n at 32. But another court's injunction is no bar to relief here. *See TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 114 (D.D.C. 2020) ("In similar situations, 'courts routinely grant follow-on injunctions against the Government,' even when 'an earlier nationwide injunction has already provided plaintiffs in the later action with their desired relief.'") (citation modified). Defendants also dismissively claim that the Rule says USPS will give resources to election officials to help them implement the Rule "should such assistance be required." Opp'n at 32 (quoting Rule at 54985, 54974). This vague promise is cold comfort. USPS has neither the legal authority, nor the timely capability to help election officials successfully implement the Rule. "[T]here can be no 'do-over' or redress of a denial of the right to vote." *Fish*

*v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). Therefore, the equities and public interest favor enjoining the Rule to permit as many qualified voters as possible to vote in the November 2026 election. *Husted*, 697 F.3d at 437.

**IV. Plaintiffs' Requested Relief Is Not Overbroad.**

Plaintiffs' requested injunctive relief is tailored to seek "complete relief to the plaintiffs before the court." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). Collectively, Organizational Plaintiffs educate voters and facilitate mail voting in all 50 states and D.C., and their members similarly live in all 50 states and D.C. *See supra* n.13. Plaintiffs' "complete relief" therefore cannot be narrower than nationwide. *CASA, Inc.*, 606 U.S. at 851-52 & n.12.

Federal Defendants ask the Court to enjoin *only* the Rule's provision that requires USPS to refuse to accept and return noncompliant mailings. Opp'n at 33 (citing DMM § 24.5.3). But any mandatory imposition of the Rule's envelope design and enrollment provisions is unlawful. Even if USPS is prevented from intercepting and rejecting ballots, those provisions would cast doubt on Election Officials' Plaintiffs' election administration and cause confusion among voters, including Organizational Plaintiffs' members. Although Federal Defendants conjecture that some States may voluntarily participate in these provisions, they do not disclaim any intent to use other enforcement tools to ensure compliance with the Rule. *See, e.g.*, 39 C.F.R. § 233.1 (granting postal inspectors law enforcement powers over "violations of postal laws"). Plaintiffs' requested relief extending to all 50 states and D.C. is therefore no "broader than necessary to provide complete relief to each plaintiff with standing to sue." *CASA, Inc.*, 606 U.S. at 861.

The Court has the power to either enjoin the Rule or issue a Section 705 stay halting its immediate implementation in advance of the November 2026 election. Federal Defendants argue that this Court cannot stay the Rule's effective date under the APA because USPS is not subject to the APA. Opp'n at 33. But Plaintiffs' Claim III challenges the Rule's unlawful creation of an

unauthorized category of nonmailable matter, thereby bringing it within the scope covered by the APA. *See* 39 U.S.C. § 3001(m); *DSCC*, 2026 WL 2168617, at *2 n.6. This Court can accordingly issue an injunction, a stay under Section 705 of the APA, or both, to stop the Rule from taking effect for the 2026 election.

**CONCLUSION**

For the reasons outlined herein, Plaintiffs respectfully request that the Court grant the motion for a preliminary injunction.

Dated: September 8, 2026

Respectfully submitted,

*/s/ Norman L. Eisen*
Norman L. Eisen (DC Bar No. 435051)
Tianna Mays (DC Bar No. 90005882)
Pooja Chaudhuri (DC Bar No. 888314523)
Sofia Fernandez Gold (DC Bar No. 90010196)
Beauregard Patterson (WI Bar No. 1102842)*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
sofia@democracydefenders.org
beauregard@democracydefenders.org

*/s/ Danielle Lang*
Danielle Lang (DC Bar No. 1500218)
Anna Baldwin (DC Bar No. 998713)
Sejal Jhaveri (DC Bar No. 90043488)
David Kronig (DC Bar No. 1030649)
Valencia Richardson (DC Bar No. 1739245)
Aseem Mulji (DC Bar No. 1724971)
Renata O'Donnell (DC Bar No. 1723929)
Benjamin Phillips (DC Bar No. 90005450)
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
dlang@campaignlegalcenter.org
abaldwin@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
dkronig@campaignlegalcenter.org
vrichardson@campaignlegalcenter.org
amulji@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
bphillips@campaignlegalcenter.org

*Counsel for Plaintiffs League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association, City of Madison, Wisconsin, Travis County, Texas and Travis County Clerk, in her official capacity.*

* Pro hac vice motion pending