# Exhibit 9

Civil Action No. 26-cv-1114 (CJN) (Lead case)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1114 (CJN) |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1132 (CJN) |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1151 (CJN) |

**DECLARATION OF MARK EARLEY**

I, Mark Earley, declare as follows:

1. I am a resident of the State of Florida. I am over the age of 18. I am familiar with the information in the statements set forth below and attached either through personal knowledge, consultation with Leon County Supervisor of Elections staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the elected Leon County Supervisor of Elections. I was first elected as the Supervisor of Elections for Leon County, Florida in 2016. Leon County is home to the capital of Florida, Tallahassee. I have worked in elections since September of 1986 and been a part of many large-scale technological advances and roll-outs over my career. I was the Director of Operations in charge of the Leon County voting system during the 2000 Florida recounts, and because we avoided using punch cards, our optical scan voting system based on paper ballots was error free. After those recounts, I entered the election vendor ranks, supporting elections across the nation as a Senior Accounts Manager for a major voting machine vendor. I returned to the county elections office in 2008 and have served as the president of the association of Florida Supervisors of Elections , as well as on several national level boards helping to facilitate secure, transparent, and accurate elections. I also serve as a Mailers Technical Advisory Committee member for the Election Center, the premier national association of election officials. I was inducted into the Election Center's National Hall of Fame in August of 2023.

3. Given these roles, I regularly interact with and communicate with election officials across Florida and across the country. Indeed, I have frequently discussed the matters described in this declaration with these election officials.

4. My statements in this declaration are made as a nonpartisan election administrator with nearly 40 years of active service to voters. Partisanship plays no part in my statements, or in

my approach to serving my voters. Partisanship should be guarded against in all aspects of election administration.

5. My office and I are currently preparing for the 2026 general election to ensure that every eligible voter who wants to cast a ballot can do so safely, conveniently, and have their ballot counted. That includes planning for the distribution and processing of mail ballots. My office designs all ballot envelopes used in Leon County and ensures that the envelopes comply with all relevant requirements. My office is also responsible for ensuring that ballots are mailed to eligible voters who have requested them. Under Florida law, this year the initial mailing of mail ballots must be sent out between September 24 and October 1, 2026. The deadline in Florida to request that a ballot be mailed is no later than 5 p.m. on the 12th day before the election—this year, October 22, 2026. A Supervisor of Elections must mail a ballot within two business days after a request but no later than the 10th day before election day, October 24, 2026.

6. I am familiar with the Notice of Proposed Rulemaking issued by the United States Postal Service (USPS) entitled, "Ballot Mail for Federal Elections" that was published in the Federal Register on June 2, 2026. I submitted comments expressing my grave concerns with the proposed rule and urging USPS not to proceed.

7. I am also familiar with the final rule issued by USPS entitled, "Ballot Mail for Federal Elections" ("Ballot Mail Rule"), that was published in the Federal Register on August 26, 2026. Unfortunately, despite comments from me and many others calling for USPS to abandon the rule or at the very least reconsider its approach, the Ballot Mail Rule is extremely similar to the proposed rule.

8. Based on my understanding of the Ballot Mail Rule, and my experience as an election administrator, the Ballot Mail Rule imposes obligations that are essentially impossible

for election officials to comply with for the 2026 general elections. The effort to adhere to this rule will add complexity, redundant processes and confusion when election officials and USPS employees at all levels can least afford it, such as when we near election day and are in the midst of early voting, and when mail voting requests need to be received and mailed in an expedited manner.

9. First, the Ballot Mail Rule requires all outbound and return ballot envelopes to contain a unique, serialized Intelligent Mail barcode ("IMb") that allows for tracking and scanning of envelopes. It provides that USPS will not deliver ballot envelopes that do not satisfy this brand new requirement.

10. Many jurisdictions, including in Florida, have already designed, ordered, and taken delivery of their envelopes for the 2026 elections.

11. Although Leon County does already include serialized IMbs on most ballot envelopes, it is the exception. It is my understanding that the vast majority of Florida counties do not currently include serialized IMbs on their ballot envelopes.

12. Our voluntary effort to implement serialized IMbs in Leon County was a complex and resource-intensive initiative. We would not have been able to complete this project in the short time frame commanded by the Ballot Mail Rule starting on August 21, 2026, when the final rule was released and went into effect, or even if we had started many months sooner. Even as late as August 25, 2026, election supervisors were told by the Florida Department of State that our duties were not impacted by the Ballot Mail Rule at that time. We certainly would not have been able to execute our IMb project while the majority of counties, including most of the largest counties, in Florida (and countless more across the country) made the same change. Counties cannot do it alone: serialized IMbs involves significant coordination with USPS and vendors,

neither of which would have the capacity to handle counties nationwide making this change at the same time.

