**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DSCC, *et al.*,

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

Defendants.

Case No. 1:26-cv-01114-CJN

LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,

Plaintiffs,

v.

EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,

Defendants.

Case No. 1:26-cv-01132-CJN

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

Defendants.

Case No. 1:26-cv-01151-CJN

**DEFENDANTS' OPPOSITION TO *DSCC* PLAINTIFFS' MOTION FOR DISCLOSURE**

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**RELEVANT BACKGROUND** .......... **3**

I. The Court's Expectation .......... 3

II. The *DSCC* Plaintiffs' Motion .......... 5

**ARGUMENT** .......... **9**

I. Defendants have provided notice of all material factual developments. .......... 9

II. The *DSCC* Plaintiffs appear to be seeking backdoor discovery that this Court already rejected under the guise of a compliance motion. .......... 14

III. There is no legal or factual basis to award any attorney's fees or costs. .......... 15

**CONCLUSION** .......... **18**

## INTRODUCTION

The *DSCC* Plaintiffs have now filed a motion "for order requiring material updates." ECF No. 179 ("Mot."). Regrettably, that request is long on rhetoric and short on facts. As the meet-and-confer process made clear, *see* ECF No. 179-1 (email thread attached by *DSCC* Plaintiffs), this dispute largely stems from a series of mistaken assumptions by the *DSCC* Plaintiffs, which Defendants corrected *before* Plaintiffs' filing. Instead of acknowledging those mistaken assumptions—apparently sourced to (in Plaintiffs' words) "Google searches" and "news reports," Mot. at 1—the *DSCC* Plaintiffs nonetheless moved forward with their filing, demanding court-ordered responses (within 24 hours) to a series of interrogatory-like questions about then-ongoing deliberations within the Executive Branch. Even more remarkably, they request an award of attorney's fees and costs, hoping to externalize the costs of a needless filing borne of their own misunderstandings. Their motion should be denied in full.

Most obviously, the motion should be denied because it fails to identify any material factual development that Defendants have failed to notice, in accordance with the Court's stated expectations—expectations that counsel for the United States have taken extremely seriously. As for implementation by the Department of Homeland Security (DHS) of Section 2 of Executive Order 14,399, Defendants *did* notify the Court as soon as DHS decided to pursue some version of implementation of the "State Citizenship List" concept contemplated by Executive Order 14,399. *See* ECF Nos. 149, 150, 151. There have been no material factual developments since those notices. And contrary to Plaintiffs' apparent assumption, the *absence* of implementation progress is not itself a material development requiring notice to the Court—if anything, it is the opposite.

As for implementation by the U.S. Postal Service of Section 3 of the Executive Order, Defendants likewise filed a notice within minutes of the availability for public inspection of the

text of a Final Rule issued by the U.S. Postal Service. ECF No. 161. Plaintiffs now point to various subsequent public indications that the Postal Service had been taking steps to prepare to implement that rule, to the extent it was then permissible under all outstanding court orders. But surely nobody expected the Postal Service to attempt to implement a Final Rule *without* doing any internal preparatory work or deliberations. The fact that an agency was preparing to implement a public rule that has already taken effect is not a material factual development—it is self-evident.

Accordingly, there has been no violation of the Court's stated expectation, there is no basis for any disclosure order, and there is certainly no basis to award fees—particularly where, as here, the Court has twice declined to phrase its expectation to receive material factual updates as a court-ordered legal obligation. To be clear, the procedural distinction between a court-ordered legal obligation and this Court's stated expectation—a distinction that is repeatedly obscured by Plaintiffs' motion—has not *in any way* informed the government's efforts to meet the Court's expectations (to say nothing of the candor obligations that always apply in all cases). Defendants have complied and will continue to comply fully with the Court's stated expectations, even where (as here) those expectations are not formally styled as court-ordered obligations. Even so, that distinction is independently fatal to Plaintiffs' extraordinary request for attorney's fees and costs, which (among other things) requires violation of an actual "order."

