**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1114 (CJN) |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1132 (CJN) |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-1151 (CJN) |

**DEMOCRATIC PARTY PLAINTIFFS' REPLY**
**IN SUPPORT OF THEIR MOTION FOR ORDER**
**REQUIRING MATERIAL UPDATES**

Democratic Party Plaintiffs seek an order directing Defendants to disclose the status of their implementation of Section 2(a) of the Executive Order.[1] The Court has already instructed Defendants to provide such information. At the preliminary injunction hearing in May, the Court told Defendants to notify the Court when "material steps are taken" toward implementing Section 2(a) and made clear that "anything even approaching a material change in the factual scenario on the government side" triggers this disclosure obligation. PI Hearing Tr. 66:8–16, 104:7–20; *see id.* at 105:10–13 (noting Defendants should take a "capacious interpretation of what the [Court's] expectations are" and that the "[Court] expect[s] the government will comply"); *see also* Notice (June 1, 2026) (clarifying that the obligation remains in effect as long as "this litigation remains pending").

Yet throughout this litigation, Defendants have repeatedly shirked the Court's instruction, and now in their response they contend there was no obligation whatsoever. This ignores the Court's clear expectation, and Defendants' evasive actions have forced Plaintiffs to litigate this extremely important matter on extremely tight timelines and with incomplete information. On May 29—*the day after* this Court denied Plaintiffs' first preliminary-injunction motion on ripeness grounds—Defendants submitted a notice of material updates indicating that USPS had issued a notice of proposed rulemaking pursuant to Section 3(b), which was already available on the Federal Register's website. *See* ECF No. 145. On June 8, Defendants submitted another notice of material updates indicating that DHS Secretary Mullin had signed a memorandum outlining the agency's plan to implement Section 2(a), *see* ECF No. 150, yet Defendants waited until June 18—*the day after* Plaintiffs' appeal brief in the D.C. Circuit was due—to file the memorandum itself,

[1] Now that the Court has preliminarily enjoined Defendants' final rule implementing Section 3(b) of the Order, *see* ECF No. 193, Democratic Party Plaintiffs do not need an update concerning those efforts.

*see* ECF No. 151. When USPS issued its final rule (a 100-page document with dozens of pages of hitherto-unseen legal analysis), it announced the rule to the Court at 10 p.m. in the evening of Friday, August 21, 2026, *the same date the rule became effective*. *See* ECF No. 161. Defendants took these actions despite having represented to the Supreme Court less than three weeks earlier that the nature of any final order USPS might issue was uncertain, *see* Reply in Support of Application for Stay, *Trump v. California*, No. 26A124 (U.S. Aug. 4, 2026), and even though the very act of finalizing the rule violated a still-active injunction issued by the District of Massachusetts, *see League of Women Voters of Mass. v. Trump*, No. 1:26-CV-11549-IT, 2026 WL 2494721, at *1–2 (D. Mass. Aug. 25, 2026). And USPS's determination to issue the final rule itself implicated Democratic Party Plaintiffs' privacy rights, and therefore constituted a material update of which Defendants should have notified the Court. *See* ECF No. 162-1 at 24–26. None of these actions reflected spur-of-the-moment decisions—each was undoubtedly preceded by adoption of official policies and programming directives and internal activities to support subsequent public actions—yet Defendants never informed the Court or Plaintiffs as to these "material change[s]," PI Hearing Tr. 104:9, until after they had already occurred.

It was against this backdrop that Democratic Party Plaintiffs, in an effort to avoid burdening the Court with unnecessary motion practice, asked Defendants to voluntarily provide information about their implementation of Section 2(a). Section 2(a) cannot be implemented overnight, and many steps necessary for its implementation are clearly material to Plaintiffs' claims. Defendants must (1) compile information from numerous sources, including "Federal citizenship and naturalization records, SSA records, SAVE data, and other relevant Federal databases," E.O. § 2(a), (2) develop an electronic "portal" for disseminating that information that connects to multiple federal databases, *see* ECF No. 151-1 at 2–4, (3) use the "portal" to make the compiled

information available to state election officials, *id.*, and then (4) ultimately make the information available for public review, *id.* Defendants are already doing some of this, as Democratic Party Plaintiffs' counsel discovered through their own research and investigation. *See* ECF No. 179 ("Mot.") at 5 & n.2. Yet during a meet and confer with Plaintiffs' counsel, Defendants' counsel refused to answer basic questions about the status of Section 2(a), including whether and when DHS had decided to launch the "portal," whether the "portal" infrastructure was itself complete, and whether DHS had started (or finished) compiling State Citizenship Lists pursuant to any agency decision. *Id.* at 8–9.