13. Despite the narrative advanced by USPS, redesigning envelopes, including return envelopes, to include the serial IMbs required by the Ballot Mail Rule is a complicated, expensive, and time-consuming endeavor. Designing a new mail ballot envelope, including detailed barcodes, postage account information, election mail logos, and a multitude of state required information is a very difficult task in the best of circumstances. I know because I have been involved with that task many times over the years, and I have seen what happens when mistakes are made or the process is rushed. The Ballot Mail Rule's last-minute requirement to implement these changes will without a doubt result in mistakes that will disrupt election administration and the timely, efficient, and accurate distribution of mail ballots to eligible voters.

14. Even once election officials have completed an initial redesign of envelopes to account for serial IMbs, it is my understanding that most counties do not have the capacity to implement serial IMbs. It is not as simple as printing envelopes to account for serial IMbs: to actually implement serial IMbs into the mail ballot process in the manner required by the new Ballot Mail Rule, election officials or their vendors must have access to systems (including software, file specifications, and equipment) that can ensure that each outbound envelope contains the appropriate individual ballot as well as the matching, customized return envelope with the requisite serial IMb. Only a few counties in Florida have the capacity to implement these procedures in-house; the rest will need to sign up with mail voting vendors.

15. However, it is simply too late for most Florida counties to work with vendors on implementing serialized IMb envelopes into their ballot mail procedures. This conversion

process, including designing envelopes, building new envelope architecture, and completing printing, takes around six weeks in the best of circumstances. And even if this timeline did not run afoul of Florida and federal requirements for sending out mail ballots, it is my understanding that there is simply insufficient vendor capacity to meet this time-sensitive need. Some vendors, furthermore, lack the capacity to generate and catalogue unique return IMbs. They cannot implement this upgrade in a speedy, sudden manner. These vendors are already at capacity even before the sudden changes mandated by the Ballot Mail Rule and have pre-planned their procedures for the 2026 elections and ordered their specialized ballot envelopes for the 2026 elections. It would be tough to get the proper envelopes to the right vendors who can implement these IMb procedures.

16. The Ballot Mail Rule's absolute requirement that all ballot envelopes contain serialized outbound and inbound IMbs also fails to account for certain types of ballot mail. For example, as I flagged in my comment on the proposed rule, in Leon County there are voters who obtain their ballots through an online portal that accommodates voters under the Americans with Disabilities Act (ADA). After these ballots are delivered to voters virtually, the voters can print them, mark their choices, and mail them back to Leon County. But these voters cannot self-generate return envelopes with the requisite individualized IMbs, meaning that under the Ballot Mail Rule, USPS will refuse to transmit their ballots. Despite my flagging this concern to the USPS after publication of the proposed rule—and the risk of disenfranchisement for voters with disabilities who receive their ballots online—the final Ballot Mail Rule entirely neglects to account for this component of the electorate who may have no other way to vote.

17. The Ballot Mail Rule also requires election officials to enroll every mail ballot voter with USPS on a "Mail-in and Absentee Participation List." To enroll voters, elections

officials, or their authorized vendors, must log onto a USPS Ballot Portal and enter each voter's name, address, unique serialized IMb from the outbound ballot envelope, unique serialized IMb from the return ballot envelope, and the originating election office state. Aside from this narrative in the Ballot Mail Rule, no specific Mail-in and Absentee Participation List parameters have been promulgated to jurisdictions across the country, as far as I am aware.

18. This new Mail-in and Absentee Participation List is entirely unnecessary. State and local election officials, who control voter eligibility, already maintain and control their own voter registration and mail ballot request lists that accurately catalogue eligible voters. It is a considerable endeavor to regularly update these lists many times across state level agencies, campaigns, and candidates through the course of the election. There can be no positive outcome if USPS and the federal government interfere in this complicated (but highly successful) process. The state and local lists are secure, and the new Mail-in and Absentee Participation Lists accomplish nothing and add literally no validation to current procedures for verifying eligible voters.

19. Worse, the Mail-in and Absentee Participation List imposes onerous new obligations that will disenfranchise voters. Adding the USPS and its Portal as another entity and procedure with whom every election official must coordinate, and with whom there will be no margin for error to keep the lists synchronized, with so little time to plan the details of secure file transmission, database exchange, and other technical details in such a short timeline means that voters will inevitably not be on USPS's List at the time USPS is checking ballot mail, and the result will be that per the Ballot Mail Rule, USPS will refuse to transmit ballots. Again, Leon County (and other Florida counties) have already determined who is eligible to vote and who

should receive mail ballots. The Ballot Mail Rule can achieve nothing other than preventing these eligible voters from receiving their mail ballots.

20. Importantly, before election officials can even receive access to the Ballot Portal, they must first certify that their outbound and return envelope designs have been submitted to a Mailpiece Design Analyst (MDA) and received feedback. It is my understanding that USPS has a small number of MDAs—potentially fewer than 40 nationwide. States, including Florida, generally do not have one standard envelope design. Instead, envelope designs vary across jurisdictions. And even within jurisdictions, including Leon County, there are multiple envelope designs to account for different types of mail ballots. Accordingly, USPS will be inundated with thousands of envelope designs in a short window of time.