The *DSCC* Plaintiffs' motion should thus be denied in full. That is all the more obvious now that this Court has largely granted Plaintiffs' latest motions for a preliminary injunction, and the Supreme Court has denied a stay pending appeal of a parallel injunction—proving definitively that the lack of serial, interim updates about ongoing government deliberations need not hinder judicial review of actual and final agency actions, such as the Postal Service's Final Rule.

## RELEVANT BACKGROUND

### I. The Court's Expectation

At the beginning of this litigation, the *LULAC* Plaintiffs moved for expedited discovery, seeking leave to submit interrogatories about the current and planned status of agency implementation of Executive Order 14,399. *LULAC* ECF No. 17; *see also, e.g.*, ECF No. 17-1 (Proposed Interrogatory No. 1: "Describe any action or effort that Defendants (including but not limited to Defendants DHS and SSA) have taken or initiated to 'compile' the State Citizenship Lists mandated by Section 2(a) of the Executive Order."). This Court denied that motion without prejudice, in an April 12, 2026 Minute Order. No Plaintiff ever renewed that motion, nor filed any further motion on the subject.

Next, at the conclusion of the preliminary-injunction hearing in May, the Court stated its expectation that, "before [the preliminary-injunction] opinion comes out, that if there is anything even approaching a material change in the factual scenario on the government side, that the government would so notify me." May 14, 2026 Hr'g Tr. at 104:8-11. The Court also emphasized that "while [the Court had] under advisement the PI," it "expect[ed] that the government would be, quote/unquote, conservative in thinking through the kinds of things that it would notify me about, action it takes either as to the USPS part of the E.O. or the list portion." *Id.* at 104:15-20. Plaintiffs' counsel then stood up to make a further request:

> MS. LANG: I would just like to make one request, Your Honor, if at all possible.
>
> THE COURT: Okay.
>
> MS. LANG: Which is, the *LULAC* plaintiffs would request, if at all possible, that there be actually an order with respect to the notification.
>
> THE COURT: No. I thought that through. I understand your point.

> MS. LANG: Thank you, Your Honor.
>
> THE COURT: I've landed where I'm going to land. I understand the issue. The government understands my view, and it would not be good for the government if it took anything other than capacious interpretation of what my expectations are. And I expect the government will comply with that.

*Id.* at 104:24-105:13.

Later in the litigation, after the publication of the Court's first preliminary-injunction opinion, in one of their notices to the Court, Defendants stated their interpretation of the Court's expectation as stated in the colloquy above as having "expired with the resolution of Plaintiffs' motions for preliminary injunction." Defs' Notice (May 29, 2026) at 2 n.1, ECF No. 145. In response, the Court issued what was originally labeled as a "Minute Entry," reading as follows:

> [T]he Court makes clear that while it expected the government to notify the Court of any material factual developments that were relevant to Plaintiffs' motions for preliminary injunction while those motions were under consideration, the Court continues to expect that the government will notify the Court of any material factual developments while this litigation remains pending.

Entered in Error – Minute Entry (June 1, 2026). A few minutes later, the following entry appeared on the docket: "NOTICE OF ERROR: Minute Entry filed 6/1/2026 entered incorrectly. Will be filed as a NOTICE." Notice of Error (June 1, 2026). The Court then re-entered the identical text quoted above, but this time as a "NOTICE" rather than a "MINUTE ENTRY." The original docket entry is now preceded by "ENTERED IN ERROR."

Order or not, the Government has taken—and will continue to take—the Court's expectation to be informed about material factual developments very seriously. In total, Defendants have filed nine different Notices. *See* ECF No. 145 (public inspection of USPS Notice of Proposed Rulemaking); ECF No. 149 (DHS Memo of June 4, 2026); ECF No. 150 (DHS Memo of June 8,

2026); ECF No. 151 (filing of DHS Memo of June 8, 2026); ECF No. 152 (advance notice of USPS's proposed new Privacy Act System of Records Notice); ECF No. 156 (public inspection of USPS's proposed new Privacy Act System of Records Notice); ECF No. 161 (public inspection of USPS's Final Rule); ECF No. 169 (TRO against USPS Final Rule); ECF No. 173 (USPS response to comments regarding new Privacy Act System of Records Notice). Defendants have also included various factual updates in other litigation filings, thus obviating any need for a standalone Notice in some instances. *See, e.g.*, Defs.' Combined Opp'n to Pls.' Mots. for a Prelim. Inj. at 5-7, ECF No. 184 (discussing entry of a preliminary injunction in the District of Massachusetts).