Because this refusal contravenes the Court's direction to provide notice of "anything even approaching a material change in the factual scenario on the government side," PI Hearing Tr. at 104:7–20, Democratic Party Plaintiffs filed the instant motion to compel compliance with that instruction, ECF No. 179. Defendants' only real response is to, first, effectively deny that they had any obligation to update the Court, and second, to claim that no material updates have occurred, *see* ECF No. 195 ("Opp.") at 3–4, 9, but both arguments fail. First, Defendants' effort to evade this Court's clear expectation by claiming that the Court's admonitions fell short of an "Order" is semantic and without meaningful practical effect. Indeed, the Court has made its expectations clear on numerous occasions, and Defendants have repeatedly agreed to comply with those expectations—including in their opposition, where they agree they "take the Court's instruction no less seriously because it was stated as the Court's expectation." Opp. at 16; *see also* ECF No. 179-1 at 21 (counsel for Defendants stating, "Defendants will continue to notify the court of any 'material factual development' as the court ordered").

As for Defendants' claim that there have been no material updates to report, it is belied by the course of this litigation. Democratic Party Plaintiffs have repeatedly discovered relevant

updates via public reporting or their own research long *before* Defendants' counsel disclosed them, and Defendants have consistently made disclosures only well *after* the relevant decisions had been made. Democratic Party Plaintiffs have no way to know what additional intra-governmental decisions or actions Defendants have failed to disclose. Defendants' cramped view of "materiality"—and history of withholding updates about key decisionmaking—is what made this motion necessary.

Defendants now admit that they have not "ceased all efforts to implement" Section 2(a), and that USCIS is continuing to "develop new technical infrastructure" for delivery of the State Citizenship Lists along an "altered . . . timeline." *Id.* at 11–12.[2] They characterize these steps as not being "material factual developments," *id.* at 14, but that is wrong as a matter of law. Under binding D.C. Circuit precedent, an agency's action is final when an agency arrives at a definitive position on the relevant issue—not whether the agency has literally finished implementing the challenged action. *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–53 (1967); *Teva Pharms. USA, Inc. v. Kennedy*, No. 25-5425, 2026 WL 2409591, at *15 (D.C. Cir. Aug. 18, 2026) (citing *Energy Future Coal. v. EPA*, 793 F.3d 141, 146 (D.C. Cir. 2015) (Kavanaugh, J.)); *Venetian Casino Resort v. EEOC*, 530 F.3d 925, 931 (D.C. Cir. 2008). Thus, an agency's decision to disseminate protected information—including to another agency—is a *final* decision, and one that is undoubtedly material to Democratic Party Plaintiffs' claims in this case. *DSCC v. Trump*, No. 26-5193, 2026

[2] In the days since Plaintiffs filed their Motion for an Order Requiring Material Updates, additional reporting has revealed evidence of decisions and other agency actions that may be relevant to implementation of the Executive Order. For example, a DHS official anonymously reported to Congress that agents have been ordered to collect information from State voter roll databases directly, even if it means illegally disguising their identity. Nick Corasaniti & Hamad Aleaziz, *Whistle-Blower: Federal Agents May Have Broken State Laws in Search for Voter Fraud* (Sep. 14, 2026), https://www.nytimes.com/2026/09/14/us/politics/homeland-security-voter-fraud-investigation.html. DHS did not deny these facts and stated only that it is committed to carrying out the President's agenda. *See id.*

WL 2168617, at *5; *see also Venetian Casino Resort*, 530 F.3d at 931 (holding that a "decision of the Commission to adopt a policy of disclosing confidential information" constituted final agency action that cognizably injured parties whose information was to be shared). The D.C. Circuit reaffirmed this law of the Circuit just last week, holding that an agency decision about "how it will share . . . confidential" records is final agency action under the Administrative Procedure Act. *Ctr. for Taxpayer Rts. v. Internal Revenue Serv.* ("*CTR II*"), No. 26-5006, 2026 WL 2635380, at *9 (D.C. Cir. Sept. 8, 2026).