21. In my experience, MDA review tends to be a highly subjective process. Although Leon County's envelopes have been successfully used since 2023 with no complaints from USPS, during the week of Monday, August 24, 2026, Leon County submitted these envelopes for review so that we will be able to access the Ballot Portal in case it goes live. The assigned MDA responded that several of Leon County's envelope designs—which again, had been successfully used in every election since 2023—were rejected as inconsistent with USPS guidelines because there was improper distance between the return address and other components of the design. It remains unclear to me whether this rejection means that, under the Ballot Mail Rule, Leon County must redesign our envelopes before I can access the Ballot Portal. If so, it also remains unclear if I can appeal this decision. USPS has not provided clear guidance regarding this critical component of the Ballot Mail Rule.

22. This inconsistent review process will be repeated thousand-fold across the country. And it will inevitably lead to considerable delays in receiving feedback from

overburdened MDAs, preventing election officials from obtaining the review certifications that the Rule requires they must submit before they receive access to the Ballot Portal to submit voter information.

23. Once election officials do have access to the Ballot Portal—and I currently do not—I have significant concerns about the technological integrity of this new project. With so little time to plan the details of secure access, including multi-factor authentication, secure file transmission, and other measures to protect sensitive data, I am concerned that the Portal will be at risk of significant data breaches. I am also worried that the Portal will lack the capacity to handle the enormous demand from the thousands of election officials nationwide attempting to access the Portal and submit information. I know from experience that these technical issues are common with government websites and can cause major disruption in election administration; in recent years, Florida's voter registration portal crashed due to the system's undercapacity to handle the high volume of voters seeking to register on the final day before the deadline.

24. I have not received information or training on how to use the Portal, nor am I aware of any other election official receiving this instruction. It is unclear how the Portal will ingest voter data, as there is no guidance on how election officials should take the required fields from their voter registration data for each voter and submit it through the Portal. Seemingly simple concepts, like submitting an address, can be much more difficult when implemented. It is not even certain that election officials will submit data files or whether they will be forced to individually enter each voter's information into the Portal. Additionally, because serialized IMb data is often generated and stored separately from voter registration data—including in Leon County—it is unclear how these databases would be reconciled and matched when election officials are submitting information through the Portal.

25. Even assuming election officials are able to submit information through the Portal, I have grave concerns about the physical presentation of the ballot envelopes to the USPS and scanning of those envelopes. It is far from clear that data from the Portal will be timely and accurately integrated with the scanners in local Post Office locations, increasing the risk that envelopes will be improperly rejected for noncompliance with the List. In addition, at bare minimum, this verification process will be extremely time consuming. It will also require, to my understanding, submission of most ballot mailings at specific Business Mail Entry Unit (BMEU) USPS locations, because many retail USPS locations do not have the scanning technology to process large amounts of envelopes at once. And it is unclear how this scanning procedure will even work, including whether USPS's technology has the capacity to identify and remove individual ballot envelopes from a large mailing, or whether an entire batch will be rejected whenever at least one envelope does not pass the verification scan. It is also my understanding that for small mailings at retail locations, USPS employees will likely need to use handheld scanners to check each individual envelope, which will be an enormously time-consuming process for both USPS employees and the election officials presenting ballots for transmission.

26. When ballot envelopes are rejected for acceptance, including due to USPS data mismatching with the data submitted through the Portal, it will force election officials to attempt to rapidly fix the issue and re-submit envelopes for transmission. This problem will get worse as election day approaches; in some cases, time will simply run out to fix a problem and get the voter a ballot. Delays in delivering ballots are already a real problem. The Ballot Mail Rule's verification procedures will make it worse, resulting in more valid ballots being delivered late or not at all, and votes will not be counted.

27. Jurisdictions across the country are facing funding and labor shortages even before the Ballot Mail Rule's new costly and time-consuming obligations. Election officials do not have the financial resources, or for that matter logistical capacity, to comply with these new burdens.

28. The Ballot Mail Rule is also entirely unnecessary for achieving its purported aims. Our existing systems at the state and local levels are effective at maintaining the integrity of election mail. To the extent the Ballot Mail Rule is aimed at preventing ballot mail fraud, it addresses a problem that does not exist in any meaningful way and is already detected by current systems. And although the Ballot Mail Rule purportedly aims to allow more expeditious and effective delivery of ballots, it will have the opposite effect. Adding this undertaking to the workloads of already burdened election officials and USPS employees will do nothing other than undermine election administration.

29. Accordingly, without a doubt, if the Ballot Mail Rule is in effect for the 2026 elections, it will disenfranchise a large number of eligible voters. It is tantamount to sabotage of the 2026 elections. There is simply not enough time to make this work, in any shape or form.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 9/8/2026

Mark S Earley

**Mark S. Earley**
**Leon County Supervisor of Elections**