## II. The *DSCC* Plaintiffs' Motion

As is clear from the meet-and-confer email chain that the *DSCC* Plaintiffs attached to their motion, *see* ECF No. 179-1, in recent months, counsel for Plaintiffs have asked counsel for Defendants various factual questions. Counsel for Defendants have answered many of those questions, to the best of their ability and consistent with their obligations to represent the litigation interests of the United States (including to protect information that is covered by the deliberative-process privilege or other available privileges). *See, e.g.*, *id.* at 21 ("As of today, States have not been provided access to voter citizenship information through the new portal contemplated by the June 8 DHS memo. Defendants will continue to notify the court of any 'material factual development' as the court ordered. But because maintaining the status quo is not a material factual development, we do not intend to file a notice saying, for example, that the portal is still not live.").

Recently, those requests have been lengthier, more complex, and phrased more like discovery requests, which has hindered Defendants' ability to provide definitive representations in a way that would satisfy Plaintiffs' demands. *See, e.g.*, *id.* at 12 (on the afternoon of Thursday, August 27, explaining this problem via email and offering to discuss further over the phone). On

the afternoon of Monday, August 31, counsel for Plaintiffs accepted the offer of a phone call, and proposed various available times, including the afternoon of Wednesday, September 2. *See id.* at 11. Counsel for Defendants accepted via email later that afternoon. *See id.* at 9.

The next evening, at 8:03 PM on Tuesday, September 1, Plaintiffs escalated the matter significantly and without warning. Plaintiffs cited "reports" that the Postal Service "began implementing Section 3(b) of the E.O." "several months ago" and asserted that "Defendants never told the Court about this or any of the myriad material facts outlined by an anonymous federal official" who had reportedly submitted a whistleblower report to Senator Blumenthal. *See id.* at 7. Plaintiffs also claimed to have "discovered that Defendant DHS has launched a website that will 'soon' host the 'State Citizenship List Portal,' ordered by Section 2(a) of the E.O." *Id.* Plaintiffs stated that they were "available and willing to confer on these issues in good faith tomorrow morning between 9 and 11am, but" that they "cannot wait any longer than that to seek relief from the Court, given the impending implementation of Sections 2(a) and 3(b) . . . ." *Id.*

Later that same evening, at 10:40 PM, counsel for Defendants responded via email, explaining that "it is not a secret that USPS has published a Final Rule and hopes to implement it for the November 2026 elections, if possible," and reminding Plaintiffs that Defendants "filed a notice with [the Court] literally minutes after" the text of the Final Rule "became available for public inspection on the Federal Register's website." *Id.* at 5. As for DHS's implementation of the Executive Order, counsel explained that "the existence of a placeholder webpage saying that something is 'Coming Soon' is plainly not a material development, . . . whether or not the content of the website is actually 'Coming Soon,'" a factual question that (at that time) needed further investigation. *Id.* Counsel for Defendants requested that Plaintiffs not renege on their prior agreement

to meet and confer at 2:30 PM the next day. *See id.* at 5-6. The next morning, Plaintiffs agreed to keep the existing call on the calendar. *See id.* at 4.

On the afternoon of Wednesday, September 4, 2026, the parties conferred via videoconference for approximately one hour. Most of that time was spent by undersigned counsel explaining the various ways in which Plaintiffs' factual assumptions were mistaken, and otherwise answering factual questions from Plaintiffs. For example, undersigned counsel confirmed that DHS's State Citizenship Portal was not live, would not go live on or before September 4 (as Plaintiffs in this case and others had mistakenly asserted), and that government counsel intended to provide at least 48 hours' notice to counsel for Plaintiffs before it goes live in the future.