Indeed, it is notable that the *only* update Defendants agreed to provide during the parties' meet-and-confer call was 48 hours' notice before the State Citizenship List portal "goes live." *See* Opp. at 7. But well before the portal goes live, *DHS must make the decision to open the portal*—and that decision is itself final agency action, and thus highly material to the ripeness of Democratic Party Plaintiffs' claims. *CTR II*, 2026 WL 2635380, at *9. Yet, remarkably, Defendants do not seem to believe they would be obligated to inform the Court or Plaintiffs when such a decision has been made. *See* Opp. at 14–15. That contravenes the Court's repeated admonitions that Defendants must provide material updates.

Defendants' approach all but guarantees that Democratic Party Plaintiffs will begin suffering injuries *before* they can obtain effective relief. If Defendants only notify the Court about their implementation of Section 2(a) when they are on the cusp of disclosing Democratic Party Plaintiffs' confidential information, it will be extremely challenging for Plaintiffs to obtain relief before their confidential information is disclosed—especially given that Defendants have repeatedly opposed Plaintiffs' requests for expedited briefing. *See, e.g.*, ECF No. 165 at 3–4. Democratic Party Plaintiffs should not be required to wait until "Damocles's sword . . . actually fall[s]" on them to obtain effective relief. *League of Women Voters v. Newby*, 838 F.3d 1, 8–9

(D.C. Cir. 2016); *see also CTR II*, 2026 WL 2635380, at *9. This is especially true in the privacy context, where any disclosure of protected information inflicts a "concrete" injury, *Pileggi v. Wash. Newspaper Publ'g Co.*, 146 F.4th 1219, 1227 (D.C. Cir. 2025), that cannot be fully remedied after it has occurred.

Defendants also accuse Democratic Party Plaintiffs of "seeking backdoor discovery" via the Court's material-updates instructions. Opp. at 14. Not so. Democratic Party Plaintiffs have not served requests for production or interrogatories on Defendants and do not seek information that is commensurate with the robust civil discovery permitted by the Federal Rules of Civil Procedure. All Democratic Party Plaintiffs seek is compliance with this Court's repeated, unambiguous admonition that Defendants should provide prompt notice of "anything even approaching a material change" in their implementation of the Order, *see* PI Hearing Tr. at 104:7–11—a category to be given a "capacious interpretation," *id.* at 105:12.[3]

* * *

This is not an ordinary civil case. It is a challenge to an Executive Order that attempts to remake American elections by executive fiat, as well as actions to implement the Order that—if left unchecked—will have widespread and pernicious consequences for American democracy, all while voting is ongoing for the 2026 general elections. *See* ECF No. 192 at 2 (D.D.C. Sept. 13, 2026) (noting that the midterm elections are "occurring in less than sixty days"). Therefore, as

[3] Defendants also dispute Democratic Party Plaintiffs' request for fees. *See* Opp. at 15–17. For the reasons explained in Democratic Party Plaintiffs' motion, an award of attorney fees is mandatory if the Court determines that Defendants violated a pretrial order unless "the noncompliance was substantially justified." Fed. R. Civ. P. 16(f)(2). Given Defendants' noncompliance with the Court's clear expectations to the detriment of Democratic Party Plaintiffs, a fee award is appropriate. However, as noted in the Motion, what is more important is an order requiring Defendants to provide the material updates as directed by the Court, which are critical to Democratic Party Plaintiffs' ability to obtain timely and effective relief. Mot. at 17–18.

explained in Democratic Party Plaintiffs' motion, "time is of the essence in granting relief" given the rapidly approaching November midterm elections. Mot. at 18 n.7. This Court recognized that reality in its repeated and unambiguous instruction that Defendants should promptly provide notice of any material changes. PI Hearing Tr. 66:8–16. The Court should now enforce those directives and require Defendants to provide a complete disclosure of the status of their implementation of Section 2(a).

Dated: September 20, 2026

Respectfully submitted,

*/s/ Lalitha D. Madduri*

**ELIAS LAW GROUP LLP**
Marc E. Elias (DC 442007)
Lalitha D. Madduri (DC 1659412)
Jacob D. Shelly (DC 90010127)
Max Accardi (DC 90021259)
Kevin R. Kowalewski (DC 90045467)
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 948-1135
eliasm@elias.law
lmadduri@elias.law
jshelly@elias.law
maccardi@elias.law
kkowalewski@elias.law

Tyler L. Bishop (DC 90014111)
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
T: (206) 656-0177
tbishop@elias.law

*Counsel for Democratic Party Plaintiffs*