As that call was wrapping up—and despite Defendants' counsel's having explained that the factual predicate that led to Plaintiffs' sudden alarm was largely mistaken—counsel for Plaintiffs stated that they would still be filing a motion on this subject later that same day. Surprised, undersigned counsel repeatedly asked counsel the following question: "Is there any factual development that has happened that we have not provided notice about that you think we should have provided notice about?" Counsel for Plaintiffs did not identify a single example.[1]

---

[1] Defendants disagree with Plaintiffs' factual descriptions of the September 2, 2026 meet-and-confer call in several respects. Because the Court need not adjudicate those disagreements to deny Plaintiffs' motion, Defendants will refrain from further burdening the Court with a competing description of that call, other than to say that Defendants do not share Plaintiffs' understanding described on Pages 8-9 of their motion. Defendants also note that Plaintiffs' description of the parties' meet-and-confer email chain states that "counsel for Defendants did not identify any inaccuracies in the USPS whistleblower's reporting of USPS's procedures or implementation of the Ballot Mail Rule nor refute that DHS would 'soon' launch the 'State Citizenship List Portal.'" Mot. at 8. That may be true of Defendants' late-night email reserving the right to discuss further the next day, *see* ECF No. 179-1 at 4-6, but it is not true with respect to the meet-and-confer call that happened the next day. On that call, Defendants did identify material errors (both legal and factual) in the anonymous whistleblower report, and also explained that Plaintiffs' assumptions about the timing of the rollout of State Citizenship Portals by DHS were mistaken. *See infra*.

As promised, later that same day, on September 2, 2026, the *DSCC* Plaintiffs (but not the *LULAC* or the *NAACP* Plaintiffs) filed an 18-page motion "for order requiring material updates." ECF No. 179. Their proposed order asked that Defendants be ordered "to provide any undisclosed information satisfying" Plaintiffs' "standard no later than September 4, 2026," just 48 hours later, Pls.' Proposed Order at 1, ECF No. 179-2, though they had never raised that time-sensitive request during the conferral process. Plaintiffs' certificate of conferral likewise did not include any "statement as to whether the motion is opposed" as required by Local Civil Rule 7(m), instead including only the self-serving statement that "[t]he parties were unable to reach agreement because Defendants continue to refuse to provide the information requested." Mot. at 20. Plaintiffs did not specify what information, exactly, Defendants had failed to provide, nor did they acknowledge that Defendants *had* provided significant factual information in response to Plaintiffs' many written and oral requests (albeit less information than Plaintiffs had demanded).

Plaintiffs' proposed order demands public disclosure, "within 24 hours of when . . . decisions are made," "includ[ing], but . . . not limited to" on the following subjects:

<u>Section 2(a): State Citizenship Lists</u>

- Whether and when voter information will be shared between federal agencies;
- Whether and when voter information will be shared with or otherwise made accessible to State or local election officials;
- Final decisions about DHS's portal design, including for example, what specific voter data the portal will include;

<u>Section 3(b): USPS Final Rule</u>

- Whether and when the Federal Ballot Mail Portal will be launched;
- All material aspects of USPS's plans to implement 3(b) and the Ballot Mail Rule. This should include, for example, material portal design determinations, any policies implementing a failure standard for acceptance of ballot mail by USPS, and any operative sampling protocol, by facility type and mailing size, as described above.

Proposed Order at 1. Plaintiffs also demand attorney's fees and costs. *Id.* at 16-18.

## ARGUMENT

### I. Defendants have provided notice of all material factual developments.

The *DSCC* Plaintiffs' motion can and should be denied for the simple reason that Defendants have timely provided the Court updates on all material factual developments.

**a.** Start with DHS. On June 8, 2026, the Secretary of Homeland Security signed a memorandum containing certain recommendations from USCIS about how DHS then intended to implement Section 2 of the Executive Order, including authorizing an approach to establish the relevant infrastructure that could allow sharing of information between government entities and a process for individuals to access and update or correct their records. *See* ECF No. 149 (notice of June 5, 2026 memo); ECF No. 150 (notice of June 8, 2026 memo, which superseded and replaced the June 5, 2026 memo). The Government provided notice of that development the day that it happened, and then filed a copy of the memorandum the following week. *See* ECF No. 151 (notice of filing of June 8, 2026 memo). It did so in an abundance of caution, even though the June 8, 2026 memorandum (1) was arguably deliberative, at least in part; and (2) contemplated significant future policymaking decisions before it could actually be implemented. Indeed, in separate litigation in the District of Maryland, Defendants have since argued that the June 8, 2026 memorandum was not a final agency action. *See* Defs.' Opp'n to Pls.' Mot. for Partial Summ. J., ECF No. 36, *EPIC v. USCIS*, No. 8:26-cv-3457-PX (D. Md. Sep. 10, 2026).

Shortly after Defendants provided public notice of the June 8, 2026 memo, however, a court order issued in the District of Massachusetts slowed down DHS's implementation efforts—as DHS has explained in a sworn declaration filed in separate litigation in which (unlike here) the plaintiffs actually sought time-sensitive relief in connection with the June 8, 2026 memo. *See* Ex.

1, Decl. of M. Mayhew ("Mayhew Decl.") (Sep. 10, 2026), ECF No. 36-1, *EPIC v. USCIS*, No. 8:26-cv-3457-PX (D. Md. Sep. 10, 2026). That order "declar[ed] Sections 2 and 3 of the Executive Order legally void," and also enjoined "DHS and USCIS from 'taking any steps to create a new federal program to superintend and control Plaintiff States' maintenance of their voter rolls' as applied to the upcoming November 3, 2026 election or any earlier federal election for Plaintiff States." *Id.* ¶ 7. Accordingly, "DHS and USCIS immediately stopped all work on developing and implementing a technical solution for producing the citizenship lists for all states." *Id.* ¶ 8.

Largely because of that prior court order, there have been no material factual developments with respect to DHS implementation of Executive Order 14,399 since Defendants' prior notices. To be clear, that does not mean that DHS has ceased all efforts to implement Executive Order 14,399. To the contrary, USCIS is once again "working to develop new technical infrastructure, including building out the capability to deliver DHS citizenship data to state election officials." *Id.* ¶ 10. But "[t]his work is not complete, and no implementation date has been set." *Id.* Moreover, "[t]o date, USCIS has not shared any data related to the State Citizenship Lists or Executive Order 14,399 with individual states." *Id.* ¶ 12.[2]

In short, there are no material factual updates to provide—DHS began work on a plan (as was disclosed to the Court), and that work remains unfinished. Indeed, the *DSCC* Plaintiffs knew at the time they filed their motion that the State Citizenship List Portal contemplated by the June 8 memo had not been launched, and also obtained a commitment from Defendants to "provide[] 48-hours notice before State Citizenship Lists are made available to the States." Mot. at 16.

[2] Undersigned counsel is not aware of any material factual developments since the filing of that declaration on September 10, 2026.

The only concrete "development" that *DSCC* Plaintiffs gesture at is a "Coming Soon" page that was briefly and mistakenly publicly visible, and which did not provide access to any lists (or any information at all). *Id.* at 5. But as DHS has since explained, that "webpage was just a placeholder landing page and was not usable." Mayhew Decl. ¶ 11. The Government does not understand the existence of a non-usable, placeholder landing page that was never intended to be visible to the States (or the public in general), *id.*, to be a material factual development.

The *DSCC* Plaintiffs' remaining concern appears to be that Defendants did not affirmatively reveal to the Court that the deadline contemplated by the Executive Order—June 30—for DHS to complete certain steps had slipped. *See* Mot. at 15-16. But again, as Plaintiffs knew, DHS spent much of this summer subject to a preliminary injunction in the District of Massachusetts. Although that injunction was entered in the absence of jurisdiction, Defendants complied with it while it remained in effect, until the Supreme Court granted a stay a few weeks ago. *Trump v. California*, 609 U.S. ---, 2026 WL 2473573 (U.S. Aug. 24, 2026). That altered the timeline contemplated by the June 8, 2026 memo—a memo that itself acknowledged multiple unresolved policy questions and contemplated significant future decisionmaking before actual implementation of the Executive Order. *See, e.g.*, June 8, 2026 Memo, ECF No. 151-1 at 3 ("Applicable privacy offices and counsel are coordinating to ensure that . . . States' use, retention, and redisclosure of the information" at issue would be "constrained through appropriate agreements and terms of service, and that the portal's operations align with existing legal authorities and published SORNs and PIAs, supplemented as needed."). That work has not been completed.

But more fundamentally, whatever the reason *why* DHS was unable to implement the Executive Order on the timeline originally contemplated by the Executive Order, the fact that the status quo has *not* changed is not a material factual development. It is the opposite. And the *DSCC*

Plaintiffs' assertion that the "agency *decisions* to disseminate protected information—not just the actual dissemination of that information—are material to the issues in this case," Mot. at 12, is a non-sequitur. Even assuming that Plaintiffs are correct that "agency decisions" have been made, when such decisions rise to the level of "material factual developments"—such as the June 2026 DHS memoranda—those agency decisions have been immediately reported to the Court, ECF Nos. 149, 150, 151, and in response to which the *DSCC* Plaintiffs (unlike litigants in other cases) took no action. That the agency has been working to implement any such decision (work that has not been completed), or has made various tentative or incremental choices along the way, is neither surprising nor a material factual development.

**b.** The lack of any unreported factual updates with respect to USPS is even more straightforward. Plaintiffs acknowledge that "USPS issued its Final Rule," Mot. at 14, and this was immediately disclosed to the Court, ECF No. 161. Plaintiffs' grievances thus rest largely on an anonymous whistleblower report indicating that the Postal Service (at least as of a few weeks ago) was in the process of developing standards to implement the Final Rule. Mot. at 15-16. But the fact that the Postal Service was working to implement a Final Rule is obvious from the issuance of the Rule itself, and thus cannot be a material factual development requiring further notice.

Although the anonymous whistleblower seems to misunderstand this critical point, that work was fully consistent with all then-applicable court orders, which (at the relevant times) allowed for (1) implementation of the Final Rule with respect to all elections after November 3, 2026; and (2) voluntary implementation of significant portions of the Final Rule, even for upcoming elections. *See, e.g.*, *League of Women Voters of Mass. v. Trump*, --- F.4th ----, 2026 WL 2662011, at *4 n.4 (1st Cir. Sep. 10, 2026) ("We note that the preliminary injunction does not bar voluntary compliance by States with the Final Rule; nor does it prohibit the Postal Service from

continuing with the Final Rule's implementation for elections after November 2026, including by creating the portal and training staff on the Final Rule's requirements."). Indeed, none of the Plaintiffs here (or in the District of Massachusetts) have ever embraced that meritless accusation from the anonymous whistleblower report.

During the meet-and-confer process, Plaintiffs also referred to allegations from the anonymous whistleblower report that certain technical decisions have been made about how the Final Rule would be implemented. *See* Mot. at 15 (arguing that the anonymous whistleblower "states that USPS will use a zero-tolerance batch-acceptance standard pursuant to which USPS will refuse the entire batch of ballots proffered by a State if it fails to validate even a *single* barcode within the batch"). During the meet-and-confer conference before Plaintiffs' filed their motion, undersigned counsel explained (after conferring with the Postal Service) his understanding that the anonymous whistleblower was simply mistaken about this—at least to the extent that the accusation was that any final decision had been made to that effect.[3] And by that time, the Postal Service had again been enjoined from operationalizing any such decision anyway—thus both (1) short-circuiting then-ongoing deliberations, and (2) rendering the question entirely academic. Either way, then and now, there is no material factual development to report.

In all events, it is far from clear that internal USPS decision making about granular details or technical specifications for implementing verification procedures (procedures contemplated by the Final Rule itself) would be a material factual update that requires additional notice. But, because the decision in question was never even made (much less implemented), Defendants had

---

[3] In a footnote, Plaintiffs obliquely reference this clarification, stating that "Defendants deny having made final determinations about some aspects of Ballot Mail Rule implementation, but the whistleblower report suggests those denials may reflect semantic parsing rather than full candor." Mot. at 15 n.5. Plaintiffs offer no factual basis for the serious accusation that may be implied in this footnote, so Defendants will not offer any further response.

nothing to report. And presumably that will now remain the case for at least the near future, as this Court has now issued a preliminary injunction that prevents "implementing or enforcing the Final Rule," and the Supreme Court denied a stay of a parallel injunction, *USPS v. California*, 609 U.S. ---, 2026 WL 2687160 (U.S. Sep. 14, 2026) (mem.).

* * *

In short, Defendants have—and will continue to—notify the Court of material factual developments, as long as the Court expects those updates. Because Defendants have never fallen short in those obligations, the *DSCC* Plaintiffs' motion should be denied for that reason alone.

## II. The *DSCC* Plaintiffs appear to be seeking backdoor discovery that this Court already rejected under the guise of a compliance motion.

A brief aside about the scope of this Court's expectations is warranted. At various points, the *DSCC* Plaintiffs appear to view this Court's expectation about providing notice of material factual development to entitle them to on-demand updates to the current status of the agencies' implementation efforts.

Defendants do not share that understanding. The Court stated that it expected updates on "material factual developments," not interim, implementation steps of effectuating agency decisions. Indeed, the latter category of material would surely cover material covered by (at a minimum) the deliberative-process privilege, and Defendants do not understand the Court to have *sub silentio* requested the disclosure of privileged material. That is particularly so in light of this Court's decision—later affirmed unanimously by the D.C. Circuit, and endorsed by the Supreme Court in parallel litigation—holding that what matters is how agencies actually "implement the Order," not all their internal deliberations along the way. *DSCC v. Trump*, 834 F. Supp. 3d 19, 40 (D.D.C.), *aff'd*, 2026 WL 2168617 (D.C. Cir. July 28, 2026); *see also California I*, 2026 WL

2473573, at *4 ("Federal courts review final rules, not proposed rules—and certainly not antecedent internal directives to propose a rule. If the Postal Service's final rule harms the States, they may challenge that rule.").

Even to the extent that Plaintiffs seek information only of "material implementation decisions," Defendants did not understand the Court to require the public disclosure of, for example, of all of USPS's internal planning for implementing a Final Rule, or the interlocutory implementation details about ongoing but incomplete efforts by DHS to build a State Citizenship List Portal. Indeed, those requests are largely indistinguishable from the sort of discovery requests that this Court previously rejected. *Compare, e.g.*, *LULAC*, ECF No. 17-1 at 5 (proposed discovery requests asking DHS to provide information on steps that have been taken or will be taken to comply with Section 2(a)); Apr. 12, 2026 Minute Order (denying request). Defendants do not understand the Court to have *sua sponte* imposed a requirement to provide that same sort of information via a statement of expectations at the close of a hearing, after denying Plaintiffs' explicit request for that same sort of information via the Federal Rules.[4]

## III. There is no legal or factual basis to award any attorney's fees or costs.

For the reasons above, Defendants never violated the Court's expectations, nor their candor obligations more generally. But even if Plaintiffs could show otherwise, their ambitious request for attorney's fees and costs should plainly be denied—whether under Federal Rule of Civil Procedure 16, 37, or the Court's inherent authority.

---

[4] Indeed, even if the Court had granted rather than denied Plaintiffs' motion for leave to serve interrogatories, there would be no obligation to provide the sort of information Plaintiffs are requesting "within 24 hours." Mot. at 17. Federal Rule of Civil Procedure 33(b)(2) includes a presumptive deadline of "30 days" to serve "answers and any objections" after "being served with the interrogatories." It is hard to imagine that the Court intended, as a practical matter, to eliminate 97% of Defendants' time to respond even while *denying* Plaintiffs' motion for expedited discovery in its entirety.

A fee award is available under Rule 16 only when a party fails to participate in a scheduling or pretrial conference in good faith or where the party has violated a "scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1); *see also Act Now to Stop War and Racism Coal. and Muslim Am. Soc'y Freedom Found. v. District of Columbia*, 846 F.3d 391, 414-15 (D.C. Cir. 2017) ("[A] court may award sanctions under Rule 16(f) only where a party violates an unambiguous order."); *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 88 (D.D.C. 2003) (courts have only imposed sanctions under Rule 16(f) for violations of a court order, deadline, or timetable). Rule 16 cannot form the basis for a fee award here because there was no "pretrial order" at all. As explained above, Defendants have followed the Court's instruction by disclosing all "material factual developments." And Defendants take the Court's instruction no less seriously because it was stated as the Court's expectation, rather than a court-ordered legal obligation. Even so, although Plaintiffs repeatedly and mistakenly describe the June 1 "Notice" as an "order" in their Motion (*see* Mot. at 1-3, 10-11, 14, 16-17) the Court specifically declined their request for an order, on two occasions. *See supra* at 3-4 (citing Hr'g Tr. at 104:24-105:13 (explicitly rejecting request to memorialize the Court's expectation in an order); Notice of Error (June 1, 2026) (retracting "Minute Entry" and replacing it with a "Notice")). For this reason, Plaintiffs' request for attorneys' fees and costs under Rule 16 fails at the outset.

Similarly, a fee award is not available under Rule 37 because the June 1, 2026 Notice was not an "order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). Rule 37 only authorizes sanctions "when the transgressing party has violated a prior court order," *Yukos Cap. SARL v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020), but (as explained above) the Court's expectation was not an order in the relevant sense. And Rule 37 sanctions are generally only available for violation of a production order. *Shepherd v. ABC*, 62 F.3d 1469, 1474 (D.C. Cir. 1995). The June 1 Notice

was not a production order—it did not "provide or permit discovery." *Id.* The Court has not ordered discovery; neither the parties nor the Court ever agreed to a discovery plan; and the parties have not exchanged productions or interrogatories. To the contrary, Plaintiffs previously sought expedited discovery, which the Court denied. ECF No. 28; Apr. 12, 2026 Minute Order. So Rule 37 likewise cannot be the basis for any fee award here.

Regardless, and more fundamentally, even if either Rule 16 or 37 applies, any violation of the Court's expectation (or any court order) was at least "substantially justified," as reasonable minds could (at the very least) differ about whether Defendants failed to disclose any "material factual development." Fed. R. Civ. P. 16(f)(2); Fed. R. Civ. 37(b)(2)(C); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Cobell v. Norton*, 213 F.R.D. 1, 14-15 (D.D.C. 2003) (refusing to impose penalties under Rule 37 where the parties could reasonably differ about whether the court order covered the items at issue). Indeed, as explained above, Defendants respectfully submit that it is Plaintiffs who have misunderstood the Court's expectations—not Defendants. But either way, the question of what developments are or are not "material" necessarily requires some subjective judgment—which further supports the Court's prudent reluctance to formally imposing that obligation in the form of a court order, which would be enforceable by sanctions or contempt. *Cf.* Fed. R. Civ. P. 65(d)(1)(C) (requiring any injunction to "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required").

Finally, the Court's inherent authority to punish misconduct through an award of attorneys' fees extends to cases where a party willfully disobeys a court order or the court finds that it acted in bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Parsi v. Daioleslam*, 778 F.3d 116, 132 (D.C. Cir. 2015) (district court must find bad faith by clear and convincing evidence to award attorneys' fees). As explained, Defendants did not violate any court order, or even the Court's

expectations. And Plaintiffs do not even allege that any violation rises to the level of bad faith, much less demonstrate that by clear and convincing evidence. Nor could they.

## CONCLUSION

The *DSCC* Plaintiffs' motion should be denied.

Dated: September 16, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI
Chief Litigation Counsel (D.C. Bar. 995500)
MICHAEL S. POLITO
Trial Attorney (D.C. Bar No. 90041172)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 305-8576
E-mail: stephen.pezzi@usdoj.gov